David R. Pierce, Esq.   #1812
LINDABURY, McCORMICK, ESTABROOK & COOPER P.C.
53 Cardinal Drive
P. O. Box 2369
Westfield, New Jersey 07091
(908) 233-6800
Attorneys for Defendant,
TERMS Environmental Services, Inc.

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| BOROUGH OF EDGEWATER,<br><br>    Plaintiff<br>vs.<br><br>WATERSIDE CONSTRUCTION, LLC; 38 COAH, LLC; DAIBES BROTHERS, INC.; NORTH RIVER MEWS ASSOCIATES, LLC; FRED A. DAIBES; TERMS ENVIRONMENTAL SERVICES, INC.; ALUMINUM COMPANY OF AMERICA; A.P. NEW JERSEY, INC.; JOHN DOES 1-100; and ABC CORPORATIONS 1-100,<br><br>    Defendants | Civil Action No.: 2:14-cv-05060-ES-MAH<br><br>ANSWER TO PLAINTIFF'S FIRST AMENDED COMPLAINT WITH COUNTERCLAIMS AND CROSS-CLAIMS |

Defendant, TERMS Environmental Services, Inc., by way of Answer to the First Amended

Complaint of Plaintiff, Borough of Edgewater, hereby says:

### THE PARTIES

1.    Admitted.

2.    Defendant admits that Waterside Construction, LLC is a New Jersey limited

liability company, but lacks information and knowledge sufficient to form a belief as to the truth of the remainder of the allegations contained in paragraph 2 of the First Amended Complaint and therefore denies same.

3.    Defendant lacks information or knowledge sufficient to form a belief about the truth of the allegations contained in Paragraph 3 of the First Amended Complaint and therefore denies same.

4.    Defendant lacks information or knowledge sufficient to form a belief about the truth of the allegations contained in Paragraph 4 of the First Amended Complaint and therefore denies same.

5.    Defendant lacks information or knowledge sufficient to form a belief about the truth of the allegations contained in Paragraph 5 of the First Amended Complaint and therefore denies same.

6.    Defendant admits that Fred Daibes is an individual and that he owned and/or controlled Waterside Construction, LLC, but lacks information and knowledge sufficient to form a belief as to the truth of the remainder of the allegations contained in paragraph 6 of the First Amended Complaint and therefore denies same.

7.    Defendant admits that TERMS Environmental Services, Inc. ("TERMS") is a New Jersey corporation with an office at 599 Springfield Avenue, Berkeley Heights, New Jersey and was engaged as an environmental consultant for certain work for Plaintiff relating to Veteran's Field and denies the remainder of the allegations contained in Paragraph 7 of the First Amended Complaint.

8.      Defendant lacks information or knowledge sufficient to form a belief about the truth of the allegations contained in Paragraph 8 of the First Amended Complaint and therefore denies same.

9.      Defendant lacks information or knowledge sufficient to form a belief about the truth of the allegations contained in Paragraph 9 of the First Amended Complaint and therefore denies same.

10.     Defendant lacks information or knowledge sufficient to form a belief about the truth of the allegations contained in Paragraph 10 of the First Amended Complaint and therefore denies same.

11.     Defendant lacks information or knowledge sufficient to form a belief about the truth of the allegations contained in Paragraph 11 of the First Amended Complaint and therefore denies same.

## JURISDICTION AND VENUE

12.     Paragraph 12 of the First Amended Complaint contains conclusions of law and not allegations of facts and Defendant therefore, neither admits nor denies same and leaves Plaintiff to its proofs.

13.     Paragraph 13 of the First Amended Complaint contains conclusions of law and not allegations of facts and Defendant therefore, neither admits nor denies same and leaves Plaintiff to its proofs.

14.     Paragraph 14 of the First Amended Complaint contains conclusions of law and not allegations of facts and Defendant therefore, neither admits nor denies same and leaves Plaintiff to its proofs.

15.     Paragraph 15 of the First Amended Complaint contains conclusions of law and not allegations of facts and Defendant therefore, neither admits nor denies same and leaves Plaintiff to its proofs.

## BACKGROUND

16.     Defendant admits that Veteran's Field is located at 1167 River Road, Edgewater, New Jersey, is known as Block 30, Lot 1 on the Tax Map of the Borough of Edgewater and is a public park consisting of approximately 27.58 acres, and prior to the activities referenced in the First Amended Complaint contained ball fields, athletic courts, playgrounds, a picnic area and a community center, but lacks information and knowledge sufficient to form a belief as to the truth of the remainder of the allegations contained in paragraph 16 of the First Amended Complaint and therefore denies same.

17.     Admitted.

18.     Admitted.

19.     Admitted.

20.     Admitted.

21.     Admitted.

22.     Admitted.

23.     Defendant admits that in or about 2011 Plaintiff and Defendant, TERMS entered into a contract for the provision of environmental consulting services by TERMS to Plaintiff and neither admits nor denies the content and terms of that contract but refers the court to the document which speaks for itself.  The remainder of the

allegations contained in Paragraph 23 of the First Amended Complaint contain conclusions of law and not allegations of facts and Defendant therefore, neither admits nor denies same and leaves Plaintiff to its proofs.

24.     Defendant admits that it was responsible for testing any proposed fill material for Veteran's Field identified to it by Waterside Construction, LLC and for which prior certification as acceptable fill material was not presented by Waterside Construction, LLC and denies the remainder of the allegations contained in Paragraph 24 of the First Amended Complaint.

25.     Defendant admits that it was responsible for developing the plan for sampling, analyzing and approving proposed fill material identified to it by Waterside Construction, LLC for use at Veteran's Field and denies the remainder of the allegations contained in Paragraph 25 of the First Amended Complaint.

26.     Defendant lacks information or knowledge sufficient to form a belief about the truth of the allegations contained in Paragraph 26 of the First Amended Complaint and therefore denies same.

27.     Defendant lacks information or knowledge sufficient to form a belief about the truth of the allegations contained in Paragraph 27 of the First Amended Complaint and therefore denies same.

28.     Defendant lacks information or knowledge sufficient to form a belief about the truth of the allegations contained in Paragraph 28 of the First Amended Complaint and therefore denies same.

29.     Defendant lacks information or knowledge sufficient to form a belief about the

truth of the allegations contained in Paragraph 29 of the First Amended Complaint and therefore denies same.

30.    Admitted.

31.    Defendant admits that after contaminated soils were removed from Veteran's Field by Waterside Construction, LLC work was initiated to cap the remaining Site soils with a demarcation layer and clean fill.   Defendant further admits that it instructed Waterside Construction, LLC ("Waterside") that Waterside was to provide TERMS with documentation certifying that any fill material Waterside proposed to use at Veteran's Field satisfied the requirements for acceptable fill material and that if no such documentation was available, then Waterside was to identify the source of any fill material Waterside proposed to use at Veteran's Field so that TERMS could collect samples of the proposed fill material and have it analyzed. Defendant denies the remainder of the allegations contained in Paragraph 31 of the First Amended Complaint.

32.    Defendant admits that it collected samples of various fill materials proposed for use at Veteran's Field by Waterside and had those samples analyzed.   Defendant further admits that the testing results demonstrated that some proposed fill materials satisfied the NJDEP requirements and were suitable for use at Veteran's Field and that some other proposed fill materials did not satisfy the NJDEP requirements and were not suitable for use at Veteran's Field and that defendant advised Waterside and Plaintiff's representatives of the results of all such testing. Defendant denies the remainder of the allegations contained in Paragraph 32 of the

First Amended Complaint.

33.    Admitted.

34.    Admitted.

35.    Defendant admits that after Super Storm Sandy, it continued to collect samples of various fill materials proposed for use at Veteran's Field by Waterside and had those samples analyzed.   Defendant further admits that the testing results demonstrated that some proposed fill materials satisfied the NJDEP requirements and were suitable for use at Veteran's Field and that some other proposed fill materials did not satisfy the NJDEP requirements and were not suitable for use at Veteran's Field and that defendant advised Waterside and Plaintiff's representatives of the results of all such testing.   Defendant denies the remainder of the allegations contained in Paragraph 35 of the First Amended Complaint.

36.    Defendant admits that it collected samples of various fill materials proposed for use at Veteran's Field by Waterside and had those samples analyzed.   Defendant further admits that the testing results demonstrated that some proposed fill materials satisfied the NJDEP requirements and were suitable for use at Veteran's Field and that some other proposed fill materials did not satisfy the NJDEP requirements and were not suitable for use at Veteran's Field and that defendant advised Waterside and Plaintiff's representatives of the results of all such testing. Defendant admits that Waterside and Fred Daibes became frustrated by TERMS insistence that proper documentations and/or testing be provided for proposed fill material and that Waterside and Daibes sought to have TERMS and its employees

7

removed from the Project. Defendant denies the remainder of the allegations contained in Paragraph 36 of the First Amended Complaint.

37.  Defendant lacks information or knowledge sufficient to form a belief about the truth of the allegations contained in Paragraph 37 of the First Amended Complaint and therefore denies same.

38.  Defendant lacks information or knowledge sufficient to form a belief about the truth of the allegations contained in Paragraph 38 of the First Amended Complaint and therefore denies same.

39.  Defendant lacks information or knowledge sufficient to form a belief about the truth of the allegations contained in Paragraph 39 of the First Amended Complaint and therefore denies same.

40.  Defendant admits that on or about September 9, 2013, representatives of TERMS went to Veteran's Field and observed fill material containing crushed concrete that was placed at the site by Waterside over the prior weekend and that some of said fill material had been covered with different materials.   Defendant denies the remainder of the allegations contained in Paragraph 40 of the First Amended Complaint.

41.  Defendant admits that representatives of TERMS advised Waterside that it was not to move any fill material containing crushed concrete to any other area at Veteran's Field and that Waterside was not to disturb the stockpiles of fill material containing crushed concrete that Waterside had placed at Veteran's Field.   Defendant denies the remainder of the allegations contained in Paragraph 41 of the First Amended

2547255v1

Complaint.

42.     Denied.

43.     Defendant admits that Waterside, by and at the direction of Daibes, placed fill

material containing crushed concrete and contaminated with PCBs at various areas

of Veteran's Field.   Defendant lacks information or knowledge sufficient to form a

belief about the truth of the remainder of the allegations contained in Paragraph 43

of the First Amended Complaint and therefore denies same.

44.     Admitted.

45.     Admitted.

46.     Admitted.

47.     Admitted.

48.     Admitted.

49.     Admitted.

50.     Defendant admits that Waterside placed fill materials contaminated with PCBs and

other contaminants at the Site and blended contaminated fill materials with other

fill materials.   Defendant further admits that the investigation indicated that the

improper manner in which contaminated fill materials were processed and spread

cross-contaminated clean fill material previously used at the Site.   Defendant

denies the remainder of the allegations contained in Paragraph 50 of the First

Amended Complaint.

51.     Admitted.

52.     Admitted.

2547255v1

53.    Defendant admits that sampling and analysis showed that fill material deposited onto Veteran's Field by Waterside was contaminated with PCBs at concentrations ranging from 10 mg/kg to 300 mg/kg and that the concentrations of PCBs in the soils at Veteran's Field after the prior removal of contaminated soil were below NJDEP's residential direct contact soil remediation standard of 0.2 mg/kg. Defendant denies the remainder of the allegations contained on Paragraph 53 of the First Amended Complaint.

54.    Admitted.

55.    Defendant admits that the Alcoa Site is a known contaminated site and denies the remainder of the allegations contained in Paragraph 55 of the First Amended Complaint.

56.    Defendant admits that the Alcoa Site is a known contaminated site and denies the remainder of the allegations contained in Paragraph 56 of the First Amended Complaint.

57.    Defendant lacks information or knowledge sufficient to form a belief about the truth of the allegations contained in Paragraph 57 of the First Amended Complaint and therefore denies same.

58.    Defendant lacks information or knowledge sufficient to form a belief about the truth of the allegations contained in Paragraph 58 of the First Amended Complaint and therefore denies same.

59.    Defendant lacks information or knowledge sufficient to form a belief about the truth of the allegations contained in Paragraph 59 of the First Amended Complaint

and therefore denies same.

60.     Defendant lacks information or knowledge sufficient to form a belief about the truth of the allegations contained in Paragraph 60 of the First Amended Complaint and therefore denies same.

61.     Defendant lacks information or knowledge sufficient to form a belief about the truth of the allegations contained in Paragraph 61 of the First Amended Complaint and therefore denies same.

62.     Defendant lacks information or knowledge sufficient to form a belief about the truth of the allegations contained in Paragraph 62 of the First Amended Complaint and therefore denies same.

63.     Defendant lacks information or knowledge sufficient to form a belief about the truth of the allegations contained in Paragraph 63 of the First Amended Complaint and therefore denies same.

64.     Defendant lacks information or knowledge sufficient to form a belief about the truth of the allegations contained in Paragraph 64 of the First Amended Complaint and therefore denies same.

65.     Defendant lacks information or knowledge sufficient to form a belief about the truth of the allegations contained in Paragraph 65 of the First Amended Complaint and therefore denies same.

66.     Defendant lacks information or knowledge sufficient to form a belief about the truth of the allegations contained in Paragraph 66 of the First Amended Complaint and therefore denies same.

2547255v1

67.   Defendant lacks information or knowledge sufficient to form a belief about the truth of the allegations contained in Paragraph 67 of the First Amended Complaint and therefore denies same.

68.   Defendant lacks information or knowledge sufficient to form a belief about the truth of the allegations contained in Paragraph 68 of the First Amended Complaint and therefore denies same.

69.   Defendant lacks information or knowledge sufficient to form a belief about the truth of the allegations contained in Paragraph 69 of the First Amended Complaint and therefore denies same.

70.   Defendant lacks information or knowledge sufficient to form a belief about the truth of the allegations contained in Paragraph 70 of the First Amended Complaint and therefore denies same.

71.   Defendant lacks information or knowledge sufficient to form a belief about the truth of the allegations contained in Paragraph 71 of the First Amended Complaint and therefore denies same.

72.   Defendant admits that Defendants Waterside and Daibes caused crushed concrete material from the former Alcoa property to be transported to and disposed of at Veteran's Field.   Defendant lacks information or knowledge sufficient to form a belief about the truth of the remainder of the allegations contained in Paragraph 72 of the First Amended Complaint and therefore denies same.

73.   Defendant lacks information or knowledge sufficient to form a belief about the truth of the allegations contained in Paragraph 73 of the First Amended Complaint

12

and therefore denies same.

74.  Denied.

75.  Denied.

76.  Denied.

77.  Denied.

78.  Denied.

79.  Defendant admits that it prepared and submitted to the United States Environmental Protection Agency a proposed self-implementing plan concerning the remediation of the contaminated material brought to Veteran's Field by Defendants Waterside and Daibes and denies the remainder of the allegations contained in Paragraph 79 of the First Amended Complaint.

80.  Denied.

81.  Denied.

## COUNT I

82.  Defendant repeats and incorporates herein the answers set forth in the previous Paragraphs of this Answer as of set forth at length herein.

83.  Paragraph 83 of the First Amended Complaint contains conclusions of law and not allegations of facts and Defendant therefore, neither admits nor denies same and leaves Plaintiff to its proofs.

84.  Paragraph 84 of the First Amended Complaint contains conclusions of law and not allegations of facts and Defendant therefore, neither admits nor denies same and leaves Plaintiff to its proofs.

85.     Paragraph 85 of the First Amended Complaint contains conclusions of law and not allegations of facts and Defendant therefore, neither admits nor denies same and leaves Plaintiff to its proofs.

86.     Paragraph 86 of the First Amended Complaint contains conclusions of law and not allegations of facts and Defendant therefore, neither admits nor denies same and leaves Plaintiff to its proofs.

87.     Paragraph 87 of the First Amended Complaint contains conclusions of law and not allegations of facts and Defendant therefore, neither admits nor denies same and leaves Plaintiff to its proofs.

88.     Paragraph 88 of the First Amended Complaint contains conclusions of law and not allegations of facts and Defendant therefore, neither admits nor denies same and leaves Plaintiff to its proofs.

89.     Paragraph 89 of the First Amended Complaint contains conclusions of law and not allegations of facts and Defendant therefore, neither admits nor denies same and leaves Plaintiff to its proofs.

90.     Paragraph 90 of the First Amended Complaint contains conclusions of law and not allegations of facts and Defendant therefore, neither admits nor denies same and leaves Plaintiff to its proofs.

91.     Paragraph 91 of the First Amended Complaint contains conclusions of law and not allegations of facts and Defendant therefore, neither admits nor denies same and leaves Plaintiff to its proofs.

92.     Paragraph 92 of the First Amended Complaint contains conclusions of law and not

allegations of facts and Defendant therefore, neither admits nor denies same and leaves Plaintiff to its proofs.

93.   Paragraph 93 of the First Amended Complaint contains conclusions of law and not allegations of facts and Defendant therefore, neither admits nor denies same and leaves Plaintiff to its proofs.

94.   Paragraph 94 of the First Amended Complaint contains conclusions of law and not allegations of facts and Defendant therefore, neither admits nor denies same and leaves Plaintiff to its proofs.

95.   Paragraph 95 of the First Amended Complaint contains conclusions of law and not allegations of facts and Defendant therefore, neither admits nor denies same and leaves Plaintiff to its proofs.

96.   Paragraph 96 of the First Amended Complaint contains conclusions of law and not allegations of facts and Defendant therefore, neither admits nor denies same and leaves Plaintiff to its proofs.

97.   Paragraph 97 of the First Amended Complaint contains conclusions of law and not allegations of facts and Defendant therefore, neither admits nor denies same and leaves Plaintiff to its proofs.

98.   Paragraph 98 of the First Amended Complaint contains conclusions of law and not allegations of facts and Defendant therefore, neither admits nor denies same and leaves Plaintiff to its proofs.

99.   Paragraph 99 of the First Amended Complaint contains conclusions of law and not allegations of facts and Defendant therefore, neither admits nor denies same and

leaves Plaintiff to its proofs.

100.   Paragraph 100 of the First Amended Complaint contains conclusions of law and not allegations of facts and Defendant therefore, neither admits nor denies same and leaves Plaintiff to its proofs.

101.   Paragraph 101 of the First Amended Complaint contains conclusions of law and not allegations of facts and Defendant therefore, neither admits nor denies same and leaves Plaintiff to its proofs.

102.   Paragraph 102 of the First Amended Complaint contains conclusions of law and not allegations of facts and Defendant therefore, neither admits nor denies same and leaves Plaintiff to its proofs.

103.   Denied.

104.   Paragraph 104 of the First Amended Complaint contains conclusions of law and not allegations of facts and Defendant therefore, neither admits nor denies same and leaves Plaintiff to its proofs.

105.   Paragraph 105 of the First Amended Complaint contains conclusions of law and not allegations of facts and Defendant therefore, neither admits nor denies same and leaves Plaintiff to its proofs.

106.   Paragraph 106 of the First Amended Complaint contains conclusions of law and not allegations of facts and Defendant therefore, neither admits nor denies same and leaves Plaintiff to its proofs.

107.   Defendant lacks information or knowledge sufficient to form a belief about the truth of the allegations contained in Paragraph 107 of the First Amended Complaint

and therefore denies same.

108.    Paragraph 108 of the First Amended Complaint contains conclusions of law and not allegations of facts and Defendant therefore, neither admits nor denies same and leaves Plaintiff to its proofs.

## <u>COUNT II</u>

109.    Defendant repeats and incorporates herein the answers set forth in the previous Paragraphs of this Answer as if set forth at length herein.

110.    Paragraph 110 of the First Amended Complaint contains conclusions of law and not allegations of facts and Defendant therefore, neither admits nor denies same and leaves Plaintiff to its proofs.

111.    Paragraph 111 of the First Amended Complaint contains conclusions of law and not allegations of facts and Defendant therefore, neither admits nor denies same and leaves Plaintiff to its proofs.

112.    Paragraph 112 of the First Amended Complaint contains conclusions of law and not allegations of facts and Defendant therefore, neither admits nor denies same and leaves Plaintiff to its proofs.

113.    Paragraph 113 of the First Amended Complaint contains conclusions of law and not allegations of facts and Defendant therefore, neither admits nor denies same and leaves Plaintiff to its proofs.

114.    Paragraph 114 of the First Amended Complaint contains conclusions of law and not allegations of facts and Defendant therefore, neither admits nor denies same and leaves Plaintiff to its proofs.

2547255v1

115.    Paragraph 115 of the First Amended Complaint contains conclusions of law and not allegations of facts and Defendant therefore, neither admits nor denies same and leaves Plaintiff to its proofs.

116.    Paragraph 116 of the First Amended Complaint contains conclusions of law and not allegations of facts and Defendant therefore, neither admits nor denies same and leaves Plaintiff to its proofs.

117.    Denied as to Defendant, TERMS.   Defendant lacks information or knowledge sufficient to form a belief about the truth of the remainder of the allegations contained in Paragraph 117 of the First Amended Complaint and therefore denies same.

118.    Denied as to Defendant, TERMS.   Defendant lacks information or knowledge sufficient to form a belief about the truth of the remainder of the allegations contained in Paragraph 118 of the First Amended Complaint and therefore denies same.

119.    Paragraph 119 of the First Amended Complaint contains conclusions of law and not allegations of facts and Defendant therefore, neither admits nor denies same and leaves Plaintiff to its proofs.

120.    Paragraph 120 of the First Amended Complaint contains conclusions of law and not allegations of facts and Defendant therefore, neither admits nor denies same and leaves Plaintiff to its proofs.

121.    Paragraph 121 of the First Amended Complaint contains conclusions of law and not allegations of facts and Defendant therefore, neither admits nor denies same

and leaves Plaintiff to its proofs.

122.     Paragraph 122 of the First Amended Complaint contains conclusions of law and not allegations of facts and Defendant therefore, neither admits nor denies same and leaves Plaintiff to its proofs.

123.     Paragraph 123 of the First Amended Complaint contains conclusions of law and not allegations of facts and Defendant therefore, neither admits nor denies same and leaves Plaintiff to its proofs.

124.     Paragraph 124 of the First Amended Complaint contains conclusions of law and not allegations of facts and Defendant therefore, neither admits nor denies same and leaves Plaintiff to its proofs.

## COUNT III

125.     Defendant repeats and incorporates herein the answers set forth in the previous Paragraphs of this Answer as if set forth at length herein.

126.     Defendant lacks information or knowledge sufficient to form a belief about the truth of the allegations contained in Paragraph 126 of the First Amended Complaint and therefore denies same.

127.     Defendant lacks information or knowledge sufficient to form a belief about the truth of the allegations contained in Paragraph 127 of the First Amended Complaint and therefore denies same.

128.     Defendant lacks information or knowledge sufficient to form a belief about the truth of the allegations contained in Paragraph 128 of the First Amended Complaint and therefore denies same.

129. Defendant lacks information or knowledge sufficient to form a belief about the truth of the allegations contained in Paragraph 129 of the First Amended Complaint and therefore denies same.

130. Defendant lacks information or knowledge sufficient to form a belief about the truth of the allegations contained in Paragraph 130 of the First Amended Complaint and therefore denies same.

131. Defendant lacks information or knowledge sufficient to form a belief about the truth of the allegations contained in Paragraph 131 of the First Amended Complaint and therefore denies same.

132. Defendant lacks information or knowledge sufficient to form a belief about the truth of the allegations contained in Paragraph 132 of the First Amended Complaint and therefore denies same.

133. Defendant lacks information or knowledge sufficient to form a belief about the truth of the allegations contained in Paragraph 133 of the First Amended Complaint and therefore denies same.

134. Defendant lacks information or knowledge sufficient to form a belief about the truth of the allegations contained in Paragraph 134 of the First Amended Complaint and therefore denies same.

135. Defendant lacks information or knowledge sufficient to form a belief about the truth of the allegations contained in Paragraph 135 of the First Amended Complaint and therefore denies same.

136. Defendant lacks information or knowledge sufficient to form a belief about the

20

truth of the allegations contained in Paragraph 136 of the First Amended Complaint and therefore denies same.

137.    Defendant lacks information or knowledge sufficient to form a belief about the truth of the allegations contained in Paragraph 137 of the First Amended Complaint and therefore denies same.

138.    Defendant lacks information or knowledge sufficient to form a belief about the truth of the allegations contained in Paragraph 138 of the First Amended Complaint and therefore denies same.

139.    Defendant lacks information or knowledge sufficient to form a belief about the truth of the allegations contained in Paragraph 139 of the First Amended Complaint and therefore denies same.

140.    Defendant lacks information or knowledge sufficient to form a belief about the truth of the allegations contained in Paragraph 140 of the First Amended Complaint and therefore denies same.

141.    Defendant lacks information or knowledge sufficient to form a belief about the truth of the allegations contained in Paragraph 141 of the First Amended Complaint and therefore denies same.

142.    Defendant lacks information or knowledge sufficient to form a belief about the truth of the allegations contained in Paragraph 142 of the First Amended Complaint and therefore denies same.

143.    Defendant lacks information or knowledge sufficient to form a belief about the truth of the allegations contained in Paragraph 143 of the First Amended Complaint

and therefore denies same.

144.    Defendant lacks information or knowledge sufficient to form a belief about the truth of the allegations contained in Paragraph 144 of the First Amended Complaint and therefore denies same.

145.    Defendant lacks information or knowledge sufficient to form a belief about the truth of the allegations contained in Paragraph 145 of the First Amended Complaint and therefore denies same.

146.    Defendant lacks information or knowledge sufficient to form a belief about the truth of the allegations contained in Paragraph 146 of the First Amended Complaint and therefore denies same.

## COUNT IV

147.    Defendant repeats and incorporates herein the answers set forth in the previous Paragraphs of this Answer as if set forth at length herein.

148.    Defendant lacks information or knowledge sufficient to form a belief about the truth of the allegations contained in Paragraph 148 of the First Amended Complaint and therefore denies same.

149.    Defendant lacks information or knowledge sufficient to form a belief about the truth of the allegations contained in Paragraph 149 of the First Amended Complaint and therefore denies same.

150.    Defendant lacks information or knowledge sufficient to form a belief about the truth of the allegations contained in Paragraph 150 of the First Amended Complaint and therefore denies same.

2547255v1

151.   Defendant lacks information or knowledge sufficient to form a belief about the truth of the allegations contained in Paragraph 151 of the First Amended Complaint and therefore denies same.

152.   Defendant lacks information or knowledge sufficient to form a belief about the truth of the allegations contained in Paragraph 152 of the First Amended Complaint and therefore denies same.

153.   Defendant lacks information or knowledge sufficient to form a belief about the truth of the allegations contained in Paragraph 153 of the First Amended Complaint and therefore denies same.

154.   Defendant lacks information or knowledge sufficient to form a belief about the truth of the allegations contained in Paragraph 154 of the First Amended Complaint and therefore denies same.

155.   Defendant lacks information or knowledge sufficient to form a belief about the truth of the allegations contained in Paragraph 155 of the First Amended Complaint and therefore denies same.

## COUNT V

156.   Defendant repeats and incorporates herein the answers set forth in the previous Paragraphs of this Answer as if set forth at length herein.

157.   Defendant lacks information or knowledge sufficient to form a belief about the truth of the allegations contained in Paragraph 157 of the First Amended Complaint and therefore denies same.

158.   Defendant lacks information or knowledge sufficient to form a belief about the

2547255v1

truth of the allegations contained in Paragraph 158 of the First Amended Complaint and therefore denies same.

159.   Defendant lacks information or knowledge sufficient to form a belief about the truth of the allegations contained in Paragraph 159 of the First Amended Complaint and therefore denies same.

160.   Defendant lacks information or knowledge sufficient to form a belief about the truth of the allegations contained in Paragraph 160 of the First Amended Complaint and therefore denies same.

161.   Defendant lacks information or knowledge sufficient to form a belief about the truth of the allegations contained in Paragraph 161 of the First Amended Complaint and therefore denies same.

162.   Defendant lacks information or knowledge sufficient to form a belief about the truth of the allegations contained in Paragraph 162 of the First Amended Complaint and therefore denies same.

## <u>COUNT VI</u>

163.   Defendant repeats and incorporates herein the answers set forth in the previous Paragraphs of this Answer as if set forth at length herein.

164.   Defendant lacks information or knowledge sufficient to form a belief about the truth of the allegations contained in Paragraph 164 of the First Amended Complaint and therefore denies same.

165.   Defendant lacks information or knowledge sufficient to form a belief about the truth of the allegations contained in Paragraph 165 of the First Amended Complaint

2547255v1

and therefore denies same.

166.    Defendant lacks information or knowledge sufficient to form a belief about the truth of the allegations contained in Paragraph 166 of the First Amended Complaint and therefore denies same.

167.    Defendant lacks information or knowledge sufficient to form a belief about the truth of the allegations contained in Paragraph 167 of the First Amended Complaint and therefore denies same.

168.    Defendant lacks information or knowledge sufficient to form a belief about the truth of the allegations contained in Paragraph 168 of the First Amended Complaint and therefore denies same.

169.    Defendant lacks information or knowledge sufficient to form a belief about the truth of the allegations contained in Paragraph 169 of the First Amended Complaint and therefore denies same.

## **COUNT VII**

170.    Defendant repeats and incorporates herein the answers set forth in the previous Paragraphs of this Answer as if set forth at length herein.

171.    Defendant lacks information or knowledge sufficient to form a belief about the truth of the allegations contained in Paragraph 171 of the First Amended Complaint and therefore denies same.

172.    Defendant lacks information or knowledge sufficient to form a belief about the truth of the allegations contained in Paragraph 172 of the First Amended Complaint and therefore denies same.

173.   Defendant lacks information or knowledge sufficient to form a belief about the truth of the allegations contained in Paragraph 173 of the First Amended Complaint and therefore denies same.

174.   Defendant lacks information or knowledge sufficient to form a belief about the truth of the allegations contained in Paragraph 174 of the First Amended Complaint and therefore denies same.

175.   Defendant lacks information or knowledge sufficient to form a belief about the truth of the allegations contained in Paragraph 175 of the First Amended Complaint and therefore denies same.

176.   Defendant lacks information or knowledge sufficient to form a belief about the truth of the allegations contained in Paragraph 176 of the First Amended Complaint and therefore denies same.

177.   Defendant lacks information or knowledge sufficient to form a belief about the truth of the allegations contained in Paragraph 177 of the First Amended Complaint and therefore denies same.

178.   Defendant lacks information or knowledge sufficient to form a belief about the truth of the allegations contained in Paragraph 178 of the First Amended Complaint and therefore denies same.

179.   Defendant admits that on September 9, 2013 Ronald Dooney of TERMS went to Veteran's Field and observed fill material containing crushed concrete that was placed at the site by Waterside over the prior weekend and that some of said fill material had been covered with different fill material.   Defendant lacks

26

information or knowledge sufficient to form a belief about the truth of the remainder of the allegations contained in Paragraph 179 of the First Amended Complaint and therefore denies same.

180.   Defendant admits that representatives of TERMS advised Waterside that it was not to move any fill material containing crushed concrete to any other area at Veteran's Field and that Waterside was not to disturb the stockpiles of fill material containing crushed concrete that Waterside had placed at Veteran's Field.   Defendant denies the remainder of the allegations contained in Paragraph 180 of the First Amended Complaint.

181.   Defendant admits that Waterside, by and at the direction of Daibes, placed fill containing crushed concrete and contaminated with PCBs at various areas of Veteran's Field.   Defendant lacks information or knowledge sufficient to form a belief about the truth of the remainder of the allegations contained in Paragraph 181 of the First Amended Complaint and therefore denies same.

182.   Admitted.

183.   Admitted.

184.   Admitted that Waterside and Daibes delivered contaminated fill material to Veteran's Field.   Defendant lacks information or knowledge sufficient to form a belief about the truth of the remainder of the allegations contained in Paragraph 184 of the First Amended Complaint and therefore denies same.

185.   Defendant lacks information or knowledge sufficient to form a belief about the truth of the allegations contained in Paragraph 185 of the First Amended Complaint

2547255v1

and therefore denies same.

186.   Defendant lacks information or knowledge sufficient to form a belief about the truth of the allegations contained in Paragraph 186 of the First Amended Complaint and therefore denies same.

187.   Defendant lacks information or knowledge sufficient to form a belief about the truth of the allegations contained in Paragraph 187 of the First Amended Complaint and therefore denies same.

188.   Defendant lacks information or knowledge sufficient to form a belief about the truth of the allegations contained in Paragraph 188 of the First Amended Complaint and therefore denies same.

189.   Defendant lacks information or knowledge sufficient to form a belief about the truth of the allegations contained in Paragraph 189 of the First Amended Complaint and therefore denies same.

190.   Defendant lacks information or knowledge sufficient to form a belief about the truth of the allegations contained in Paragraph 190 of the First Amended Complaint and therefore denies same.

191.   Defendant lacks information or knowledge sufficient to form a belief about the truth of the allegations contained in Paragraph 191 of the First Amended Complaint and therefore denies same.

192.   Defendant lacks information or knowledge sufficient to form a belief about the truth of the allegations contained in Paragraph 192 of the First Amended Complaint and therefore denies same.

2547255v1

193. Defendant lacks information or knowledge sufficient to form a belief about the truth of the allegations contained in Paragraph 193 of the First Amended Complaint and therefore denies same.

194. Paragraph 194 of the First Amended Complaint contains conclusions of law and not allegations of facts and Defendant therefore, neither admits nor denies same and leaves Plaintiff to its proofs.

## COUNT VIII

195. Defendant repeats and incorporates herein the answers set forth in the previous Paragraphs of this Answer as if set forth at length herein.

196. Defendant admits that in or about 2011, it and Plaintiff entered into a contract for the provision of environmental consulting services by TERMS to Plaintiff and neither admits nor denies the content and terms of that contract but refers the court to the document which speaks for itself.   The remainder of the allegations contained in Paragraph 196 of the First Amended Complaint contain conclusions of law and not allegations of facts and Defendant therefore, neither admits nor denies same and leaves Plaintiff to its proofs.

197. Defendant admits that it was responsible for testing any proposed fill material for Veteran's Field identified to it by Waterside Construction, LLC and for which prior certification as acceptable· fill material was not presented by Waterside Construction, LLC and denies the remainder of the allegations contained in Paragraph 197 of the First Amended Complaint.

198. Denied.

2547255v1

29

199. Denied.

200. Denied.

201. Denied.

202. Denied.

203. Denied.

204. Defendant admits that it prepared and submitted to the United States Environmental Protection Agency a proposed self-implementing plan concerning the remediation of the contaminated material brought to Veteran's Field by Defendants Waterside and Daibes and denies the remainder of the allegations contained in Paragraph 204 of the First Amended Complaint.

205. Denied.

206. Denied.

## COUNT IX

207. Defendant repeats and incorporates herein the answers set forth in the previous Paragraphs of this Answer as of set forth at length herein.

208. Denied.

209. Denied.

210. Denied.

## PRAYER FOR RELIEF

WHEREFORE, and by reason of the foregoing, Defendant, TERMS Environmental Services, Inc., demands judgment in its favor and against Plaintiff, Borough of Edgewater, dismissing Plaintiff's First Amended Complaint.

## AFFIRMATIVE DEFENSES

### FIRST AFFIRMATIVE DEFENSE

Plaintiff's claims are barred or subject to reduction by reason of Plaintiff's own contributory negligence.

### SECOND AFFIRMATIVE DEFENSE

Plaintiff's claims are barred or subject to reduction by reason of Plaintiff's failure to mitigate its alleged damages.

### THIRD AFFIRMATIVE DEFENSE

Plaintiff's claims are barred by the equitable doctrine of unclean hands.

### FOURTH AFFIRMATIVE DEFENSE

Plaintiff's alleged damages have been caused solely by the acts of third parties over whom this Defendant had no dominion or control.

### FIFTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred by the equitable doctrine of laches.

### SIXTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred by the equitable doctrine of waiver.

### SEVENTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred because this Defendant was acting under and in accordance with instructions received from Plaintiff.

### EIGHTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred because the conduct of this Defendant was in accordance with the course of dealing established between Plaintiff and this Defendant.

2547255v1

## NINTH AFFIRMATIVE DEFENSE

This Defendant owed no duty to Plaintiff to control the actions of the other Defendants.

## TENTH AFFIRMATIVE DEFENSE

Plaintiff's claims fail to state a claim upon which relief may be granted.

## ELEVENTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred by the Plaintiff's own breach of contract.

## TWELFTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred or subject to reduction because the damages claimed are not consistent with the National Contingency Plan.

## THIRTEENTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred or subject to reduction because the damages claimed include costs that are not reasonable or necessary.

## FOURTEENTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred or subject to reduction by reason of the Doctrine of Comparative Negligence.

## FIFTEENTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred or subject to reduction because Defendant is entitled to common law indemnification from Plaintiff.

## SIXTEENTH SEPARATE DEFENSE

Plaintiff's claims are barred or subject to reduction because Defendant is entitled to common law contribution from Plaintiff.

## SEVENTEENTH SEPARATE DEFENSE

Plaintiff's claims are barred or subject to reduction because Defendant is entitled to contribution from Plaintiff pursuant to the Spill Compensation and Control Act, N.J.S.A. 58:10-23.11, et seq.

## EIGHTEENTH SEPARATE DEFENSE

Plaintiff's claims are barred because Plaintiff's own actions prevented Defendant from completing performance.

## NINETEENTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred or subject to reduction because Defendant is entitled to contribution from, and/or equitable apportionment with Plaintiff pursuant to the Comprehensive Environmental Response Compensation and Liability Act, 42 U.S.C. § 9613(f)(1).

## **COUNTERCLAIMS**

Defendant, TERMS Environmental Services, Inc. ("TERMS"), a corporation of the State of New Jersey, having its principal place of business at 599 Springfield Avenue, Berkeley Heights, New Jersey, 07922, by way of Counterclaim against the Plaintiff, Borough of Edgewater, ("Plaintiff"), says:

## **THE PARTIES**

1.      TERMS is a corporation of the State of New Jersey organized for the purpose of providing environmental consulting services.

2.      Upon information and belief, Plaintiff, Borough of Edgewater, is a municipal corporation organized under the laws of the State of New Jersey with an principal place of business located at 55 River Road, Edgewater, Bergen County, New

Jersey.

3.    Waterside Construction, LLC ("Waterside") is a New Jersey limited liability

company with offices at 22 Route 5, Edgewater, Bergen County, New Jersey.

4.    Fred Daibes ("Daibes") is an individual with offices at 22 Route 5, Edgewater,

Bergen County, New Jersey.   Fred Daibes owns and/or controls Waterside.

## JURISDICTION AND VENUE

5.    This action arises under federal law, specifically Section 113(f)(1) of the

Comprehensive Environmental Response Compensation and Liability Act, 42

U.S.C. § 9613(f)(1) ("CERCLA").

6.    This is an action over which the United States District Court has original

jurisdiction pursuant to 28 U.S.C. § 1331.

7.    This court has supplemental jurisdiction over the state law Counterclaims of

Defendant, TERMS Environmental Services, Inc., pursuant to 28 U.S.C. §§ 1388

and 1367(a) and because those claims are joined with and arise out of the same

common nucleus of facts as Plaintiff's federal law claims and supplemental state

law claims asserted in the First Amended Complaint and Defendant's Federal law

counterclaims.

8.    Venue for these Counterclaims is proper in this court because all parties have a

principal place of business or operations in New Jersey.

## FIRST COUNT

9.    Plaintiff is, and at all times relevant hereto was, the owner of certain real property

commonly known as Veteran's Field, located at 1167 River Road, Edgewater, New Jersey and designated as Block 30, Lot 1 on the Tax Map of the Borough of Edgewater ("Veteran's Field" or the "Site").

10. In or about June, 2012, Plaintiff initiated a project for the remediation and restoration of the Site (the "Project").

11. Waterside was awarded the bid and entered into a contract with Plaintiff as the contractor for the Project.

12. At all times relevant hereto Neglia Engineering was serving as the Borough Engineer for Plaintiff and was acting for, on behalf of, at the discretion of, and as the agent for Plaintiff.

13. During the Project Plaintiff maintained control of the Site, including access to the Site, and the Project work schedule.

14. As alleged by Plaintiff in the First Amended Complaint, Jason Menzella ("Menzella"), an employee of Neglia Associates, acted as Plaintiff's Site supervisor for the Project.

15. As alleged by Plaintiff in the First Amended Complaint, on or about September 6, 2013, Waterside advised Menzella that it would not be performing any work at the Site on Saturday, September 7, 2013.

16. As alleged by Plaintiff in the First Amended Complaint, on September 7, 2013 Menzella observed employees of Waterside working at the Site; specifically, Mr. Menzalla observed them covering up fill materials that had not previously been present on the Site (the "Suspect Fill").

17.    As alleged by Plaintiff in the First Amended Complaint, Menzella did not believe that the Suspect Fill had been approved for use at the Site.

18.    Plaintiff, upon becoming aware, or suspecting, that Waterside had brought fill that had not been approved for use to the Site did not take any action to cause Waterside to cease work activities at the Site.

19.    Plaintiff did not contact Defendant, TERMS during the weekend of September 7-8, 2013 to advise TERMS that Waterside had brought the Suspect Fill to the site.

20.    The Suspect Fill utilized at the Site by Waterside contained crushed concrete and was contaminated with, among other things, polychlorinated bi-phenyls ("PCBs").

21.    PCBs are a hazardous substance as defined under CERCLA, 42 U.S.C. § 9601(14).

22.    The deposition of the Suspect Fill at the Site constitutes the disposal of and a release or threatened release of a hazardous substance as defined under CERCLA, 42 U.S.C. § 9601(22).

23.    The Site is a facility as defined under CERCLA, 42 U.S.C. § 9601(9).

24.    Pursuant to Section 107 of CERCLA, 42 U.S.C. § 9607(a)(1-4), the following persons are liable for: a) all costs of removal or remedial action incurred by the United States Government or a State or an Indian tribe not inconsistent with the national contingency plan; and b) any other necessary costs of response incurred by any other person consistent with the national contingency plan:

    (1) the owner and operator of a vessel or a facility;

    (2) any person who at the time of disposal of any hazardous substance owned or operated any facility at which such hazardous substances were disposed of,

> (3) any person who by contract, agreement, or otherwise arranged for disposal or treatment, or arranged with a transporter for transport for disposal or treatment, of hazardous substances owned or possessed by such person, by any other party or entity, at any facility or incineration vessel owned or operated by another party or entity and containing such hazardous substances, and
>
> (4) any person who accepts or accepted any hazardous substances for transport to disposal or treatment facilities, incineration vessels or sites selected by such person, from which there is a release, or a threatened release which causes the incurrence of response costs, of a hazardous substance.

25.    Plaintiff has asserted, in the First Amended Complaint, a claim against Defendant, TERMS Environmental Services, Inc. for cost recovery pursuant to Section 107 of CERCLA, 42 U.S.C. § 9607.

26.    Plaintiff is a "person" within the meaning of Section 101(21) of CERCLA, 42. U.S.C. § 9601 (21).

27.    Plaintiff is an owner and/or operator of Veteran's Field within the meaning of Section 101(20) of CERCLA, 42 U.S.C. § 9601(20).

28.    Plaintiff was the owner and/or operator of Veteran's Field at the time that the Suspect Fill was disposed of at Veteran's Field.

29.    Plaintiff, Waterside and Fred Daibes arranged, by contract, agreement, or otherwise, for disposal of hazardous substances at Veteran's Field.

30.    Plaintiff is liable under Section 107 of CERCLA, 42 U.S.C. § 9607(a)(1)-(3), with respect to the Suspect Fill deposited at the Site.

31.    Pursuant to Section 113(f)(1) of CERCLA, 42 U.S.C. § 9613(f)(1), Defendant,

2547255v1

37

TERMS Environmental Services, Inc. is entitled to maintain a contribution action against Plaintiff with respect to any response costs which Plaintiff seeks to recover from TERMS.

## SECOND COUNT

32. Plaintiff repeats and incorporates herein by reference the allegations set forth in Paragraphs 1 through 31 of this Counterclaim as if set forth more fully herein.

33. The New Jersey Spill Compensation and Control Act ("Spill Act"), N.J.S.A. 58:10-23.11 et. seq., provides, in pertinent part that "[w]henever one or more dischargers or persons clean up and removes a discharge of a hazardous substance, those dischargers and persons shall have a right of contribution against all other dischargers and persons in any way responsible for a discharged hazardous substance who are liable for the cost of cleanup." N.J.S.A. 58.10-13 11f (a)(2).

34. Under the Spill Act, responsible parties are jointly and severally liable to the State for cleanup and removal costs related to discharges of hazardous substances.

35. PCBs are a hazardous substance as defined in the Spill Act, N.J.S.A. 58:10-23.11b.

36. The deposition of the Suspect Fill, contaminated with PCBs, constitutes a discharge of a hazardous substance as defined in the Spill Act, N.J.S.A. 58:10-23.11b.

37. Plaintiff is a "person" within the meaning of the Spill Act, N.J.S.A. 58:10-2b.11b.

38. Plaintiff, as the owner and operator of Veteran's Field at the time of a discharge of a hazardous substance at Veteran's Field is a "discharger" or "person in any way responsible for a discharged hazardous substance" within the meaning of the Spill Act, N.J.S.A. 58:10-23.11f(a)(2).

2547255v1

39.    Plaintiff has asserted, in the First Amended Complaint, a claim against Defendant, TERMS Environmental Services, Inc., for contribution pursuant to the Spill Act, N.J.S.A. 58:10-23.11f(a)(2).

40.    Pursuant to the Spill Act, N.J.S.A. 58:10-23.11f(a)(2), Defendant, TERMS Environmental Services, Inc. is entitled to maintain a contribution action against Plaintiff with respect to any cleanup and removal costs which Plaintiff seeks to recover from TERMS.

## THIRD COUNT

41.    Defendant repeats and incorporates herein by reference the allegations set forth in Paragraphs 1 through 40 of this Counterclaim as if set forth more fully herein.

42.    On or about May 16, 2011, Plaintiff engaged Defendant to provide certain environmental consulting services, including, without limitation, soil sampling, sample analysis by a third party laboratory and the services of Ronald Dooney, a Licensed Site Remediation Professional ("LSRP") in connection with a project relating to the site known as Veterans' Field.   A copy of the authorizing resolution passed by the governing body of Plaintiff is attached hereto as Exhibit A.

43.    On or about March 18, 2013, Plaintiff extended the engagement of Defendant's services and authorized additional environmental consulting services.   A copy of the authorizing resolution passed by the governing body of Plaintiff is attached hereto as Exhibit B.

44.    On or about February 18, 2014, Plaintiff extended the engagement of Defendant by adopting a resolution retaining Defendant to oversee the implementation of the

Remedial Action Workplan for the removal of the Suspect Fill from Veteran's Field.   A copy of the authorizing resolution passed by the governing body of Plaintiff is attached hereto as Exhibit C.

45.   At all times relevant hereto, the scope of services contracted for by Plaintiff included all of the work necessary to support and lead to the issuance of a Remedial Action Outcome for Veteran's Field by Ronald Dooney, LSRP.

46.   From on or about May, 2011 through May 4, 2014, in furtherance of the contract between Plaintiff and Defendant, Defendant undertook and performed various environmental consulting services, including soil sampling, securing sample analysis from a third party laboratory, and securing data validation services from another third party contractor.

47.   Defendant provided the requested services and/or secured the requested services from third parties at the direction of, and for the benefit of, Plaintiff.

48.   Plaintiff accepted and retained the benefit of the services rendered by Defendant and/or secured by Defendant from others.

49.   Defendant issued invoices to Plaintiff for services rendered or secured from others for the period from August 1, 2013 through May 4, 2014.

50.   At the time Plaintiff engaged Defendant, Plaintiff agreed to pay Defendant for all services provided and/or secured from others for the benefit of Plaintiff.

51.   Plaintiff has paid a portion of one invoice for services for the period from August 1, 2013 through May 4, 2014, but has failed and refused to pay the remaining balance of such invoices.

52. There is currently due and owing to the Defendant the sum of Two Hundred Two Thousand One Hundred Forty-Five and 46/100 Dollars ($202,145.46) for the services provided to or for the benefit of Plaintiff, which were accepted, and the benefit of which were retained, by Plaintiff.

53. Despite demand from Defendant, Plaintiff has failed and refused to pay the outstanding sum due in the amount of Two Hundred Two Thousand One Hundred Forty-Five and 46/100 Dollars ($202,145.46).

54. In or about May, 2014, Plaintiff wrongfully terminated its contract with Defendant and has failed and refused to utilize the services of Defendant to complete the scope of work agreed to in the original proposal and as amended by subsequent resolutions adopted by Plaintiff.

55. Plaintiff's termination of its contract with Defendant constituted a breach of that contract by Plaintiff.

56. Plaintiff's refusal to tender payment for services rendered constitutes a breach of its contract with Defendant.

57. As a result of the Plaintiff's breach of its contract with Defendant, Defendant has suffered damages.

## FOURTH COUNT

58. Defendant repeats and incorporates herein by reference the allegations set forth in Paragraphs 1 through 57 of this Counterclaim as if set forth more fully herein.

59. There is currently due and owing to the Defendant the sum of Two Hundred Two Thousand One Hundred Forty-Five and 46/100 Dollars ($202,145.46) on a certain

book account for services provided to and/or secured for the benefit of, Plaintiff.

60.     Defendant has demanded payment from Plaintiff.

61.     Despite written demand, Plaintiff has failed and refused to pay for said services.

## FIFTH COUNT

62.     Defendant repeats and incorporates herein by reference the allegations set forth in Paragraphs 1 through 61 of this Counterclaim as if set forth more fully herein.

63.     At the time the Plaintiff engaged Defendant to provide and/or obtain certain services from third parties, Plaintiff promised to pay the reasonable value for such services rendered and/or secured for the benefit of Plaintiff.

64.     Defendant has provided and/or secured services for the benefit of Plaintiff that have a reasonable value equal to or in excess of Two Hundred Two Thousand One Hundred Forty-Five and 46/100 Dollars ($202,145.46).   There is currently due and owing to Defendant the reasonable sum of Two Hundred Two Thousand One Hundred Forty-Five and 46/100 Dollars ($202,145.46) for services rendered and/or secured for the benefit of Plaintiff.

65.     Defendant has demanded payment from Plaintiff for the reasonable value for said services.

66.     Plaintiff has failed and refused to pay the reasonable value for said services.

## SIXTH COUNT

67.     Defendant repeats and incorporates herein by reference the allegations set forth in Paragraphs 1 through 66 of this Counterclaim as if set forth more fully herein.

68.     Plaintiff, having been indebted to Defendant in the sum of Two Hundred Two

2547255v1

Thousand One Hundred Forty-Five and 46/100 Dollars ($202,145.46) upon an account stated between the Defendant and the Plaintiff did promise to pay the Defendant said amount upon demand.

69. Defendant has demanded payment for said monies due and owing to it from the Plaintiff.

70. Plaintiff has failed and refused to pay said monies due and owing to Defendant.

## SEVENTH COUNT

71. Defendant repeats and incorporates herein by reference the allegations set forth in Paragraphs 1 through 70 of this Counterclaim as if set forth more fully herein

72. There is currently due and owing to Defendant for services provided and/or secured for the benefit of Plaintiff an agreed-upon amount of Two Hundred Two Thousand One Hundred Forty-Five and 46/100 Dollars ($202,145.46).

73. Plaintiff promised to pay the agreed-upon amount.

74. Defendant has demanded payment for said services from the Plaintiff.

75. Plaintiff has failed and refused to pay said sum.

## EIGHTH COUNT

76. Defendant repeats and incorporates herein by reference the allegations set forth in Paragraphs 1 through 75 of this Counterclaim as if set forth more fully herein.

77. Plaintiff has received a benefit in the form of receiving certain services rendered by Defendant or secured from third parties by Defendant for the benefit of Plaintiff without paying the agreed-upon price for same.

78. Such benefit is at the expense of Defendant, and Plaintiff has knowledge and/or

appreciation of such benefit.

79.     Acceptance and retention of such benefit under these circumstances by the Plaintiff without payment of fair market value to Defendant would be unjust and inequitable.

80.     Plaintiff has been unjustly enriched, and Defendant is entitled to payment of the aforementioned monies plus interest and attorneys' fees and costs.

81.     Said sum of money has not been paid by Plaintiff, although demand to Plaintiff for payment has heretofore been duly made.

82.     By reason thereof, Defendant has been damaged in an amount not less than Two Hundred Two Thousand One Hundred Forty-Five and 46/100 Dollars ($202,145.46).

## CROSSCLAIMS

Defendant, TERMS Environmental Services, Inc. ("TERMS"), a corporation of the State of New Jersey, having its principal place of business at 599 Springfield Avenue, Berkeley Heights, New Jersey, 07922, by way of Crossclaim against the Defendants, Waterside Construction, LLC, 38 COAH, LLC, Daibes Brothers, Inc., North River Mews Associates, LLC, Fred A. Daibes, Aluminum Company of America, A.P. New Jersey, Inc., John Does 1-100 and ABC Corporations 1-100, says:

## THE PARTIES

1.     Defendant, TERMS Environmental Services, Inc. is a corporation of the State of New Jersey organized for the purpose of providing environmental consulting

services.

2.    Upon information and belief, Waterside Construction , LLC ("Waterside")   is a New Jersey limited liability company with offices at 22 Route 5, Edgewater, Bergen County, New Jersey.   Waterside is an affiliate, subsidiary or otherwise related to 38 COAH, Daibes Brothers, and Fred Daibes.

3.    38 COAH, LLC ("38 COAH") is a New Jersey limited liability company with offices at 1000 Portside Drive, Edgewater, Bergen County, New Jersey.   38 COAH is an affiliate, subsidiary  or  otherwise  related  to  Waterside,  Daibes Brothers, and Fred Daibes.   38  COAH  is  the  present  owner  and/or  person otherwise responsible for the  Alcoa Site as defined herein.

4.    Daibes Brothers, Inc. ("Daibes Brothers") is a New Jersey corporation with offices at 1000 Portside Drive, Edgewater, Bergen County, New Jersey.   Daibes Brothers is an affiliate, subsidiary or otherwise related to Waterside, 38 COAH, and Fred Daibes.

5.    North River Mews Associates, LLC ("North River") is a New Jersey limited liability company with offices at 1000 Portside Drive, Edgewater, Bergen County, New Jersey.   North River is an owner and/or person otherwise responsible for the Alcoa Site as defined herein.

6.    Fred A. Daibes ("Daibes") is an individual with offices at 22 Route 5, Edgewater, Bergen County, New Jersey.   Daibes owned and/or controlled Waterside, 38 COAH, North River and Daibes Brothers.

7.    ALCOA is a Pennsylvania Corporation with offices at 201 Isabella Street,

2547255v1

Pittsburg, Pennsylvania 15212.   ALCOA is a prior owner, operator and/or

generator is responsible for the contamination at the Alcoa site as defined herein.

8.     A.P. New Jersey, Inc. ("A.P.")  is a New Jersey Corporation.  A.P. is a prior

owner, operator and/or generator is responsible for the contamination at the Alcoa

site as defined herein.

9.     Defendants, John Does 1-100 are others currently unknown who have generated,

transported, or are otherwise responsible for the lease of hazardous substances

at Veteran's Field.

10.    Defendants, ABC Corporation 1-100 are others currently unknown who have

generated, transported, or are otherwise responsible for the lease of hazardous

substances at Veteran's Field.


## JURISDICTION AND VENUE

11.    This action arises under federal law, specifically Section 113(f)(1) of the

Comprehensive Environmental Response Compensation and Liability Act,

42 U.S.C. § 9613(f)(1) ("CERCLA").

12.    This is an action over which the United States District Court has original

jurisdiction pursuant to 28 U.S.C. § 1331.

13.    This court has supplemental jurisdiction over the state law Crossclaims of

Defendant, TERMS Environmental Services, Inc., pursuant to 28 U.S.C. §§ 1388

and 1367(a) and because those claims are joined with and arise out of the same

common nucleus of facts as Plaintiff's federal law claims and supplemental state

law claims asserted in the First Amended Complaint and TERMS' federal law Crossclaims.

14.     Venue for these Crossclaims is proper in this court because all parties have a principal place of business or operations in New Jersey.

## FIRST COUNT

15.     Plaintiff is, and all times relevant hereto was, the owner of certain real property commonly known as Veteran's Field, located at 1167 River Road, Edgewater, New Jersey and designated as Block 30, Lot 1 on the Tax Map of the Borough of Edgewater ("Veteran's Field" or the "Site").

16.     In or about June, 2012, Plaintiff initiated a project for the removal of contaminated fill material from the Site and restoration of the Site (the "Project").

17.     Waterside was awarded the bid and entered into a contract with Plaintiff as the contractor for the Project.

18.     As alleged by Plaintiff in its First Amended Complaint, Jason Menzella ("Menzella"), an employee of Borough Engineer, Neglia Associates, acted as Plaintiff's Site supervisor for the Project.

19.     As alleged by Plaintiff in its First Amended Complaint, on or about September 6, 2013, Waterside advised Menzella that it would not be performing any work at the Site on Saturday, September 7, 2013.

20.     As alleged by Plaintiff in its First Amended Complaint, on September 7, 2013, Menzella observed employees of Waterside working at the Site; specifically, Mr. Menzella observed them covering up fill materials that had not previously been

present at the Site (the "Suspect Fill").

21. The Suspect Fill brought to and deposited at the Site by Waterside contained crushed concrete and was contaminated with, among other things, polychlorinated bi-phenyls ("PCBs").

22. Defendant, Daibes, subsequently admitted that the Suspect Fill originated from the former Alcoa plant located at 600 River Road, Edgewater, New Jersey (the "Alcoa Site").

23. Upon information and belief, the Alcoa Site was, and/or is, owned, controlled and operated by Daibes, North River, A.P. and Alcoa.

24. Upon information and belief, Daibes, Waterside, Daibes Brothers, 38 COAH, North River, A.P. and others caused the Suspect Fill to be crushed at the Alcoa Site and transported to and placed at the Site.

25. Daibes, Waterside, Daibes Brothers, 38 COAH, North River and A.P. failed to obtain a Class B Recycling Permit from the New Jersey Department of Environmental Protection before transporting the Suspect Fill to the Site and using it as the Site as fill material.

26. PCBs are a hazardous substance as defined under CERCLA, 42 U.S.C. § 9601 (14).

27. The deposition of the Suspect Fill at the site constitutes the disposal of and a release or threatened release of a hazardous substance as defined under CERCLA, 42 U.S.C. § 9601 (22).

28. The Site is a facility as defined under CERCLA, 42 U.S.C. § 9601(9).

29. Pursuant to Section 107 of CERCLA, 42 U.S.C. § 9607(a)(1-4), the following

persons are liable for: a) all costs of removal or remedial action incurred by the

United States Government or a State or an Indian tribe not inconsistent with the

national contingency plan; and b) any other necessary costs of response incurred

by any other person consistent with the national contingency plan:

> (1)   the owner and operator of a vessel or a facility;
>
> (2)   any person who at the time of disposal of any hazardous substance owned or operated any facility at which such hazardous substances were disposed of;
>
> (3)   any person who by contract, agreement, or otherwise arranged for disposal or treatment, or arranged with a transporter for transport for disposal or treatment, of hazardous substances owned or possessed by such person, by any other party or entity, at any facility or incineration vessel owned or operated by another party or entity and containing such hazardous substances; and
>
> (4)   any person who accepts or accepted any hazardous substances for transport to disposal or treatment facilities, incineration vessels or sites selected by such person, from which there is a release, or a threatened release which causes the incurrence of response costs, of a hazardous substance.

30.   Plaintiff has asserted, in the First Amended Complaint, a claim against Defendant,

TERMS Environmental Services, Inc. for cost recovery pursuant to Section 107 of

CERCLA, 42 U.S.C. § 9607.

31.   A.P., ALCOA, Waterside, Daibes, Daibes Brothers, 38 COAH, John Does 1-100

and ABC Corporations 1-100 are each a "person" within the meaning of Section

101 (21) of CERCLA, 42 U.S.C. §9601(21).

32.   A.P., ALCOA, Waterside, Daibes, Daibes Brothers, 38 COAH, North River,

and John Does 1-100 and ABC Corporations 1-100 are each an operator of Veteran's Field within the meaning of Section 101(20) of CERCLA, 42 <u>U.S.C.</u> § 9601(20).

33.    A.P., ALCOA, Waterside, Daibes, Daibes Brothers, 38 COAH, North River, John Does 1-100 and ABC Corporations 1-100 arranged, by contract, agreement, or otherwise, for disposal of hazardous substances at Veteran's Field.

34.    Waterside, Daibes, Daibes Brothers, 38 COAH, North River, John Does 1-100 and ABC Corporations 1-100 accepted hazardous substances for transport to Veteran's Field.

35.    Waterside, Daibes, Daibes Brothers, 38 COAH, North River, A.P., Alcoa, John Does 1-100 and ABC Corporations 1-100 were each an operator of Veteran's Field at the time that the Suspect Fill was disposed of at Veteran's Field.

36.    A.P., ALCOA, Waterside, Daibes, Daibes Brothers, 38 COAH, North River, John Does 1-100 and ABC Corporations 1-100 are liable under Section 107 of CERCLA, 42 <u>U.S.C.</u> § 9607(a)(1)-(4) with respect to the Suspect Fill deposited at the Site.

37.    Pursuant to Section 113(f)(1) of CERCLA, 42 <u>U.S.C.</u> § 9613(f)(1), Defendant, TERMS Environmental Services, Inc. is entitled to maintain a contribution action against Alcoa, A.P., Waterside, Daibes, Daibes Brothers, 38 COAH, North River, John Does 1-100 and ABC Corporations 1-100 with respect to any response costs which Plaintiff seeks to recover from TERMS.

## SECOND COUNT

38.     Plaintiff repeats and incorporates herein by reference the allegations set forth in
        Paragraphs 1 through 37 of these Crossclaims as if set forth more fully herein.

39.     The New Jersey Spill Compensation and Control Act, ("Spill Act") N.J.S.A.
        58:10-23.11, et. seq., provides, in pertinent part that "[w]henever one or more
        dischargers or persons cleans up and removes a discharge of a hazardous substance,
        those dischargers and persons shall have a right of contribution against all other
        dischargers and persons in any way responsible for a discharged hazardous
        substance who are liable for the cost of cleanup." N.J.S.A. 58.10-23.11f (a)(2),

40.     Under the Spill Act, responsible parties are jointly and severally liable to the
        State for cleanup and removal costs related to discharges of hazardous substances.

41.     Waterside is a "person" within the meaning of the Spill Act, N.J.S.A.
        58-10-23.11b.

42.     Fred Daibes is a "person" within the meaning of the Spill Act, N.J.S.A.
        58:10-23.11b.

43.     Daibes Brothers is a "person" within the meaning of the Spill Act, N.J.S.A.
        58:10-23.11b.

44.     38 COAH is a "person" within the meaning of the Spill Act, N.J.S.A. 58:10-23.11b.

45.     North River is a "person" within the meaning of the Spill Act, N.J.S.A.
        58:10-13.11b(o).

46.     ALCOA is a "person" within the meaning of the Spill Act, N.J.S.A. 58:10-23.11b.

47.     A.P. is a "person" within the meaning of the Spill Act, N.J.S.A. 58:10-23.11b.

48.     John Does 1-100 is a "person" within the meaning of the Spill Act, N.J.S.A. 58:10-23.11b.

49.     ABC Corporations 1-100 is a "person" within the meaning of the Spill Act, N.J.S.A. 58:10-23.11b.

50.     PCBs are a hazardous substance as defined in the Spill Act, N.J.S.A. 58:10-23.11b.

51.     The deposition at Veteran's Field of the Suspect Fill, contaminated with PCBs, constitutes a discharge of a hazardous substance as defined in the Spill Act, N.J.S.A. 58:10-23.11b.

52.     Plaintiff has asserted, in the First Amended Complaint, a claim against Defendant, TERMS Environmental Services, Inc., for contribution pursuant to the Spill Act, N.J.S.A. 58:10-23.11f(a)(2).

53.     Waterside is a "discharger" or "person in any way responsible for a discharged hazardous substance" within the meaning of the Spill Act, N.J.S.A. 58:10-23.11f(a)(2), with respect to the Suspect Fill disposed of at Veteran's Field.

54.     Daibes is a "discharger" or "person in any way responsible for a discharged hazardous substance" within the meaning of the Spill Act, N.J.S.A. 58:10-23.11f(a)(2), with respect to the Suspect Fill disposed of at Veteran's Field.

55.     Daibes Brothers is a "discharger" or "person in any way responsible for a discharged hazardous substance" within the meaning of the Spill Act, N.J.S.A. 58:10-23.11f(a)(2), with respect to the Suspect Fill disposed of at Veteran's Field.

56.   38 COAH is a "discharger" or "person in any way responsible for a discharged hazardous substance" within the meaning of the Spill Act, <u>N.J.S.A</u>. 58:10-23.11f(a)(2), with respect to the Suspect Fill disposed of at Veteran's Field.

57.   North River is a "discharger" or "person in any way responsible for a discharged hazardous substance" within the meaning of the Spill Act, <u>N.J.S.A</u>. 58:10-23.11f(a)(2), with respect to the Suspect Fill disposed of at Veteran's Field.

58.   ALCOA is a "discharger" or "person in any way responsible for a discharged hazardous substance" within the meaning of the Spill Act, <u>N.J.S.A</u>. 58:10-23.11f(a)(2), with respect to the Suspect Fill disposed of at Veteran's Field.

59.   A.P. is a "discharger" or "person in any way responsible for a discharged hazardous substance" within the meaning of the Spill Act, <u>N.J.S.A</u>. 58:10-23.11f(a)(2), with respect to the Suspect Fill disposed of at Veteran's Field.

60.   John Does 1-100 is a "discharger" or "person in any way responsible for a discharged hazardous substance" within the meaning of the Spill Act, <u>N.J.S.A</u>. 58:10-23.11f(a)(2), with respect to the Suspect Fill disposed of at Veteran's Field.

61.   ABC Corporations 1-100 is a "discharger" or "person in any way responsible for a discharged hazardous substance" within the meaning of the Spill Act, <u>N.J.S.A</u>. 58:10-23.11f(a)(2), with respect to the Suspect Fill disposed of at Veteran's Field.

62.   Pursuant to the Spill Act, <u>N.J.S.A</u>. 58:10-23.11f(a)(2), Defendant, TERMS Environmental Services, Inc., is a entitled to maintain a contribution action against Defendants, Waterside, Daibes, Daibes Brothers, 38 COAH, North River, A.P.

Alcoa, John Does 1-100 and ABC Corporation 1-100 with respect to any cleanup and removal costs which Plaintiff seeks to recover from Defendant, TERMS.

## THIRD COUNT

63. Plaintiff repeats and incorporates herein by reference the allegations set forth in Paragraphs 1 through 62 of these Crossclaims as if set forth more fully herein.

64. While defendant, TERMS Environmental Consulting, Inc., denies any and all negligence or legal duty in this case, in the event that the defendant, TERMS Environmental Consulting, Inc., is adjudged liable for any loss, damage or injury the plaintiff may have sustained, such liability would be solely vicarious, imputed, secondary or technical, while the negligence of all other defendants would be the active and primary basis for plaintiff's injuries and damages.

65. Defendant, TERMS Environmental Consulting, Inc., is entitled to common law indemnification and/or contribution from all other defendants for all damages for which it may be held liable to plaintiff, plus interest, attorneys' fees and costs of suit.

## FOURTH COUNT

66. Plaintiff repeats and incorporates herein by reference the allegations set forth in Paragraphs 1 through 65 of these Crossclaims as if set forth more fully herein.

67. While defendant, TERMS Environmental Consulting, Inc., denies any and all negligence on its part in this case, in the event that the defendant, TERMS Environmental Consulting, Inc., is adjudged liable for any loss, damage or injury the plaintiff may have sustained, TERMS Environmental Consulting, Inc., is

54

entitled to, and hereby asserts, a crossclaim for contribution against all other

defendants pursuant to the provisions of the New Jersey Joint Tortfeasors

Contribution Act, N.J.S.A. 2A:53A-1 et seq. and the Comparative Negligence

Act, N.J.S.A. 2A:15-5.1 et seq.

## FIFTH COUNT

68.     Plaintiff repeats and incorporates herein by reference the allegations set forth in
        Paragraphs 1 through 67 of these Crossclaims as if set forth more fully herein.

69.     On or about May 16, 2011, the governing body of the Borough of Edgewater
        adopted a resolution retaining TERMS Environmental Services, Inc. to perform
        certain environmental work relating to Veteran's Field as set forth in a proposal
        dated April 21, 2011.

70.     On or about June 18, 2012, the governing body of the Borough of Edgewater
        adopted a resolution approving an extension of the existing Professional Services
        Contract with TERMS Environmental Services, Inc. to perform additional
        environmental work relating to Veteran's Field and the Project.

71.     On or about March 18, 2013, the governing body of the Borough of Edgewater
        adopted another resolution retaining TERMS Environmental Services, Inc. to
        perform additional services relating to Veteran's Field and the Project, including
        the provision of additional testing services for the verification of the use of clean
        fill material.

72.     During the course of the Veterans' Field Project, Waterside and Fred Daibes objected to, and attempted to circumvent, the directions of TERMS regarding the testing and verification of fill material to be used at Veteran's Field.

73.     Daibes has and exerts substantial political influence in the Borough of Edgewater and in Bergen County, New Jersey.

74.     During the course of the Project, Daibes stated to Ronald Dooney, President of TERMS, words that in substance conveyed an intent to have TERMS removed from the Project.

75.     During the course of the Project, it was intimated to Ronald Dooney by agents of Plaintiff that TERMS needed to change the site personnel assigned to the Project or TERMS would lose the job and that TERMS needed to find a way to "work with" Daibes if it wanted to continue to work on the Project.

76.     The events set forth in paragraph 75 above could only have transpired as a result of active efforts by Daibes to have TERMS removed from the Project.

77.     As a result of the discussion referenced in paragraph 75 above, TERMS removed its employee Noah Skyte from the Project and replaced him with Matthew Follo.

78.     Subsequent to the deposition of the Suspect Fill at Veteran's Field by Waterside, Daibes continued to exert efforts to have TERMS removed as the environmental consulting firm for the Project.

79.     On or about February 18, 2014, the governing body of the Borough of Edgewater adopted a resolution retaining TERMS Environmental Services, Inc. to oversee the implementation of the Remedial Action Workplan for the removal of the Suspect Fill from Veteran's Field.

80.     Daibes' efforts to have TERMS removed as the environmental consulting firm for the Veterans' Field Project were intentional and malicious.

81.     Sometime after February 18, 2014, Defendant, Fred Daibes, made an assertion that the Suspect Fill was utilized at Veteran's Field by Waterside because TERMS had approved its use.

82.     The statement made by Fred Daibes that the Suspect Fill was utilized at Veteran's Field by Waterside because TERMS had approved its use was untrue.

83.     At the time that Fred Daibes made the statement that the Suspect Fill was utilized at Veteran's Field by Waterside because TERMS had approved its use, he knew, or through the exercise of due care, should have known, that it was untrue.

84.     Daibes untrue statement that the Suspect Fill was utilized at Veteran's Field by Waterside because TERMS had approved its use was made intentionally and with malice.

85.     On or about May 2, 2014, TERMS was advised, by way of a letter to its' attorney, that Plaintiff was no longer going to use TERMS' services in connection with the

restoration of Veteran's Field or the implementation of the Remedial Action Workplan for the removal of the Suspect Fill from Veteran's Field.

86.   At all times prior to May 2, 2014, TERMS had an expectation that its existing relationship with Plaintiff and its retention as the environmental consultant on the Project would continue until the end of the Project.

87.   As a result of the false statement made by Daibes, Plaintiff ceased to use the services of TERMS and replaced TERMS on the Project with another environmental consulting firm.

88.   As a result of Daibes' efforts to have TERMS removed as the environmental consulting firm for the Project, Plaintiff ceased to utilize the services of TERMS.

89.   The false statement made by Daibes constitutes slander *per se*.

90.   As a result of the false statement made by Daibes, TERMS has suffered damages.

91.   TERMS is entitled to recover its damages from Daibes.

## SIXTH COUNT

92.   Plaintiff repeats and incorporates herein by reference the allegations set forth in Paragraphs 1 through 91 of these Crossclaims as if set forth more fully herein.

93.   The actions of Daibes constitute tortious interference with the contract between Defendant, TERMS Environmental Services, Inc., and Plaintiff.

94.     As a result of the tortious interference with contract by Daibes, TERMS has suffered damages.

95.     TERMS is entitled to recover its damages from Daibes.

## SEVENTH COUNT

96.     Plaintiff repeats and incorporates herein by reference the allegations set forth in Paragraphs 1 through 95 of these Crossclaims as if set forth more fully herein.

97.     The actions of Daibes constitute tortious interference the economic advantage enjoyed by Defendant, TERMS Environmental Services, Inc.

98.     As a result of the tortious interference with TERMS' economic advantage by Daibes, TERMS has suffered damages.

99.     TERMS is entitled to recover its damages from Daibes.


Lindabury, McCormick, Estabrook & Cooper, P.C.
Attorneys for Defendant, TERMS Environmental Services, Inc.

David R. Pierce
David R. Pierce, Esq.

Dated: November 4, 2014


## CERTIFICATION PURSUANT TO RULE 11.2
## OF THE LOCAL CIVIL RULES FOR THE DISTRICT OF NEW JERSEY

I hereby certify that the matter in controversy is not the subject of any other action pending in any court, or of any pending arbitration or administrative proceeding.

David R. Pierce
David R. Pierce, Esq.

Dated:   November 4, 2014


2547255v1

# EXHIBIT "A"



## BOROUGH OF EDGEWATER
## RESOLUTION

| COUNCILPERSON | YES | NO | ABSTAIN | ABSENT |
|---|---|---|---|---|
| HOLTJE | | | | ✓ |
| HENWOOD | ✓ | | | |
| MONTE | ✓ | | | |
| VIDAL | ✓ | | | |
| JORDAN | ✓ | | | |
| ROSE | ✓ | | | |

DATE: **May 16, 2011**

RESOLUTION No. **2011-128**

INTRODUCED BY: *N. Rose*

SECOND BY: *D. Jordan*

### VETERANS FIELD ENVIRONMENTAL SITE INVESTIGATION FOR HUDSON RIVER WATERFRONT WALKWAY PROJECT

**WHEREAS** the Borough of Edgewater has authorized phase II of the Veterans Field Improvements Project; and

**WHEREAS** this project is being funded by both the New Jersey Environmental Protection Agency Green Acres Program as well as the Bergen County Open Space Trust Program;

**WHEREAS** in order for the Borough of Edgewater to proceed with Phase II, the NJDEP Green Acres Program requires an environmental investigation report;

**WHEREAS** Neglia Engineering Associates, the Borough's Engineer, provided for an initial environmental report which resulted in elevated levels of historic fill compounds at two and four foot depths;

**WHEREAS** the Borough Engineer has recommended additional testing to confirm that no hazards exist and that all elevated compounds are determined to be acceptable for historic fill.

**NOW THEREFORE BE IT RESOLVED** the Edgewater Mayor and Council hereby authorize TERMS Environmental Services, 599 Springfield Avenue, Berkley Heights, New Jersey 07922 to perform additional testing for soils at Veterans Field at a cost not to exceed $7,720.00

I hereby certify that the above resolution was adopted by the Mayor and Council on May 16, 2011.

BARBARA RAE, RMC, CMC
Borough Clerk

# EXHIBIT "B"

**MINUTES OF A REGULAR SESSION OF THE EDGEWTER MAYOR & COUNCIL HELD IN THE NANCY MERSE COUNCIL CHAMBERS AT 55 RIVER ROAD, EDGEWATER, COUNTY OF BERGEN, STATE OF NEW JERSEY ON MARCH 18, 2013**

**PRESIDING:** James F. Delaney, Mayor

**PRESENT:** Councilman Doran, Councilman Monte, Councilman Jordan and Councilman Bartolomeo

**ALSO PRESENT:** Administrator Gregory S. Franz, Borough Clerk Barbara Rae and Borough Attorney Philip Boggia

**ABSENT:** Councilman Henwood and Councilman Vidal

**OPEN PUBLIC MEETING ACT STATEMENT**

Mayor Delaney read the Open Public Meetings Act Statement in the Record.

**MOMENT OF SILENCE**

Mayor Delaney asked for a moment of silence and remembered Mary O'Connor.

**SALUTE TO THE FLAG**

Councilman Bartolomeo led the Pledge of Allegiance.

**CONFERENCE**

1.  Police Promotion of Joseph Criscuolo

    -   Motion to go out of regular order of business to make the appointment

**MOTION**

March 18, 2013

**INTRODUCED:** Councilman Doran
**SECOND:** Councilman Bartolomeo

Motion to go out of regular order of business to make Sergeant appointment.

On roll call the vote was as follows:

| | |
|---|---|
| Councilman Henwood | Absent |
| Councilman Doran | Yes |
| Councilman Monte | Yes |
| Councilman Vidal | Absent |
| Councilman Jordan | Yes |
| Councilman Bartolomeo | Yes |

The Clerk then read Resolution 2013-069 in its entirety:

**RESOLUTION**
**2013-069**

March 18, 2013

**INTRODUCED:** Councilman Jordan
**SECOND:** Councilman Bartolomeo

1

**WHEREAS** Chapter 66 of the Code of the Borough of Edgewater establishes the Organization of the Edgewater Police Department; and

**WHEREAS** a vacancy will exist in the position of Police Sergeant on April 1, 2013; and

**WHEREAS** as a result of the New Jersey Department of Personnel competitive examination for the position of Police Sergeant, the following candidate is now placed No. 1 and is eligible for appointment:

Joseph Criscuolo,
New Milford, NJ

**NOW THEREFORE BE IT RESOLVED** by the Mayor and Council of the Borough of Edgewater that Police Sergeant is hereby appointed to the position of Police Sergeant in the Edgewater Police Department effective April 1, 2013 and is to be paid a salary in accordance with the present salary ordinance.

On roll call the vote was as follows:

| | |
|---|---|
| Councilman Henwood | Absent |
| Councilman Doran | Yes |
| Councilman Monte | Yes |
| Councilman Vidal | Absent |
| Councilman Jordan | Yes |
| Councilman Bartolomeo | Yes |

Mayor Delaney  administered the oath of Office to  Police Sergeant Joseph Criscuolo.

Mayor Delaney and the Council congratulated Sergeant Criscuolo.

## MOTION

March 18, 2013

**INTRODUCED:** Councilman Doran
**SECOND:** Councilman Bartolomeo

Motion to return to the regular order of business.

On roll call the vote was as follows:

| | |
|---|---|
| Councilman Henwood | Absent |
| Councilman Doran | Yes |
| Councilman Monte | Yes |
| Councilman Vidal | Absent |
| Councilman Jordan | Yes |
| Councilman Bartolomeo | Yes |

### 2. Neglia Engineering Representative David Juzmeshi

- Mr. Juzmeshi was present to discuss the damages sustained at Veterans Field as a result of Hurricane Sandy.
- Administrator Franz spoke about the possibility of increasing the depth of original contract design.
- The question is should the Borough raise the design elevations of the main field, and increase the modular block wall and importing fill items. Continued discussion about the proposed new flood maps and whether or not to further elevate Veterans Field.
- Mr. Juzmeshi indicated the cost could be an additional $300,000 to $400,000.
- Consensus of the council was to move forward to obtain specs and a formal proposal from Neglia.

On roll call the vote was as follows:

| | |
|---|---|
| Councilman Henwood | Absent |
| Councilman Doran | Yes |
| Councilman Monte | Yes |
| Councilman Vidal | Absent |
| Councilman Jordan | Yes |
| Councilman Bartolomeo | Yes |

Neglia to prepare information for the next Work Session.

**OPEN MEETING TO THE PUBLIC**

Mayor Delaney opened the meeting to the public and the following were heard:

Tom Tansey, 611 Undercliff Avenue:

- Referenced two letters discussed two years ago which pertained to the walkway.Spoke about Walkway letter dated June 3, 2010 of NJDEP.  Said he takes issue with third paragraph.
- Asked Borough Attorney Boggia about the rezoning of the area from P to Recreation.
- Spoke about another letter from Ellen Monoque Hudson River Conservancy.  He said that the letter represented she was a member of Hudson County Commission.  Secondly, the letter referenced the Edgewater Renaissance.  He took issue with this because the walkway has nothing to do with a renaissance but rather the walkway is mandated by the State of New Jersey.
- He referenced the website that listed M. Hogan as a trustee.

Mary Hogan, 606 Undercliff Avenue:

- Speaks for herself but feels we need to raise the field to what is already there; to leave it too low is not helpful either.
- Requests light on Route 5.  Borough Administrator asked if a directional light would be more feasible.
- Spoke about FEMA mapping and the shore.  Recommends that the Borough not wait until August  Also spoke about the Walkway at the Ballfield.
- Question on 2 Resolutions.

Denis Gallagher, 18 Arlington Terrace:

- He stated that he didn't hear any mention of the actual sea wall and asked if it was evaluated.

   ** At this time the Municipal Clerk informed the Governing Body and the public that the meeting has not been recording.

- Spoke about Vreeland Terrace Building, the for sale sign and the deed restriction.  Asked for Attorney's input.
- Spoke about Le Jardin property and a court case where he claims Mr. Daibes told judge that he can't make any use of the property.
- Stated the town has the power to fix it and wants town to look into matter.

No one else wished to be heard therefore the Mayor closed the meeting to the public.

Mayor Delaney responded to Mr. Gallagher and asked Borough Attorney Boggia to also respond and he did.

Attorney Boggia spoke about the deed restriction that was not put on the affordable housing section but on the other remaining portion of the property.  It says what the property could be developed for and that we are confident that the deed restriction remains.

Administrator Franz also spoke on the issue.   He clarified the deed restriction does reference recreational and spa like.  No where does it say municipal recreational facility.

3

**APPROVAL OF MINUTES**

The following minutes were listed for approval:  February 4, 2013 Regular Meeting, February 4, 2013 1st Closed Session, February 4, 2013 2nd Closed Session and February 19, 2013 Regular Meeting.

**MOTION**

March 18, 2013

**INTRODUCED:**  Councilman Doran
**SECOND:** Councilman Jordan

A motion to approve the minutes of the February 4, 2013 Regular Meeting, February 4, 2013 1st Closed Session, February 4, 2013 2nd Closed Session and February 19, 2013 Regular Meeting.

On roll call the vote was as follows:

| | |
|---|---|
| Councilman Henwood | Absent |
| Councilman Doran | Yes |
| Councilman Monte | Yes |
| Councilman Vidal | Absent |
| Councilman Jordan | Yes |
| Councilman Bartolomeo | Yes |

**COMMUNICATIONS/PETITIONS**

None.

**RECEIPT OF BIDS**

None

**ADOPTION/PUBLIC HEARING OF ORDINANCES**

None.

**COMMUNICATIONS/PETITIONS**

None.

**INTRODUCTION OF ORDINANCES**

1. 1490-2013   An Ordinance Deleting and Replacing Chapter 318 of the Code of the Borough of Edgewater in Order to Revise the Fees Chargeable for Public Documents.

The Clerk read Ordinance 1490-2013 by title only as follows:

**BOROUGH OF EDGEWATER**
**ORDINANCE NO. 1490-2013**

**AN ORDINANCE DELETING AND REPLACING CHAPTER 318 OF THE CODE OF THE BOROUGH OF EDGEWATER IN ORDER TO REVISE THE FEES CHARGEABLE FOR PUBLIC DOCUMENTS**

The Clerk read the following resolution for Ordinance 1490-2013

**:RESOLUTION**

March 18, 2013

4

**INTRODUCED:** Councilman Jordan
**SECOND:** Councilman Doran

**WHEREAS AN ORDINANCE DELETING AND REPLACING CHAPTER 318 OF THE CODE OF THE BOROUGH OF EDGEWATER IN ORDER TO REVISE THE FEES CHARGEABLE FOR PUBLIC DOCUMENTS** was introduced on March 18, 2013, and passes its first reading and will be considered for final passage and public hearing on April 15, 2013 at 7:00 pm Municipal Building, 55 River Road, Edgewater, New Jersey.

Discussion:

Borough Clerk reviewed the change and the reason for the Ordinance.

On roll call the vote was as follows:

| | |
|---|---|
| Councilman Henwood | Absent |
| Councilman Doran | Yes |
| Councilman Monte | Yes |
| Councilman Vidal | Absent |
| Councilman Jordan | Yes |
| Councilman Bartolomeo | Yes |

**1491-2013** An Ordinance Amending and Supplementing Chapter 81 of the Code of the Borough of Edgewater In order to Set Fees for Certain Permits, ID Cards, and Letters of Good Standing

The Clerk read Ordinance 1491-2013 by title only as follows:

### BOROUGH OF EDGEWATER
#### ORDINANCE NO. 1491-2013

#### AN ORDINANCE AMENDING AND SUPPLEMENTING CHAPTER 81 OF THE CODE OF THE BOROUGH OF EDGEWATER IN ORDER TO SET FEES FOR CERTAIN PERMITS, ID CARDS, AND LETTERS OF GOOD STANDING

The Clerk read the following resolution for Ordinance 1491-2013

#### :RESOLUTION

March 18, 2013

**INTRODUCED:** Councilman Doran
**SECOND:** Councilman Bartolomeo/Councilman Monte

**WHEREAS AN ORDINANCE AMENDING AND SUPPLEMENTING CHAPTER 81 OF THE CODE OF THE BOROUGH OF EDGEWATER IN ORDER TO SET FEES FOR CERTAIN NPERMITS, ID CARDS AND LETTERS OF GOOD STANDING** was introduced on March 18, 2013, and passes its first reading and will be considered for final passage and public hearing on April 15, 2013 at 7:00 pm Municipal Building, 55 River Road, Edgewater, New Jersey.

On roll call the vote was as follows:

| | |
|---|---|
| Councilman Henwood | Absent |
| Councilman Doran | Yes |
| Councilman Monte | Yes |
| Councilman Vidal | Absent |
| Councilman Jordan | Yes |
| Councilman Bartolomeo | Yes |

**COMMITTEE COUNCIL LIAISON REPORTS**

Councilman Henwood – Absent.

5

Councilman Doran spoke about the great job being done at North Firehouse by Tom Quinton and the DPW staff.

Councilman Monte – No report.

Councilman Vidal – Absent.

Councilman Jordan -  No report.

Councilman Bartolomeo – No report.

**RESOLUTIONS**

A motion to approve Resolutions 2013-070 to 2013-097 was made by Councilman Doran and seconded by Councilman Jordan.

On roll call the vote was as follows:

| | |
|---|---|
| Councilman Henwood | Absent |
| Councilman Doran | Yes |
| Councilman Monte | Yes |
| Councilman Vidal | Absent |
| Councilman Jordan | Yes |
| Councilman Bartolomeo | Yes |

**RESOLUTION**
**2013-070**

March 18, 2013

**INTRODUCED:**  Councilman Doran
**SECOND:**  Councilman Jordan

Resolution 2013-070, Transfer for 3/18/2013 are attached to the end of these minutes.

All council members present voted aye.  None opposed.  None abstained.

**RESOLUTION**
**2013-071**

March 18, 2013

**INTRODUCED:**  Councilman Doran
**SECOND:**  Councilman Jordan

**RESOLUTION PROVIDING FOR INCREASE IN RESERVE**
**FOR UNCOLLECTED TAXES PERCENTAGE**

**WHEREAS,** the Borough of Edgewater collected only 97.74% of the 2011 taxes due to an increase in State and County tax appeals as a result of unfavorable economic conditions in the local economy and real estate markets for 2011, and

**WHEREAS,** the lower percentage collected in 2011 has an effect on the "Reserve for Uncollected Taxes" in 2012, and

**WHEREAS,** the Governing Body is desirous of reducing the 2011 total tax levy by the amount of the tax appeals in calculating the 2011 tax collection percentage resulting in a collection percentage of 97.93% for 2011, and

**WHEREAS,** the Governing Body desires to anticipate 97.93% collection for 2012, to help reduce the "Reserve for Uncollected Taxes", with prior written consent of the Director of Local Government Services,

**NOW, THEREFORE, BE IT RESOLVED** by the Governing Body of the Borough of Edgewater, County of

6

Bergen, State of New Jersey, that the prior written consent of the Director of Local Government Services be requested to anticipate 97.93% collection of taxes in 2012 in figuring the "Reserve for Uncollected Taxes".

**BE IT FURTHER RESOLVED** that two certified copies of this resolution be forwarded to the Office of the Director of Local Government Services.

APPROVED: , 2012

_____

Director, Division of Local Government Services

All council members present voted aye.  None opposed.  None abstained.

**RESOLUTION
2013-072**

March 18, 2013

**INTRODUCED:** Councilman Doran
**SECOND:** Councilman Jordan

**BOAT SLIP ELECTRIC RATES**

**WHEREAS,** the Borough of Edgewater would like to set the following fees for electric rates for boat slips located at the Edgewater Marina Park and Ferry Landing as follows:

| | |
|---|---|
| Boats with battery chargers | $25.00 per month |
| Boats with battery chargers and refrigerators | $50.00 per month |
| Boats with battery chargers, refrigerators & air conditioning | $75.00 per month |

**NOW THEREFORE BE IT RESOLVED** by the Borough of Edgewater Governing Body that the above fees for electric rates are hereby set at the above rates and are effective immediately.

All council members present voted aye.  None opposed.  None abstained.

**RESOLUTION
2013-073**

March 18, 2013

**INTRODUCED:** Councilman Doran
**SECOND:** Councilman Jordan

**TAX REIMBURSEMENT CERTIFICATION**

**WHEREAS,** the Recycling Enhancement Act, P.L. 2007, chapter 311 has established a recycling find from which tonnage grants may be made to municipalities in order to encourage local source separation and recycling programs; and

**WHEREAS,** there is levied upon the owner or operator of every solid waste facility (with certain exceptions) a recycling tax of $3.00 per ton on all solid waste accepted for disposal or transfer at the solid waste facility.

**WHEREAS,** whenever a municipality operates a municipal service system for solid waste collection, or provides for regular solid waste collection service under a contract awarded pursuant to the "Local Public Contracts Law", the amount of grant monies received by the municipality shall not be less than the annual amount of recycling tax paid by the municipality except that all grant moneys received by the municipality shall be expended only for its recycling program.

**NOW THEREFORE BE IT RESOLVED** by the Borough of Edgewater that the Borough of Edgewater hereby certifies a submission of expenditure for taxes paid pursuant to P.L. 2007, Chapter 311, in 2012 in the amount of $12,481.26.  Documentation supporting this submission is available at the Edgewater Recycling

Department, 540 River Road, Edgewater, NJ 07020 and shall be maintained for no less than five years from this date.

Tax certified by:  Kathy Frato

| | |
|---|---|
| Name of official: | Kathy Frato |
| Title of official: | Recycling Coordinator |
| Date: | March 18, 2013 |

All council members present voted aye.  None opposed.  None abstained.

## RESOLUTION
## 2013-074

March 18, 2013

**INTRODUCED:** Councilman Doran
**SECOND:** Councilman Jordan

**WHEREAS,** N.J.S.A. 40A:9-154 requires that a governing body of each municipality shall appoint a Principal Public Works Manager for the municipality; and

**WHEREAS,** no person shall be selected to perform the duties of a Principal Public Works Manager unless he holds a public works manager certificate issued pursuant to section 3 of PL 1991, c.258 (C.40A:9-154,6c), which certificate has not been revoked or suspended in accordance with the provisions of subsection b. of section 6 of PL 1991, c.258 (C.40A:9-154.6f); and

**NOW, THEREFORE BE IT RESOLVED** by the governing body that Thomas Quinton is hereby appointed as the Principal Public Works Manager for a period not to exceed one year; and

**BE IT FURTHER RESOLVED** by the governing body that this appointment does not include any additional salary or benefits.

All council members present voted aye.  None opposed.  None abstained.

## RESOLUTION
## 2013-075

March 18, 2013

**INTRODUCED:** Councilman Doran
**SECOND:** Councilman Jordan

**WHEREAS,** the Mandatory Source Separation and Recycling Act, P.L. 1987, c.102, has established a recycling fund from which tonnage grant may be made to municipalities in order to encourage local source separation and recycling programs; and

**WHEREAS,** it is the intent and the spirit of the Mandatory Source Separation and Recycling Act to use the tonnage grants to develop new municipal recycling programs and to continue and to expand existing programs; and

**WHEREAS,** the New Jersey Department of Environmental Protection has promulgated recycling regulations to implement the Mandatory Source Separation and Recycling Act; and

**WHEREAS,** the recycling regulations impose on municipalities certain requirements as a condition for applying for tonnage grants, including but not limited to, making and keeping accurate, verifiable records of materials collected and claimed by the municipality; and

**WHEREAS,** a resolution authorizing this municipality to apply for such tonnage grants will memorialize the commitment of this municipality to recycling and to indicate the assent of the Mayor and Council to the efforts undertaken by the municipality and the requirements contained in the Recycling Act and recycling regulations; and

**WHEREAS,** such a resolution should designate the individual authorized to ensure the application is completed and timely filed.

**NOW, THEREFORE, BE IT RESOLVED** by the Mayor and Council of the Borough of Edgewater that the Borough of Edgewater hereby endorses the submission of the 2012 Recycling Tonnage Grant Application to the New Jersey Department of Environmental Protection and designates Recycling Coordinator Kathy Frato to ensure that the application is properly filed; and

8

BE IT FURTHER RESOLVED that the monies received from the Recycling Tonnage Grant will be deposited in a dedicated recycling trust fund to be used solely for the purposes of recycling.

All council members present voted aye.  None opposed.  None abstained.

**RESOLUTION**
**2013-076**

March 18, 2013

**INTRODUCED:** Councilman Doran
**SECOND:** Councilman Jordan

**Deputy Registrar Inter-Local Agreement**

**WHEREAS** the State of New Jersey requires that each municipality appoint a Deputy Registrar as per NJAC 8:2A-4.1(f) and,

**WHEREAS** the Borough of Edgewater is desirous of entering into an inter-local service agreement with the Borough of Fairview to serve as the Deputy Registrar and,

**WHEREAS** the Borough of Edgewater will reciprocate registrar duties to Fairview in the event a registrar is needed and,

**WHEREAS** the Borough of Fairview will endorse a similar resolution to formalize this inter-local service agreement to share services.

**NOW THEREFORE BE IT RESOLVED** by the Governing Body that the Borough of Fairview Registrar is hereby appointed to serve as the Borough of Edgewater's Deputy Registrar; and

**AND BE IT FURTHER RESOLVED** that the Borough of Edgewater will reciprocate the same service at no cost to the Borough of Edgewater or the Borough of Fairview.

All council members present voted aye.  None opposed.  None abstained.

**RESOLUTION**
**2013-077**

March 18, 2013

**INTRODUCED:** Councilman Doran
**SECOND:** Councilman Jordan

**RESOLVED** that Zelia Ruperti, 1121 Anderson Avenue, Ft. Lee, NJ,, owner of Norm's Ice Cream be Granted  a license to sell ice cream products from her Ice Cream Truck during the hours of 11:00 a.m. to 7:00 p.m. when school is in session, and from 11:00 a.m. to 9:00 p.m., for the rest of the year subject to the following conditions:

1.  The Vendor must obtain all necessary Board of Health permits before any sales begin.

2.  All New Jersey requirements for signalization of ice cream trucks shall be complied with before operating within this Borough.

3.  The vehicle operator shall not park her vehicle for the purpose of selling merchandise within 250 feet of any store selling ice cream products.

4.  The vehicle shall not at any time double park to vend products.

5.  No products shall be sold from the vehicle within 250 feet of a church when the church is in service.

6. The operator of the vehicle shall pick up all discarded wrappers before starting up the vehicle after sales.

7. This license is only for the sale of ices, ice cream, soda, and candy.

8. No vehicle shall vend products at Veteran's Field while the Edgewater Little League is playing and any municipal sponsored event.  No hot dogs are to be sold.

9. Ice Cream truck is not to be parked on Borough streets.

All council members present voted aye.  None opposed.  None abstained.

## RESOLUTION
## 2013-078

March 18, 2013

**INTRODUCED:**  Councilman Doran
**SECOND:**  Councilman Jordan

**WHEREAS** it is the recommendation of the Borough Administrator to appoint the following individuals to serve in the temporary-seasonal, full-time positions as marina staff not to exceed 40 hours per week; and

| Ralph Rambone | - | Marina |
| Gary Price | - | Marina |

**WHEREAS** the hourly rate of pay for these positions is set at $12.00 per hour; and

**WHEREAS** said positions do not include any paid benefits; and

**NOW, THEREFORE BE IT RESOLVED** by the Governing Body that the above named applicants are hereby appointed to the positions of temporary – seasonal, full-time positions as marina staff effective March 18, 2013 through November 15, 2013.

All council members present voted aye.  None opposed.  None abstained.

## RESOLUTION
## 2013-079

March 18, 2013

**INTRODUCED:**  Councilman Doran
**SECOND:**  Councilman Jordan

Resolution 2013-079, Salaries & Wages, is attached to the end of these minutes.

All council members present voted aye.  None opposed.  None abstained.

## RESOLUTION
## 2013-080

March 18, 2013

**INTRODUCED:**  Councilman Doran
**SECOND:**  Councilman Jordan

Resolution 2013-080, Salaries & Wages, is attached to the end of these minutes.

All council members present voted aye.  None opposed.  None abstained.

## RESOLUTION
## 2013-081

10

March 18, 2013

**INTRODUCED:** Councilman Doran
**SECOND:** Councilman Jordan

Resolution 2013-081, Services & Supplies, is attached to the end of these minutes.

All council members present voted aye.  None opposed.  None abstained.

**RESOLUTION**
**2013-082**

March 18, 2013

**INTRODUCED:** Councilman Doran
**SECOND:** Councilman Jordan

**WHEREAS,** there exists in the Borough of Edgewater a Volunteer First Aid Squad and an application has been submitted for membership and approved by the Volunteer First Aid Squad, and

**WHEREAS,** the Bylaws of the Edgewater Volunteer First Aid Squad requires approval of all applicants by the Mayor and Council, and

**NOW THEREFORE BE IT RESOLVED** by the Mayor and Council that the applicant listed below is hereby appointed as a member of the Edgewater Volunteer First Aid Squad:

Faten Masri
Edgewater, NJ

All council members present voted aye.  None opposed.  None abstained.

**RESOLUTION**
**2013-083**

March 18, 2013

**INTRODUCED:** Councilman Doran
**SECOND:** Councilman Jordan

WHEREAS the Borough of Edgewater had purchased tax sale certificate # 12-301 2011 on November 28, 2012 for property known as Edgewater Road, Block 0007900002  04; and

WHEREAS, the tax sale certificate to be redeemed for $336.66 effective through February 23, 2013; and

WHEREAS, there was no premium amount; and

NOW THEREFORE BE IT RESOLVED by the Mayor and Council that the Tax Collector/ Treasurer is authorized to issue a refund check drawn to the current account at T.D. Bank in the amount of Three Hundred Thirty Six Dollars and sixty-six cents($336.66) payable to:

Borough of Edgewater
55 River Road
Edgewater, NJ  07020

All council members present voted aye.  None opposed.  None abstained.

**RESOLUTION**
**2013-084**

March 18, 2013

**INTRODUCED:** Councilman Doran

11

SECOND:  Councilman Jordan

## VETERANS FIELD IMPROVEMENTS
## CHANGE ORDER NO. 3
### NEA File No.: EDGWMUN 11.014

**BE IT RESOLVED** by the Mayor and Council of the Borough of Edgewater, Bergen County, New Jersey upon the recommendation of the Borough Engineer that the Change Order for the Contract listed below be and is hereby approved.

**BE IT RESOLVED** that the Chief Financial Officer has certified that funds are available for this purpose as follows:

I, Joseph Iannaconi, Jr., C.F.O. has certified that funding is available for t his purpose through 1474-2012.

_____
**JOSEPH IANNACONI, JR., C.F.O.**

BE IT RESOLVED by the Mayor and Council of the Borough of Edgewater, Bergen County, New Jersey upon the recommendation of the Borough Engineer that the Change Order for the Contract listed below be and is hereby approved.

**TITLE OF JOB:   VETERANS FIELD IMPROVEMENTS – SUPERSTORM SANDY**
**                            DAMAGE AND DELAYS**

**CONTRACTOR: WATERSIDE CONSTRUCTION 22 ROUTE 5, EDGEWATER, NJ**

**CHANGE ORDER NO.   3**_____

**AMOUNT OF CHANGE THIS RESOLUTION: $201,694.04 or a 2.79% Increase.**

All council members present voted aye.  None opposed.  None abstained.

### RESOLUTION
### 2013-085

March 18, 2013

**INTRODUCED:**  Councilman Doran
**SECOND:**  Councilman Jordan

**A Resolution authorizing additional environmental work as an extension of an existing Professional Services Contract to TERMS Environmental Services for Remediation Testing and Monitoring Services at Veterans Field**

**WHEREAS,** the Borough of Edgewater requires the services of a professional Environmental Engineer to address the requirement for the remediation to the contaminated soils/historic fill detected at Veteran's field; and

**WHEREAS,** the Borough has determined that the value of these services will exceed $17,500; and

**WHEREAS,** the *Local Public Contracts Law, N.J.S.A.* 40A:11-5(1)(a)(i) permits the award of this professional services contract without the need for full public bidding procedures; and

**WHEREAS,** *N.J.S.A.* 40A:11-5(1)(a)(i) further requires that contracting unit publish notice that that the resolution of award and the contract itself are available for public inspection; and

**WHEREAS,** on June 18, 2012, by way of resolution 2012-191 the Borough authorized for certain environmental engineering services from TERMS Environmental Services, Inc., with offices at 599 Springfield Avenue, Berkeley Heights, New Jersey, 07922; and

**WHEREAS**, the estimated cost of the services to be provided was between $128,500.00 and $149,750.00, the final amount to be determined by the specific services rendered and the hours expended, based upon the rate schedule provided by TERMS which was attached to the original proposal hereto; and

**WHEREAS**, TERMS has completed and submitted a Business Entity Disclosure Certification which certifies that TERMS Environmental Services, Inc. has not made any reportable contributions to a political candidate or candidate committee in the Borough of Edgewater in the previous one year, and that the contract will prohibit TERMS from making any reportable contributions through the term of the contract; and

**WHEREAS**, based on an updated proposal dated March 4, 2013, as a result of additional testing to ensure clean fill is transported to the site, an estimated cost of services to be provided is between $232,750.00 and $367,020.00; and

**WHEREAS**, the Borough's Chief Financial Officer has certified that funds have been appropriated and are available for this purpose as follows:

I, Joseph Iannaconi, Jr., do hereby certify that funding is available through

_____

JOSEPH IANNACONI, JR., C.F.O.

**NOW, THEREOF, BE IT RESOLVED** by the Mayor & Council of the Borough of Edgewater that a professional services contract is hereby amended to TERMS Environmental Services, Inc., to provide the site and safety oversight/management and environmental reporting related to the soil remediation that will be performed by others at Veterans Field, as more particularly set forth in the attached Proposal dated June March 4, 2013.

**BE IT FURTHER RESOLVED** that this contract is awarded without competitive bids as a "professional services" Contract in accordance with *N.J.S.A.* 40A:11-5(1)(a)(i) of the *Local Public Contracts Law* because the subject matter of the contract is for professional services by a firm or professional authorized to practice within the State of New Jersey.

**BE IT FURTHER RESOLVED** that this Contract is being awarded pursuant to the alternative process of the *New Jersey Local Unit Pay to Play Law, N.J.S.A.* 19:44A-20.5, and in compliance therewith, and the Business Entity Disclosure Certification will be placed on file with this Resolution.

**BE IT FURTHER RESOLVED** that the Mayor and Borough Clerk are hereby authorized to execute the above Contract for professional services, consistent with this Resolution.

**BE IT FURTHE RESOLVED** that a notice of the award of the above contract shall be published in The Record as required by law within ten (10) days of the adoption of this Resolution.

All council members present voted aye. None opposed. None abstained.

**RESOLUTION**
**2013-086**

March 18, 2013

**INTRODUCED:** Councilman Doran
**SECOND:** Councilman Jordan

**WHEREAS** the Borough of Edgewater Department of Public Works is interested in purchasing (1) one new 2013 Utility Truck with a snowplow and lift gate; and

**WHEREAS** DFFLM, LLC, T/A Ditschman/ Flemington Ford of 215 Route 202 & 31, Flemington NJ 08822 has confirmed said vehicle is on State Contract # A83577 for the price of Thirty Five Thousand Two Hundred Fifty Dollars and zero cents ($43,071.00); and

**WHEREAS** the Chief Financial Officer has certified that funds are available as follows:

I, Joseph Iannaconi, Jr. do hereby that funds are available through the Recycling Trust Account

13

_____
JOSEPH IANNACONI, JR., C.F.O.

**NOW THEREFORE BE IT RESOLVED** by the Mayor and Council that authorization is hereby granted to purchase the said vehicle in the amount not to exceed Thirty Five Thousand Two Hundred Fifty Dollars and zero cents ($35,250.00).

All council members present voted aye.  None opposed.  None abstained.

## RESOLUTION
## 2013-087

March 18, 2013

**INTRODUCED:**  Councilman Doran
**SECOND:**  Councilman Jordan

**WHEREAS** the Borough of Edgewater Department of Public Works is interested in purchasing (1) one new 2013 F350 DRW Mason Dump truck with a snowplow and lift gate; and

**WHEREAS** DFFLM, LLC, T/A Ditschman/ Flemington Ford of 215 Route 202 & 31, Flemington NJ 08822 has confirmed said vehicle is on State Contract # A83577 for the price of  Forty Three Thousand Seventy-one Dollars and zero cents ($43,071.00); and

**WHEREAS** the Chief Financial Officer has certified that funds are available as follows:

I, Joseph Iannaconi, Jr. do hereby that funds are available through the Recycling Trust Account

_____
JOSEPH IANNACONI, JR., C.F.O.

**NOW THEREFORE BE IT RESOLVED** by the Mayor and Council that authorization is hereby granted to purchase the said vehicle in the amount not to exceed Forty Three Thousand Seventy-one Dollars and zero cents ($43,071.00) for the purchase as outlined above.

All council members present voted aye.  None opposed.  None abstained.

## RESOLUTION
## 2013-088

March 18, 2013

**INTRODUCED:**  Councilman Doran
**SECOND:**  Councilman Jordan

BE IT RESOLVED by the Mayor and Council of the Borough of Edgewater that the following organization be granted permission to conduct a Raffle in accordance with the application on file in the office of the Borough Clerk.

RA:  0004     Church of the Holy Rosary
RA:  0005     Church of the Holy Rosary

All council members present voted aye.  None opposed.  None abstained.

## RESOLUTION
## 2013-089

March 18, 2013

**INTRODUCED:**  Councilman Doran
**SECOND:**  Councilman Jordan

## 2013 CDBG SANITARY SEWER IMPROVEMENTS BID AWARD
## NEA FILE NO.: EDGWADM12.001

14

/HEREAS on March 15, 2013 the Borough of Edgewater received sealed bids for the 2013 Community
evelopment Block Grant Project for Sanitary Sewer Improvements, NEA File No.: EDGWADM12.001;and,

/HEREAS the apparent low bidder of two (2) bids was submitted by Gotthold Paving, Edgewater, New
ersey in the amount of $148,901.90; and

/HEREAS the CFO has certified that funds are available as follows:
Joseph Iannaconi, Jr., C.F.O. do hereby certify that funding is available for this project through Ordinance
482; and

_____
OSEPH IANNACONI, JR.
hief Financial Officer

/HEREAS the Borough Engineer and Borough Attorney Philip Boggia have reviewed the bid documents
nd recommend award to Gotthold Paving as the lowest responsible bidder.
an amount not to exceed $148,901.90

All council members present voted aye.  None opposed.  None abstained.

## RESOLUTION
## 2013-090

March 18, 2013

**INTRODUCED:** Councilman Doran
**SECOND:** Councilman Jordan

### 2013 CDBG ROADWAY IMPROVEMENTS BID AWARD
### NEA FILE NO.: EDGWADM 13.001

/HEREAS on March 15, 2013 the Borough of Edgewater received sealed bids for the 2013 Community Development
lock Grant Project for Roadway Improvements, NEA File No.: EDGWADM13.001;and,

/HEREAS the apparent low bidder of four (4) bids was submitted by JJ Sinisi Asphalt, 272 Broad Avenue, Fairview,
J 07022 as follows:

| | |
|---|---|
| Base Bid (Edgewater Place) | $ 86,050.14 |
| Base Bid (Hilliard Avenue) | $ 69,549.13 |
| Total Base Bids | $155,599.27 |

/HEREAS the CFO has certified that funds are available as follows:
Joseph Iannaconi, Jr., C.F.O. do hereby certify that funding is available for this project through Ordinance 1482; and

_____
JOSEPH IANNACONI, JR.
Chief Financial Officer

/HEREAS the Borough Engineer and Borough Attorney Philip Boggia have reviewed the bid documents and
:commend award JJ Sinisi Asphalt as the lowest responsible bidder.
an amount not to exceed $155,599.27

All council members present voted aye.  None opposed.  None abstained.

## RESOLUTION
## 2013-091

March 18, 2013

**INTRODUCED:** Councilman Doran
**SECOND:** Councilman Jordan

### 2013 CDBG STREETSCAPE – UNDERCLIFF AVENUE BID AWARD
### NEA FILE NO.: EDGWADM 13.001

/HEREAS on March 15, 2013 the Borough of Edgewater received sealed bids for the 2013 Community Development lock Grant Project for Streetscape – Undercliff Avenue, NEA File No.: EDGWADM13.001;and,

/HEREAS the apparent low bidder of six 64) bids was submitted by Reggio Construction , 1575 West Street, Fort Lee, ew Jersey 07024 as follows:

| | |
|---|---|
| Base Bid (Valley Pl. to Hudson Ave) | $ 70,586.83 |
| Alt. Bid "A" (Hudson Avenue to Dempsey Ave.) | $102,952.68 |
| Alt. Bid "B" (Dempsey Ave. to Hilliard Ave.) | $ 85,223.63 |
| Total Base Bid + Alt. Bid "A" | $173,539.51 |
| Total Base Bid & Alt. Bid "A" & Alt. Bid "B" | $258,763.14 |

/HEREAS the CFO has certified that funds are available as follows:
Joseph Iannaconi, Jr., C.F.O. do hereby certify that funding is available for this project through Ordinance 1487; and

_____
JOSEPH IANNACONI, JR.
Chief Financial Officer

/HEREAS the Borough Engineer and Borough Attorney Philip Boggia have reviewed the bid documents and :commend award Reggio Construction  as the lowest responsible bidder in an amount not to exceed $258,763.14

All council members present voted aye.  None opposed.  None abstained.

## RESOLUTION
## 2013-092

March 18, 2013

**INTRODUCED:** Councilman Doran
**SECOND:** Councilman Jordan

### OLD WOOD ROAD SANITARY SEWER AND ROADWAY IMPROVEMENTS
### CONSTRUCTION MANAGEMENT SERVICES

VHEREAS the Borough of Edgewater has recently received bids for the sanitary sewer and roadway improvements long Old Wood Road which will be funded by a Community Development Block Grant; and

VHEREAS, Neglia Engineering Associates, 34 Park Avenue, PO Box 426, Lyndhurst, NJ  07071 has submitted a roposal dated March 15, 2013 for the Construction Management services for said project outlining a Scope of Services ι the amount not to exceed Sixteen Thousand Seven Hundred Dollars and Zero Cents ($16,700.00); and

VHEREAS the Chief Financial Officer Joseph Iannaconi, Jr. has certified that funds are available as follows:

Joseph Iannaconi, Jr. has certified that funds are available for this project through Ordinance No. 1482

_____
ɔSEPH IANNACONI, JR., C.F.O.

ɪOW, THEREFORE, BE IT RESOLVED by the Governing Body that the proposal for Professional Services ιbmitted by Borough Engineer Neglia Engineering Associates in the amount not to exceed $16,700.00 is hereby ιccepted; and

ιE IT FURTHER RESOLVED by the Governing Body that the Mayor and Borough Clerk are hereby authorized to ιgn said proposal.

All council members present voted aye.  None opposed.  None abstained.

## RESOLUTION
## 2013-093

March 18, 2013

**INTRODUCED:** Councilman Doran
**SECOND:** Councilman Jordan

16

**UNDERCLIFF AVENUE STREETSCAPE IMPROVEMENTS**
**CONSTRUCTION MANAGEMENT SERVICES**

WHEREAS the Borough of Edgewater has recently received bids for the Streetscape Improvements along Undercliff Avenue, from Valley Place to Hudson Avenue, which will be funded by a Community Development Block Grant; and

WHEREAS, Neglia Engineering Associates, 34 Park Avenue, PO Box 426, Lyndhurst, NJ 07071 has submitted a proposal dated March 15, 2013 for the Construction Management services for said project outlining a Scope of Services in the amount not to exceed Eleven Thousand FiveHundred Dollars and Zero Cents ($11,500.00); and

WHEREAS the Chief Financial Officer Joseph Iannaconi, Jr. has certified that funds are available as follows:

Joseph Iannaconi, Jr. has certified that funds are available for this project through Ordinance No. 1487

_____
JOSEPH IANNACONI, JR., C.F.O.

NOW, THEREFORE, BE IT RESOLVED by the Governing Body that the proposal for Professional Services submitted by Borough Engineer Neglia Engineering Associates in the amount not to exceed $11,500.00 is hereby accepted; and

BE IT FURTHER RESOLVED by the Governing Body that the Mayor and Borough Clerk are hereby authorized to sign said proposal.

All council members present voted aye. None opposed. None abstained.

**RESOLUTION**
**2013-094**

March 18, 2013

INTRODUCED: Councilman Doran
SECOND: Councilman Jordan

**HILLIARD AVENUE and EDGEWATER PLACE ROADWAY IMPROVEMENTS**
**CONSTRUCTION MANAGEMENT SERVICES**

WHEREAS the Borough of Edgewater has recently received bids for the Hilliard Avenue and Edgewater Place Roadway Improvements which includes the milling and paving of Hilliard Avenue and Edgewater Place and which will be partially funded by a Community Development Block Grant; and

WHEREAS, Neglia Engineering Associates, 34 Park Avenue, PO Box 426, Lyndhurst, NJ 07071 has submitted a proposal dated March 15, 2013 for the Construction Management services for said project outlining a Scope of Services in the amount not to exceed Eight Thousand One Hundred Dollars and Zero Cents ($8,100.00); and

WHEREAS the Chief Financial Officer Joseph Iannaconi, Jr. has certified that funds are available as follows:

Joseph Iannaconi, Jr. has certified that funds are available for this project through Ordinance No. 1482

_____
JOSEPH IANNACONI, JR., C.F.O.

NOW, THEREFORE, BE IT RESOLVED by the Governing Body that the proposal for Professional Services submitted by Borough Engineer Neglia Engineering Associates in the amount not to exceed $8,100.00 is hereby accepted; and

BE IT FURTHER RESOLVED by the Governing Body that the Mayor and Borough Clerk are hereby authorized to sign said proposal.

All council members present voted aye. None opposed. None abstained.

**RESOLUTION**
**2013-095**

March 18, 2013

**INTRODUCED:** Councilman Doran
**SECOND:** Councilman Jordan

### 2013 CDBG Roadway Improvements Edgewater Place and Hilliard Avenue

WHEREAS, N.J.S.A. 59:4-6 provides in pertinent part that neither the public entity nor a public employee is liable for an injury caused by the plan or design of public property or any improvement thereto where the plan or design was approved in advance of construction by the Borough of Edgewater or a public employee exercising discretionary authority on its behalf or where such plan or design was prepared in conformity with standards previously approved by the Borough of Edgewater; and

WHEREAS, the following improvement to public property has been designed by Neglia Engineering Associates; and

WHEREAS, the Borough of Edgewater wishes to record its approval of said design.

NOW, THEREFORE, BE IT RESOLVED by the Mayor and Council of the Borough of Edgewater as follows:

1.     Plans and specifications entitled "2013 CDBG Roadway Improvements Edgewater Place and Hilliard Avenue" and prepared by Neglia Engineering Associates dated February 2013 be, and hereby are, approved.

2.     Upon the completion of the improvements described herein above, Neglia Engineering Associates shall inspect said improvement and certify to the Borough of Edgewater, before final payment is made for same that said improvement has been constructed in accordance with the above referenced design.

3.     The Borough of Edgewater Clerk shall archive this Resolution in a manner consistent with the purpose of perpetually documenting governmental immunity in the event of any claim based upon the plan, design or construction of the improvement.

All council members present voted aye.  None opposed.  None abstained.

### RESOLUTION
### 2013-096

March 18, 2013

**INTRODUCED:** Councilman Doran
**SECOND:** Councilman Jordan

### 2013 CDBG Sanitary Sewer Improvements Old Wood Road

WHEREAS, N.J.S.A. 59:4-6 provides in pertinent part that neither the public entity nor a public employee is liable for an injury caused by the plan or design of public property or any improvement thereto where the plan or design was approved in advance of construction by the Borough of Edgewater or a public employee exercising discretionary authority on its behalf or where such plan or design was prepared in conformity with standards previously approved by the Borough of Edgewater; and

WHEREAS, the following improvement to public property has been designed by Neglia Engineering Associates; and

WHEREAS, the Borough of Edgewater wishes to record its approval of said design.

NOW, THEREFORE, BE IT RESOLVED by the Mayor and Council of the Borough of Edgewater as follows:

1.     Plans and specifications entitled "2013 CDBG Sanitary Sewer Improvements" and prepared by Neglia Engineering Associates dated February 2013 be, and hereby are, approved.

2.     Upon the completion of the improvements described herein above, Neglia Engineering Associates shall inspect said improvement and certify to the Borough of Edgewater, before final payment is made for same that said improvement has been constructed in accordance with the above referenced design.

3.     The Borough of Edgewater Clerk shall archive this Resolution in a manner consistent with the purpose of perpetually documenting governmental immunity in the event of any claim based upon the plan, design or construction of the improvement.

All council members present voted aye.  None opposed.  None abstained.

### RESOLUTION

18

2013-097

March 18, 2013

**INTRODUCED:** Councilman Doran
**SECOND:** Councilman Jordan

### 2013 CDBG Streetscape Undercliff Avenue

WHEREAS, N.J.S.A. 59:4-6 provides in pertinent part that neither the public entity nor a public employee is liable for an injury caused by the plan or design of public property or any improvement thereto where the plan or design was approved in advance of construction by the Borough Edgewater or a public employee exercising discretionary authority on its behalf or where such plan or design was prepared in conformity with standards previously approved by the Borough Edgewater; and

WHEREAS, the following improvement to public property has been designed by Neglia Engineering Associates; and

WHEREAS, the Borough of Edgewater wishes to record its approval of said design.

NOW, THEREFORE, BE IT RESOLVED by the Mayor and Council of the Borough of Edgewater as follows:

1.      Plans and specifications entitled "2013 CDBG Streetscape – Undercliff Avenue" and prepared by Neglia Engineering Associates dated February 2013 be, and hereby are, approved.

2.      Upon the completion of the improvements described herein above, Neglia Engineering Associates shall inspect said improvement and certify to the Borough of Edgewater, before final payment is made for same that said improvement has been constructed in accordance with the above referenced design.

3.      The Borough of Edgewater Clerk shall archive this Resolution in a manner consistent with the purpose of perpetually documenting governmental immunity in the event of any claim based upon the plan, design or construction of the improvement.

All council members present voted aye.  None opposed.  None abstained.

**LD BUSINESS**

.t this time, Mayor Delaney announced that he had made the following appointments to the Edgewater Shade ree Board:

| | |
|---|---|
| - Councilman Anthony Bartolomeo | 3 yrs. |
| -Robert Christiansen, Chairman of Zoning Board | 2 yrs |
| -Kevin O'Connor, Chairman of Planning Board | 2 yrs. |
| -Pat Caruso | 1 yr. |
| -Donnie Rae | 1 yr. |
| -Alt. No. 1      Sam DeNorchia, Jr. | 1 yr. |

Noted that there is a vacancy for Alternate #2.

**NEW BUSINESS:**

Mayor Delaney issued the following proclamations:

### *PROCLAMATION*

*TO DESIGNATE THE WEEK*
*OF*
*MAY 19-25, 2013*
*as*
*EMERGENCY MEDICAL SERVICES WEEK*

19

*WHEREAS, emergency medical services is a vital public service; and*

*WHEREAS the members of emergency medical service teams are ready to provide are ready to provide lifesaving care to those in need 24 hours a day, 7 days a week; and*

*WHEREASS access to quality emergency care dramatically improves the survival and recovery rate of those who experience sudden illness or injury; and*

*WHEREAS the emergency medical services system consists of emergency physicians, emergency nurses, emergency medical technicians, paramedics, firefighters, educators, administrators and others; and*

*WHEREAS  the members of the emergency medical services teams, whether career or volunteer, engage in thousands of hours of specialized training and continuing education to enhance their lifesaving skills; and*

*WHEREAS it is appropriate to recognize the value and the accomplishments of emergency medical services providers by designating Emergency Medical Services Week; and*

*NOW THEREFORE BE IT RESOLVED that, I, James F. Delaney, Mayor of the Borough of Edgewater in recognition of this event, do hereby proclaim:*

### THE WEEK OF MAY 19THRU MAY 25, 2013

*as*

### EMERGENCY MEDICAL SERVICES WEEK

_____

*JAMES F. DELANEY, Mayor*

**ATTEST:**

_____
**BARBARA RAE, RMC, CMC**
**Borough Clerk**

### BOROUGH OF EDGEWATER
### OFFICE OF THE MAYOR
### PROCLAMATION

### CELEBRATE ARBOR DAY

**WHEREAS** *in 1872, J. Sterling Morton proposed to the Nebraska Board of Agriculture that a special day be set aside for the planting of trees ; and*

**WHEREAS** *this holiday, called ARBOR DAY, was first observed with the planting of more than a million trees in Nebraska; and*

**WHEREAS** *Arbor Day is now observed throughout the nation and the world; and*

**WHEREAS** *trees can reduce the erosion of our precious topsoil by wind and water, cut heating and cooling costs, moderate the temperature, clean the air, produce life-giving oxygen, and provide habitat for wildlife; and*

**WHEREAS** *trees are a renewable resource giving us paper, wood for our homes, fuel for our fires, and beautify our community; and*

**WHEREAS,** *trees, wherever they are planted, are a source of joy and spiritual renewal.*

*NOW, THEREFORE I, James F. Delaney, Mayor of the Borough of Edgewater, do hereby proclaim April 26, 2013 as*

## ARBOR DAY

*to be celebrated In the Borough of Edgewater on April 26 , 2013, and I urge all citizens to celebrate Arbor Day and to support efforts to protect our trees and woodlands; and*

*FURTHER, I urge all citizens to plant trees to gladden the heart and promote the well-being of this and future generations.*

*DATE:* March 18, 2013

_____
**James F. Delaney,** *Mayor*

*ATTEST:*

_____
**BARBARA RAE, RMC, CMC,** Borough Clerk

**ADMINISTRATOR REPORTS**

Progress.

**BOROUGH CLERK**

No report.

**CLOSED SESSION DISCUSSION**

### RESOLUTION AUTHORIZING EXECUTIVE SESSION

March 18, 2013

**INTRODUCED:** Councilman Monte
**SECOND:** Councilman Jordan

WHEREAS, the Borough of Edgewater desires to meet in private and/or Executive Session to discuss matters that are permitted by the exceptions to the Open Public Meetings Act as indicated herein:

_____1. Any matter which, by express provision of Federal law or State statute or court rule shall be rendered confidential or excluded from discussion in public;

_____2. Any matter in which the release of information would impair a right to receive funds from the federal government;

_____3 Any material the disclosure of which constitutes an unwarranted invasion of individual privacy;

__XX__4. Any collective bargaining agreement, or the terms and conditions which are proposed for inclusion in any collective bargaining agreement, including the negotiation of terms and conditions with employees or representatives of employees of the public body.

_____5. Any matter involving the purchase, lease, or acquisition of real estate with public funds, the setting of a banking rates or investment of public funds, where it could adversely affect the public interest if discussion of such matters were disclosed;

_____6. Any tactics and techniques utilized in protecting the safety and property of the public provided that their disclosure could impair such protection. Any investigations of violations or possible violations of the law;

_____7. Any pending or anticipated litigation or contract negotiation in which the public

21

body is, or may become a party. Any matters falling within the attorney-client privilege to the extent that confidentiality is required in order for the attorney to exercise his ethical duties as a lawyer;

XX 8. Any matter involving the employment, appointment, termination of employment, terms and conditions of employment, evaluation of the performance of, promotion or disciplining of any specific prospective public officer or employee or current public officer or employee employed or appointed by the public body, unless all the individual employees or appointees whose rights could be adversely affected request in writing that such matter or matters be discussed at a public meeting.

9. Any deliberation of a public body occurring after a public hearing that may result in the imposition of a specific civil penalty upon the responding party or the suspension or loss of a license or permit belonging to the responding party as a result of an act or commission for which the responding party bears responsibility.

**NOW, THEREFORE, BE IT RESOLVED** that the Mayor and Council shall recess into private and/or Executive and Closed Session to discuss the aforementioned subject matter and the minutes of same may be disclosed at such time in the future as the GOVERNING BODY in it discretion may determine according to law.

On roll call the vote was as follows:

| | |
|---|---|
| Councilman Henwood | Absent |
| Councilman Doran | Yes |
| Councilman Monte | Yes |
| Councilman Vidal | Absent |
| Councilman Jordan | Yes |
| Councilman Bartolomeo | Yes |

The governing body returned from Closed Session.

**PRESENT ON ROLL CALL:** Councilman Doran, Councilman Monte, Councilman Jordan and Councilman Bartolomeo

**ALSO PRESENT:** Mayor Delaney, Administrator Gregory S. Franz, Borough Clerk Barbara Rae and Borough Attorney Philip Boggia.

**ABSENT:** Councilman Henwood and Councilman

## MOTION

March 18, 2013

**INTRODUCED:** Councilman Jordan
**SECOND:** Councilman Monte

Motion to adjourn.

On roll call the vote was as follows:

| | |
|---|---|
| Councilman Henwood | Absent |
| Councilman Doran | Yes |
| Councilman Monte | Yes |
| Councilman Vidal | Absent |
| Councilman Jordan | Yes |
| Councilman Bartolomeo | Yes |

Barbara Rae, RMC, CMC
Borough Clerk

**APPROVED:** April 15, 2013

22

# EXHIBIT "C"

2320666v1

MINUTES OF A REGULAR MEETING OF THE EDGEWATER MAYOR AND
COUNCIL HELD IN THE NANCY MERSE COUNCIL CHAMBERS, LOCATED AT 55
RIVER ROAD, EDGEWATER, COUNTY OF BERGEN, STATE OF NEW JERSEY ON
FEBRUARY 18, 2014

PRESIDING: Mayor James F. Delaney

PRESENT ON ROLL CALL: Councilman Henwood, Councilman Doran, Councilman Monte,
Councilman Vidal  and Councilman Bartolomeo

ALSO PRESENT:  Administrator Gregory S. Franz, and Attorney Philip Boggia

ABSENT:  Councilman Jordan and Borough Clerk Barbara Rae

Mayor Delaney read the Open Public Meetings Act Statement into the Record.

MOMENT OF SILENCE

Mayor Delaney remembered Police Chief Skidmore's mother.

SALUTE TO THE FLAG

Councilman Monte led the Pledge of Allegiance.

OPEN TO THE PUBLIC

Mayor Delaney opened the meeting to the public and the following were heard:

Marvin Donadic, 233 Columbus Place, Cliffside Park:

- Referenced  his appearance at the January meeting when he spoke about a handicapped
  parking issue at the Commons.
- Mayor Delaney said that he will speak to the Police Chief as soon as he returns.
- Frustrated at waiting for information.
- Believes Police should issue a ticket and let the Court decide.

Mary Hogan, 606 Undercliff Avenue:

- Referenced discussions regarding the review of the Master Plan.
- Had questions regarding the attorneys for the Governing Body and the Planning Board.
- Asked why the Borough's experts are being billed to iPark.
- Spoke about what she believes is an unhealthy atmosphere at the meetings and in the
  Borough.
- Referenced comments made by Councilman Henwood at the last meeting.
- Referenced and quoted from an email from Borough Planner dated December 5th to
  Administrator Franz regarding the Edgewater Re-exam.
- Believes there is a very poor negative atmosphere in the Borough.

At this time, Councilman Henwood clarified the comments he made at the last meeting.

Valory Bardinas, 16 Hudson Terrace:

- Complimented the DPW for the fantastic snow removal job.
- Thanked Administrator for messages noting that she appreciates the information.
- Questioned the number of signs around town.
- Also spoke about comments made and nearby residents' concerns about traffic and taxes.
- Spoke about lack of back and access roads.

Aries Hermandez, Fitness Factory:

- Spoke about hosting a basketball program at the Community Center.

1

No one else wished to be heard therefore the Mayor closed the meeting to the public.

**CONFERENCE**

**Budget Discussions:**

1. **Health Department**

   Patti Dalton, Borough Nurse and Registrar Lynn Minetti reviewed the budget.

   Nurse Dalton spoke about the cost for the County Health Services.   Spoke about lack of funding for Community programs, equipment issues and mandated health screenings.

   Administrator Franz asked what the Nurse's Office needs for the Summer Camp Program.   Discussion about electronic health records and the need for duplication.  Discussion about part-time nurse.

2. **Building Department**

   John Candelmo, Construction Official

   Reviewed budget and spoke about need for vehicle. Discussion about vehicle.  Mr. Candelmo responded to Administrator Franz' suggestion about a possible hybrid vehicle.  Further discussion.

Fire Prevention and First Aid Squad Personnel unable to attend tonight.  Budget discussion had originally been scheduled for February 3rd.   That meeting was cancelled due to the snow storm. Administrator Franz to meet with Fire Prevention and First Aid Squad personnel and will then pass the information on to the Governing Body.

**MOTION**

February 18, 2014

**INTRODUCED:**  Councilman Doran
**SECOND:**   Councilman Monte

Motion to carry the minutes of January 27, 2014.

On roll call the vote was as follows;

| | |
|---|---|
| Councilman Henwood | Yes |
| Councilman Doran | Yes |
| Councilman Monte | Yes |
| Councilman Vidal | Abstain |
| Councilman Jordan | Absent |
| Councilman Bartolomeo | Yes |

**RECEIPT OF BIDS - none**

**ADOPTION/PUBLIC HEARING OF ORDINANCES – none**

**COMMUNICATIONS/PETITIONS  - none**

**INTRODUCTION OF ORDINANCES**

2

**1.1503-2014**   An Ordinance of the Borough of Edgewater, County of Bergen, State of New Jersey, Amending, Supplementing and Reaffirming the Development Project Redevelopment Plan for the iPark Property

The Clerk read Ordinance 1503-2014 by title only as follows:

BOROUGH OF EDGEWATER
ORDINANCE NO. 1503-2014

AN ORDINANCE OF THE BOROUGH OF EDGEWATER, COUNTY OF BERGEN, STATE OF NEW JERSEY, AMENDING, SUPPLEMENTING AND REAFFIRMING THE DEVELOPMENT PROJECT REDEVELOPMENT PLAN FOR THE i PARK PROPERTY

RESOLUTION

February 18, 2014

**INTRODUCED:** Councilman Doran
**SECONDED:** Councilman Bartolomeo

**WHEREAS AN ORDINANCE OF THE BOROUGH OF EDGEWATER, COUNTY OF BERGEN, NEW JERSEY AMENDING, SUPPLEMENTING AND REAFFIRMING THE DEVELOPMENT PROJECT REDEVELOPMENT PLAN FOR THE Ipark PROPERTY** was introduced on February 18, 2014 and passes its first reading and will be considered for final passage and public hearing on April 21, 2014 at 7:00 p.m. at the Edgewater Municipal Building, 55 River Road, Edgewater, New Jersey.

Discussion:

Councilman Henwood spoke about the changes and impact. Mayor Delaney also reviewed some of the changes.

On roll call the vote was as follows:

| | |
|---|---|
| Councilman Henwood | Yes |
| Councilman Doran | Yes |
| Councilman Monte | Yes |
| Councilman Vidal | Yes |
| Councilman Jordan | Absent |
| Councilman Bartolomeo | Yes |

**1.1504-2014**   An Ordinance Amending and Supplementing Chapter 282, "Parking Lots," and Chapter 293, "Parks and Recreation Areas," To Update Parking Restrictions for Municipal Recreation Areas ande Historic Borough Hall

The Clerk read Ordinance 1504-2014 by title only as follows:

**ORDINANCE NO. 1504-2014**

**AN ORDINANCE AMENDING AND SUPPLEMENTING CHAPTER 282, "PARKING LOTS," AND CHAPTER 293, "PARKS AND RECREATION AREAS," TO UPDATE PARKING RESTRICTIONS FOR MUNICIPAL RECREATION AREAS AND HISTORIC BOROUGH HALL**

3

RESOLUTION

February 18, 2014

**INTRODUCED:** Councilman Monte
**SECONDED:** Councilman Vidal

**WHEREAS AN ORDINANCE AMENDING AND SUPPLEMENTING CHAPTER 282, 'PARKING LOTS," AND CHAPTER 293, "PARKS AND RECREATION AREAS," TO UPDATE PARKING RESTRICTIONS FOR MUNICIPAL RECREATION AREAS AND HISTORIC BOROUGH HALL** introduced on February 18, 2014, and passes its first reading and will be considered for final passage and public hearing on March 18, 2014 at 7:00 pm at the Edgewater Municipal Building, 55 River Road, Edgewater, New Jersey.

Discussion:

Mayor Delaney reviewed change.

On roll call the vote was as follows:

| | |
|---|---|
| Councilman Henwood | Yes |
| Councilman Doran | Yes |
| Councilman Monte | Yes |
| Councilman Vidal | Yes |
| Councilman Jordan | Absent |
| Councilman Bartolomeo | Yes |

## COMMITTEE/COUNCIL LIAISON REPORTS

**Councilman Henwood -** Thanked the DPW for its continuing hard work during a difficult winter.

**Councilman Doran** – No report.

**Councilman Monte** – No report.

**Councilman Vidal** – Spoke about Munidex and updating software.  Will be scheduling meetings to review sub accounts.  Councilman Henwood spoke about sub account spending.  Discussion. included easy to read reports.

**Mayor Delaney** –All commended the DPW for all its hard work with the snow removal.

## RESOLUTIONS

A motion to approve Resolutions 2014-051 to 2014-062 was made by Councilman Vidal and seconded by Councilman Bartolomeo.

On roll call the vote was as follows:

| | |
|---|---|
| Councilman Henwood | Yes |
| Councilman Doran | Yes |
| Councilman Monte | Yes |
| Councilman Vidal | Yes |
| Councilman Jordan | Absent |
| Councilman Bartolomeo | Yes |

RESOLUTION
2014-051

February 18, 2014

4

**INTRODUCED:** Councilman Vidal
**SECOND:** Councilman Bartolomeo

**WHEREAS,** the Borough of Edgewater has received a request from Sergeant Steven Tibus to be paid for ninety (90) hours of compensation time that he has accumulated in his comp time bank; and

**WHEREAS,** the hourly rate to be paid to Sergeant Tibus shall be $68.91 for a total amount of

$6,201.90; and

**WHEREAS, I, Joseph Iannaconi, Jr.,** the Chief Financial Officer, hereby certify that funds shall be made available for this purpose; under line item for Salaries & Wages:

_____

JOSEPH IANNACONI, Jr.

**NOW, THEREFORE BE IT RESOLVED** by the Mayor and Council that Sergeant Tibus' request to be paid for ninety (90) hours of his banked compensatory time is hereby granted at the total amount not to exceed $6,201.90 reducing his comp bank to 8.25 hours as per the Police Chief's memo dated January 24, 2014.

All council members present voted aye.  None opposed.  None abstained.

## RESOLUTION
## 2014-052

February 18, 2014

**INTRODUCED:** Councilman Vidal
**SECOND:** Councilman Bartolomeo

**WHEREAS** municipalities are required to annually reappoint all school crossing guard employees in

Accordance with N.J.S.A.40A:9-154.1 and under Borough Ordinance No. 71-54 ; and

**NOW THEREFORE BE IT RESOLVED** by the Mayor and Council that the following individuals are reappointed to serve in the position of School Crossing Guards in the Borough of Edgewater during the school year:

| | |
|---|---|
| Susan Laughlin | Barbara Wenger |
| Amy Sandnes | Theresa Borrello |
| Tania Quinton | Carridad Chacon |
| Phyllis Reilly | Celeste Wroldsen |
| Odette Sader | Yusef Klein |
| Dawn Doherty | Lisa Desantis |
| Patty Faten Masri | Angela DeFries |
| Cathy Ring | Virginia Pastorino |
| Loretta Wenger | Ken DePaul |
| Preksha Patel | June Palladino |
| Loretta Tampori | Nora Fedorow |

5

Kristina Prifti                                      Nancy Vereen

                                                     Clare Frank

All council members present voted aye.  None opposed.  None abstained.

## RESOLUTION
## 2014-053
                                                February 18, 2014

**INTRODUCED:**  Councilman Vidal
**SECOND:**  Councilman Bartolomeo

**WHEREAS,** the Borough of Edgewater had created the position of Special Law Enforcement
Officer as authorized by Borough Ordinance No. 1317-2005; and

**WHEREAS,** Linda Flores, Kevin Milligan, Ivan Cecilio, Justin Bursztyn and Cheryl Armstrong
have been serving in the position of Special Law Enforcement Officers; and

**WHEREAS,** under N.J.S.A.14-146.14, Special Law Enforcement Officers may be appointed for
terms not to exceed one year; and

**NOW, THEREFORE BE IT RESOLVED** by the Governing Body that Linda Flores, Kevin
Milligan, Ivan Cicillo and Justin Bursztyn, are hereby re-appointed to serve in the positions of
Special Law Enforcement Officer for a period of one year; and

**BE IT FURTHER RESOLVED** said appointments are part-time positions, which shall not
exceed 19 hours per week, at an hourly rate as set forth in the current salary ordinance.

All council members present voted aye.  None opposed.  None abstained.

## RESOLUTION
## 2014-054
                                                February 18, 2014

**INTRODUCED:**  Councilman Vidal
**SECOND:**  Councilman Bartolomeo

**WHEREAS** Sunshine State Certificates IV had purchased tax sale certificate # 120992 2011
on November 28, 2012 for property known as 1255 River Road, Block Lot Qualifier
0002500001; and

**WHEREAS,** the tax sale certificate to be redeemed for $28,214.06 is effective through
February 4, 2014; and

**WHEREAS,** the premium amount paid is $10,100.00; and

**NOW THEREFORE BE IT RESOLVED** by the Mayor and Council that the Tax Collector/

Treasurer is authorized to issue a refund check drawn to the current account at T.D.

6

Bank in the amount of Thirty Eight Thousand Three Hundred Fourteen Dollars and six cents ($38,314.06) payable to:

SUNSHINE STATE CERTIFICATES IV

7900 Miami Lakes Drive West

Miami Lakes, Fl  33016

All council members present voted aye.  None opposed.  None abstained.

**RESOLUTION
2014-055**

February 18, 2014

**INTRODUCED:**  Councilman Vidal
**SECOND:**  Councilman Bartolomeo

**RESOLUTION SUPPORTING THE GOVERNOR'S COUNCIL ON ALCOHOLISM AND DRUG ABUSE FISCAL GRANT CYCLE JULY 2014-JUNE 2019**

**WHEREAS** the Governor's Council on Alcoholism and Drug Abuse established the Municipal Alliances for the Prevention of Alcoholism and Drug Abuse in 1989 to educate and engage residents, local government and law enforcement officials, schools, nonprofit organizations, the faith community , parents, youth and other allies in efforts to prevent alcoholism and drug abuse in communities throughout New Jersey

**WHEREAS** the Borough Council of the Borough of Edgewater, County of Bergen, State of New Jersey recognizes that the abuse of alcohol and drugs is a serious problem in our society amongst persons of all ages; and therefore has an established Municipal Alliance Committee; and

**WHEREAS** the Borough Council further recognizes that it is incumbent upon not only public officials but upon the entire community to take action to prevent such abuses in our community; and

**WHEREAS** the Borough Council has applied for funding to the Governor's Council on Alcoholism and Drug Abuse through the County of Bergen; and

**NOW, THEREFORE BE IT RESOLVED** by the Borough of Edgewater, County of Bergen, and State of New Jersey hereby recognizes the following:

1.   The Borough Council does hereby authorize submission of a strategic plan for the Edgewater Municipal Alliance grant for Fiscal Year 2014 in the amount of :

| | |
|---|---|
| DEDR | $9,876.00 |
| CASH MATCH | $2,469.00 |
| IN-KIND | $7,407.00 |

7

2. The Borough Council acknowledges the terms and conditions for administering the Municipal Alliance grant, including the administrative compliance and audit requirements.

APPROVED:  _____

**JAMES F. DELANEY**, Mayor

All council members present voted aye.  None opposed.  None abstained.

**RESOLUTION
2014-056**

February 18, 2014

**INTRODUCED:**  Councilman Vidal
**SECOND:**  Councilman Bartolomeo

Resolution 2014-056, Salaries & Wages, is attached to the end of these minutes.

All council members present voted aye.  None opposed.  None abstained.

**RESOLUTION
2014-057**

February 18, 2014

**INTRODUCED:**  Councilman Vidal
**SECOND:**  Councilman Bartolomeo

Resolution 2014-057, Salaries & Wages, is attached to the end of these minutes.

All council members present voted aye.  None opposed.  None abstained.

**RESOLUTION
2014-058**

February 18, 2014

**INTRODUCED:**  Councilman Vidal
**SECOND:**  Councilman Bartolomeo

Resolution 2014-058, Services & Supplies, is attached to the end of these minutes.

All council members present voted aye.  None opposed.  None abstained.

**RESOLUTION
2014-059**

February 18, 2014

**INTRODUCED:**  Councilman Vidal
**SECOND:**  Councilman Bartolomeo

8

WHEREAS the Mayor and Council have received a request from Sharon Carroll, requesting use of the Senior Citizen Bus and driver for transportation to the Paterson Museum and Great Falls and returning to Edgewater at 2:30p.m.; and

WHEREAS said trip will be held on Wednesday, April 16, 2014; and

WHEREAS participants will depart from the Edgewater Community Center at 9:00 a.m. for direct drop off at the Paterson Museum and Great Falls and return trip pick up for transportation to the the Edgewater Community Center.

NOW THEREFORE BE IT RESOLVED by the Mayor and Council that permission is hereby granted to Sharon Carroll's request for use of the Senior Citizen Bus and driver upon availability on the above listed date; and

BE IT FURTHER RESOLVED by the Mayor and Council that if for some reason the trip needs to be rescheduled, permission is hereby granted for the use of the bus based on availability.

All council members present voted aye. None opposed. None abstained.

## RESOLUTION
## 2014-060
February 18, 2014

INTRODUCED: Councilman Vidal
SECOND: Councilman Bartolomeo

HE  WHEREAS the Edgewater Recreation Department is in need of additional help; and

WHEREAS Jaber Jaber has made application to the Borough Recreation Department for a part time position and was interviewed by the Borough Administrator and the Recreation Leader; and

NOW THEREFORE BE IT RESOLVED by the Mayor and Council that Jaber Jaber is hereby appointed to the Edgewater Recreation Department as a part-time employee at a salary in accordance with the current salary ordinance; and

BE IT FURTHER RESOLVED that said position does not include any medical benefits.

All council members present voted aye. None opposed. None abstained.

## RESOLUTION
## 2014-061
February 18, 2014

INTRODUCED: Councilman Vidal

SECOND: Councilman Bartolomeo

WHEREAS there are outstanding checks in the Public Assistance Trust Fund II Account in the amount of $1,866.00; and

NOW THEREFORE BE IT RESOLVED by the Governing Body that these outstanding checks are hereby cancelled.

All council members present voted aye. None opposed. None abstained.

9

**RESOLUTION**
**2014-062**

February 18, 2014

**INTRODUCED:** Councilman Vidal

**SECOND:** Councilman Bartolomeo

**WHEREAS** on Sunday, February 8, 2014, Neglia Engineering Associates was called to a sink hole on Orchard Street adjacent to the George Washington School bus zone; and

**WHEREAS** upon consultation with both the Department of Public Works and Neglia Engineering Associates it was determined the sink hole posed a threat to the health and safety of residents; and

**WHEREAS** Neglia Engineering Associates declared an emergency in compliance with New Jersey State Statute N.J.A.C. 5:34-1 et seq. and N.J.S.A. 40A:11-1; and

**WHEREAS** Gotthold Paving of Edgewater, New Jersey 07020 was consulted and hired to excavate to determine the cause of the sink hold and make the necessary repair as per N.J.S.A. 40A: 11-1, et seq; and

**NOW THEREFORE BE IT RESOLVED** by the Edgewater Mayor and Council that Gotthold Paving of Edgewater New Jersey 07020 has been authorized to perform said emergent repair at the provided cost estimate of $5,000 to $7,000; and

**BE IT FURTHER RESOLVED** that I, Joseph Iannaconi, Jr., Chief Financial Officer, have certified that funds are available in the operating budget under Account No. 26-2902-275 – Sewer Maintenance:

_____
   **JOSEPH IANNACONI, JR., C.F.O.**

At this time, Councilman Henwood spoke about the request to transfer 3 units of affordable housing from the - to 38 COAH. Spoke about the pending sale and deed restriction. Borough Attorney Boggia also spoke about the request and the affordable housing obligation. He also spoke about additional steps that have to be taken. .

After further discussion, the following motion was adopted:

**MOTION**

February 18, 2014

**INTRODUCED:** Councilman Henwood

**SECOND:** Councilman Bartolomeo

A motion from Councilman Henwood for the transfer of 3 units of affordable housing from the St. Moritz to 38 COAH and the motion is in support by the Governing Body of lifting the deed restriction at the St. Moritz for 3 units of affordable housing to transfer those 3 units to 38 COAH.

Discussion:

Borough Attorney Boggia replied to Ms. Bardinas' comments about the item not being listed on the Agenda.

On roll call the vote was as follows:

| | |
|---|---|
| Councilman Henwood | Yes |
| Councilman Doran | Abstain |
| Councilman Monte | Abstain |
| Councilman Vidal | Yes |
| Councilman Jordan | Absent |
| Councilman Bartolomeo | Yes |

10

**OLD BUSINESS**

None.

**NEW BUSINESS**

None.

**ATTORNEY REPORT**

Will be discussing the Veterans Field Project and Riverside Construction and whether action should be taken.  Need to go into Closed.  Recommendation may be made to take formal action.

**ADMINISTRATOR**

Some items had been discussed at the Work Session.

**School Board Request re: Generator**

School Board requesting a contribution toward a generator for the George Washington School.

**River Road Sewer**

Spoke about 4 houses on River Road built several years ago. Driveway from River Road leading up to the homes is considered a drive way, not a road way.  Have had several sewer problems in the area and owners have been advised to correct the problems. Obviously there is a break.  Several notifications, including Board of Health notices, have been sent to the property owners.   If there is no response the Borough will execute the repairs and lien the property.  Discussion.  Council consensus is to give owners a final notice and, if necessary, immediately proceed with the repairs.

**Elected Officials' Training Seminars**

Next year will be available on line.

PSE&G will be installing underground power lines from Dempsey Avenue to north of Route 5.  Will be starting within the next week or two.   Explained temporary traffic changes.

MAYOR/COUNCIL REQUESTS

Mayor Delaney announced that he had appointed Adrian Rodriquez to the Library Board.  Ms. Rodriquez fills the unexpired 5 years term of T. Watson.  Term expires December 31, 2018.  Noted that Mayoral designee appointment will be filled at a later date.

Borough Clerk

New Process placing documents on line.  Meeting with vendor was postponed because of whether.

**CLOSED SESSION DISCUSSION**

1. Contract discussion re: Waterside Construction
2. Police Personnel
3. Terms Environmental and Neglia Engineering

**RESOLUTION AUTHORIZING EXECUTIVE SESSION**

11

February 18, 2014

INTRODUCED: Councilman Vidal

SECOND: Councilman Bartolomeo

**WHEREAS,** the Borough of Edgewater desires to meet in private and/or Executive Session to discuss matters that are permitted by the exceptions to the Open Public Meetings Act as indicated herein:

_____ L. Any matter which, by express provision of Federal law or State statute or court rule shall be rendered confidential or excluded from discussion in public;

_____ 2. Any matter in which the release of information would impair a right to receive funds from the federal government;

_____ 3. Any material the disclosure of which constitutes an unwarranted invasion of individual privacy;

__XX__ 4. Any collective bargaining agreement, or the terms and conditions which are proposed for inclusion in any collective bargaining agreement, including the negotiation of terms and conditions with employees or representatives of employees of the public body.

_____ 5. Any matter involving the purchase, lease, or acquisition of real estate with public funds, the setting of a banking rates or investment of public funds, where it could adversely affect the public interest if discussion of such matters were disclosed;

_____ 6. Any tactics and techniques utilized in protecting the safety and property of the public provided that their disclosure could impair such protection. Any investigations of violations or possible violations of the law;

__XX__ 7. Any pending or anticipated litigation or contract negotiation in which the public body is, or may become a party. Any matters falling within the attorney-client privilege to the extent that confidentiality is required in order for the attorney to exercise his ethical duties as a lawyer;

_____ 8. Any matter involving the employment, appointment, termination of employment, terms and conditions of employment, evaluation of the performance of, promotion or disciplining of any specific prospective public officer or employee or current public officer or employee employed or appointed by the public body, unless all the individual employees or appointees whose rights could be adversely affected request in writing that such matter or matters be discussed at a public meeting.

_____ 9. Any deliberation of a public body occurring after a public hearing that may result in the imposition of a specific civil penalty upon the responding party or the suspension or loss of a license or permit belonging to the responding party as a result of an act or commission for which the responding party bears responsibility.

**NOW, THEREFORE, BE IT RESOLVED** that the Mayor and Council shall recess into private and/or Executive and Closed Session to discuss the aforementioned subject matter and the minutes of same may be disclosed at such time in the future as the GOVERNING BODY in it discretion may determine according to law.

On roll call the vote was as follows:

12

| Councilman Henwood | Yes |
|---|---|
| Councilman Doran | Yes |
| Councilman Monte | Abstain |
| Councilman Vidal | Yes |
| Councilman Jordan | Absent |
| Councilman Bartolomeo | Yes |

The governing body returned from Closed Session.

**PRESENT ON ROLL CALL:** Councilman Henwood, Councilman Doran, Councilman Monte, Councilman Vidal and Councilman Bartolomeo

**ALSO PRESENT:** Mayor Delaney, Administrator Gregory S. Franz and Borough Attorney Philip Boggia.

**ABSENT:** Councilman Jordan and Borough Clerk Barbara Rae

## MOTION

February 18, 2014

**INTRODUCED:** Councilman Henwood
**SECOND:** Councilman Vidal

Motion to return to Open Session.

On roll call the vote was as follows:

| Councilman Henwood | Yes |
|---|---|
| Councilman Doran | Yes |
| Councilman Monte | Abstain |
| Councilman Vidal | Yes |
| Councilman Jordan | Absent |
| Councilman Bartolomeo | Yes |

Mayor Delaney noted that two resolutions will be voted on regarding the Ball field and the contract with Waterside Construction.

Borough Attorney Boggia spoke on the issue.

Administrator Franz then read Resolution 2014-064 in its entirety:

## RESOLUTION
## 2014-064

February 18, 2014

**INTRODUCED:** Councilman Henwood

**SECOND:** Councilman Vidal

13

WHEREAS TERMS Environmental Services, Inc., prepared a Summary Report dated February 5, 2014, setting forth the results of their investigation concerning the contaminated materials that was imported onto Veteran's Field by Waterside Construction, LLC; and

WHEREAS the Summary Report confirms that the soil samples taken at Veteran's Field have been validated by an independent testing lab selected by the contractor, Waterside Construction, LLC, and said test results have been provided to the contractor.  These test results have not been disputed by the contractor or the contractor's Licensed Site Remediation Professional; and

WHEREAS the Governing Body has authorized TERMS to prepare a Remedial Action Work Plan )RAW) which will be submitted to the New Jersey Department of Environmental Protection for approval in order to remediate the contaminated soil that was imported to Veteran's Field and said Work Plan is dated February 6, 2014; and

WHEREAS the remediation plan requires the excavation and removal of all previously identified improper soil as set forth in the Plan; and

NOW, THEREFORE BE IT RESOLVED that the Governing body hereby approves, endorses and authorizes the Remedial Action Work Plan prepared by TERMS Environmental dated February 6, 2014 which plan was summarized by TERMS in their letter dated February 5, 2014; and

BE IT FURTHER RESOLVED that the Governing Body shall implement the Remedial Action Work Plan upon approval from the New Jersey Department of Environmental Protection and Environmental Protection Agency, if applicable.

Discussion:

Councilman Henwood and Councilman Vidal spoke about the resolution.

Councilman Doran asked for and received a legal opinion prior to voting.  Borough Attorney Boggia saw no problem with Councilman Doran voting on this resolution.

On roll call the vote was as follows:

| | |
|---|---|
| Councilman Henwood | Yes |
| Councilman Doran | Yes |
| Councilman Monte | Yes |
| Councilman Vidal | Yes |
| Councilman Jordan | Absent |
| Councilman Bartolomeo | Yes |

Administrator Franz then read Resolution 2014-063 in its entirety:

## RESOLUTION
## 2014-063

February 18, 2014

INTRODUCED:  Councilman Vidal

SECOND:  Councilman Bartolomeo

WHEREAS the Borough of Edgewater, in accordance with the Local Public Contract Law, awarded a contract to Waterside Construction, LLC on June 18, 2012 by Resolution No. 2012-192, which project included remediation and renovations to Veteran's Field in accordance with the bid specifications; and

14

**WHEREAS** the site remediation included the removal and disposal of contaminated materials from the site in accordance with State and Federal regulations and the terms and conditions set forth in the Contract; and

**WHEREAS** pursuant to the terms of the Contract, the Contractor was obligated to import only certified clean fill or stone to the site from a quarry and/or crushed virgin rock; In addition, the contractor could use only certified clean top soil and sod from a clean approved source; and

**WHEREAS** the Borough retained the services of TERMS Environmental Services to act as their Licensed Site Remediation Professional (LSRP) to oversee the entire remediation project and to ensure that the Contractor complied with the terms and conditions of the Contract. Any fill brought to site was subject to the approval of the LSRP; and

**WHEREAS** by letter dated October 3, 2013, TERMS Environmental Services issued a letter to the Borough, advising that the Contractor had imported improper fill that contained high levels of PCB's onto Veteran's Field. As a result thereof, TERMS immediately closed the field until such time as they could complete an assessment of the field and develop a work plan to remove the fill. TERMS issued a follow-up letter dated October 30, 2013, confirming that improper fill was brought to Veteran's Field by the Contractor; and

**WHEREAS** meetings were held between the Borough representatives, TERMS and Waterside Construction to discuss the level of contamination and the steps that must be taken in order to remediate the site and remove the improper fill brought on to the site by the Contractor; and

**WHEREAS** meetings were held between the Borough representatives, TERMS and Waterside Construction to discuss the level of contamination and the steps that must be taken in order to remediate the site and remove the improper fill brought on to the site by the Contractor; and

**WHEREAS** by letter dated February 5, 2014, TERMS advised the Borough that all soil samples taken at the site had been validated by an independent testing lab selected by the Contractor, and further advised that approximately 25,000 cubic yards of improper fill must be removed from the site; and

**WHEREAS** after thorough deliberation and consideration, the Borough has determined that Waterside Construction had imported contaminated fill onto the site and such action constitutes a material breach of contract, and that Waterside Construction, LLC does not have the means nor qualifications under New Jersey law to remediate the site; and

**NOW, THEREFORE BE IT RESOLVED** that the Borough of Edgewater hereby declares Waterside Construction in DEFAULT of the Contract for violations of the terms and conditions of the Contract, and the Borough shall pursue all remedies available to them to hold the Contractor responsible for such breach and the Borough shall pursue the prompt completion of this project. Furthermore, the Borough will retain the Services of TERMS and Neglia Engineering during the period the Remedial Action Work Plan is implemented to remediate the soil contamination. At the conclusion of the Remedial Action Work Plan, the Borough will evaluate both the LSRP and the Engineer to determine whether they or other consultants will be retained to complete the renovations to Veteran's Field.

A copy of this Resolution shall be sent to Waterside Construction, LLC and Liberty Mutual Insurance Company, which company issued the Performance and Payout

Discussion:

Borough Attorney Boggia spoke on the issue. Councilman Henwood also spoke about the issue.

On roll call the vote was as follows:

Councilman Henwood          Yes

15

| Councilman Doran | Yes |
| Councilman Monte | Abstain |
| Councilman Vidal | Yes |
| Councilman Jordan | Absent |
| Councilman Bartolomeo | Yes |

**MOTION**

February 18, 2014

**INTRODUCED:** Councilman Henwood

**SECOND:** Councilman Vidal

Motion to adjourn.

On roll call the vote was as follows:

| Councilman Henwood | Yes |
| Councilman Doran | Yes |
| Councilman Monte | Yes |
| Councilman Vidal | Yes |
| Councilman Jordan | Absent |
| Councilman Bartolomeo | Yes |

Gregory S. Franz for
Barbara Rae, RMC, CMC

**APPROVED:** March 18, 2014

16