Michael E. Waller
William H. Hyatt, Jr.
Karyllan D. Mack
K&L Gates LLP
One Newark Center, Tenth Floor
Newark, New Jersey 07102
Tel:  (973) 848-4000
Attorneys for Defendant Alcoa Inc. and
Alcoa Domestic LLC, as successor in
interest to Defendant A.P. New Jersey, Inc.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| BOROUGH OF EDGEWATER,<br><br>Plaintiff,<br><br>v.<br><br>WATERSIDE CONSTRUCTION, LLC; 38 COAH, LLC; DAIBES BROTHERS, INC.; NORTH RIVER MEWS ASSOCIATES, LLC; FRED A. DAIBES; TERMS ENVIRONMENTAL SERVICES, INC.; ALUMINUM COMPANY OF AMERICA; A.P. NEW JERSEY, INC.; JOHN DOES 1-100; and ABC CORPORATIONS 1-100,<br><br>Defendants. | Civil Action No.: 2:14-CV-05060 (ES-MAH)<br><br>**ANSWER TO FIRST AMENDED COMPLAINT, AFFIRMATIVE DEFENSES, COUNTERCLAIMS, AND CROSSCLAIMS** |

Alcoa Inc. (formerly known as "Aluminum Company of America") and Alcoa Domestic LLC, as the successor in interest to A.P. New Jersey, Inc., (collectively "Alcoa") by their counsel K&L Gates LLP, answer the Plaintiff's First Amended Complaint as follows:

### THE PARTIES

1.      Inasmuch as Paragraph 1 contains allegations related to a party other than Alcoa, Alcoa can neither admit nor deny the allegations set forth in that Paragraph.

2.      Inasmuch as Paragraph 2 contains allegations related to a party other than Alcoa, Alcoa can neither admit nor deny the allegations set forth in that Paragraph.

3.      Inasmuch as Paragraph 3 contains allegations related to a party other than Alcoa, Alcoa can neither admit nor deny the allegations set forth in that Paragraph.

4.      Inasmuch as Paragraph 4 contains allegations related to a party other than Alcoa, Alcoa can neither admit nor deny the allegations set forth in that Paragraph.

5.      Inasmuch as Paragraph 5 contains allegations related to a party other than Alcoa, Alcoa can neither admit nor deny the allegations set forth in that Paragraph.

6.      Inasmuch as Paragraph 6 contains allegations related to a party other than Alcoa, Alcoa can neither admit nor deny the allegations set forth in that Paragraph.

7.      Inasmuch as Paragraph 7 contains allegations related to a party other than Alcoa, Alcoa can neither admit nor deny the allegations set forth in that Paragraph.

8.      Alcoa admits that Alcoa Inc. is a Pennsylvania corporation with offices at 201 Isabella Street, Pittsburgh, Pennsylvania 15212.  Alcoa denies the remaining allegations set forth in Paragraph 8.

9.      Alcoa denies the allegations set forth in Paragraph 9, but Alcoa admits that A.P. New Jersey, Inc. was a Delaware corporation that merged into Alcoa Domestic LLC, a wholly-owned subsidiary of Alcoa Inc., in 2010.

10.     Inasmuch as Paragraph 10 contains allegations related to a party other than Alcoa, Alcoa can neither admit nor deny the allegations set forth in that Paragraph.

11.     Inasmuch as Paragraph 11 contains allegations related to a party other than Alcoa, Alcoa can neither admit nor deny the allegations set forth in that Paragraph.

## JURISDICTION AND VENUE

12.     Alcoa can neither admit nor deny the allegations set forth in Paragraph 12, inasmuch as it makes legal conclusions to which Alcoa is not required to respond and which may vary from party to party.

13.     Alcoa can neither admit nor deny the allegations set forth in Paragraph 13, inasmuch as it makes legal conclusions to which Alcoa is not required to respond and which may vary from party to party.

14.     Alcoa can neither admit nor deny the allegations set forth in Paragraph 14, inasmuch as it makes legal conclusions to which Alcoa is not required to respond and which may vary from party to party.

15.     Alcoa objects to the allegations contained in Paragraph 15 to the extent that Paragraph states conclusions to which no responsive pleading is required.  Alcoa denies the remaining factual allegations of Paragraph 15 except to admit that Alcoa conducts business in the State of New Jersey.

## BACKGROUND

16.     Alcoa denies knowledge or information sufficient to form a belief as to the allegations contained in Paragraph 16.

17.     Inasmuch as Paragraph 17 contains allegations related to a party other than Alcoa, Alcoa can neither admit nor deny the allegations set forth in that Paragraph.

18.     Alcoa denies knowledge or information sufficient to form a belief as to the allegations contained in Paragraph 18.

19.     Alcoa denies knowledge or information sufficient to form a belief as to the allegations contained in Paragraph 19.

20.     Alcoa denies knowledge or information sufficient to form a belief as to the allegations contained in Paragraph 20.

21.     Alcoa denies knowledge or information sufficient to form a belief as to the allegations contained in Paragraph 21.

22.     Alcoa denies knowledge or information sufficient to form a belief as to the allegations contained in Paragraph 22.

23.     Inasmuch as Paragraph 23 contains allegations related to a party other than Alcoa, Alcoa can neither admit nor deny the allegations set forth in that Paragraph.

24.     Inasmuch as Paragraph 24 contains allegations related to a party other than Alcoa, Alcoa can neither admit nor deny the allegations set forth in that Paragraph.

25.     Inasmuch as Paragraph 25 contains allegations related to a party other than Alcoa, Alcoa can neither admit nor deny the allegations set forth in that Paragraph.

26.     Alcoa denies knowledge or information sufficient to form a belief as to the allegations contained in Paragraph 26.

27.     Alcoa denies knowledge or information sufficient to form a belief as to the allegations contained in Paragraph 27.

28.     Alcoa denies knowledge or information sufficient to form a belief as to the allegations contained in Paragraph 28.

29.     Inasmuch as Paragraph 29 contains allegations related to a party other than Alcoa, Alcoa can neither admit nor deny the allegations set forth in that Paragraph.

30.     Inasmuch as Paragraph 30 contains allegations related to a party other than Alcoa, Alcoa can neither admit nor deny the allegations set forth in that Paragraph.

31.     Inasmuch as Paragraph 31 contains allegations related to a party other than Alcoa, Alcoa can neither admit nor deny the allegations set forth in that Paragraph.

32.     Inasmuch as Paragraph 32 contains allegations related to a party other than Alcoa, Alcoa can neither admit nor deny the allegations set forth in that Paragraph.

33.     Alcoa denies knowledge or information sufficient to form a belief as to the allegations contained in Paragraph 33.

34.     Alcoa denies knowledge or information sufficient to form a belief as to the allegations contained in Paragraph 34.

35.     Inasmuch as Paragraph 35 contains allegations related to a party other than Alcoa, Alcoa can neither admit nor deny the allegations set forth in that Paragraph.

36.     Inasmuch as Paragraph 36 contains allegations related to a party other than Alcoa, Alcoa can neither admit nor deny the allegations set forth in that Paragraph.

37.     Inasmuch as Paragraph 37 contains allegations related to a party other than Alcoa, Alcoa can neither admit nor deny the allegations set forth in that Paragraph.

38.     Inasmuch as Paragraph 38 contains allegations related to a party other than Alcoa, Alcoa can neither admit nor deny the allegations set forth in that Paragraph.

39.     Inasmuch as Paragraph 39 contains allegations related to a party other than Alcoa, Alcoa can neither admit nor deny the allegations set forth in that Paragraph.

40.     Inasmuch as Paragraph 40 contains allegations related to a party other than Alcoa, Alcoa can neither admit nor deny the allegations set forth in that Paragraph.

41.     Inasmuch as Paragraph 41 contains allegations related to a party other than Alcoa, Alcoa can neither admit nor deny the allegations set forth in that Paragraph.

42.     Inasmuch as Paragraph 42 contains allegations related to a party other than Alcoa, Alcoa can neither admit nor deny the allegations set forth in that Paragraph.

43.     Inasmuch as Paragraph 43 contains allegations related to a party other than Alcoa, Alcoa can neither admit nor deny the allegations set forth in that Paragraph.

44.     Alcoa denies knowledge or information sufficient to form a belief as to the allegations contained in Paragraph 44.

45.     Alcoa denies knowledge or information sufficient to form a belief as to the allegations contained in Paragraph 45.

46.     Inasmuch as Paragraph 46 contains allegations related to a party other than Alcoa, Alcoa can neither admit nor deny the allegations set forth in that Paragraph.

47.     Inasmuch as Paragraph 47 contains allegations related to a party other than Alcoa, Alcoa can neither admit nor deny the allegations set forth in that Paragraph.

48.     Inasmuch as Paragraph 48 contains allegations related to a party other than Alcoa, Alcoa can neither admit nor deny the allegations set forth in that Paragraph.

49.     Inasmuch as Paragraph 49 contains allegations related to a party other than Alcoa, Alcoa can neither admit nor deny the allegations set forth in that Paragraph.

50.     Inasmuch as Paragraph 50 contains allegations related to a party other than Alcoa, Alcoa can neither admit nor deny the allegations set forth in that Paragraph.

51.     Inasmuch as Paragraph 51 contains allegations related to a party other than Alcoa, Alcoa can neither admit nor deny the allegations set forth in that Paragraph.

52.     Inasmuch as Paragraph 52 contains allegations related to a party other than Alcoa, Alcoa can neither admit nor deny the allegations set forth in that Paragraph.

53.    Inasmuch as Paragraph 53 contains allegations related to a party other than Alcoa, Alcoa can neither admit nor deny the allegations set forth in that Paragraph.

54.    Inasmuch as Paragraph 54 contains allegations related to a party other than Alcoa, Alcoa can neither admit nor deny the allegations set forth in that Paragraph.  Inasmuch as Paragraph 54 contains factual allegations related to Alcoa, Alcoa denies knowledge or information sufficient to form a belief as to the allegations contained in that Paragraph.

55.    Alcoa denies the allegations set forth in Paragraph 55, except Alcoa admits that at one time the site identified by Plaintiff as the "Alcoa Site" was owned by Alcoa Inc. and A.P. New Jersey, Inc. and was conveyed to North River Mews Associates, LLC in 1997.  Inasmuch as Paragraph 55 contains allegations related to a party other than Alcoa, Alcoa can neither admit nor deny the allegations set forth in that Paragraph.

56.    Alcoa denies the allegations set forth in Paragraph 56, except Alcoa admits that at one time the site identified by Plaintiff as the "Alcoa Site" was owned by Alcoa Inc. and A.P. New Jersey, Inc. and was conveyed to North River Mews Associates, LLC in 1997.  Inasmuch as Paragraph 56 contains allegations related to a party other than Alcoa, Alcoa can neither admit nor deny the allegations set forth in that Paragraph.

57.    Alcoa admits that NJDEP issued a Restricted Use No Further Action Letter on or about February 12, 2003.  Alcoa refers to the Restricted Use No Further Action Letter for the language therein and its exact meaning and effect.  Inasmuch as Paragraph 57 contains allegations related to a party other than Alcoa, Alcoa can neither admit nor deny the allegations set forth in that Paragraph.

58.    Alcoa refers to the Restricted Use No Further Action Letter for the language therein and its exact meaning and effect.

59.     Inasmuch as Paragraph 59 contains allegations related to a party other than Alcoa, Alcoa can neither admit nor deny the allegations set forth in that Paragraph.

60.     Inasmuch as Paragraph 60 contains allegations related to a party other than Alcoa, Alcoa can neither admit nor deny the allegations set forth in that Paragraph.

61.     Alcoa refers to the Deed Notice for the language therein and its exact meaning and effect.

62.     Alcoa admits that there was a building known as "Building 12" on the site identified by Plaintiff as the "Alcoa Site." Alcoa admits that Building 12 was constructed, in part, out of concrete.

63.     Alcoa refers to the Deed Notice for the language therein and its exact meaning and effect. Alcoa denies that the Deed Notice required Alcoa to submit written certification to NJDEP of the maintenance of such institutional and engineering controls and that no changes have occurred.

64.     Alcoa refers to the Deed Notice for the language therein and its exact meaning and effect.

65.     Alcoa refers to the Deed Notice for the language therein and its exact meaning and effect.

66.     Inasmuch as Paragraph 66 contains allegations related to a party other than Alcoa, Alcoa can neither admit nor deny the allegations set forth in that Paragraph.

67.     Inasmuch as Paragraph 67 contains allegations related to a party other than Alcoa, Alcoa can neither admit nor deny the allegations set forth in that Paragraph.

68.     Alcoa denies knowledge or information sufficient to form a belief as to the allegations contained in Paragraph 68.

69.     Inasmuch as Paragraph 69 contains allegations related to a party other than Alcoa, Alcoa can neither admit nor deny the allegations set forth in that Paragraph.

70.     Alcoa denies knowledge or information sufficient to form a belief as to the allegations contained in Paragraph 70.

71.     Inasmuch as Paragraph 71 contains allegations related to a party other than Alcoa, Alcoa can neither admit nor deny the allegations set forth in that Paragraph.  Inasmuch as Paragraph 71 contains allegations related to Alcoa, Alcoa denies knowledge or information sufficient to form a belief as to the allegations contained in that Paragraph.

72.     Inasmuch as Paragraph 72 contains allegations related to a party other than Alcoa, Alcoa can neither admit nor deny the allegations set forth in that Paragraph.  Inasmuch as Paragraph 72 contains allegations related to Alcoa, Alcoa denies knowledge or information sufficient to form a belief as to the allegations contained in that Paragraph.

73.     Inasmuch as Paragraph 73 contains allegations related to a party other than Alcoa, Alcoa can neither admit nor deny the allegations set forth in that Paragraph.  Inasmuch as Paragraph 73 contains allegations related to Alcoa, Alcoa denies knowledge or information sufficient to form a belief as to the allegations contained in that Paragraph.

74.     Inasmuch as Paragraph 74 contains allegations related to a party other than Alcoa, Alcoa can neither admit nor deny the allegations set forth in that Paragraph.

75.     Inasmuch as Paragraph 75 contains allegations related to a party other than Alcoa, Alcoa can neither admit nor deny the allegations set forth in that Paragraph.

76.     Inasmuch as Paragraph 76 contains allegations related to a party other than Alcoa, Alcoa can neither admit nor deny the allegations set forth in that Paragraph.

77.    Inasmuch as Paragraph 77 contains allegations related to a party other than Alcoa, Alcoa can neither admit nor deny the allegations set forth in that Paragraph.

78.    Inasmuch as Paragraph 78 contains allegations related to a party other than Alcoa, Alcoa can neither admit nor deny the allegations set forth in that Paragraph.

79.    Inasmuch as Paragraph 79 contains allegations related to a party other than Alcoa, Alcoa can neither admit nor deny the allegations set forth in that Paragraph.

80.    Inasmuch as Paragraph 80 contains allegations related to a party other than Alcoa, Alcoa can neither admit nor deny the allegations set forth in that Paragraph.

81.    Inasmuch as Paragraph 81 contains allegations related to a party other than Alcoa, Alcoa can neither admit nor deny the allegations set forth in that Paragraph.

### COUNT I
### Contribution under the Spill Act
### (as to Waterside, Fred Daibes, Daibes Brothers, 38 COAH, North River, ALCOA, TERMS, A.P., John Does 1-100 and ABC Corporations 1-100)

82.    Alcoa repeats and re-alleges with the same force and effect as if set forth here in full its answers to each and every allegation contained in each paragraph incorporated by reference in Paragraph 82 of the First Amended Complaint.

83.    Alcoa refers to N.J.S.A. § 58:10-23.11f(a)(2) for the language therein and its exact meaning and effect.

84.    Alcoa can neither admit nor deny the allegations in Paragraph 84 inasmuch as it makes legal conclusions to which Alcoa is not required to respond and which may vary from party to party.

85.    Inasmuch as Paragraph 85 contains allegations related to a party other than Alcoa, Alcoa can neither admit nor deny the allegations set forth in that Paragraph.

86.     Inasmuch as Paragraph 86 contains allegations related to a party other than Alcoa, Alcoa can neither admit nor deny the allegations set forth in that Paragraph.

87.     Inasmuch as Paragraph 87 contains allegations related to a party other than Alcoa, Alcoa can neither admit nor deny the allegations set forth in that Paragraph.

88.     Inasmuch as Paragraph 88 contains allegations related to a party other than Alcoa, Alcoa can neither admit nor deny the allegations set forth in that Paragraph.

89.     Inasmuch as Paragraph 89 contains allegations related to a party other than Alcoa, Alcoa can neither admit nor deny the allegations set forth in that Paragraph.

90.     Alcoa objects to the allegations contained in Paragraph 90 as that Paragraph states conclusions to which no responsive pleading is required. Alcoa Inc. admits that it is a corporation organized under the laws of the Commonwealth of Pennsylvania.

91.     Inasmuch as Paragraph 91 contains allegations related to a party other than Alcoa, Alcoa can neither admit nor deny the allegations set forth in that Paragraph.

92.     Alcoa objects to the allegations contained in Paragraph 92 as that Paragraph states conclusions to which no responsive pleading is required.  Alcoa admits that A.P. New Jersey, Inc. was a Delaware corporation that merged into Alcoa Domestic LLC, a wholly-owned subsidiary of Alcoa Inc., in 2010.

93.     Inasmuch as Paragraph 93 contains allegations related to a party other than Alcoa, Alcoa can neither admit nor deny the allegations set forth in that Paragraph.

94.     Inasmuch as Paragraph 94 contains allegations related to a party other than Alcoa, Alcoa can neither admit nor deny the allegations set forth in that Paragraph.

95.     Alcoa denies knowledge or information sufficient to form a belief as to the allegations contained in Paragraph 95 and refers to Spill Act Section 58:10-23.11b, N.J.S.A. § 58:10-23.11b for the language therein and its exact meaning and effect.

96.     Alcoa denies knowledge or information sufficient to form a belief as to the allegations contained in Paragraph 96 and refers to Spill Act Section 58:10-23.11b, N.J.S.A. § 58:10-23.11b for the language therein and its exact meaning and effect.

97.     Inasmuch as Paragraph 97 contains allegations related to a party other than Alcoa, Alcoa can neither admit nor deny the allegations set forth in that Paragraph.

98.     Inasmuch as Paragraph 98 contains allegations related to a party other than Alcoa, Alcoa can neither admit nor deny the allegations set forth in that Paragraph.

99.     Inasmuch as Paragraph 99 contains allegations related to a party other than Alcoa, Alcoa can neither admit nor deny the allegations set forth in that Paragraph.

100.    Inasmuch as Paragraph 100 contains allegations related to a party other than Alcoa, Alcoa can neither admit nor deny the allegations set forth in that Paragraph.

101.    Inasmuch as Paragraph 101 contains allegations related to a party other than Alcoa, Alcoa can neither admit nor deny the allegations set forth in that Paragraph.

102.    Alcoa denies that it is a "discharger" or "person in any way responsible for a discharged hazardous substance" within the meaning of Spill Act Section 58:10-23.11f(a)(2), N.J.S.A. § 58:10-23.11f(a)(2).

103.    Inasmuch as Paragraph 103 contains allegations related to a party other than Alcoa, Alcoa can neither admit nor deny the allegations set forth in that Paragraph.

104.    Alcoa denies that A.P. New Jersey, Inc. is a "discharger" or "person in any way responsible for a discharged hazardous substance" within the meaning of Spill Act Section 58:10-23.11f(a)(2), N.J.S.A. § 58:10-23.11f(a)(2).

105.    Inasmuch as Paragraph 105 contains allegations related to a party other than Alcoa, Alcoa can neither admit nor deny the allegations set forth in that Paragraph.

106.    Inasmuch as Paragraph 106 contains allegations related to a party other than Alcoa, Alcoa can neither admit nor deny the allegations set forth in that Paragraph.

107.    Alcoa denies knowledge or information sufficient to form a belief as to the allegations contained in Paragraph 107.

108.    Alcoa denies that Plaintiff is entitled to contribution from Alcoa Inc. or A.P. New Jersey, Inc. for investigation or remediation costs Plaintiff has incurred or will incur or for which Plaintiff is deemed liable.  Inasmuch as Paragraph 108 contains allegations related to a party other than Alcoa, Alcoa can neither admit nor deny the allegations set forth in that Paragraph. Nonetheless, Alcoa denies that Plaintiff is entitled to the relief described in that Paragraph.

## COUNT II
### Cost Recovery under CERCLA
**(as to Waterside, Fred Daibes, Daibes Brothers, 38 COAH, North River, ALCOA, A.P., TERMS, John Does 1-100 and ABC Corporations 1-100)**

109.    Alcoa repeats and re-alleges with the same force and effect as if set forth here in full its answers to each and every allegation contained in each paragraph incorporated by reference in Paragraph 109 of the First Amended Complaint.

110.    Alcoa refers to Section 107(a)(4)(B) of CERCLA, 42 U.S.C. § 9607(a)(4)(B), for the language therein and its exact meaning and effect.

111.    Alcoa refers to Sections 107(a)(1) and 107(a)(4)(B) of CERCLA, 42 U.S.C. § 9607(a)(1), (4)(B), for the language therein and its exact meaning and effect.

13

112.    Alcoa refers to Sections 107(a)(2) and 107(a)(4)(B) of CERCLA, 42 U.S.C. § 9607(a)(2), (4)(B), for the language therein and its exact meaning and effect.

113.    Alcoa refers to Sections 107(a)(3) and 107(a)(4)(B) of CERCLA, 42 U.S.C. § 9607(a)(3), (4)(B), for the language therein and its exact meaning and effect.

114.    Alcoa refers to Sections 107(a)(4) and 107(a)(4)(B) of CERCLA, 42 U.S.C. § 9607(a)(4), (4)(B), for the language therein and its exact meaning and effect.

115.    Alcoa can neither admit nor deny the allegations set forth in Paragraph 115, inasmuch as it makes legal conclusions to which Alcoa is not required to respond and which may vary from party to party.  Alcoa admits that Alcoa Inc. is a corporation organized under the laws of the Commonwealth of Pennsylvania.  Alcoa admits that A.P. New Jersey, Inc. was a Delaware corporation that merged into Alcoa Domestic LLC, a wholly-owned subsidiary of Alcoa Inc., in 2010.  Inasmuch as Paragraph 115 contains allegations related to a party other than Alcoa, Alcoa can neither admit nor deny the allegations set forth in that Paragraph.

116.    Alcoa denies that either Alcoa Inc. or A.P. New Jersey, Inc. are owners and/or "operators" of Veteran's Field within the meaning of Section 101(20) of CERCLA, 42 U.S.C. § 9601(20).  Inasmuch as Paragraph 116 contains allegations related to a party other than Alcoa, Alcoa can neither admit nor deny the allegations set forth in that Paragraph.

117.    Alcoa denies that either Alcoa Inc. or A.P. New Jersey, Inc. arranged, by contract, agreement, or otherwise, for disposal of hazardous substances at Veteran's Field.  Inasmuch as Paragraph 117 contains allegations related to a party other than Alcoa, Alcoa can neither admit nor deny the allegations set forth in that Paragraph.

118.    Inasmuch as Paragraph 118 contains allegations related to a party other than Alcoa, Alcoa can neither admit nor deny the allegations set forth in that Paragraph.

119.    Alcoa denies knowledge or information sufficient to form a belief as to the allegations contained in Paragraph 119.

120.    Alcoa denies knowledge or information sufficient to form a belief as to the allegations contained in Paragraph 120.

121.    Alcoa denies that either Alcoa Inc. or A.P. New Jersey, Inc. are liable under CERCLA as persons who at the time of disposal of any hazardous substance owned or operated any facility at which hazardous substances were disposed.

122.    Alcoa denies that either Alcoa Inc. or A.P. New Jersey, Inc. are liable under Section 107(a)(3) of CERCLA, 42 U.S.C. § 9607(a)(3), as persons who by contract, agreement, or otherwise arranged for the disposal or treatment of hazardous substances.

123.    Inasmuch as Paragraph 123 contains allegations related to a party other than Alcoa, Alcoa can neither admit nor deny the allegations set forth in that Paragraph.

124.    Alcoa denies that Plaintiff is entitled to recovery from Alcoa Inc. or A.P. New Jersey, Inc. for its costs of response incurred in connection with Veteran's Field. Inasmuch as Paragraph 124 contains allegations related to a party other than Alcoa, Alcoa can neither admit nor deny the allegations set forth in that Paragraph. Nonetheless, Alcoa denies that Plaintiff is entitled to the relief described in that Paragraph.

## COUNT III
### Breach of Contract (as to Waterside)

125.    Alcoa repeats and re-alleges with the same force and effect as if set forth here in full its answers to each and every allegation contained in each paragraph incorporated by reference in Paragraph 125 of the First Amended Complaint.

126.    Inasmuch as Paragraph 126 contains allegations related to a party other than Alcoa, Alcoa can neither admit nor deny the allegations set forth in that Paragraph.

15

127.    Inasmuch as Paragraph 127 contains allegations related to a party other than Alcoa, Alcoa can neither admit nor deny the allegations set forth in that Paragraph.

128.    Inasmuch as Paragraph 128 contains allegations related to a party other than Alcoa, Alcoa can neither admit nor deny the allegations set forth in that Paragraph.

129.    Inasmuch as Paragraph 129 contains allegations related to a party other than Alcoa, Alcoa can neither admit nor deny the allegations set forth in that Paragraph.

130.    Inasmuch as Paragraph 130 contains allegations related to a party other than Alcoa, Alcoa can neither admit nor deny the allegations set forth in that Paragraph.

131.    Inasmuch as Paragraph 131 contains allegations related to a party other than Alcoa, Alcoa can neither admit nor deny the allegations set forth in that Paragraph.

132.    Inasmuch as Paragraph 132 contains allegations related to a party other than Alcoa, Alcoa can neither admit nor deny the allegations set forth in that Paragraph.

133.    Inasmuch as Paragraph 133 contains allegations related to a party other than Alcoa, Alcoa can neither admit nor deny the allegations set forth in that Paragraph.

134.    Inasmuch as Paragraph 134 contains allegations related to a party other than Alcoa, Alcoa can neither admit nor deny the allegations set forth in that Paragraph.

135.    Inasmuch as Paragraph 135 contains allegations related to a party other than Alcoa, Alcoa can neither admit nor deny the allegations set forth in that Paragraph.

136.    Inasmuch as Paragraph 136 contains allegations related to a party other than Alcoa, Alcoa can neither admit nor deny the allegations set forth in that Paragraph.

137.    Inasmuch as Paragraph 137 contains allegations related to a party other than Alcoa, Alcoa can neither admit nor deny the allegations set forth in that Paragraph.

138.    Inasmuch as Paragraph 138 contains allegations related to a party other than Alcoa, Alcoa can neither admit nor deny the allegations set forth in that Paragraph.

139.    Inasmuch as Paragraph 139 contains allegations related to a party other than Alcoa, Alcoa can neither admit nor deny the allegations set forth in that Paragraph.

140.    Inasmuch as Paragraph 140 contains allegations related to a party other than Alcoa, Alcoa can neither admit nor deny the allegations set forth in that Paragraph.

141.    Inasmuch as Paragraph 141 contains allegations related to a party other than Alcoa, Alcoa can neither admit nor deny the allegations set forth in that Paragraph.

142.    Inasmuch as Paragraph 142 contains allegations related to a party other than Alcoa, Alcoa can neither admit nor deny the allegations set forth in that Paragraph.

143.    Inasmuch as Paragraph 143 contains allegations related to a party other than Alcoa, Alcoa can neither admit nor deny the allegations set forth in that Paragraph.

144.    Inasmuch as Paragraph 144 contains allegations related to a party other than Alcoa, Alcoa can neither admit nor deny the allegations set forth in that Paragraph.

145.    Inasmuch as Paragraph 145 contains allegations related to a party other than Alcoa, Alcoa can neither admit nor deny the allegations set forth in that Paragraph.

146.    Inasmuch as Paragraph 146 contains allegations related to a party other than Alcoa, Alcoa can neither admit nor deny the allegations set forth in that Paragraph.

## COUNT IV
### Fraud (as to Waterside and Fred Daibes)

147.    Alcoa repeats and re-alleges with the same force and effect as if set forth here in full its answers to each and every allegation contained in each paragraph incorporated by reference in Paragraph 147 of the First Amended Complaint.

148.    Inasmuch as Paragraph 148 contains allegations related to a party other than Alcoa, Alcoa can neither admit nor deny the allegations set forth in that Paragraph.

149.    Inasmuch as Paragraph 149 contains allegations related to a party other than Alcoa, Alcoa can neither admit nor deny the allegations set forth in that Paragraph.

150.    Inasmuch as Paragraph 150 contains allegations related to a party other than Alcoa, Alcoa can neither admit nor deny the allegations set forth in that Paragraph.

151.    Inasmuch as Paragraph 151 contains allegations related to a party other than Alcoa, Alcoa can neither admit nor deny the allegations set forth in that Paragraph.

152.    Inasmuch as Paragraph 152 contains allegations related to a party other than Alcoa, Alcoa can neither admit nor deny the allegations set forth in that Paragraph.

153.    Inasmuch as Paragraph 153 contains allegations related to a party other than Alcoa, Alcoa can neither admit nor deny the allegations set forth in that Paragraph.

154.    Inasmuch as Paragraph 154 contains allegations related to a party other than Alcoa, Alcoa can neither admit nor deny the allegations set forth in that Paragraph.

155.    Inasmuch as Paragraph 155 contains allegations related to a party other than Alcoa, Alcoa can neither admit nor deny the allegations set forth in that Paragraph.

## COUNT V
### Negligence (as to Waterside)

156.    Alcoa repeats and re-alleges with the same force and effect as if set forth here in full its answers to each and every allegation contained in each paragraph incorporated by reference in Paragraph 156 of the First Amended Complaint.

157.    Inasmuch as Paragraph 157 contains allegations related to a party other than Alcoa, Alcoa can neither admit nor deny the allegations set forth in that Paragraph.

158.    Inasmuch as Paragraph 158 contains allegations related to a party other than Alcoa, Alcoa can neither admit nor deny the allegations set forth in that Paragraph.

159.    Inasmuch as Paragraph 159 contains allegations related to a party other than Alcoa, Alcoa can neither admit nor deny the allegations set forth in that Paragraph.

160.    Inasmuch as Paragraph 160 contains allegations related to a party other than Alcoa, Alcoa can neither admit nor deny the allegations set forth in that Paragraph.

161.    Inasmuch as Paragraph 161 contains allegations related to a party other than Alcoa, Alcoa can neither admit nor deny the allegations set forth in that Paragraph.

162.    Inasmuch as Paragraph 162 contains allegations related to a party other than Alcoa, Alcoa can neither admit nor deny the allegations set forth in that Paragraph.

## COUNT VI
### Unjust Enrichment (as to Waterside, ALCOA, A.P. and 38 COAH)

163.    Alcoa repeats and re-alleges with the same force and effect as if set forth here in full its answers to each and every allegation contained in each paragraph incorporated by reference in Paragraph 163 of the First Amended Complaint.

164.    Inasmuch as Paragraph 164 contains allegations related to a party other than Alcoa, Alcoa can neither admit nor deny the allegations set forth in that Paragraph.  Inasmuch as Paragraph 164 contains allegations related to Alcoa, Alcoa denies knowledge or information sufficient to form a belief as to the allegations contained in that Paragraph.

165.    Inasmuch as Paragraph 165 contains allegations related to a party other than Alcoa, Alcoa can neither admit nor deny the allegations set forth in that Paragraph.  Inasmuch as Paragraph 165 contains allegations related to Alcoa, Alcoa denies the allegations contained in that Paragraph.

166.   Alcoa denies knowledge or information sufficient to form a belief as to the allegations contained in Paragraph 166.

167.   Alcoa denies knowledge or information sufficient to form a belief as to the allegations contained in Paragraph 167.

168.   Alcoa can neither admit nor deny the allegations set forth in Paragraph 168, inasmuch as it makes legal conclusions to which Alcoa is not required to respond and which may vary from party to party.

169.   Alcoa object to the allegations contained in Paragraph 169 as that Paragraph states conclusions to which no responsive pleading is required.  Inasmuch as Paragraph 169 contains allegations related to a party other than Alcoa, Alcoa can neither admit nor deny the allegations set forth in that Paragraph.  Nonetheless, Alcoa denies that Plaintiff is entitled to the relief described in that Paragraph.

### COUNT VII
### Violations of the New Jersey Consumer Fraud Act (as to Waterside and Fred Daibes)

170.   Alcoa repeats and re-alleges with the same force and effect as if set forth here in full its answers to each and every allegation contained in each paragraph incorporated by reference in Paragraph 170 of the First Amended Complaint.

171.   Inasmuch as Paragraph 171 contains allegations related to a party other than Alcoa, Alcoa can neither admit nor deny the allegations set forth in that Paragraph.

172.   Inasmuch as Paragraph 172 contains allegations related to a party other than Alcoa, Alcoa can neither admit nor deny the allegations set forth in that Paragraph.

173.   Inasmuch as Paragraph 173 contains allegations related to a party other than Alcoa, Alcoa can neither admit nor deny the allegations set forth in that Paragraph.

174.     Inasmuch as Paragraph 174 contains allegations related to a party other than Alcoa, Alcoa can neither admit nor deny the allegations set forth in that Paragraph.

175.     Inasmuch as Paragraph 175 contains allegations related to a party other than Alcoa, Alcoa can neither admit nor deny the allegations set forth in that Paragraph.

176.     Inasmuch as Paragraph 176 contains allegations related to a party other than Alcoa, Alcoa can neither admit nor deny the allegations set forth in that Paragraph.

177.     Inasmuch as Paragraph 177 contains allegations related to a party other than Alcoa, Alcoa can neither admit nor deny the allegations set forth in that Paragraph.

178.     Inasmuch as Paragraph 178 contains allegations related to a party other than Alcoa, Alcoa can neither admit nor deny the allegations set forth in that Paragraph.

179.     Inasmuch as Paragraph 179 contains allegations related to a party other than Alcoa, Alcoa can neither admit nor deny the allegations set forth in that Paragraph.

180.     Inasmuch as Paragraph 180 contains allegations related to a party other than Alcoa, Alcoa can neither admit nor deny the allegations set forth in that Paragraph.

181.     Inasmuch as Paragraph 181 contains allegations related to a party other than Alcoa, Alcoa can neither admit nor deny the allegations set forth in that Paragraph.

182.     Inasmuch as Paragraph 182 contains allegations related to a party other than Alcoa, Alcoa can neither admit nor deny the allegations set forth in that Paragraph.

183.     Alcoa denies that contaminated fill materials imported to the Site came from the former Alcoa Site.  Inasmuch as Paragraph 183 contains allegations related to a party other than Alcoa, Alcoa can neither admit nor deny the allegations set forth in that Paragraph.

184.     Inasmuch as Paragraph 184 contains allegations related to a party other than Alcoa, Alcoa can neither admit nor deny the allegations set forth in that Paragraph.

185.    Inasmuch as Paragraph 185 contains allegations related to a party other than Alcoa, Alcoa can neither admit nor deny the allegations set forth in that Paragraph.

186.    Inasmuch as Paragraph 186 contains allegations related to a party other than Alcoa, Alcoa can neither admit nor deny the allegations set forth in that Paragraph.

187.    Inasmuch as Paragraph 187 contains allegations related to a party other than Alcoa, Alcoa can neither admit nor deny the allegations set forth in that Paragraph.

188.    Inasmuch as Paragraph 188 contains allegations related to a party other than Alcoa, Alcoa can neither admit nor deny the allegations set forth in that Paragraph.

189.    Inasmuch as Paragraph 189 contains allegations related to a party other than Alcoa, Alcoa can neither admit nor deny the allegations set forth in that Paragraph.

190.    Inasmuch as Paragraph 190 contains allegations related to a party other than Alcoa, Alcoa can neither admit nor deny the allegations set forth in that Paragraph.

191.    Inasmuch as Paragraph 191 contains allegations related to a party other than Alcoa, Alcoa can neither admit nor deny the allegations set forth in that Paragraph.

192.    Inasmuch as Paragraph 192 contains allegations related to a party other than Alcoa, Alcoa can neither admit nor deny the allegations set forth in that Paragraph.

193.    Inasmuch as Paragraph 193 contains allegations related to a party other than Alcoa, Alcoa can neither admit nor deny the allegations set forth in that Paragraph.

194.    Inasmuch as Paragraph 194 contains allegations related to a party other than Alcoa, Alcoa can neither admit nor deny the allegations set forth in that Paragraph.

## COUNT VIII
## Breach of Contract (as to TERMS)

195.    Alcoa repeats and re-alleges with the same force and effect as if set forth here in full its answers to each and every allegation contained in each paragraph incorporated by reference in Paragraph 195 of the First Amended Complaint.

196.    Inasmuch as Paragraph 196 contains allegations related to a party other than Alcoa, Alcoa can neither admit nor deny the allegations set forth in that Paragraph.

197.    Inasmuch as Paragraph 197 contains allegations related to a party other than Alcoa, Alcoa can neither admit nor deny the allegations set forth in that Paragraph.

198.    Inasmuch as Paragraph 198 contains allegations related to a party other than Alcoa, Alcoa can neither admit nor deny the allegations set forth in that Paragraph.

199.    Inasmuch as Paragraph 199 contains allegations related to a party other than Alcoa, Alcoa can neither admit nor deny the allegations set forth in that Paragraph.

200.    Inasmuch as Paragraph 200 contains allegations related to a party other than Alcoa, Alcoa can neither admit nor deny the allegations set forth in that Paragraph.

201.    Inasmuch as Paragraph 201 contains allegations related to a party other than Alcoa, Alcoa can neither admit nor deny the allegations set forth in that Paragraph.

202.    Inasmuch as Paragraph 202 contains allegations related to a party other than Alcoa, Alcoa can neither admit nor deny the allegations set forth in that Paragraph.

203.    Inasmuch as Paragraph 203 contains allegations related to a party other than Alcoa, Alcoa can neither admit nor deny the allegations set forth in that Paragraph.

204.    Inasmuch as Paragraph 204 contains allegations related to a party other than Alcoa, Alcoa can neither admit nor deny the allegations set forth in that Paragraph.

205.    Inasmuch as Paragraph 205 contains allegations related to a party other than Alcoa, Alcoa can neither admit nor deny the allegations set forth in that Paragraph.

206.    Inasmuch as Paragraph 206 contains allegations related to a party other than Alcoa, Alcoa can neither admit nor deny the allegations set forth in that Paragraph.

**COUNT IX**
**Negligence (as to TERMS)**

207.    Inasmuch as Paragraph 207 contains allegations related to a party other than Alcoa, Alcoa can neither admit nor deny the allegations set forth in that Paragraph.

208.    Inasmuch as Paragraph 208 contains allegations related to a party other than Alcoa, Alcoa can neither admit nor deny the allegations set forth in that Paragraph.

209.    Inasmuch as Paragraph 209 contains allegations related to a party other than Alcoa, Alcoa can neither admit nor deny the allegations set forth in that Paragraph.

210.    Inasmuch as Paragraph 210 contains allegations related to a party other than Alcoa, Alcoa can neither admit nor deny the allegations set forth in that Paragraph.  Alcoa objects to the allegations contained in Paragraph 210 as that Paragraph states conclusions to which no responsive pleading is required.  Nonetheless, Alcoa denies that Plaintiff is entitled to the relief described in that Paragraph.

## AFFIRMATIVE DEFENSES

### FIRST AFFIRMATIVE DEFENSE

Plaintiff's First Amended Complaint fails to state a claim upon which relief can be granted against Alcoa.

### SECOND AFFIRMATIVE DEFENSE

Plaintiff's claims are barred, in whole or in part, by reason of laches, estoppel, waiver, consent, unclean hands, res judicata, and/or other equitable defenses.

### THIRD AFFIRMATIVE DEFENSE

The applicable statute or statutes of limitations or other applicable law, rule, statute or regulation controlling or requiring the institution of suit within a certain period of time following its accrual, was not complied with by Plaintiff, for some or all of Plaintiff's alleged costs; accordingly, Plaintiff's claims are barred as a matter of law.

### FOURTH AFFIRMATIVE DEFENSE

The First Amended Complaint does not describe the claims made against Alcoa with sufficient particularity to determine what defenses may apply and Alcoa reserves the right to assert additional affirmative defenses as discovery progresses.  Alcoa adopts and incorporates herein all defenses raised by any other current Defendants and/or future Defendants or Third-Party Defendants, except to the extent that such defenses would shift liability to Alcoa.

### FIFTH AFFIRMATIVE DEFENSE

Alcoa has a complete defense to any liability under the Comprehensive Environmental Response Compensation and Liability Act, 42 U.S.C. § 9601 *et seq.* ("CERCLA") pursuant to CERCLA § 107(b)(3), 42 U.S.C. § 9607(b)(3), inasmuch as the alleged release or threatened release was caused solely by the acts or omissions of unrelated third parties who were not agents

25

or employees of Alcoa and with whom Alcoa had no contractual relationship; Alcoa exercised due care as to any alleged hazardous substances; and Alcoa took precautions against foreseeable third-party acts or omissions, and against the foreseeable consequences of such acts or omissions, within the meaning of CERCLA § 107(b), 42 U.S.C. § 9607(b).

### SIXTH AFFIRMATIVE DEFENSE

Plaintiff has no claim under CERCLA because Plaintiff has failed to establish a prima facie case against Alcoa.

### SEVENTH AFFIRMATIVE DEFENSE

Plaintiff has no claim under CERCLA because Alcoa and A.P. New Jersey, Inc. are not covered persons within the meaning of CERCLA.

### EIGHTH AFFIRMATIVE DEFENSE

"Hazardous substances," as defined in CERCLA § 101(14), 42 U.S.C. § 9601(14) were not released into the environment by Alcoa within the meaning of the word "release" as defined in CERCLA § 101(22), 42 U.S.C. § 9601(22).  Even if there were "hazardous substances," as defined in CERCLA § 101(14), 42 U.S.C. § 9601(14) released into the environment by Alcoa within the meaning of the word "release" as defined in CERCLA § 101(22), 42 U.S.C. § 9601(22), which Alcoa denies, the release did not affect the Veteran's Field site that is the subject of this Action.

### NINTH AFFIRMATIVE DEFENSE

The costs incurred or to be incurred by Plaintiff and which Plaintiff seeks to recover in this action are not recoverable to the extent that they are not necessary costs of response consistent with the National Contingency Plan.

### TENTH AFFIRMATIVE DEFENSE

Plaintiff has failed to allege or establish the required nexus between Alcoa and the Veteran's Field site that is the subject of this Action.

### ELEVENTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred to the extent that Plaintiff did not comply with the statutory and/or regulatory prerequisites necessary to bring a CERCLA action.

### TWELFTH AFFIRMATIVE DEFENSE

To the extent that any or all of the Defendants are found liable in this matter, joint and several liability is inappropriate because the harms are divisible and there are reasonable bases for apportionment of the harms suffered.

### THIRTEENTH AFFIRMATIVE DEFENSE

Plaintiff has no claim under the Spill Compensation and Control Act, N.J.S.A. § 58:10-23.11 *et seq.* ("Spill Act" or "Act") against Alcoa because neither Alcoa nor A.P. New Jersey, Inc. are dischargers and/or responsible persons within the meaning of the Act, and/or Plaintiff's damages, if any, are the result of conduct occurring prior to the effective date of the Spill Act.

### FOURTEENTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred to the extent that Plaintiff did not comply with the requirements and prerequisites of the Spill Act.

### FIFTEENTH AFFIRMATIVE DEFENSE

In the event that Plaintiff is entitled to contribution from Alcoa under the Spill Act, such relief is limited to "clean up and removal costs" as defined at N.J.S.A. § 58:10-23b.

## SIXTEENTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred by the statutory defenses to liability provided by the Spill Act.

## COUNTERCLAIM

Defendant Alcoa Inc. (formerly known as "Aluminum Company of America"), a Pennsylvania corporation having its principal place of business at 390 Park Avenue, New York, New York 10022-4608, and Alcoa Domestic LLC, a Delaware limited liability company having its principal place of business at 201 Isabella Street, Pittsburgh, Pennsylvania 15212-5858, as the successor in interest to Defendant A.P. New Jersey, Inc., (collectively "Alcoa") by their counsel K&L Gates LLP, by way of Counterclaim against the Plaintiff, Borough of Edgewater, say:

1.      This counterclaim arises under federal law, 42 U.S.C. § 9613(f).  The United States District Court has original jurisdiction over this counterclaim pursuant to 28 U.S.C. § 1331.

2.      This court has supplemental jurisdiction over Alcoa's state law counterclaims pursuant to 28 U.S.C. § 1367(a) because Alcoa's state law counterclaims are related to the same case or controversy as Alcoa's counterclaim for contribution under 42 U.S.C. § 9613(f).

3.      Plaintiff has consented to personal jurisdiction in this court by filing its First Amended Complaint.

4.      Plaintiff has consented to venue in this court by filing its First Amended Complaint.  Venue is also proper in this court pursuant to 42 U.S.C. § 9613(b), as the alleged release or damages occurred in this district.  Furthermore, a substantial part of the actions or omissions giving rise to this counterclaim occurred in this district.

5.      While continuing to deny the material allegations of the First Amended Complaint, Alcoa hereby demands indemnity and contribution pursuant to all applicable laws, including but not limited to, 42 U.S.C. § 9613(f), N.J.S.A. § 58:10-23.11 *et seq.*, N.J.S.A. § 2A:15-5.1 *et seq.* and/or N.J.S.A. § 2A:53A-1 *et seq.* from Plaintiff for a proportionate share of

costs, damages, or other loss or harm, if any, for which Alcoa may be held liable, or which it may in the future incur, related to the Veteran's Field site because, upon information and belief, materials requiring cleanup and removal or response action under state and federal environmental laws were present at the Veteran's Field site as a result of acts, omissions or other legal responsibility of others, including Plaintiff, its employees, agents or affiliates.

## CROSSCLAIMS

Defendant Alcoa Inc. (formerly known as "Aluminum Company of America"), a Pennsylvania corporation having its principal place of business at 390 Park Avenue, New York, New York 10022-4608, and Alcoa Domestic LLC, a Delaware limited liability company having its principal place of business at 201 Isabella Street, Pittsburgh, Pennsylvania 15212-5858, as the successor in interest to Defendant A.P. New Jersey, Inc., (collectively "Alcoa") by their counsel K&L Gates LLP, by way of Crossclaim against the Defendants, Waterside Construction, LLC ("Waterside"), 38 COAH, LLC ("38 COAH"), Daibes Brothers, Inc. ("Daibes Brothers"), North River Mews Associates, LLC ("North River"), Fred A. Daibes ("Daibes"), TERMS Environmental Services, Inc. ("TERMS"), John Does 1-100, and ABC Corporations 1-100, say:

## JURISDICTION AND VENUE

1.      These crossclaims arise under federal law, 42 U.S.C. § 9613(f).  The United States District Court has original jurisdiction over these crossclaims pursuant to 28 U.S.C. § 1331.

2.      This court has supplemental jurisdiction over Alcoa's state law crossclaims pursuant to 28 U.S.C. § 1367(a) because Alcoa's state law crossclaims are related to the same case or controversy as Alcoa's crossclaims for contribution under 42 U.S.C. § 9613(f).

3.      Defendants Waterside, 38 COAH, Daibes Brothers, North River, and TERMS are conducting business in the State of New Jersey and/or conducted business in the State of New Jersey during the relevant time period, and have or had sufficient contacts with the State of New Jersey to be subject to the jurisdiction of this court.  Upon information and belief, Defendant Daibes is domiciled in the State of New Jersey, and thus is subject to the jurisdiction of this court.

31

4.     Venue is proper in this court pursuant to 42 U.S.C. § 9613(b), as the alleged release or damages occurred in this district.  Furthermore, a substantial part of the actions or omissions giving rise to these crossclaims occurred in this district.

## CROSSCLAIMS FOR STATUTORY AND COMMON-LAW CONTRIBUTION

5.     While continuing to deny the material allegations of the First Amended Complaint, Alcoa hereby demands indemnity and contribution pursuant to all applicable laws, including but not limited to, 42 U.S.C. § 9613(f), N.J.S.A. § 58:10-23.11 *et seq.*, N.J.S.A. § 2A:15-5.1 *et seq.* and/or N.J.S.A. § 2A:53A-1 *et seq.* from Defendants Waterside, 38 COAH, Daibes Brothers, North River, Daibes, TERMS, John Does 1-100, and ABC Corporations 1-100 for a proportionate share of costs, damages, or other loss or harm, if any, for which Alcoa may be held liable, or which it may in the future incur, related to the Veteran's Field site because, upon information and belief, materials requiring cleanup and removal or response action under state and federal environmental laws were present at the Veteran's Field site as a result of acts, omissions or other legal responsibility of others, including Defendants Waterside, 38 COAH, Daibes Brothers, North River, Daibes, TERMS, John Does 1-100, and ABC Corporations 1-100, their employees, agents or affiliates.

## CROSSCLAIMS FOR NEGLIGENCE

6.     Alcoa repeats and incorporates herein by reference the allegations set forth in Paragraphs 1 through 5 of these Crossclaims as if set forth more fully herein.

7.     As alleged in the First Amended Complaint, Defendants Waterside, 38 COAH, Daibes Brothers, North River, Daibes, TERMS, John Does 1-100, and ABC Corporations 1-100 caused or permitted fill material that they knew or should have known to be contaminated to be transported to or disposed at the Veteran's Field site in violation of applicable laws.

8.      Defendants Waterside, 38 COAH, Daibes Brothers, North River, Daibes, TERMS, John Does 1-100, and ABC Corporations 1-100 had a duty of care to ensure that the fill material in their possession or control that was transported to or disposed at Veteran's Field was not contaminated.

9.      Defendants Waterside, 38 COAH, Daibes Brothers, North River, Daibes, TERMS, John Does 1-100, and ABC Corporations 1-100 breached that duty of care when they caused contaminated fill material to be transported to or disposed at Veteran's Field.

10.     Although Alcoa continues to deny the allegations that contaminated fill material transported to or disposed at Veteran's Field originated at the Alcoa Site as defined in the First Amended Complaint, to the extent it is shown that Defendants Waterside, 38 COAH, Daibes Brothers, North River, Daibes, TERMS, John Does 1-100, and ABC Corporations 1-100 caused contaminated fill material from the Alcoa Site to be transported to or disposed at Veteran's Field, Alcoa and A.P. New Jersey, Inc. are part of an identifiable class that would suffer damage as the natural and probable consequence of that breach of duty.

11.     As a direct and proximate result of the breach of duty by Defendants Waterside, 38 COAH, Daibes Brothers, North River, Daibes, TERMS, John Does 1-100, and ABC Corporations 1-100, Alcoa has suffered damages in an amount to be determined at trial.

## CROSSCLAIM FOR BREACH OF CONTRACT

**(as Between Alcoa Domestic LLC, as successor in interest to Defendant A.P. New Jersey, Inc., and Defendant North River Mews Associates, LLC)**

12.     Alcoa repeats and incorporates herein by reference the allegations set forth in Paragraphs 1 through 11 of these Crossclaims as if set forth more fully herein.

13.     On or about June 27, 1997, Defendant A.P. New Jersey, Inc. ("A.P.") and Defendant North River Mews Associates, LLC ("North River"), among other parties, entered

into a valid contract (the "Multi-Party Property Acquisition Agreement"), pursuant to which North River agreed to buy certain property (the "A.P. Property") in the Borough of Edgewater from A.P. A copy of the Multi-Party Property Acquisition Agreement is annexed hereto as Exhibit A.

14.     Pursuant to Paragraph 2 of the Multi-Party Property Acquisition Agreement, North River agreed to demolish and remove structures on the A.P. Property. North River further agreed that this demolition and removal would be completed in accordance with the Remedial Action Workplan submitted to the New Jersey Department of Environmental Protection and with the demolition plan reviewed and approved by A.P.

15.     Although Alcoa continues to deny the allegations that contaminated fill material transported to or disposed at Veteran's Field originated at the Alcoa Site as defined in the First Amended Complaint, to the extent it is shown that any Defendant caused contaminated fill material from the Alcoa Site to be transported to or disposed at Veteran's Field, such transportation or disposal constitutes a breach of the Multi-Party Property Acquisition Agreement by North River.

16.     A.P. has duly performed all of its obligations under the Multi-Party Property Acquisition Agreement.

17.     As a direct and proximate result of North River's breach of contract, Alcoa Domestic LLC, as successor in interest to A.P., has suffered damages in an amount to be determined at trial.

## CROSSCLAIM FOR INDEMNIFICATION

### (as Between Alcoa Domestic LLC, as successor in interest to Defendant A.P. New Jersey, Inc., and Defendant North River Mews Associates, LLC)

18.     Alcoa repeats and incorporates herein by reference the allegations set forth in Paragraphs 1 through 17 of these Crossclaims as if set forth more fully herein.

19.     Pursuant to paragraph 16 of the Multi-Party Property Acquisition Agreement, North River agreed to defend and save A.P. harmless from any and all claims arising from the performance of that Agreement.  North River further agreed to reimburse A.P. for the cost of any legal, expert, or other fees expended by A.P. arising from such claims.

20.     On or about June 1997, A.P. and North River entered into a valid contract (the "Purchase and Sale Agreement"), pursuant to which A.P. agreed to sell the A.P. property to North River.  A copy of the Purchase and Sale Agreement is annexed hereto as Exhibit B.

21.     Pursuant to paragraph 7(f) of the Purchase and Sale Agreement, North River agreed to indemnify, defend, and hold A.P. harmless from any and all claims, including all foreseeable and unforeseeable consequential damages related to North River's (or, during North River's ownership of the A.P. Property, any operators' or third parties') use of the A.P. Property and/or any and all activities related thereto.

22.     Pursuant to paragraph 7(g) of the Purchase and Sale Agreement, North River expressly released and agreed to waive all rights it may have to seek contribution from A.P. for any response costs or claims that may arise as the result of the actions or inactions of A.P. or any previous owner or operator of the A.P. Property relating to Hazardous Substances, as defined in the Purchase and Sale Agreement.

23.     On or about March 13, 1999, A.P. and North River, among other parties, entered into a valid contract (the "Environmental Indemnity Agreement"), pursuant to which North River

agreed to indemnify, defend, and hold A.P. harmless from any and all claims, including all foreseeable and unforeseeable consequential damages, occurring before, during, or after North River's ownership of the A.P. Property, relating to Building 12 and the land under and adjacent thereto including remediation and disposal costs and expenses related to PCBs.  A copy of the Environmental Indemnity Agreement is annexed hereto as Exhibit C.

24.    Although Alcoa continues to deny the allegations that contaminated fill material transported to or disposed at Veteran's Field originated at the Alcoa Site as defined in the First Amended Complaint or originated specifically at Building 12, to the extent it is shown that any Defendant caused contaminated fill material from the Alcoa Site or specifically from Building 12 to be transported to or disposed at Veteran's Field, Alcoa Domestic LLC, as successor in interest to A.P., is entitled to indemnification in an amount to be determined at trial from North River for any costs, expenses, or liability borne by Alcoa arising from such transportation or disposal.

25.    Alcoa Domestic LLC, as successor in interest to A.P., is entitled to reimbursement from North River for the cost of any legal, expert, or other fees expended by Alcoa arising from such transportation and disposal.

Dated: November 21, 2014

Respectfully submitted,

**K&L GATES LLP**

By: /s/ Michael E. Waller
     Michael E. Waller
     William H. Hyatt, Jr.
     Karyllan D. Mack
     One Newark Center, Tenth Floor
     Newark, New Jersey 07102
     Tel:  (973) 848-4000
     michael.waller@klgates.com
     william.hyatt@klgates.com
     karyllan.mack@klgates.com

*Attorneys for Defendant Alcoa Inc. and*
*Alcoa Domestic LLC, as successor in*
*interest to Defendant A.P. New Jersey,*
*Inc.*

## CERTIFICATION PURSUANT TO RULE 11.2 OF THE LOCAL CIVIL RULES OF THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEW JERSEY

I hereby certify that the matter in controversy is not the subject of any other action pending in any court, or of any pending arbitration or administrative proceeding.

Dated: November 21, 2014

By: _____

Michael E. Waller

# EXHIBIT A

02/24/99   WED 11:06 FAX

# MULTI-PARTY PROPERTY ACQUISITION AGREEMENT

THIS AGREEMENT made this 27th day of June, 1997

BETWEEN:      **A.P. NEW JERSEY, INC.,**
a New Jersey Corporation
(hereinafter called "A.P.")

AND:      **COUNTY OF BERGEN**
A Body Politic and Corporate
of the State of New Jersey
(hereinafter called the "County")

AND:      **NORTH RIVER MEWS ASSOCIATES, L.L.C.**
a New Jersey Limited Liability Company
(hereinafter called "North River")

AND:      **RIVER ROAD IMPROVEMENT PHASE II, INC.**
A New Jersey Corporation
(hereinafter called the "RRIP")

## WITNESSETH:

WHEREAS, North River is the fee owner and/or contract owner of certain lands under development or subject to plans for development, such lands being adjacent or in proximity to a segment of River Road (Phase II) located in the Borough of Edgewater, County of Bergen, State of New Jersey, as designated on a County plan entitled "Phase II River Road"; and

WHEREAS, the various projects and developments have been or are in the process of being designed and/or approved by the Bergen County Planning Board and Borough of Edgewater in connection with Phase II River Road; and

WHEREAS, said Bergen County approvals provide for certain work to be performed on portions of Phase II River Road, including the extension, realignment and

improvement of segments of same, as set forth on certain preliminary plans prepared by the County of Bergen; and

WHEREAS, the work for Phase II River Road is set forth in that certain Agreement dated November 1, 1996 between the Borough of Edgewater, County of Bergen and Edgewater Residential Community, L.L.C. ( hereinafter called "ERC"); and

WHEREAS, the project is known as New River Road (Phase II) and involves the construction and reconstruction and realignment along portions of existing River Road and the acquisition of certain other properties currently owned or under contract of purchase by ERC to facilitate the new alignment to construct and install other private and public facilities; and

WHEREAS, it has been determined by the respective governing bodies of the Borough of Edgewater and County of Bergen that portions of existing River Road and improvements thereon are unsightly and detrimental to the re-development of the area including, without limitation, areas at the intersection of River Road and Dempsey Avenue, areas in the vicinity of the post office Mail Bag Facility and areas in proximity to the former Alcoa plant and Binghamton Complex including on site conditions, its improvements, entrances and exits; and

WHEREAS, the execution of the  Phase II River Road plans involves participation and cooperation by the County of Bergen, the Borough of Edgewater and ERC to perform required work as set forth on the County Plans; and

WHEREAS, the Borough of Edgewater has by its Resolution dated August 12, 1996, approved and endorsed the conceptual County plan entitled "Phase II River Road" dated July 30, 1995, consisting of Sheets 1 through 4, for the redesigning and realignment

2

of a portion of River Road (Phase II) by the County of Bergen, which redesign and realignment is the subject matter hereof; and

     **WHEREAS,** ERC has agreed to perform the work referred to in the Phase II River Road plans and in accordance with construction plans to be prepared by Boswell Engineering Co. ("the Boswell Plans"), such work commencing at the northerly property line of Hess Oil located on River Road north to and including its intersection with Route 5, extending to a point approximately sixty (60) feet north of said intersection, all of which work shall be completed in accordance with the Boswell Plans and specifications and approved by the County of Bergen; and

     **WHEREAS,** in addition to the work set forth in the Tri-Parte Agreement between the Borough of Edgewater, County of Bergen and ERC, certain other work is deemed necessary by the County of Bergen to fully execute and safely implement the Phase II River Road plan including, without limitation:

a)      Road improvements per the Boswell Plans;

b)      Relocation of utilities, sewer, water, gas, electric;

c)      Traffic signalization, relocation and new installations;

d)      Demolish and removal and/or relocation of buildings and structures within or in close proximity of the proposed right of way of Phase II River Road;

e)      Removal, remediation, and abatement of conditions, structures or other improvements which, in the opinion of the County negatively impact on the efficient and safe movements of vehicular and pedestrian traffic on Phase I and Phase II River Road.

3

In connection with the above objectives and criteria, the County has taken into its planning consideration the public elementary school in close proximity to River Road and Russell Avenue, (the Alcoa property), as well as the residential areas surrounding same.

**WHEREAS,** ERC has agreed to acquire and convey or cause to be conveyed and dedicated for roadway purposes to the County of Bergen, by Deed of Easement and/or conveyance in fee, the right of way for road purposes as set forth in the Phase II River Road plans, to the following properties:

1.  Lands comprised of the former Right of Way of the Susquehanna Railroad abutting the Binghamton Complex and the Alcoa Property ("A.P.") on both sides of Russell Avenue and existing River Road in the general vicinity of the Alcoa property ("A.P.") on River Road;

2.  Lands comprised of the PMG Realty Associates, L.L.C. property, formerly known as the J. Fletcher Creamer Property, and access easement abutting existing River Road;

3.  Lands comprised of the former Right of Way of the Susquehanna Railroad abutting the U.S. Postal Mail Bag Repair Facility and existing River road;

4.  All right-of-way required through properties of the Borough of Edgewater, the current Municipal Parking Lot, the Department of Public Works Garage Property, the Ferry Plaza Building, the property owned by Ferry Bank Associates, L.P., property owned by Borough Associates, L.P. (formerly Ferry Plaza North), and



4

A&D Marine, Inc. and including the Route 5 River Road intersection and extending to a point approximately sixty (60) feet northerly of said intersection and as shown on the Phase II River Road plans; and

WHEREAS, certain properties required for the roadway improvement, as set forth on the Phase II River Road plans, are not under the control or current ownership of the County or ERC and require acquisition by the County, North River, or ERC respectively, and specifically property owned by A.P., also known as Alcoa property and buildings, the U.S. Postal Mail Bag Facility, and the Ferry Plaza Office and Retail Building; and

WHEREAS, ERC has agreed to contribute the sum of $3,852,698.00 to the Borough and County jointly toward the acquisition of such properties (excepting the A.P. property) and the construction of segments of the new roadway (Phase II River Road) and further to give the County an appropriate guarantee, Letter of Credit, Bond or similar security in form and content satisfactory to Bergen County Counsel, for the performance of the roadwork and ancillary work contemplated herein and set forth on the Phase II River Road plans and the Boswell Plans, drawings and specifications and approved by the County of Bergen; and

WHEREAS, the County, as a participant, agrees to contribute a total sum of $5,000,000 for the purposes of road construction and inspection, including the sum of $1,000,000 for such other public and private costs related to the acquisition, reconstruction and inspection of ancillary facilities of New River Road (Phase II) which funds shall be disbursed to the Borough and ERC for such use; and.

5

WHEREAS, the road construction by ERC shall also include segments of New River Road (Phase II) extending from the Route 5/River Road intersection to an area at the property north of Hess Oil Co. and existing River Road, as set forth on the County plans and the Boswell construction plans and specifications; and

WHEREAS, the County has determined that the demolition and removal of the structures upon the A.P property are required for the efficient and safe movement of vehicular and pedestrian traffic, and said demolition and removal is in the best interest of the general public and region as a whole; and

WHEREAS, A.P. has agreed to pay RRIP, as set forth in this Agreement, for the demolition, removal and remediation of the structures on the A.P. property provided, however, that the funds shall be administered and disbursed by the County of Bergen, and provided further that said demolition, removal and remediation is supervised, inspected and guaranteed by the County of Bergen; and

WHEREAS, A.P. and the County, as a condition to said funding shall review and approve the demolition and remediation plan prepared by RRIP and approved by New Jersey Department of Environmental Protection ("DEP"), which shall, when completed and approved, provide and guarantee to A.P. and Alcoa the issuance of a No Further Action letter from DEP in form acceptable to A.P.

NOW, THEREFORE, in consideration of the premises and of such mutual promises, covenants and undertakings, the parties hereto agree as follows:

1.     AP agrees to sell and North River agrees to buy that property located on River Road in the Borough of Edgewater known as the "Alcoa Property; as more fully described in the Purchase and Sale of Real Estate Agreement.

6

2.      North River and RRIP agree that they will cause to be demolished and removed from the AP property all structures and improvements currently existing on the property. Said demolition and removal shall be completed in accordance with the Remedial Action Workplan submitted to the DEP and the demolition plan reviewed and approved by AP.

3.      AP agrees to pay to RRIP the sum of $9,500,000 for the demolition and removal of the structures as described in paragraph 2 above. In addition, AP agrees to pay to RRIP costs of disposal of PCB-contaminated material (PCB concentrations greater than 50 ppm) at approved TSCA landfills, if those disposal costs exceed $250,000.00, up to a maximum of $2,500,000.00. AP's total liability for demolition of the structures and disposal of waste material will not exceed $12,000,000.00.

4.      The County shall supervise the demolition of the A.P. property and shall administer the disbursement of funds to RRIP with the funds provided to it by A.P. A.P., upon the execution of this Agreement, shall make an initial deposit with the County of Bergen in the sum of $2,000,000 to be disbursed in accordance with the terms of this Agreement. The RRIP shall make periodic requisitions for demolition, removal and the related work completed, and said requisitions shall be funded at a minimum of once per month, or more frequently as the approved demolition and removal schedule may require. Upon satisfactory monthly inspections, the County shall, upon notice to A.P., forthwith authorize the disbursement of funds to RRIP.

AP will provide additional funds to the County of Bergen in the amount of, and upon receipt of, approved requisitions from RRIP for work performed on the demolition

and removal of the structures. AP shall continue to provide funds to the County of Bergen until the County of Bergen has received sufficient funds to satisfy AP's liability to RRIP for the demolition and removal of the structures.



5.      The acquisition of the A.P. property and the demolition, removal and remediation of the A.P. (Alcoa) buildings and structures shall be performed at the same time as construction of New River Road (Phase II) which shall be performed by ERC or its agents, in accordance with the Boswell Plans and specifications.

6.      Upon commencement of the roadway construction and upon the request of Bergen County, A.P. and North River shall execute Deeds of Easement or fee title (at the County's option) and make such Right of Way dedications in favor of the County as may be required to implement the Phase II River Road plans in the general area of the A.P. property on existing River Road.

7.      It is the intent of the parties that the excess portions of land acquired by the County and purchased by North River or ERC shall be deeded and/or abandoned by the County to North River or ERC. All legal formalities to accomplish this will be implemented by the County in an expeditious manner.



8.      AP shall fund the demolition, removal and remediation . as set forth in paragraph 4 of this Agreement. The construction and reconstruction of segments of New River Road (Phase II) shall be the sole responsibility of ERC and the County jointly, pursuant to the Developer's Agreement dated November 1, 1996, as amended.

9.      RRIP shall deposit with the County of Bergen a Performance Bond or Letter of Credit in an amount over and above the estimated demolition costs of $12,000,000. Said bond of RRIP to the County of Bergen shall be in form approved by

8

Bergen County Counsel's office and it shall fully guarantee the demolition and removal costs of the A.P. buildings and structures in a manner and schedule previously approved by DEP, the County, and A.P.

10.     The County guarantees to AP that the demolition and removal of the AP structures and building will be completed as provided in the the Remedial Action Workplan and the approved demolition plan. This guarantee is effective and enforceable only if AP is not in default of its obligations set forth in paragraph 4 of this Agreement.

11.     The County of Bergen, RRIP and North River agree to re-use the rubble from the demolished structures that are not contaminated with PCB's greater than 50 ppm in accordance with applicable New Jersey laws.

12.     ERC agrees that portions of the various drainage facilities which are constructed within the areas adjacent to the County Road shall be conveyed to and become the property of the County, and the County may make such other drainage connections thereto as it may desire, provided that such other connections shall not interfere or negatively impact on proper drainage of the lands of the ERC.

13.     The County shall from time to time, but not less than two times per month, be responsible for the periodic inspection of the work performed by ERC and RRIP. All costs and expenses of such inspections shall be paid by RRIP and shall be over and above the estimated cost of demolition, removal and remediation of A.P. property. RRIP shall request inspections of completed work by the County at least five (5) days prior to disbursement of funds attributable thereto. The requisitions for payment of completed work shall be made by RRIP to the County with notice to A.P. Approval by the County shall be required prior to funding said requisition.

9

14.   RRIP shall notify the DEP, County Department of Public Works and County Engineer, in writing, at least five (5) days prior to the commencement of any demolition, removal or remediation work affecting the A.P. property and, to the extent required, the commencement of construction of segments of (Phase II) New River Road at the intersection of Russell Avenue and River Road.

15.   Upon the execution of this Agreement by RRIP and the County, RRIP shall within thirty (30) days, furnish to the County, with a copy to A.P., the demolition, removal and remediation plans and schedules. Same are to be prepared by RRIP in conjunction with the approved environmental consultant and engineer. Said plans shall be approved by DEP, A.P. and the County.

16.   It is understood and agreed that North River and RRIP shall defend and save the County and A.P. harmless from any and all claims that may be filed in any Court arising from the performance of this Agreement. In connection with the defense of any claim, the County and A.P. shall be entitled to select their own counsel. The County and A.P. shall fully cooperate in any such litigation provided, however, that neither the County nor A.P. shall be under any obligation to expend any funds for any purpose whatsoever in connection with such litigation. Should the County or A.P. be named as a party in any court, administrative or other action or proceeding, North River and RRIP agree to reimburse the County and/or A.P. (as applicable) for the cost of any legal, expert or other fees expended by the County and/or A.P. in such action or proceeding.

17.   Incorporated herein and made a part hereof are the following documents:

a) the Developer's Agreement between ERC and Bergen County;

b) the Joint Reports, with reference to site plan nos. 2618 R-1 and 2366 R-1;

c) the Joint Report requirements of other developments which will participate in Phase II River Road reconstruction, including without limitation, A&D Marine, PMG Realty, L.L.C., Kings Ferry, Inc., Ferry Bank Associates, Borough Associates, L.P., North River Mews Residential Development (A.P.) and others, including the owners of property known as the U.S. Mail Bag and Ferry Plaza Building;

d) the Resolution of the Borough dated September 16, 1996, which authorizes, inter alia, the Borough's participation in Phase II and the commitment to promptly cooperate in the acquisition of properties necessary to complete Phase II River Road and the other improvements set forth on the County Plans;

e) the Boswell Plans approved by the County of Bergen  identified as follows:

"River Road Improvements Phase II"
Construction Plans
Bergen County, Borough of Edgewater, New Jersey
Sheets 1 through 4
Job No. 96-215

as may be revised from time to time upon the mutual consent of the parties.

18.    This project involving the A.P. property, shall be designated, for all intents and purposes, as an element of a local governmental improvement project with North River, RRIP, and County as participants.

The County, ERC, and North River shall review and approve the Phase II River Road design by Boswell and shall obtain all approvals and permits required for the construction of the Phase II New River Road segment, and specifically permits from all utility companies involved or affected by the roadway improvements.

11

In this connection RRIP, as contractor, shall participate in and coordinate the efforts of the County and Borough of Edgewater with respect to the utility companies and any other permits or approvals which are required to demolish the A.P. buildings and structures and to construct New River Road Phase II segment.

20.     A.P. will cooperate with the County, its engineering consultants, and RRIP in overseeing the performance of the demolition, removal and remediation work.

21.     This Agreement shall be binding on the parties hereto and their heirs, executors, administrators, successors and assigns.

22.     All parties hereto have the requisite power and authority to enter into this Agreement and it is the intention of the parties to be bound by the terms hereof.  The execution and delivery of this Agreement is valid and binding upon the parties hereto and the genuineness of any and all corporate resolutions executed may be assumed to be genuine by the parties in receipt thereof.

23.     This Agreement may be executed in any number of counterparts, each of which when executed and delivered shall constitute an original of this Agreement, but all such counterparts shall constitute one and the same instrument.

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the

day and year first above written.

Witness:                                       A.P. NEW JERSEY, INC.

_____        By: _____

                                               KEVIN L. MCKNIGHT,  Vice-President


Witness:                                       COUNTY OF BERGEN

_Carol Gurtel_                          By: _____

     CAROL GURTEL                              WILLIAM P. SCHUBER
  NOTARY PUBLIC OF NEW JERSEY                  County Executive
  My Commission Expires Aug. 11, 1998


Witness:                                       NORTH RIVER MEWS ASSOCIATES,
                                               L.L.C.

_____        By: _____

                                               North River Mews, Inc., Managing Member
                                               FRED A. DAIBES, President


Witness:                                       RIVER ROAD IMPROVEMENT PHASE II,
                                               INC.

_____        By: _____

                                               FRED A. DAIBES, President

13

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the day and year first above written.

Witness:                                    A.P. NEW JERSEY, INC.

_____          By: _____

                                            KEVIN L. MCKNIGHT, Vice-President


Witness:                                    COUNTY OF BERGEN

_____          By: _____

                                            WILLIAM P. SCHUBER
                                            County Executive


Witness:                                    NORTH RIVER MEWS ASSOCIATES, L.L.C.

_____          By: _____

                                            North River Mews, Inc., Managing Member
                                            FRED A. DAIBES, President


Witness:                                    RIVER ROAD IMPROVEMENT PHASE II, INC.

_____          By: _____

                                            FRED A. DAIBES, President

13

STATE OF NEW JERSEY      )

                               )   :SS

COUNTY OF BERGEN       )

**BE IT REMEMBERED** that on this 24th day of June_____,

1997, before me the subscriber, A NOTARY PUBLIC_____ of the State of New Jersey,

personally appeared/who being by me duly sworn, did depose and make proof to my

satisfaction that he is the County/_____ of the County of Bergen, a Body Politic

and Corporate of the State of New Jersey; that xxxxzxzxzxzxzxzxzx is the

xzxzxzzxzxzxzxzxxzzxzxxzzx of said County of Bergen; that the execution, as well

as the making of this Instrument has been duly authorized by a proper Resolution of the

Board of Chosen Freeholders of the County of Bergen; that deponent well knows that

corporate seal of said County of Bergen; and that the seal affixed to said Instrument is

such corporate seal and by the said William P. Schuber, as and for his voluntary

act and deed and as and for the voluntary act and deed of the said County of Bergen.

Sworn and subscribed to before me
this 24 day of June_____, 1997

_Carol Gurtel_

CAROL GURTEL
NOTARY PUBLIC OF NEW JERSEY
My Commission Expires Aug. 11, 1998

14

STATE OF NEW JERSEY                )

                                   )        :SS

COUNTY OF BERGEN                   )

      **BE IT REMEMBERED** that on this _____ day of _____,

1997, before me the subscriber, Kevin L. McKnight of the Commonwealth of

Pennsylvania, personally appeared who being by me duly sworn, did depose and make

proof to my satisfaction that he is the Vice-President of A.P. NEW JERSEY, INC., the

Corporation named in the within instrument;

  that the execution, as well as the making of this instrument has been duly authorized by a

proper Resolution of the Board of Directors of said Corporation; and that the seal affixed

to said instrument signed and delivered by said President as for the voluntary act and

deed of said Corporation, in presence of deponent, who thereupon subscribed his name

thereto as attesting witness.

                                   **A.P. NEW JERSEY, INC.**

                              _____

                                  Kevin L. McKnight

Sworn and subscribed to before me
this _____ day of _____, 1997

_____

15

STATE OF NEW JERSEY      )

     )    :SS

COUNTY OF BERGEN      )

       BE IT REMEMBERED that on this _____ day of _____

1997, before me the subscriber, _____ of the State of New Jersey,

personally appeared who being by me duly sworn, did depose and make proof to my

satisfaction that he is the _____ of RIVER ROAD IMPROVEMENT

PHASE II, INC., the Corporation named in the within instrument; that

_____ is the President of said Corporation; that the execution, as well as

the making of this instrument has been duly authorized by a proper Resolution of the

Board of Directors of said Corporation; and that the seal affixed to said instrument signed

and delivered by said President as for the voluntary act and deed of said Corporation, in

presence of deponent, who thereupon subscribed his name thereto as attesting witness.

                     RIVER ROAD IMPROVEMENT PHASE II, INC.

Sworn and subscribed to before me
this _____ day of _____, 1997

16

STATE OF NEW JERSEY    )
                           )   :SS

COUNTY OF BERGEN     )

BE IT REMEMBERED that on this ____ day of _____ 1997, before me the subscriber, _____ of the State of New Jersey, personally appeared who being by me duly sworn, did depose and make proof to my satisfaction that he is the Managing Member of NORTH RIVER MEWS ASSOCIATES, L.L.C., the Corporation named in the within instrument; that the execution, as well as the making of this instrument has been duly authorized by a proper Resolution of the Board of Directors of said Corporation; and that the seal affixed to said instrument signed and delivered by said President as for the voluntary act and deed of said Corporation, in presence of deponent, who thereupon subscribed his name thereto as attesting witness.

NORTH RIVER MEWS ASSOCIATES, L.L.C.

Sworn and subscribed to before me
this ____ day of _____, 1997

17

Do We need these???

## EXHIBITS

1.  Bergen County Planning Board Application No. SP2618R-1

2.  Bergen County Planning Board Application No. SP2366R-1

3.  Borough of Edgewater Resolution No. R195-96

4.  River Road Phase II Edgewater Plans, Drawings 1 through 4

5.  No Further Action Letter (Form) - New Jersey Department of Environmental Protection

18

**IN WITNESS WHEREOF,** the parties hereto have duly executed this Agreement in duplicate as of the day and year first above written.

WITNESS:

By: _Arthur J Granfenkel_

A. P. NEW JERSEY, INC.

By: _[signature]_

Its: _Vice-President_

# EXHIBIT B

# AGREEMENT TO PURCHASE AND SELL REAL ESTATE

THIS AGREEMENT TO PURCHASE AND SELL REAL ESTATE (this "Agreement") is made and entered into as of the _____ day of June, 1997, by and between **A. P. NEW JERSEY, INC.**, a Delaware corporation with a place of business at 1501 Alcoa Building, 425 Sixth Avenue, Pittsburgh, Pennsylvania 15219 ("Seller"), and **NORTH RIVER MEWS ASSOCIATES, LLC**, a New Jersey limited liability company with a place of business c/o Mr. John De Sheplo, Esquire, 260 Columbia Avenue, Fort Lee, New Jersey 07024 ("Buyer").

1. **Purchase And Sale.** Seller agrees to sell, transfer, and convey to Buyer, and Buyer agrees to purchase from Seller, upon the terms, provisions and conditions hereinafter set forth those certain tracts, lots or parcels of real property situated in the Borough of Edgewater, County of Bergen and State of New Jersey, described in Exhibit A attached hereto and incorporated herein by reference (collectively, the "Property").

2. **Purchase Price.** The purchase price which Seller agrees to accept for the Property and which Buyer agrees to pay therefor shall be a minimum of $8,000,000, and shall increase by $20,000 for each unit approved for construction on the Property in excess of 400 units (the "Purchase Price"). The Purchase Price shall be payable as follows:

   (a)     At the Closing (defined below), Buyer shall deliver to Seller:

   (i)     Buyer's fully executed unconditional promissory note (the "Note"), secured by Buyer's mortgage to the Property (the "Mortgage"), in the principal amount of the Purchase Price less $2,000,000, for a term of eighteen (18) months from the Closing Date and with an annual interest rate of 6% accruing until fully satisfied, substantially in the form and substance attached hereto as Exhibits B and C, respectively. Upon maturity of the Note, Buyer shall pay to Seller the amount of the Note, principal plus interest, by wire transfer in immediately available funds to the following account (the "Mellon Account"):

   Mellon Bank NA, Pittsburgh, PA
   ABA #043 000 261
   Account Number: #000-1206
   Account Name: Aluminum Company of America;

   (ii)     An irrevocable, unconditional letter of credit (the "Letter of Credit") issued by PNC Bank, or a reputable commercial bank, savings bank or savings and loan association acceptable to Seller, to the benefit of Seller in the amount of $2,000,000, with an expiration date of not earlier than twenty-four (24) months after the Closing, in a form acceptable to Seller. The Letter of Credit shall be payable upon presentation of Seller's sight draft dated 18 months from the date of the Closing or upon presentation of Seller's sight draft dated earlier than 18 months from the date of the Closing accompanied by Seller's notarized written statement as follows: "North River Mews Associates, LLC is in

default of its obligations under a certain Agreement to Purchase and Sell Real Estate dated June ___, 1997 (the "Agreement"), with the undersigned, as Seller, and such default has not been cured in accordance with paragraph 8(b) of the Agreement.

(b)    Payment for Additional Units.  In the event Buyer, or anyone who acquires title to the Property or any part thereof from Buyer, receives approval to construct more than 400 units at the Property during the time period from May 1, 1997 through May 1, 2117, then at Closing, or within 15 days of receiving such approval, Buyer shall notify Seller of such approval and, within two (2) days following receipt of a building permit to construct the additional units shall pay to the Mellon Account, by wire transfer in immediately available funds, the amount of $20,000 for each additional unit for which approval was granted.

(i) Covenant.  This Section 2(b) shall be a covenant running with the land, and shall be recorded in the form of a Memorandum of Agreement with the Deed. Any subsequent transfer of the property is subject to Section 2(b), and Section 2(b) shall not merge with and into the Deed on Closing.

(ii) Estoppel Certificate.  From time to time, upon Buyer's request, Seller shall execute an estoppel certificate in a form reasonably acceptable to Buyer stating that Buyer is not in default of Section 2(b).

3.    Instruments Of Transfer.  At the Closing, Seller shall convey title to the Property to Buyer by Seller's warranty deed with covenant against grantor's acts (the "Deed") and Seller and Buyer shall execute and deliver to the other, and, where applicable, file and record such instruments of conveyance, transfer and assignment, as shall be necessary or appropriate in the opinion of their respective counsel or as required by the Title Company (defined below) to transfer to Buyer all of the aforesaid right, title and interest of Seller in the Property pursuant to this Agreement.

4.    Title Matters.

(a) Title Commitment.  Seller shall, at its sole cost and expense, as soon as reasonably possible following the execution of this Agreement, cause Chicago Title and Insurance Company (the "Title Company") to issue its commitment for an owner's fee policy of title insurance for the Property in the amount of the purchase price and designating Buyer as the proposed insured (the "Commitment").  Buyer shall, within fifteen (15) days after receipt of the Commitment, either:

(i)    Approve the form and substance of the Commitment; or

(ii)    Notify Seller in writing (the "Notice") to remove or satisfy any reasonable matters relating to the title or interests which are objectionable to Buyer as shown on the Commitment.  Seller shall have ninety (90) days following the receipt of the Notice to correct those objections specified in the Notice.  In the event that Seller is unwilling or unable to correct such objections, then, as Buyer's sole remedy and at Buyer's option to be exercised by written notice within thirty (30) days following the expiration of such 90-

2

day period, either accept such title and interest as Seller is able to furnish without reduction in or abatement of the Purchase Price and without liability of Seller to Buyer or terminate this Agreement. Upon such termination, neither party hereto shall thereafter have any further liability or obligation to the other party hereunder. Unless Buyer objects to the title condition and terminates this Agreement, said title condition shall be deemed to be acceptable and any objection to the condition shall be deemed to have been waived by Buyer for all purposes.

(b) Survey. Seller shall cause to be prepared an ALTA survey of the Property from a New Jersey licensed surveyor sufficient to delete the survey exception from the Commitment. The cost of the Survey shall be borne by Seller unless this Agreement is terminated before Closing, in which case the cost of the Survey shall be borne by Buyer.

(c) Title Insurance. Buyer shall bear the cost of the Policy of Title Insurance.

5.    Warranties and Representations.

(a)    Litigation and Claims. Except as set forth on Schedule 5(a), to Seller's knowledge there are no legal actions, suits, arbitrations or other legal, administrative or governmental proceedings pending or threatened against Seller which would materially adversely affect the condition or ability to use the Property as contemplated by this Agreement, nor is Seller aware of any basis for the foregoing.

(b)    OTHER THAN THE REPRESENTATION AND WARRANTY SET FORTH IN THIS SECTION, BUYER SPECIFICALLY ACKNOWLEDGES THAT SELLER IS SELLING AND BUYER IS PURCHASING THE PROPERTY ON AN "AS IS, WITH ALL FAULTS" BASIS AND THAT BUYER SHALL HAVE AN OPPORTUNITY TO INSPECT THE PROPERTY AND IS NOT RELYING ON ANY REPRESENTATIONS OR WARRANTIES OF ANY KIND WHATSOEVER, EXPRESS OR IMPLIED, FROM SELLER, ITS AGENTS, OR REPRESENTATIVES AS TO ANY MATTERS CONCERNING THE PROPERTY, INCLUDING WITHOUT LIMITATION:

(i)    the quality, nature, adequacy and physical condition of the Property, including, but not limited to, the structural elements, foundations, roofs, floors, appurtenances, access, landscaping, parking facilities, and the electrical, mechanical, HVAC, plumbing, sewage, and utility systems, facilities and appliances;

(ii)    the quality, nature, adequacy, and physical condition of soils, geology and any groundwater;

(iii)    the existence, quality, nature, adequacy and physical condition of the Property;

(iv)    the development potential of the Property, and the Property's use, habitability, merchantability, or fitness, suitability, value, or adequacy of the Property for any particular purpose;

3

(v)     the zoning or other legal status of the Property or any other public or private restrictions on use of the Property;

(vi)     the compliance of the Property or its operation with any applicable codes, laws, regulations, statutes, ordinances, covenants, conditions and restrictions of any governmental or quasi-governmental entity or of any other person or entity;

(vii)     the presence or removal of hazardous or toxic materials, substances or wastes in, on, under, or about the Property or the adjoining or neighboring property;

(viii)     the quality of any labor and materials used in any improvements on the Property;

(ix)     subject to Section 4 hereof, the condition of title to the Property, other than those representations and warranties, if any, contained in the Deed by operation of law;

(x)     the leases, service contracts, or other agreements affecting the Property; and

(xi)     the economics of the operation of the Property.


6.     **Conditions Precedent To Closing.**

(a)     <u>Buyer's and Seller's Conditions</u>.  Unless all of the following conditions are satisfied, Buyer shall not be obligated to purchase, and Seller shall not be obligated to sell, convey, or transfer, the Property (except as such conditions may hereafter be expressly waived by Buyer and Seller in writing):

(i)     The New Jersey Department of Environmental Protection ("NJDEP") shall have executed and issued a Memorandum of Agreement providing for the issuance of a "No Further Action" letter substantially in the form and substance attached hereto as Exhibits D and E, respectively.

(ii)     Seller, Buyer, River Road Improvement Phase II, Inc. and the County of Bergen, New Jersey, shall have entered into a Multi Party Property Acquisition Agreement substantially in the form and substance attached hereto as Exhibit F (the "Multi-Party Agreement"). The Multi-Party Agreement, once fully executed, shall be incorporated into this Agreement by reference and attached as Exhibit G. The Multi Party Agreement shall contain provisions for:

(1)     the requirement to demolish the structures on the Property in accordance with a Remedial Action Work Plan submitted to the NJDEP by River Road Improvement Phase II, Inc. (the "Demolition");

4

(2)      the requirements that: (i) Seller will be responsible for payment of Demolition costs in the Amount of $9,500,000, (ii) Seller will be responsible for costs of disposal of material contaminated with PCB's at concentrations greater than 50 ppm at approved TSCA landfills if those disposal costs exceed $250,000 up to a maximum of $2,500,000, and (iii) Seller's total liability for Demolition and disposal of waste material will not exceed $12,000,000; and

(3)      the establishment of an acceptable funding mechanism for the Demolition.

(b)      Buyer's Conditions.  Unless all of the following conditions are satisfied, Buyer shall not be obligated to purchase the Property (except as such conditions may hereafter be expressly waived in writing by Buyer):

(i)      Buyer shall have received the necessary, final, non-appealable approvals of its development plans for the Property from the Borough of Edgewater, New Jersey. Seller agrees to execute all required consents to enable Buyer to meet this condition and all other requisite approvals; and

(ii)      From the date of this Agreement until the Closing, there shall not have occurred any material adverse change in the physical condition of the Property or the condition of title to the Property.

(c)      Seller's Conditions.  Unless all of the following conditions are satisfied, Seller shall not be obligated to sell, convey, and transfer the Property to Buyer (except as such conditions may hereafter be expressly waived in writing by Seller):

(i)      Seller shall have received from the County of Bergen, New Jersey, a guarantee of performance acceptable to Seller for the Demolition.

7.      **Environmental Conditions.**  The following terms and conditions shall survive Closing hereunder and shall not be merged with and into the Deed.

(a)      Hazardous Substance.  For the purposes hereof, the term "Hazardous Substance" shall mean any substance, chemical or waste that is listed or defined as hazardous, toxic, or dangerous under Applicable Law (defined below), and any asbestos containing materials, radioactive materials or petroleum products.

(b)      Applicable Law.  For the purposes hereof, the term "Applicable Law" shall mean the Comprehensive Environmental Response, Compensation and Liability Act ("CERCLA"), 42 U.S.C. §§ 9601 et seq.; the Resource Conservation and Recovery Act ("RCRA"), 42 U.S.C. §§ 6901, et seq.; the Federal Water Pollution Control Act, 33 U.S.C. §§ 1251 et seq.; the Clean Air Act, 42 U.S.C. §§ 7401, et seq.; the Hazardous Materials Transportation Act, 49 U.S.C. §§ 1471 et seq.; the Toxic Substances Control Act, 15 U.S.C. §§ 2601 through 2629; and the Safe Drinking Water Act, 42 U.S.C. §§ 300f through 300j; each as amended from time to time, together with the rules and regulations promulgated thereunder, and any and all formal or

5



informal orders, decrees or requests from the United States Environmental Protection Agency, the appropriate New Jersey state governmental and regulatory bodies, or any other governmental agency, authority or instrumentality having jurisdiction and any similar state and local laws and ordinances and the regulations implementing such statutes; together with any and all federal, state, and local environmental or land use laws, rules, ordinances, or regulations.

(c)     Environmental Reports.  Seller shall make available to Buyer the reports listed on Schedule 7(c), attached hereto and incorporated by reference, concerning the environmental condition of and contamination in, on, under, or about the Property (the "Environmental Reports").  The parties agree that the Environmental Reports and any and all reports, analyses, surveys, assessments, evaluations or the like prepared by Buyer and its representatives pursuant to Section 7(d) will establish the known environmental condition of the Property as of the Closing Date.  The Environmental Reports, and any and all reports, surveys and assessments, including all copies thereof, produced by Buyer or its representatives pursuant to this Agreement, shall be held in strict confidence by Buyer and shall not be disclosed by Buyer or its employees, consultants, agents and representatives, without the prior written consent of Seller.

(d)     Buyer's Assessment.  Buyer, at its sole cost and expense, may conduct an environmental transfer assessment of the Property prior to Closing ("Buyer's Assessment").  Seller shall permit Buyer or its representatives, at all reasonable times prior to the Closing Date, to enter upon any and all of the Property for the purposes of inspection, making tests, taking samples and soil borings, and/or conducting groundwater studies and such other investigations as Buyer shall deem appropriate, in order to complete Buyer's Assessment.

(e)     Restrictions on Buyer's Assessment.  Notwithstanding any other provision of this Agreement, Buyer's right to enter the Property for purposes of conducting Buyer's Assessment shall be subject to the following restrictions:

(i)     Buyer shall notify Seller at least twenty-four (24) hours prior to entry onto the Property to conduct such activity;

(ii)     All activities undertaken in connection with Buyer's Assessment shall fully comply with any Applicable Law, and other laws relating to worker safety and to proper disposal of any samples taken, and any soil or water generated in the process of taking the samples, and Buyer shall provide Seller with split samples of all soil, air or water sample so taken;

(iii)     Seller shall be permitted to have a representative present during all such investigations, and copy the results of on-site testing and visual inspections, and shall have complete access to all samples taken, test results, and boring records;

(iv)     In the event that Buyer shall not consummate this transaction for any reason, Buyer shall restore the Property to its condition prior to such investigative activities;

6.

(v)    Buyer shall take all actions and implement all protections necessary to ensure that actions taken hereunder and equipment, materials, and substances generated, used or brought onto the Property pose no threat to the safety or health of persons or the environment, and cause no damage to the Property of Seller or of any other person;

(vi)    Buyer shall be solely responsible for the security of the activities, equipment and materials brought on the Property prior to the Closing Date;

(vii)    Buyer for itself, its successors and assigns, covenants and agrees that it shall indemnify and save harmless Seller, its successors and assigns, from and against any and all loss or liability, and all claims, damages, fees, costs and expenses resulting from, incident to or in any way arising out of the entry onto the Property to conduct Buyer's Assessment, or any other act done pursuant to the rights, privileges and authority hereby granted. Buyer shall reimburse Seller for actual damage to the Property resulting from said activities.

(viii)    Unless specifically required by New Jersey law, any and all reports, surveys and assessments, including all copies thereof, produced by Buyer or its representatives pursuant to this Agreement shall be held in strict confidence by Buyer, shall not be disclosed by Buyer or its employees, consultants, agents and representatives, without the prior written consent of Seller, and shall be forthwith delivered to Seller at no cost or expense to Seller;

(ix)    Without limiting the effect of the last clause, Buyer shall require that any party performing services hereunder waive all rights to assert any lien or claim against Seller or the Property arising out of services performed hereunder and provide insurance against injury and damage to Seller or any other person, in coverage amounts and terms satisfactory to Seller, and shall obtain Seller's written approval of such coverage prior to that party's first entry onto the Property; and

(x)    Buyer and its representatives shall comply with all governmental laws and regulations and all policies and regulations of Seller in effect at such time, including, but not limited to, those relating to health and safety, and with such special regulations, rules or policies as may be considered appropriate by Seller under the circumstances and Seller shall have the right to refuse initial or continued access to the Property to any person when it determines that such action is necessary or desirable.

(f)    Indemnification of Seller.  Buyer shall indemnify, defend and hold Seller harmless from any and all claims, demands, causes of action, and suit or suits, including all foreseeable and unforeseeable consequential damages, occurring on or after the Closing Date arising under Applicable Law related to Buyer's (or, during Buyer's ownership of the Property, any operators' or any third parties') use of the Property and/or any and all activities relating thereto.

(g)    Release of Seller.  Except in the event that Seller remains in default on any payment obligation after receiving notice of such default and opportunity to cure as set forth in Section 8, Buyer expressly releases Seller and agrees to waive all rights that it may have to seek

contribution from Seller for any response costs or claims that may arise as a result of the actions or inactions of Seller and any previous owner, operator or third party on or with respect to the Property relating to Hazardous Substances. Nothing in this provision shall alter or expand the parties' rights or obligations under the Multi Party Agreement.

8.   Default.

(a)   By Seller. If Seller fails to perform any of its obligations under this Agreement or the Multi Party Agreement, the same shall constitute a default of this Agreement and thereupon Buyer, at its option, may declare a forfeiture by written notice to Seller ("Notice of Seller's Default"). At the expiration of forty-five (45) days after the Notice of Seller's Default, if Seller has not remedied the default, or if Seller has not exercised all efforts to remedy the default as quickly as possible where the default is not capable of being remedied in forty-five (45) days, Buyer may declare this Agreement null and void. In any event, if such default is not remedied within 120 days after the Notice of Seller's Default, Buyer may declare this Agreement null and void.

(b)   By Buyer. If Buyer fails to perform any of its obligations under this Agreement or the Multi Party Agreement, the same shall constitute a default of this Agreement and thereupon Seller, at its option, may declare a forfeiture by written notice to Buyer ("Notice of Buyer's Default"). At the expiration of forty-five (45) days after the Notice of Buyer's Default, if Buyer has not remedied the default, or if Buyer has not exercised all efforts to remedy the default as quickly as possible where the default is not capable of being remedied in forty-five (45) days (an "Extended Default"), Seller may at its option:

(i)   if the default occurs before Closing and is not cured as described in Section 8(b), declare the Agreement null and void; or

(ii)   if the default occurs after Closing and Seller is not in default, upon thirty (30) days' written notice, demand immediate payment of the Note and/or Letter of Credit or immediately foreclose on the Mortgage.

In any event, if an Extended Default is not remedied within 120 days after the Notice of Buyer's Default, Seller may elect to exercise its remedies under this Section 8(b)(i) or (ii).

(c)   Limitation of Liability. In the event of default under this Agreement, the remedies of the parties are limited to the remedies set forth in Sections 8(a) and (b) above. No party shall be liable for any incidental or consequential damages for default under this Agreement.

(d)   Waiver of Breach. The waiver by either party of any condition or breach by the other party of any term, covenant, or condition herein contained shall not be deemed to be a waiver of any other condition of any subsequent breach of the same or any other term, covenant, or condition herein contained.

9.    **Force Majeure.**

(a)    "Force Majeure" shall mean an act, event or condition having a material adverse effect upon the rights or obligations of either party hereunder if such act, event, or condition is beyond the reasonable control of the parties to this Agreement and is relied upon as justification for the failure to perform any obligation set forth herein or to comply with any condition required of the respective parties pursuant to this Agreement. Such acts, events or conditions shall be limited to the following: (i) any labor strike or interruption, or (ii) the action or inaction of any governmental body of the United States of America or the State of New Jersey and any other subdivisions thereof exercising jurisdiction.

(b)    Each party hereto is excused from failure or delay in the performance of any act required hereunder (except for payment of the Letter of Credit, accrual and payment of interest on the Note, and Seller's payment obligations with respect to the Demolition) by reason of Force Majeure. In the event a party is rendered unable, either in whole or in part, to carry out the terms of this Agreement, such affected party shall give immediate notice ("Force Majeure Notice") to the other party and the obligations (other than payment of the Letter of Credit, accrual and payment of interest on the Note, and Seller's payment obligations with respect to the Demolition) of such affected party, to the extent affected by such Force Majeure and to the extent that due diligence is being used to resume performance at the earliest practicable date, shall be suspended. The parties hereto shall use their best efforts to overcome or remove any Force Majeure and to minimize the effect of such Fore Majeure. Notice shall be given to the other party when the effect of the Force Majeure has ceased. The parties hereto acknowledge that notwithstanding any Force Majeure, all payment obligations shall continue to be performed without delay, including but not limited to the payment of the Letter of Credit and the Note.

(c)    If any event of Force Majeure claimed by a party is not overcome or removed within two (2) years of the Force Majeure Notice being given, then at the option of the other party, upon ten (10) days' written notice, this Agreement shall be null and void.

9.    **Closing.**

(a)    <u>Date and Location</u>. The purchase and sale transaction contemplated by this Agreement shall close (the "Closing") on or before October 31, 1997, or on such other date as the parties may otherwise mutually agree (the "Closing Date"); provided, however, that the Closing Date shall not be later than December 31, 1997. The Closing shall be held at a location which is mutually agreeable to both parties.

(b)    <u>Seller's Obligations</u>. At the Closing, Seller shall:

(i)    Deliver to Buyer a duly executed and acknowledged deed in substantially the form and substance as Exhibit H, attached hereto (the "Deed");

(ii)    Deliver to Buyer a duly executed Affidavit of Title in substantially the form and substance as Exhibit I attached hereto;

(iii)    Deliver to Buyer possession of the Property;

9

(iv)   Deliver to Buyer reasonable evidence of Seller's capacity and authority for closing the transaction as required by the Title Company;

(v)   Deliver documents reasonably requested by the Title Company as administrative requirements for closing this transaction, including but not limited to an ALTA survey; and

(vi)   Deliver to Buyer an Owner's Policy of Title Insurance in the amount of the Purchase Price, dated as of the Closing Date.

(c)   Buyer's Obligations.  At the Closing, Buyer shall:

(i)   Deliver to Seller the Note, Mortgage and Letter of Credit.  Buyer shall pay to Seller the cost of the Policy of Title Insurance and the title search:

(ii)   Deliver to Seller reasonable evidence of Buyer's capacity and authority for closing the transaction; and

(iii)   Deliver documents reasonably requested by the Title Company as administrative requirements for closing this transaction.

(d)   Taxes.  General real estate taxes for the then-current year relating to the Property shall be prorated as of the Closing Date and shall be adjusted in cash at Closing.  If the Closing shall occur before the tax rate is fixed for the then current year, the apportionment of taxes shall be upon the basis of the tax rate for the next preceding year applied to the latest assessed valuation.  All special taxes or assessments prior to the Closing Date shall be paid by Seller.  Any rebates or refunds of taxes paid prior to Closing shall be for Seller's benefit.  Seller shall pay all transfer tax on the Property that becomes due as a result of the transactions contemplated by this Agreement.

(e)   Costs.  Except to the extent specifically allocated in this Agreement, each party shall pay its share of the normal and incidental costs associated with the Closing which are routinely incurred by a Seller and Buyer in a transaction of this character in the county where the Property is located.

10.   Risk Of Loss; Condemnation.  Seller shall assume the risk of loss, destruction or damage to the Property by fire, Act of God, other casualty, or condemnation prior to the Closing Date and the transfer of title to the Property to Buyer.  Buyer assumes, as of the Closing Date and transfer of title, all hazards of damage to or destruction of the Property and of the taking of the Property or any part thereof for public use, and agrees that no such damage, destruction or taking shall constitute a failure of consideration.  Upon the execution of this Agreement, Buyer shall have an insurable interest in the Property.



11.    **Brokers.**  Seller and Buyer each represent and warrant to the other that no real estate brokers or finders are or were involved with respect to any of the transactions contemplated by this Agreement.  Each party hereto will indemnify and save harmless the other from any claim or claims made by any brokers or finders for any commissions or compensation alleged to be due by reason of the indemnifying party involving such brokers or finders.

12.    **Notices.**  All notices, demands, elections, requests, consents and other communications hereunder shall be in writing and shall be given by personal delivery or sent by certified or registered mail, postage prepaid, return receipt requested and addressed to the parties hereto at the addresses below, or sent by facsimile to the parties at the facsimile numbers below, or at such other address or facsimile number as a party may designate:

Seller

Attention:    Mgr. - Corporate Real Estate
2109 Alcoa Building
425 Sixth Avenue
Pittsburgh, PA 15219
Facsimile No.: (412) 553-2661
Telephone No.: (412) 553-2614

Buyer
Attention:    Mr. John De Sheplo
260 Columbia Aveune
Fort Lee, NJ  07024
Facsimile No.: (201) 224-0572
Telephone No.: (201) 224-6679

Mr. Fred Daibes
725 River Road
Edgewater, NJ  07020
Facsimile No.: (201) 313-9044
Telephone No.: (201) 224-0003

with copy to: David Carmel, Esquire
523 River Road
Edgewater, NJ  07020
Facsimile No.: (201) 943-5614
Telephone No.: (201) 943-9160

13.    **Non-Foreign Person.**

(a)    <u>Seller's Certification</u>.  Seller certifies and affirms that Seller is not a "foreign person" within the meaning of Section 1445 of the Internal Revenue Code of 1954, as amended. Seller will execute at or prior to the Closing Date such appropriate affidavit or affidavits as may

11

be necessary to evidence same in accordance with Treasury Department Regulation 1.1445-2T(b)(2)(iii).

(b)  Buyer's Certification.  Buyer certifies and affirms that Buyer is not a "foreign person" within the meaning of the federal International Investment Survey Act of 1976, as amended, 22 U.S.C. §3101, et seq.  Buyer will execute at or prior to the Closing Date such appropriate affidavit or affidavits as may be necessary to evidence the same.

14.  Like-Kind Exchange.  Seller may transfer or convey the Property to Buyer as a like-kind exchange pursuant to Section 1031 of the Internal Revenue Code of 1986, as amended, and the regulations promulgated thereunder, through the use of a qualified intermediary; provided that the like-kind exchange does not delay Closing or affect any obligation or requirement of this Agreement, that certain Agreement to Purchase and Sell Real Estate between the parties related to the parking lot ("Parking Lot Agreement") or the Multi Party Agreement.  If Seller elects, in its sole discretion, to convey or transfer the Property pursuant to such a like-kind exchange, Buyer shall cooperate with Seller in good faith to effect such exchange.  Buyer shall not incur any additional costs as a result of Seller's election to convey or transfer the Property pursuant to a like-kind exchange.

15.  Headings.  The headings contained in this Agreement are for reference purposes only and shall not be deemed to be a part of this Agreement or to affect the meaning or interpretation of this Agreement.

16.  Merger.  All understandings and agreements heretofore had between the parties, oral or written, are merged into this Agreement, which alone fully and completely expresses their understanding.

17.  Modification.  This Agreement shall not be modified or amended except by a written instrument duly executed by the parties hereto.

18.  Binding Effect And Assignment.  This Agreement shall be binding upon and shall inure to the benefit of the parties hereto.  Neither party shall assign this Agreement without the prior written consent of the other, which consent shall not be unreasonably withheld.  Any attempted assignment without such prior written consent shall be void.

19.  Governing Law.  This Agreement shall be construed and governed in accordance with the laws of the State of New Jersey.

20.  Prohibition Against Recording.  Neither Buyer nor Seller shall cause this Agreement, nor any part or memorandum thereof, to be placed or filed of record.

12

21.  **Modified Time Of The Essence.** If full performance of this Agreement is not completed by the Closing Date, either party shall have the right thereafter to declare time to be of the essence of this Agreement by giving written notice thereof to the other party. Such notice shall contain a declaration that time is of the essence and shall fix the time, place and date of final settlement, which date may not be sooner than thirty (30) days following the effective date of such notice.

22.  **Survival.** Sections 2(b), 5, 7 and 8 shall survive the Closing and the consummation of the transaction contemplated by this Agreement.

23.  **Counterparts.** This Agreement may be executed in any number of counterparts, each of which when executed and delivered shall constitute an original of this Agreement, but all such counterparts shall constitute one and the same instrument.

13

   **IN WITNESS WHEREOF,** the parties hereto have duly executed this Agreement in duplicate as of the day and year first above written.

WITNESS:                              **SELLER:**
                                      **A. P. NEW JERSEY, INC.**


By: _____          By: _____

                                      Its: _____


WITNESS:                              **BUYER:**
                                      NORTH RIVER MEWS ASSOCIATES, LLC

By: _____          By: _____
                                      North River Mews, Inc., Managing Member
                                      Fred A. Daibes, President

                                      14.

**IN WITNESS WHEREOF,** the parties hereto have duly executed this Agreement in duplicate as of the day and year first above written.

WITNESS:

SELLER:
A. P. NEW JERSEY, INC.

By: _Cothung f Crawfark l_

By: _[signature]_

Its: _Vice - President_

Schedule 5(a)

Litigation

Complaint filed in Tax Court of New Jersey contesting 1997 real property tax assessments on 700 River Road, Block 74, Lot 1 and 732 River Road, Block 71, Lot 2.



SCHEDULE 7C

ENVIRONMENTAL REPORTS

Renaissance Square, Edgewater, New Jersey - Appendix G - General Site PCB-Contamination Characterization (includes Exhibit 1, 2 and 3) prepared by Paulus Sokolowski and Sartor Inc. dated September 1986.

Remedial Investigation/Feasibility Study - Former Alcoa Aluminum Works, Edgewater, New Jersey, Volume 1 prepared for Amland Properties Corporation by Woodward-Clyde Consultants dated November 1988.

Remedial Investigation/Feasibility Study - Former Alcoa Aluminum Works, Edgewater, New Jersey, Volume 2 Appendices A-F, prepared for Amland Properties Corporation by Woodward-Clyde Consultants dated November 1988.

Remedial Investigation/Feasibility Study - Former Alcoa Aluminum Works, Edgewater, New Jersey, Volume 3 Appendices G-I, prepared for Amland Properties Corporation by Woodward-Clyde Consultants dated November 1988.

Interim Response Action Final Report - A.P. New Jersey, Inc. - prepared by Metcalf & Eddy, Inc. dated September 1993.

Detailed Options Evaluation Report - Aluminum Company of America - Edgewater, New Jersey (DERS Project No. 3589) prepared by DuPont Environmental Remediation Services dated July 11, 1996.

EXHIBIT "A"

THE PROPERTY to be conveyed shall consist of all those parcels of land and premises situate, lying and being in the Borough of Edgewater in the County of Bergen and State of New Jersey, more particularly described as follows:

## PARCEL A

BEGINNING at the intersection of the Southerly line of Russell Avenue and the Westerly line of River Road; thence

(1) Along the Westerly line of River Road South 21 degrees 41' 51" West a distance of 84.55 feet to a point; thence

(2) Along the Westerly line of River Road South 20 degrees 58' 51" West a distance of 132.06 feet to a point; thence

(3) Along the Westerly line of River Road forming a curve to the right with a radius of 283.97 feet (or 300.47 feet as the case may be) and an arc distance of 98.13 feet to a point; thence

(4) Along the Westerly line of River Road South 40 degrees 46' 51" West a distance of 154.71 feet to a point; thence

(5) Along the Westerly line of River Road South 40 degrees 43' 51" West a distance of 213.02 feet to a point; thence

(6) Along the Westerly line of River Road South 37 degrees 05' 21" West 157.71, to a spike in the pavement at the intersection of the Westerly line of River Road and the Northerly line of Vreeland Terrace; thence

(7) Along the Northerly line of Vreeland Terrace North 53 degrees 38' 09" West a distance of 463.00 feet to the Easterly line of Undercliff Avenue; thence

(8) Along the Easterly line of Undercliff Avenue North 23 degrees 23' 51" East a distance of 162.02 feet to a point; thence

(9) Along the Easterly line of Undercliff Avenue North 27 degrees 21' 56" East 204.30 feet to a point; thence

(10) Along the Easterly line of Undercliff Avenue North 27 degrees 38' 51" East 463.84 feet to a point on the Southerly line of Russell Avenue; thence

_(11) Along the Southerly line of Russell Avenue South 54 degrees 54' 09" East a distance of 566.09 feet to the point and place of beginning.

EXCEPTING, however, from the above described parcel all that parcel of land known as The Edgewater Cemetery and bounded and described as follows:

BEGINNING at a point which point is North 23 degrees 00' 16" East a distance of 161.72 feet from the intersection of the Westerly line of River Road with the Northerly line of Vreeland Terrace; thence

(1)  Parallel with the Northerly line of Vreeland Terrace North 53 degrees 38' 09" West a distance of 340.63 feet to a point; thence

(2)  North 35 degrees 08' 31" East a distance of 185.11 feet to a point; thence

(3)  South 54 degrees 51' 29" East a distance of 233.25 feet to a point; thence

(4)  South 35 degrees 08' 31" West a distance of 54.64 feet to a point; thence

(5)  South 54 degrees 51' 29" East a distance of 107.28 feet to a point; thence

(6)  South 35 degrees 07' 57" West a distance of 137.74 feet to a point and place of beginning.

SAID PREMISES are known as Lots 1, 2 and 3 in Block 74 as shown on the Tax Map of the Borough of Edgewater.

BEING the same premises conveyed as Parcel 1 to Amland Properties Corporation by Indenture between 700 River Road Realty, dated January 3, 1983 and recorded January 3, 1983 in the Office of the Clerk of Bergen County in Deed Book 6728, page 760.

2

# EXHIBIT C



## ENVIRONMENTAL INDEMNITY AGREEMENT

**THIS AGREEMENT** made this 13ᵗʰ day of March, 1999

BETWEEN:      A. P. NEW JERSEY, INC.
a New Jersey corporation
(hereinafter called "A. P.")

AND:      NORTH RIVER MEWS ASSOCIATES, L.L.C.
a New Jersey limited liability company
(hereinafter called "North River")

AND:      RIVER ROAD IMPROVEMENTS PHASE II, INC.
a Delaware corporation
(hereinafter called "River Road")

### WITNESSETH:

**WHEREAS,** North River is the owner of certain real estate located in the Borough of Edgewater, County of Bergen, State of New Jersey pursuant to an Agreement to Purchase and Sell Real Estate entered into on June 27, 1997, by and between North River and A. P. (the "Purchase Agreement") and a Transfer Deed executed by A. P. on August 25, 1997, and recorded on August 26, 1997 as Instrument Number 104092 (the "Property"); and

**WHEREAS,** North River, River Road, A. P. and the County of Bergen, New Jersey, were all parties to a Multi-Party Property Acquisition Agreement also entered into on June 27, 1997, whereby, inter alia, North River and River Road agreed that they would cause to be demolished all of the structures on the Property; and

**WHEREAS,** North River, River Road, A. P. and the County of Bergen, New Jersey, were all parties to a Funding Agreement entered into on September 23, 1997, whereby, inter alia, the parties agreed that, to the extent that Building 12 on the Property is not demolished, A. P. shall withhold or cause Bergen County to withhold payment of $500,000 of the demolition funding until, among other conditions, A. P. receives a "No Further Action" letter from the NJDEP covering all the entire Property, including Building 12; and

**WHEREAS,** North River presently does not intend to demolish Building 12.

**NOW, THEREFORE,** in consideration of the premises and of such mutual promises, covenants and undertakings, which the parties acknowledge to be received and sufficient, the parties hereto agree as follows:



1.     In addition to and notwithstanding any other agreement or obligation of the parties, to the extent that Building 12 is not demolished, North River and River Road shall indemnify, defend and hold A. P. harmless from any and all claims, demands, causes of action, and suit or suits, including all foreseeable and unforeseeable consequential damages, occurring at any time before, during or after North River's ownership of the Property, relating to Building 12 and the land under and adjacent thereto, arising under Applicable Law (as defined in the Purchase Agreement), including, but not limited to, remediation and disposal costs and expenses related to PCBs.

**IN WITNESS WHEREOF,** the parties hereto have executed this Agreement as of the day and year first above written.

Witness:

A.P. New Jersey, Inc.

By: _____
JOHN MILLETT, Vice President

Witness:

**North River Mews Associates, L.L.C.**

By: _____
North River Mews, Inc., Managing Member, FRED A. DAIBES, President

Witness:

**River Road Improvements Phase II, Inc.**

By: _____
FRED A. DAIBES, President

STATE OF NEW JERSEY      :      ss:

COUNTY OF BERGEN      :

    *BEFORE ME*, a Notary Public, in and for said State, personally appeared Fred A. Daibes, President of North River Mews, Inc., which is the managing member of North River Mews Associates, L.L.C., a New Jersey limited liability company, and President of River Road Improvements Phase II, Inc., and stated and acknowledged that he was duly authorized in his capacities to execute the foregoing instrument for and in the name and behalf of the company and further stated and acknowledged that he had so signed, executed and delivered said foregoing instrument for the consideration and purposes therein mentioned and set.

    WITNESS my hand and official seal on this 15th day of March, 1999.

Notary Public
MARK J SOKOLICH
Attorney at Law
State of New Jersey

COMMONWEALTH OF PENNSYLVANIA      :      ss:

COUNTY OF ALLEGHENY      :

    *BEFORE ME*, a Notary Public, in and for said State, personally appeared John Millett, Vice President of A.P. New Jersey, Inc., and stated and acknowledged that he was duly authorized in his capacity to execute the foregoing instrument for and in the name and behalf of the company and further stated and acknowledged that he had so signed, executed and delivered said foregoing instrument for the consideration and purposes therein mentioned and set.

    WITNESS my hand and official seal on this 15th day of March, 1999.

Notary Public
MARK J. SOKOLICH
Attorney at Law
State of New Jersey

