## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| BOROUGH OF EDGEWATER, | Civil Action No: 2:14-cv-5060 |
|     Plaintiff, | |
|     v. | |
| WATERSIDE CONSTRUCTION, LLC; 38 COAH, LLC; DAIBES BROTHERS, INC.; NORTH RIVER MEWS ASSOCIATES, LLC; FRED A. DAIBES; TERMS ENVIRONMENTAL SERVICES, INC.; ALCOA INC. (formerly known as "Aluminum Company of America"); ALCOA DOMESTIC LLC, as successor in interest to A.P. NEW JERSEY, INC.; JOHN DOES 1-100; and ABC CORPORATIONS 1-100, | **MEMORANDUM OF LAW OF ALCOA DOMESTIC LLC IN SUPPORT OF PARTIAL JUDGMENT ON THE PLEADINGS PURSUANT TO FED. R. CIV. P. 12(C)** |
|     Defendants, | |
| and | |
| WATERSIDE CONSTRUCTION, LLC; 38 COAH, LLC; DAIBES BROTHERS, INC.; NORTH RIVER MEWS ASSOCIATES, LLC; and FRED A. DAIBES, | |
|     Defendants/Third-Party Plaintiffs, | |
|     v. | |
| NEGLIA ENGINEERING ASSOCIATES, | |
|     Third-Party Defendant, | |
| and | |

ALCOA DOMESTIC LLC, as successor in interest to A.P. NEW JERSEY, INC.,

     Defendant/Third-Party Plaintiff,

     v.

COUNTY OF BERGEN and RIVER ROAD IMPROVEMENT PHASE II, INC.,

     Third-Party Defendants.

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ........................................................................... 1

STATEMENT OF THE CASE........................................................................... 4

    A.    Purchase of the Former Alcoa Site....................................................... 4

        (i)    Purchase and Sale Agreement.................................................. 4

        (ii)    Multi-Party Agreement ............................................................ 7

        (iii)    Environmental Indemnity Agreement ..................................... 7

    B.    Waterside Dumps Contaminated Debris at Veteran's Field and the Borough Files this Lawsuit.......................................................... 8

        (i)    Claims Against Alcoa .............................................................. 9

        (ii)    Alcoa's Crossclaim and Third Party Claim for Defense and Indemnification Against North River and RRIP............... 9

LEGAL ARGUMENT........................................................................................ 10

POINT I  JUDGMENT ON THE PLEADINGS IS WARRANTED WHERE NO GENUINE ISSUES OF MATERIAL FACT EXIST........................................................................................................ 10

POINT II  NORTH RIVER RELEASED ALL CLAIMS AGAINST ALCOA WHEN IT PURCHASED THE FORMER ALCOA SITE......................................................................................................... 11

POINT III  NORTH RIVER AND RRIP MUST DEFEND AND INDEMNIFY ALCOA FOR THIS LAWSUIT.................................... 13

    A.    The Defense and Indemnity Provisions Are Clear and Unambiguous...................................................................................... 13

    B.    The Duty to Defend Requires RRIP and North River to Pay Alcoa's Defense Costs .................................................................... 14

CONCLUSION ................................................................................................. 16

i

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

<u>Am. Commercial Lines LLC v. Water Quality Ins. Syndicate</u>,
No. 09 Civ. 7957 (LAK), 2010 WL 1379763 (S.D.N.Y. Mar. 29, 2010)................................10

<u>Ashley II of Charleston, LLC v. PCS Nitrogen, Inc.</u>,
791 F. Supp. 2d 431 (D.S.C. 2011)....................................................................................12

<u>Bowen Engineering v. Estate of Reeve</u>,
799 F. Supp. 467 (D.N.J. 1992) .........................................................................................15

<u>Bradford v. Bolles</u>,
No. 13–1910, 2014 WL 6895270 (D. N.J. Dec. 5, 2014) ....................................................11

<u>Burlington Ins. Co. v. Phillips-Garrett, Inc.</u>,
37 F. Supp. 3d 1005, 1008, 1012 ......................................................................................10

<u>Crawford v. Weather Shield Mfg.</u>,
38 Cal. Rptr. 3d 787 (Cal. Ct. App. 2006),
aff'd, 44 Cal. 4th 541 (2008) .............................................................................................16

<u>D.E. v. Cent. Dauphin Sch. Dist.</u>,
765 F.3d 260 (3d Cir. 2014)................................................................................................10

<u>DiCarlo v. St. Mary Hosp.</u>,
530 F.3d 255 (3d Cir. 2008)................................................................................................10

<u>Fisher Dev. Co. v. Boise Cascade Corp.</u>,
37 F.3d 104 (3d Cir. 1994)..................................................................................................11

<u>Jersey Nat'l Bank v. Dome Petroleum Ltd.</u>,
723 F.2d 335 (3d Cir. 1983)................................................................................................15

<u>Krueger Assoc., Inc. v. ADT Security Systems, Mid-South, Inc.</u>,
1994 WL 709380 1, 5 (E.D. Pa. 1994) ...............................................................................16

<u>Montville Twp. v. Woodmont Builders, LLC</u>,
Civ. No. 03-2680 (DRD), 2009 WL 3253911 (D.N.J. Oct. 7, 2009) .....................................11

<u>N.J. Physicians United Reciprocal Exchange v. Boynton & Boynton, Inc.</u>,
2015 WL 5822930 (D.N.J. Oct. 1, 2015)..............................................................................10

<u>New York State Urban Development Corp. v. Ritco Intern., Inc.</u>,
941 N.Y.S.2d 539 (Sup. Ct. N.Y. County 2011) ..................................................................16

SmithKline Beecham Corp. v. Rohm and Haas Co.,
  89 F.3d 154 (3d Cir. 1996)...........................................................................................15

Syndicate 1245 at Lloyd's v. Walnut Advisory Corp.,
  721 F. Supp. 2d 307 (D.N.J. 2010) ..............................................................................11

Trucking Employees of North Jersey Welfare Fund v. Vrablick,
  177 N.J. Super. 142 (App. Div. 1980) ...........................................................................15

United States v. Bills,
  639 F.Supp. 825 (D.N.J. 1986), modified on other grounds, 822 F.2d 373 (3d
  Cir. 1987) ......................................................................................................................15

Va. Heart Inst., Ltd. v. Nw. Pa. Bank & Tr. Co.,
  449 F. Supp. 215 (W.D. Pa. 1978).................................................................................10

VoiceAge Corp. v. RealNetworks, Inc.,
  926 F. Supp. 2d 524 (S.D.N.Y. 2013) ...........................................................................10

**Statutes**

42 U.S.C. § 9601 .................................................................................................................1, 9

N.J.S.A. 58:10-23.11............................................................................................................9

N.J.S.A. 58:10-23.11 et seq. ...............................................................................................1

## **PRELIMINARY STATEMENT**

Alcoa Domestic, LLC as successor in interest to A.P. New Jersey, Inc. ("Alcoa") seeks partial judgment on the pleadings and asks this Court to enforce the terms of two clear and unambiguous contracts between Alcoa and North River Mews Associates, LLC ("North River") and River Road Improvement Phase II, Inc. ("RRIP").  Pursuant to the terms of those contracts Alcoa seeks an order 1) dismissing North River's crossclaims against Alcoa; 2) requiring defendants North River and RRIP to reimburse Alcoa for all legal costs that Alcoa has incurred to defend itself in this lawsuit to date; 3) requiring defendants North River and RRIP to pay Alcoa's future defense costs in full; and 4) requiring defendants North River and RRIP to indemnify Alcoa for any judgment entered against it.

In 1997, defendant North River purchased property (with buildings once housing manufacturing operations) from Alcoa located in Edgewater, New Jersey (the "Former Alcoa Site").   In connection with that purchase, North River expressly released Alcoa from any and all claims with respect to the property relating to hazardous substances, including claims arising under the Comprehensive Environmental Response, Compensation, and Liability Act of 1980 ("CERCLA"), 42 U.S.C. § 9601 et seq., and New Jersey's Spill Compensation and Control Act ("Spill Act"), N.J.S.A. 58:10-23.11 et seq.  Further, pursuant to a redevelopment master plan involving the New Jersey Department of

1

Environmental Protection ("NJDEP"), the County of Bergen, and the Borough of Edgewater, North River and RRIP further agreed to fund the defense and indemnify Alcoa against any and all claims arising from the demolition and development of the Former Alcoa Site, including claims pursuant to CERCLA and the Spill Act. That 1997 agreement was labeled the Multi-Party Property Acquisition Agreement ("Multi-Party Agreement"). That agreement also contained a process approved by the NJDEP for handing PCB contaminated materials from the Former Alcoa Site.

In 2014, the Borough filed the complaint in this case alleging, among other things, that in September 2013 one or more of the Waterside Defendants[1] surreptitiously used PCB-contaminated material originating from the Former Alcoa Site at Veteran's Field, a town park Waterside was developing pursuant to a contract with the Borough. The Borough sued North River, RRIP, the other Waterside Defendants, and Alcoa, among others, seeking remediation costs under CERCLA, the Spill Act, and common law to clean up Veteran's Field. Thereafter,

---

[1] Several of the defendants are related companies that are owned and/or controlled by Fred A. Daibes, who is, at least, the "Managing Member" and "President" of North River and the "President" of RRIP. See Certification of Michael E. Waller, Esq. ("Waller Cert."), Ex. 2 at p. 13; Waller Cert., Ex. 3 at p. 2. These defendants are collectively referred to as the "Waterside Defendants:" Waterside Construction, LLC ("Waterside"); North River Mews Associates, LLC ("North River"); 39 COAH Associates, LLC ("38 COAH"); Daibes Brothers, Inc. ("Daibes Bros."); Fred A. Daibes ("Daibes"); and Third-Party Defendant River Road Improvement Phase II, Inc. ("RRIP").

North River, RRIP, and the other Waterside Defendants asserted various crossclaims against Alcoa under CERCLA, the Spill Act, and common law for contribution and indemnification.   The other named defendants, TERMs Environmental Services ("TERMS"), and Neglia Engineering ("Neglia") filed similar CERCLA, Spill Act, and common law claims against Alcoa.

North River's claims against Alcoa are vitiated by the unequivocal release agreed to by North River in 1997 upon purchasing the Former Alcoa Site.  Further, North River and RRIP are required to fund Alcoa's defense of the present claims and indemnify it against any judgment pursuant to the express terms of the 1997 conveyancing agreement,  the Multi-Party Agreement, and a March 13, 1999 Environmental Indemnity Agreement (the "Environmental Indemnity Agreement").  Permitting North River and RRIP to avoid their current obligations to fund Alcoa's defense would destroy the basic protections bargained for by Alcoa and agreed to by North River and RRIP and would render those provisions of the subject contracts meaningless.  Basic contract law does not permit a party to avoid it's bargained for obligations.

Judgment on the pleadings is particularly appropriate in contract cases -- such as this case -- which involve legal interpretations of the parties' obligations. Based on the contracts at issue and well-established law, Alcoa respectfully

requests that the Court dismiss North River's claims against Alcoa and enforce the defense and indemnify provisions against North River and RRIP.

**STATEMENT OF THE CASE**

**A.    Purchase of the Former Alcoa Site**

    **(i)    Purchase and Sale Agreement**

In 1997 North River purchased the Former Alcoa Site as part of a local government master plan to widen River Road in the Borough of Edgewater and to redevelop surrounding areas, including the Former Alcoa Site.  North River's purchase of the Former Alcoa Site was memorialized in the June 1997 Agreement to Purchase and Sell Real Estate between A.P. New Jersey, Inc. and North River. ("Purchase and Sale Agreement").  <u>See</u> Waller Cert., Ex. 1.  Pursuant to that agreement, North River purchased the property for $8 million and agreed that:

> OTHER THAN THE REPRESENTATION AND WARRANTY SET FORTH IN THIS SECTION, BUYER SPECIFICALLY ACKNOWLEDGES THAT SELLER IS SELLING AND BUYER IS PURCHASING THE PROPERTY ON AN "**AS IS, WITH ALL FAULTS' BASIS.**" AND THAT BUYER SHALL HAVE AN OPPORTUNITY TO INSPECT THE PROPERTY AND IS NOT RELYING ON ANY REPRESENTATIONS OR WARRANTIES OF ANY KIND WHATSOEVER, EXPRESS OR IMPLIED, FROM SELLER, ITS AGENTS, OR REPRESENTATIVES AS TO ANY MATTERS CONCERNING THE PROPERTY…

4

Id. at ¶ 2, 5(b) (emphasis in original).  This provision continues and expressly lists, without limitation, the following subjects about which Alcoa was making no warranties:

> (i)    the quality, nature, adequacy and physical condition of the property. . .

> (ii)   the quality, nature, adequacy, and physical condition of soils, geology and any groundwater;
>
> * * *

> (vii)  the presence or removal of hazardous or toxic materials, substances or wastes in, on, under, or about the Property or the adjoining or neighboring property….

Id. at ¶ 5(b)(i), (ii), and (vii).  The Purchase and Sale Agreement also provides that "[a]ll understandings and agreements heretofore had between the parties, oral or written are merged into this Agreement, which alone fully and completely expresses their understanding."  Id. at ¶ 16.

The parties to the Purchase and Sale Agreement also agreed to the known environmental condition of the Former Alcoa Site:

> (c)    Environmental Reports:    Seller shall make available to Buyer the reports listed on Schedule 7(c), attached hereto and incorporated by reference, concerning the environmental condition of and contamination in, on, under, or about the Property (the "Environmental Reports").  The parties agree that the Environmental Reports and any and all reports, analyses, surveys, assessments, evaluations or the like prepared by Buyer and its representatives pursuant to Section 7(d) will establish the known environmental condition of the Property as of the Closing Date.

Id. at ¶ 7(c).

Pursuant to the Purchase and Sale Agreement, North River released Alcoa

from all claims arising from contamination at the Former Alcoa Site:

> Buyer expressly releases Seller and agrees to waive all
> rights that it may have to seek contribution from Seller
> for any response costs or claims that may arise as a result
> of the actions or inactions of Seller and any previous
> owner, operator or third party on or with respect to the
> Property relating to Hazardous Substances.

> "Hazardous Substances" shall mean "any substance …
> that is listed or defined as hazardous, toxic, or
> dangerous" under a host of federal environmental laws,
> including CERCLA, and related state and local laws.

Id. at ¶ 7(g); ¶¶ 7(a)–(b).  North River also agreed to defend and indemnify Alcoa:

> Buyer shall indemnify, defend and hold Seller harmless
> for any and all claims… including all foreseeable and
> unforeseeable consequential damages … arising under
> Applicable Law related to Buyer's use … of the Property
> and/or any and all activities relating thereto."

> "Applicable Law" shall mean the Comprehensive
> Environmental Response, Compensation and Liability
> Act ("CERCLA") … the Resource Conservation
> Recovery Act ("RCRA") … the Toxic Substances
> Control Act . . . any and all formal or informal orders,
> decrees or requests from the United States Environmental
> Protection Agency, the appropriate New Jersey state
> governmental and regulatory bodies … and any similar
> state and local laws and ordinances and regulations
> implementing such statutes ….

Id. at ¶¶ 7(f), (b).

### (ii)   Multi-Party Agreement

As part of the local government master plan to widen River Road and redevelop areas within the Borough, the County of Bergen (the "County"), North River, and RRIP entered into the June 27, 1997 Multi-Party Property Acquisition Agreement (the "Multi-Party Agreement").  See Waller Cert., Ex. 2.  Pursuant to that contract, North River and RRIP agreed to:

> defend and save the County and [Alcoa] harmless from any and all claims that may be filed in any Court arising from the performance of [the Multi-Party Agreement].  In connection with the defense of any claim, the County and [Alcoa] shall be entitled to select their own counsel...neither the County nor [Alcoa] shall be under any obligation to expend any funds for any purpose in connection with such litigation.

See Waller Cert., Ex. 2 at ¶ 16.  Under the Multi-Party Agreement, North River and RRIP further agreed to demolish and remove the existing structures at the Former Alcoa Site.  Id. at ¶ 2.

### (iii)   Environmental Indemnity Agreement

All of the buildings at the Former Alcoa Site were demolished before 2000 as provided in the Multi-Party Agreement, except for Building 12.  In 1999, North River (and/or other of the Waterside Defendants) decided not to demolish Building 12.  As a result, Alcoa, North River, and RRIP entered into the additional March 13, 1999 Environmental Indemnity Agreement.  See Waller Cert., Ex. 3.  North River and RRIP further agreed to:

> Indemnify, defend and hold harmless [Alcoa] for any and
> all claims … including all foreseeable and unforeseeable
> consequential damages, occurring at any time before,
> during, or after North River's ownership of [the Former
> Alcoa Site], relating to Building 12 and the land under
> and adjacent thereto, arising under Applicable Law (as
> defined in the Purchase Agreement), including, but not
> limited to, remediation and disposal costs … related to
> PCBs.

Id. at ¶ 1 (emphases added); see also Waller Cert., Ex. 1. "Applicable Law"

includes federal environmental laws, including CERCLA, and related state and

local laws.  See supra p. 6; Waller Cert., Ex. 1 at ¶ 7(b) (definition of "Applicable

Law").  In short, the Environmental Indemnity Agreement relieves Alcoa of any

obligation for claims in any way related to Building 12, as well as the land under

and adjacent to the building.

## B.   Waterside Dumps Contaminated Debris at Veteran's Field and the Borough Files this Lawsuit

In June 2012, the Borough hired Waterside to develop Veteran's Field, a

public park in the Borough.  See Waller Cert., Ex. 4 at ¶ 29.  As alleged by the

Borough, the contract required Waterside to remediate certain historically

contaminated soils at Veteran's Field and construct playing fields.  Id. ¶ 27.  The

Borough alleges further that in September 2013, instead of using certified clean

fill, Waterside surreptitiously used PCB-contaminated crushed concrete as part of

its work at Veteran's Field.  Id. ¶¶ 37–44.  The Borough claims that the crushed

concrete Waterside dumped at Veteran's Field came from the demolition of Building 12 at the Former Alcoa Site.  Id. ¶ 72.

### (i)    Claims Against Alcoa

Here, the Borough asserts claims against Alcoa under CERCLA, the Spill Act, and for common law unjust enrichment for the contamination of Veteran's Field.  See Waller Cert., Ex. 4.  North River, RRIP and the other Waterside Defendants assert claims against Alcoa for contribution under CERCLA and the Spill Act and common law claims for contribution and indemnification.  See Waller Cert., Ex. 5 at ¶¶ 8-64.  Defendants TERMS and Neglia also assert claims against Alcoa for contribution under CERCLA and the Spill Act and common law claims for contribution.  See Waller Cert., Exs. 6 and 7.

### (ii)   Alcoa's Crossclaim and Third Party Claim for Defense and Indemnification Against North River and RRIP

On or about November 21, 2014, Alcoa filed a Crossclaim against North River seeking, among other relief, defense and indemnification pursuant to the terms of the Purchase and Sale Agreement, Multi-Party Agreement, and the Environmental Indemnity Agreement.  See Waller Cert., Ex. 8.  On or about December 5, 2014, Alcoa filed a Third Party Complaint against RRIP seeking, among other relief, defense and indemnification pursuant to the terms of the Multi-Party Agreement and the Environmental Indemnity Agreement.  See Waller Cert., Ex. 9.

# LEGAL ARGUMENT

## POINT I

### JUDGMENT ON THE PLEADINGS IS WARRANTED WHERE NO GENUINE ISSUES OF MATERIAL FACT EXIST

Judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure should be granted where the moving party clearly establishes there are no material issues of fact to be resolved, and that the moving party is entitled to judgment as a matter of law.  D.E. v. Cent. Dauphin Sch. Dist., 765 F.3d 260, 271 (3d Cir. 2014); N.J. Physicians United Reciprocal Exchange v. Boynton & Boynton, Inc., 2015 WL 5822930 (D.N.J. Oct. 1, 2015).  Although the allegations in the pleadings are construed in favor of the non-moving party, the Court should not accept unsupported conclusory statements.  DiCarlo v. St. Mary Hosp., 530 F.3d 255, 263 (3d Cir. 2008).  Judgment under Rule 12(c) is particularly appropriate in contract cases involving legal interpretations of the parties' obligations.  VoiceAge Corp. v. RealNetworks, Inc., 926 F. Supp. 2d 524, 529 (S.D.N.Y. 2013); see also Va. Heart Inst., Ltd. v. Nw. Pa. Bank & Tr. Co., 449 F. Supp. 215, 217 (W.D. Pa. 1978).  Thus, indemnification agreements are properly construed on a motion for judgment on the pleadings.  Am. Commercial Lines LLC v. Water Quality Ins. Syndicate, No. 09 Civ. 7957 (LAK), 2010 WL 1379763, at *3 (S.D.N.Y. Mar. 29, 2010); Burlington Ins. Co. v. Phillips-Garrett, Inc., 37 F. Supp. 3d 1005, 1008, 1012 n.3 (S.D. Ill. 2014).  Likewise, release

agreements are properly construed on a motion for judgment on the pleadings. Bradford v. Bolles, No. 13–1910, 2014 WL 6895270 at *2 (D. N.J. Dec. 5, 2014).

In addition to the allegations in the pleadings, the Court may consider exhibits attached to the complaint in deciding a Rule 12(c) motion for judgment on the pleadings.  E.g. Syndicate 1245 at Lloyd's v. Walnut Advisory Corp., 721 F. Supp. 2d 307, 314 (D.N.J. 2010).

## POINT II

## NORTH RIVER RELEASED ALL CLAIMS AGAINST ALCOA WHEN IT PURCHASED THE FORMER ALCOA SITE

It is well settled that property buyers and sellers may allocate the financial burden of environmental cleanup among themselves by contract.  Fisher Dev. Co. v. Boise Cascade Corp., 37 F.3d 104, 107 (3d Cir. 1994).  It is also well established that a plaintiff cannot maintain CERCLA, Spill Act, and state common law claims for environmental cleanup where the scope of the release it signed forecloses such claims.  Id. at 107–08.  It is irrelevant whether the plaintiff knew of the specific environmental harm it now seeks damages for when it granted the release.  Id. at 110 n.1.  The plain language of the release controls.  Where a release, as here, specifically mentions CERCLA and Spill Act liability arising from the site in question, the plaintiff's claims arising from CERCLA and the Spill Act and related common law claims must fail.  Montville Twp. v. Woodmont Builders, LLC, Civ. No. 03-2680 (DRD), 2009 WL 3253911, at *6 (D.N.J. Oct. 7, 2009)(claims

seeking reimbursement for cleanup costs under CERCLA and the Spill Act dismissed where the parties previously entered into a release precluding any such claim arising under CERCLA or the Spill Act or any other environmental statute or law); see also Ashley II of Charleston, LLC v. PCS Nitrogen, Inc., 791 F. Supp. 2d 431, 473 (D.S.C. 2011).

Here, when North River purchased the Former Alcoa Site, it expressly and unequivocally released Alcoa from all claims under CERCLA, the Spill Act, and state law arising from contamination at the site:

> Buyer expressly releases Seller and agrees to waive all rights that it may have to seek contribution from Seller for any response costs or claims that may arise as a result of the actions or inactions of Seller and any previous owner, operator or third party on or with respect to the Property relating to Hazardous Substances.

See Waller Cert., Ex. 1 at ¶ 7(g). "Hazardous Substances" include "any substance … that is listed or defined as hazardous, toxic, or dangerous" under a host of federal environmental laws, including CERCLA, and related state and local laws. Id. ¶¶ 7(a)–(b).

North River asserted claims against Alcoa for contribution under CERCLA and the Spill Act and common law claims for contribution and indemnification. See Waller Cert., Ex. 5 at ¶¶ 8-64.  Pursuant to the plain terms of the Purchase and Sale Agreement, North River explicitly released Alcoa from claims arising under CERCLA and the Spill Act and may not now assert claims that are within the

scope of that express release.  Accordingly, all of North River's claims against Alcoa should be dismissed.

## POINT III

### NORTH RIVER AND RRIP MUST DEFEND AND INDEMNIFY ALCOA FOR THIS LAWSUIT

**A.     The Defense and Indemnity Provisions Are Clear and Unambiguous**

North River and RRIP are required to pay for Alcoa's defense of the claims asserted by the Borough, TERMS, and Neglia and indemnify Alcoa for any judgment rendered against it in this matter pursuant to the terms of the Purchase and Sale Agreement, the Multi-Party Agreement, and the Environmental Indemnity Agreement (collectively, the "Indemnity Agreements").

The Purchase and Sale Agreement unequivocally requires North River to "indemnify, defend, and hold Seller harmless for any and all claims" including the types of claims at issue here.  See Waller Cert., Ex. 1 at ¶¶ 7(f), (b).  The Multi-Party Agreement requires North River and RRIP to "defend and save the County and [Alcoa] harmless" from all claims arising from the performance of the Multi-Party Agreement, which specifically required proper and lawful disposal of PCB-contaminated material.  See Waller Cert. Ex. 2 at ¶¶ 2, 11, and 16.[2]  The Multi-

---

[2]  Paragraph 1 of the Multi-Party agreement states that "[Alcoa] agrees to sell and North River agrees to buy the property located on River Road in the Borough of Edgewater known as the "Alcoa Property;" as more fully described in the Purchase and Sale of Real Estate.  See Waller Cert., Ex. 2 at ¶ 1.  The Purchase and Sale

Party Agreement also "entitles" Alcoa to select its own counsel in any claim against it arising from performance of the agreement and expressly provides that "neither the County nor [Alcoa] shall be under any obligation to expend any funds for any purpose whatsoever in connection with such litigation." Id. at ¶ 16. The Environmental Indemnity agreement also required North River and RRIP to "indemnify, defend, and hold [Alcoa] harmless from any and all claims, demands, and causes of action" relating to Building 12 arising under CERCLA, the Spill Act. or any other environmental statute or law. See Waller Cert. Ex. 3 at ¶ 1.

## B.   The Duty to Defend Requires RRIP and North River to Pay Alcoa's Defense Costs

New Jersey courts have determined that contract interpretation is a question of law for the court. Jersey Nat'l Bank v. Dome Petroleum Ltd., 723 F.2d 335, 339 (3d Cir. 1983), quoting Trucking Employees of North Jersey Welfare Fund v. Vrablick, 177 N.J. Super. 142, 148 (App. Div. 1980). If the contractual language is clear and unambiguous, judgment may be entered "despite the parties' differing views as to what consequences flow from those clauses." United States v. Bills, 639 F.Supp. 825, 829 (D.N.J. 1986), modified on other grounds, 822 F.2d 373 (3d Cir. 1987).

---

Agreement expressly incorporates the Multi-Party Agreement by reference and required demolition of all structures pursuant to the NJDEP approved Remedial Action Work Plan. See Waller Cert. Ex. 1 at ¶ 6(a)(ii)(1).

Risk transfer agreements are construed under the same rules that govern the interpretation of other contracts.  See Bowen Engineering v. Estate of Reeve, 799 F. Supp. 467, 483-484 (D.N.J. 1992) (applying New Jersey law).  Such contracts, as with all contracts, are to be construed to effectuate the contracting parties' objective intent as manifested in the language of the contract in light of the circumstances surrounding the transaction.  See SmithKline Beecham Corp. v. Rohm and Haas Co., 89 F.3d 154, 159 (3d Cir. 1996).

North River and RRIP's promises to "defend" Alcoa clearly establish an obligation of active responsibility.  That North River and RRIP are obligated to fund Alcoa's defense is further reinforced by the provisions of the Multi-Party Agreement that (1) entitled Alcoa to direct its own defense by selecting its own counsel, and (2) mandated that Alcoa is under no obligation to "expend any funds" in connection with this litigation.  See Waller Cert., Ex. 2 at ¶ 16.  The duty to pay Alcoa's defense arose when the claims were asserted and continue until they are resolved.  See Krueger Assoc., Inc. v. ADT Security Systems, Mid-South, Inc., 1994 WL 709380 1, 5 (E.D. Pa. 1994) (Indemnitee can choose its own counsel and control its own defense and indemnitor must pay for indemnitees defense if provided by contract and/or if conflict of interest exists between indemnitee and indemnitor); see also New York State Urban Development Corp. v. Ritco Intern., Inc., 941 N.Y.S.2d 539 (Sup. Ct. N.Y. County 2011) (where a conflict of interest

exists between an [indemnitee] and [an indemnitor], the remedy is to permit the [indemnitee] to select defense counsel).

Here not only does the Multi-Purchase Agreement mandate that Alcoa is entitled to direct its own defense by selecting its own counsel, but a serious conflict of interest exists between Alcoa and North River and RRIP.  Specifically, if Alcoa was not afforded the right to direct its own defense against the Borough, North River and RRIP would have the opportunity to shift liability away from themselves and onto Alcoa.  Moreover, North River and RRIP's contractual obligation to fund Alcoa's defense is a distinct obligation that arises immediately upon allegations made against Alcoa - regardless of an after-the-fact finding of fault.  Crawford v. Weather Shield Mfg., 38 Cal. Rptr. 3d 787, 806 (Cal. Ct. App. 2006), aff'd, 44 Cal. 4th 541 (2008).  To hold otherwise would erode the basic protections bargained for between Alcoa, North River and RRIP and would render the duty to defend here meaningless.  North River, RRIP and Alcoa knowingly bargained for the protection at issue, and North River and RRIP must be required to live up to their end of the bargain and fund Alcoa's defense in this matter.

## CONCLUSION

Alcoa respectfully requests that this Court grant Alcoa's Motion for Partial Judgment on the Pleadings and enter an Order (1) dismissing the North River crossclaims asserted against Alcoa; (2) requiring North River and RRIP to

reimburse Alcoa for all legal costs that Alcoa has incurred to defend itself in this lawsuit, plus interest; (3) requiring North River and RRIP to pay Alcoa's future defense costs in full on a current basis; and (4) requiring North River and RRIP indemnify Alcoa for any judgment entered against it.  Alcoa also requests such other and further relief as this Court deems just and proper.

Dated: March 11, 2016

Respectfully submitted,

**K&L GATES LLP**

By: /s/ Michael E. Waller
  Michael E. Waller
  Dana B. Parker
  One Newark Center, Tenth Floor
  Newark, New Jersey 07102
  Tel:  (973) 848-4000

  *Attorneys for Defendants Alcoa Inc.*
  *and Alcoa Domestic LLC, as*
  *successor in interest to A.P. New*
  *Jersey, Inc.*