# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| BOROUGH OF EDGEWATER,<br>                Plaintiff,<br>v.<br>WATERSIDE CONSTRUCTION, LLC; 38<br>COAH, LLC; DAIBES BROTHERS, INC.;<br>NORTH RIVER MEWS ASSOCIATES,<br>LLC; FRED A. DAIBES; TERMS<br>ENVIRONMENTAL SERVICES, INC.;<br>ALCOA INC. (formerly known as<br>"Aluminum Company of America");<br>ALCOA DOMESTIC LLC, as successor in<br>interest to A.P. NEW JERSEY, INC.; JOHN<br>DOES 1-100; and ABC CORPORATIONS<br>1-100,<br>                Defendants.<br><br>And<br><br>WATERSIDE CONSTRUCTION, LLC, 38<br>COAH, LLC; DAIBES BROTHERS, INC.;<br>NORTH RIVER MEWS ASSOCIATES,<br>LLC; and FRED A. DAIBES,<br>     Defendants/Third-Party Plaintiffs,<br><br>v.<br>NEGLIA ENGINEERING ASSOCIATES,<br>        Third-Party Defendants.<br><br>And<br><br>ALCOA DOMESTIC, LLC as successor in<br>interest to A.P. NEW JERSEY, INC.,<br>     Defendants/Third-Party Plaintiffs,<br><br>v.<br><br>COUNTY OF BERGEN and RIVER ROAD<br>IMPROVEMENT PHASE II, INC.,<br>        Third-Party Defendants. | Civil Action No.: 2:14-CV-05060<br>(ES-MAH)<br><br><br><br>ELECTRONICALLY FILED |

**MEMORANDUM OF LAW OF DEFENDANT, NORTH RIVER MEWS
ASSOCIATES, LLC., AND, AND THIRD-PARTY
DEFENDANT, RIVER ROAD IMPROVEMENT PHASE II, INC., IN
OPPOSITION TO ALCOA'S MOTION FOR PARTIAL JUDGMENT ON THE PLEADINGS
PURUSANT TO FED. R. CIV. P. 12(C)**

Jason T. Shafron
SHAFRON LAW GROUP, LLC
2 University Plaza, Suite 400
Hackensack, NJ  07601
(201) 342-6000
*Attorneys for Defendants Waterside
Construction, LLC; 38 COAH. LLC; North River
Mews Associates, LLC.; Fred A. Daibes, and
Third-Party Defendant River Road Improvement
Phase II, Inc.*

*Of Counsel and on the Brief:*
Jason T. Shafron, Esq.

*On the Brief:*
Zachary T. Bernstein, Esq.

i

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES………………………………………………….……iii

INTRODUCTION………………………………………………………………....1

STATEMENT OF FACTS………………………………………………………....2

LEGAL ARGUMENT…………………………………………………………....6

    I.      LEGAL STANDAR FOR RULE 12(c) MOTION…………..………...6

    II.    ALCOA'S 12(c) MOTION IS INAPPROPRIATE……………...……...7

    III.   THE AGREEMENTS ARE INVALID AND UNENFORCABLE……...9

        A. Alcoa's Fraudulent Inducement……………………….………9

        B. Alcoa's Failure to Remit Payment………………………......15

    II.    ALCOA IS NOT RELEASED OR INDEMNIFIED BY
        THE AGREEMENTS………………………………….………..…16

    CONCLUSION……………………………………………………………18

# TABLE OF AUTHORITIES

## CASES

*Berman v. Gurwicz,*
189 N.J. Super. 89, 458 A.2d 1311 (Ch.Div. 1981) .................................................. 11, 12

*Brown v. Bartle,*
462 F. App'x 152, 155 (3d Cir. 2011). ........................................................................ 6

*Celeotex Corp. v. Catrett,*
477 U.S. 317 (1986) .................................................................................................... 6

*Dowling v. City of Phila.,*
855 F. 2d 136 (3d Cir. 1998) ...................................................................................... 6

*Educ. Impact, Inc. v. Danielson,*
2015 U.S. Dist. LEXIS 9467, (D.N.J. Jan. 28, 2015) .......................................... 16, 17

*First Am. Title Ins. Co. v. Lawson,*
177 N.J. 125, 827 A.2d 230 (2003) ........................................................................... 12

*Fisher Dev. Co. v. Boise Cascade Corp.,*
37 F.3d 104 (3rd Cir. 1994) ....................................................................................... 14

*Gennari v. Weichert Co. Realtors,*
148 N.J. 582, 691 A.2d 350 (1997) ........................................................................... 10

*GKE Enters., LLC v. Ford Motor Credit Co. LLC USA,*
2010 U.S. Dist. LEXIS 53714 (D.N.J. May 26, 2010) ............................................. 10

*Gleason v. Norwest Mortg., Inc.,*
243 F.3d 130 (3d Cir. 2001) ...................................................................................... 11

*In re Aspartame Antitrust Litig.,*
2007 U.S. Dist. LEXIS 16995 (E.D. Pa. Jan. 18, 2007) ........................................... 13

*Ingram Corp. v. J. Ray McDermott & Co.,*
698 F.2d 1295 (5th Cir. 1983) ............................................................................... 8, 10

*Jablonski v. Pan Am. World Airways, Inc.,*
863 F.2d 289 (3d Cir.1988) ..................................................................................... 6, 8

*Jersey Nat'l Bank v. Dome Petroleum Ltd.,*
723 F.2d 335 (3d Cir. 1983) .................................................................................... 8, 9

*Jewish Center of Sussex County v. Whale,*
165 N.J. Super. 84, 397 A.2d 712 (Ch.Div. 1978) .................................................... 12

iii

*Kelly v. Berlin*,
300 N.J. Super. 256, 692 A.2d 552 (App. Div. 1997). .................................................... 14

*Lampley v. Davis Mach. Corp.*,
219 N.J.Super. 540, 530 A.2d 1254 (App.Div. 1987) ..................................................... 14

*Mediacom Se,. LLC v. BellSouth Telecomms., Inc.*,
672 F.3d 396 (6th Cir. 2012) ............................................................................................ 9

*Mercedes-Benz USA, LLC v. ATX Group, Inc.*,
2010 U.S. Dist. LEXIS 84950 (D.N.J. Aug. 18, 2010) ................................................... 16

*News America Marketing In-Store Services, LLC v. Floorgraphics, Inc.*,
No. 12-1976 (D.N.J. Sep. 10, 2013) ................................................................................ 11

*Optica, Inc. v. Metro Pub. Adjustment, Inc.*,
2005 U.S. Dist. LEXIS 15281 (D.N.J. July 21, 2005). .................................................. 13

*Ramapo Bank v. Bechtel*,
224 N.J. Super. 191, 539 A.2d 1276 (App.Div.1988) ..................................................... 11

*Schwartz v. Avis Rent a Car Sys., LLC*,
2012 U.S. Dist. LEXIS 189251 (D.N.J. Sept. 18, 2012) ............................................ 8, 16

*Southland Corp. v. Ashland Oil, Inc.*,
696 F. Supp. 994 (D. N.J 1988) ...................................................................................... 13

*Strawn v. Canuso*,
140 N.J. 43, 657 A.2d 420 (1995) ................................................................................... 11

*Turbe v. Virgin Islands*,
938 F.2d 427 (3d Cir.1991) ........................................................................................... 6, 9

*Van Houten Serv., Inc. v. Shell Oil Co.*,
417 F. Supp. 523 (D.N.J. 1975) ...................................................................................... 11

*Windsor Card Shops, Inc. v. Hallmark Cards, Inc.*,
957 F.Supp. 562 (D.N.J. 1997) ....................................................................................... 12

## RULES

*Fed.R.Civ.P.* 12(d)…………………………………………………………………………6

## OTHER AUTHORITIES

*Black's Law Dictionary* (7th Ed.1999) ........................................................................... 12

## INTRODUCTION

Defendant North River Mews Associates, LLC ("North River"), and Third-Party Defendant River Road Improvement Phase II, Inc. ("RRIP") (hereinafter collectively "Defendants"), submit this Memorandum of Law in opposition to Defendant Aluminum Company of America and A.P. Corporation's (hereinafter collectively "Alcoa") motion for partial judgment on the pleadings pursuant to Rule 12(c) (hereinafter "Alcoa's Rule 12(c) motion"). In its Crossclaim, Alcoa asserts indemnification and release claims against North River. In its Third Party Complaint, Alcoa asserts indemnification claims against RRIP.

Alcoa seeks an order for release and indemnification by asserting alleged rights under invalid contracts.  Alcoa fraudulently induced North River and RRIP to enter into the alleged contracts by intentionally concealing a known environmental hazard.  Even if the contracts Alcoa relies on were binding when entered, Alcoa's claims would fail, as Alcoa has not performed pursuant to the contracts.  Additionally, the contracts that Alcoa claims provide for release and indemnity are inapplicable in this matter.

Alcoa's Rule 12(c) motion fails to address the lack of validity of the contracts relied on in the motion, Alcoa's fraudulent inducement to enter contracts by Alcoa's concealment of a known environmental defect, and Alcoa's failure to remit payments for the remediation of property located at 660 River Road in the Borough of Edgewater, New Jersey (the "former Alcoa property" or "the property").  Alcoa is on notice of these issues, which were raised in Defendants' Answers.  The validity of the contracts between Alcoa and Defendants is a factual question and therefore inappropriate for resolution on a Fed.R.Civ.P. 12(c) motion for judgment on the pleadings.  At the very least, Defendants should be allowed to engage in discovery to create a factual record to further support their defenses.  Ultimately, Alcoa's Rule 12(c) motion does not meet the high standard that governs Rule 12(c) motions for judgment on the pleadings and should be denied in its entirety.

1

## STATEMENT OF FACTS

North River Mews Associates, LLC ("North River") and 38 COAH Associates, LLC ("38 COAH") are being sued as current and former owners of property located at 660 River Road in the Borough of Edgewater. [Attached as **Exhibit A** is a copy of the Plaintiff's Second Amended Complaint filed on May 6, 2015 at ¶¶3-5. Alcoa is a prior owner and operator of an industrial manufacturing facility on the former Alcoa property. North River acquired the former Alcoa property from Alcoa in 1997 pursuant to the 1997 Agreement to Purchase and Sell Real Estate (hereinafter "1997 Agreement") and 1997 Multi-Party Property Acquisition Agreement (hereinafter "MPPA"). [Attached as **Exhibit B** is a copy of the 1997 Agreement to Purchase and Sell Real Estate; as **Exhibit C** is a copy of the 1997 Multi-Party Property Acquisition Agreement]. Alcoa's operation of facilitates on the former Alcoa property generated and discharged contaminants on the property. [Attached as **Exhibit D** is The 1988 Woodward-Clyde Report]. As part of the transfer of the former Alcoa property, Alcoa agreed to reimburse North River for costs associated with the remediation and disposal of undisclosed contaminated materials, including PCB contaminated materials. [**Exhibit C** at ¶3].

Prior to North River's acquisition of the former Alcoa property, Alcoa provided North River with environmental reports Alcoa claimed "established the known environmental condition of the Property." [**Exhibit B** at ¶7(c). The 1988 Woodward-Clyde Report produced by Alcoa, indicates that as of 1988, there were five 10,000-gallon tanks buried beneath the third level floor slab of building 14. [**Exhibit D** at p. 35]. These five tanks were not present when North River inspected the former Alcoa property prior to the 1997 transfer. According to documents Alcoa filed with the New Jersey Department of Environmental Protection, Alcoa, in or about 1992, had these tanks removed. [Attached as **Exhibit E** is a copy of Alcoa's June 2, 1993 letter to the New Jersey Department of Environmental Protection and Energy].

2

In 1999, Alcoa, North River and RRIP entered an Environmental Indemnity Agreement (hereinafter "1999 Agreement") which was "[i]n addition to and notwithstanding any other agreement or obligation of the parties" and was explicitly limited "**to the extent that Building 12 is not demolished."** (emphasis added). [Attached as **Exhibit F** is a copy of the Environmental Indemnity Agreement at ¶1].  Building 12 has since been demolished.

In or about October 2013, while in the process of developing the former Alcoa Property for beneficial use, North River discovered two previously unknown underground storage tanks ("USTs") underneath the former manufacturing building (hereinafter, "Building 12"). [Attached as **Exhibit G** is a copy of the Second Amended Complaint in *North River Mews Associates, LLC, et al v. Alcoa Corporation, et. al.,* Docket No. 2:14-cv-08129 (MCA-JBC) filed on September 28, 2015 at ¶ 14]. The USTs were buried in a subterranean vault beneath two floor slabs of concrete with the second, newer floor slab constructed in a way to conceal the access man-ways for the USTs, thereby effectively hiding any indication of the existence of the USTs.  [**Exhibit G** at ¶70-73]. The USTs contained oil that had been mixed with various hazardous substances, including Polychlorinated Biphenyls ("PCBs"). [**Exhibit G** at ¶15].  Further excavation of the Property in the vicinity of the USTs revealed contamination, including hazardous materials that were not previously known by North River to be on the former Alcoa Property. [**Exhibit G** at ¶16.  Available information indicates that the previously undisclosed USTs were utilized by Alcoa to service the industrial boilers used in the Building 12.  **Exhibit G** at ¶70].

None of the environmental assessments, either provided to Defendants or conducted on their behalf, indicated the presence of the USTs underneath Building 12. [**Exhibit D; Exhibit G** at ¶¶17-20].  The USTs were constructed in a manner that concealed them from view and prevented detection from environmental assessments. [**Exhibit G** at ¶¶70-74]. As a result, North River and 38 COAH filed suit against Alcoa asserting claims under CERCLA and the Spill Act, the common law and

contract against Alcoa for contamination discovered at the former Alcoa property in another matter, *North River Mews Associates, LLC, et. al. v. Alcoa Corporation, et al,* Docket No. 2:14-cv-08129 (MCA-JBC) (the "North River Matter") [**Exhibit G**].

Additionally, Alcoa breached the same agreements on which it now seeks to rely by failing to comply with the contractual requirement to reimburse North River for certain costs associated with demolition and removal of structures and the removal of the PCBs from the former Alcoa property. [**Exhibit C** at ¶3].  To date, Alcoa has failed to remit payment of over $2,500,000 in expenses that Defendants have incurred in disposing of contaminated materials from the former Alcoa property.

The Borough of Edgewater (the "Borough") has made claims in this case seeking to recover for alleged contamination of property it owns called Veteran's Field, located at 1167 River Road, Edgewater, New Jersey ("Veteran's Field"). [**Exhibit A**].  The Borough sued North River, Waterside Construction, LLC ("Waterside"), Daibes Brothers, Inc. ("Daibes Bros."), Fred A. Daibes ("Mr. Daibes"), TERMS Environmental Services, Inc. ("TERMS"), 38 COAH, and Alcoa seeking remediation costs for the clean up of Veteran's Field. [**Exhibit A**]. The Borough sued North River, 38 COAH, and Alcoa as owners/previous owners of the former Alcoa property, from where the allegedly contaminated fill material placed at Veteran's field was allegedly taken. [**Exhibit A**].  North River, 38 COAH, Waterside, Daibes Bros., and Mr. Daibes have asserted Crossclaims against Alcoa under the NJ Joint Tortfeasors Contribution Act, CERCLA, the NJ Spill Act and the common law. [Attached as **Exhibit H** is Waterside Construction, LLC, 38 COAH, LLC, Daibes Brothers, Inc., North River Mews Associates, LLC and Fred A. Daibes Amended Answer to Plaintiff's First Amended Complaint Affirmative Defenses, Counterclaims, Amended Crossclaims and Third-Party Complaint filed on December 5, 2014].  Alcoa has asserted Crossclaims against North River, 38 COAH, Waterside, Daibes Bros., and Mr. Daibes. Alcoa also sued RRIP in a Third Party Complaint. [Attached as **Exhibit I** is a copy of Alcoa's Answer to First Amended Complaint, Affirmative

Defenses, Counterclaims, and Crossclaims Filed on November 21, 2014; Attached as **Exhibit J** is a copy of Alcoa's Third Party Complaint filed December 5, 2014].   North River answered Alcoa's Crossclaims asserting Affirmative Defenses. [Attached as **Exhibit K** is a copy of the Answer of Defendants Waterside Construction, LLC, 38 COAH, LLC, Daibes Brothers, Inc., North River Mews Associates, LLC and Fred A. Daibes to Crossclaims of Defendant Alcoa, Inc. and Alcoa Domestic LLC filed on December 12, 2014].   RRIP answered Alcoa's Third-Party Complaint, asserting Affirmative Defenses. [Attached as **Exhibit L** is a copy of the Answer of Third-Party Defendant, River Road Improvement Phase II, Inc., to Third-Party Complaint of Alcoa Domestic LLC, as Successor-in-Interest to A.P. New Jersey, Inc. filed on March 11, 2015].

Alcoa now moves for partial judgment in a Rule 12(c) motion on its claims against North River and RRIP asserting rights under the 1997 Agreement to Purchase and Sell Real Estate, the Multi-Party Property Acquisition Agreement, and 1999 Environmental Indemnity Agreement (hereinafter collectively, "the Agreements").   Alcoa may not assert that North River and RRIP's claims against Alcoa were released by these Agreements because Alcoa fraudulently induced North River into entering the Agreements by concealing known environmental hazards, rendering these contracts invalid.   Even if the contracts were valid when entered, Alcoa's claims still fail as Alcoa has failed to perform pursuant to the Agreements.   Furthermore, the provisions that Alcoa relies on to assert North River and RRIP must release their claims and indemnify Alcoa are ambiguous and inapplicable to this matter.

## LEGAL ARGUMENT

### I.   LEGAL STANDARD FOR RULE 12(c) MOTION

Granting a Rule 12(c) motion results in a determination on the merits at an early stage in the litigation.  "Our standard of review of a motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c) is plenary. Under Rule 12(c), judgment will not be granted unless the movant clearly establishes that no material issue of fact remains to be resolved and that he is entitled to judgment as a matter of law. In reviewing the grant of a Rule 12(c) motion, we must view the facts presented in the pleadings and the inferences to be drawn therefrom in the light most favorable to the nonmoving party." *Jablonski v. Pan Am. World Airways, Inc.,* 863 F.2d 289, 290-91 (3d Cir.1988) (internal quotation marks and citations omitted). A Rule 12(c) motion for judgment on the pleadings is treated like a motion to dismiss under Rule 12(b)(6). *Turbe v. Virgin Islands,* 938 F.2d 427, 428 (3d Cir.1991).

If "on a motion under Rule 12(b)(6)… matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56. *Fed.R.Civ.P.* 12(d).  The court should provide adequate notice of the intention to convert the motion. *Brown v. Bartle,* 462 F. App'x 152, 155 (3d Cir. 2011). If a motion to dismiss is treated as a motion for summary judgment, then the "parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." *Fed.R.Civ.P.* 12(d). This includes giving a party opposing summary judgment an adequate opportunity to obtain discovery. *Brown,* at 155; *Dowling v. City of Phila.*, 855 F. 2d 136, 139 (3d Cir. 1998) (citing *Celeotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986)).

Defendants' affirmative defenses and disputes raised in their Answers to Alcoa's Crossclaim and Third-Party Complaint necessitate a denial of Alcoa's motion for partial judgment on the

pleadings. Plaintiff has not shown that there are no genuine issues of material fact and that it is entitled to judgment as a matter of law.

## II.   ALCOA'S 12(c) MOTION IS INAPPROPRIATE

Alcoa's motion is inappropriate for resolution on a Fed.R.Civ.P. 12(c) motion for judgment on the pleadings.  Alcoa argues that the 1997 Agreement released Alcoa from all of North River's' claims for environmental cleanup and the 1997 Agreement, the MPPA, and the 1999 Agreement (hereinafter collectively, "the Agreements") require North River to indemnify Alcoa in this matter. Alcoa also argues that the MPPA requires RRIP indemnify Alcoa in this matter.  Alcoa's Rule 12(c) motion is inappropriate because it raises questions of fact related to the Agreements.

In North River's answer to Alcoa's Crossclaims, North River asserts a substantial factual dispute as to the validity of the Agreements that are the foundation of Alcoa's Rule 12(c) motion. North River asserts in its Third Affirmative Defense that Alcoa's "Crossclaims are barred by Alcoa's own breach of Contract," and in North River's Fourteenth Affirmative Defense that Alcoa's "Crossclaims are barred or subject to reduction by Alcoa's misrepresentations and/or fraud in the inducement of the contract."  In addition, North River asserts in its Thirteenth Affirmative Defense that Alcoa's "Crossclaims are barred by the terms of the contract between the parties in this matter."

In RRIP's answer to Alcoa's Third-Party Complaint, RRIP also asserts a similar substantial factual dispute as to the validity of the Agreements that are the foundation of Alcoa's Rule 12(c) motion.  RRIP asserts in its Third Affirmative Defense that Alcoa's "Third-Party Complaint is barred by Alcoa's own breach of contract," and in RRIP's Tenth Affirmative Defense that Alcoa's "Third-Party Complaint is barred or subject to reduction by Alcoa's misrepresentations and/or fraud in the inducement of contract." In addition, RRIP asserts in its Ninth Affirmative Defense that Alcoa's "Third-Party Complaint is barred by the terms of the contract between the parties in this matter."

The validity of the Agreements, given Alcoa's failure to perform under the contract and Alcoa's fraudulent inducement, is a question of fact, inappropriate for determination on a Rule 12(c) motion.  Defendants' allegation of fraudulent inducement, if proven to the satisfaction of the fact-finder, will invalidate the Agreements and any protection they may have afforded Alcoa.  *Ingram Corp. v. J. Ray McDermott & Co.*, 698 F.2d 1295, 1314 (5th Cir. 1983) ("Fraudulent inducement . . . can vitiate a release. This is hornbook law.") ((See Restatement (Second) of Contracts §§ 164, 167 (1979); 12 S. Williston, A Treatise on the Law of Contracts § 1488 (3d ed. 1970); 37 Am.Jur.2d *Fraud and Deceit* §§ 8, 12 (1968); 37 C.J.S. *Fraud* § 64 (1943)).  Under Rule 12(c), judgment will not be granted unless the movant clearly establishes that no material issue of fact remains to be resolved and that he is entitled to judgment as a matter of law.  In reviewing the grant of a Rule 12(c) motion, we must view the facts presented in the pleadings and the inferences to be drawn therefrom in the light most favorable to the nonmoving party." *Jablonski* at 290-91. (internal quotation marks and citations omitted).

In this matter, not only are there factual issues with regard to the validity of the alleged contracts, but the contractual provisions Alcoa relies on for its motion are either inapposite to Alcoa's interpretation or ambiguous. "[A]mbiguous contractual provisions raise questions of fact that are not appropriately decided on a motion to dismiss".  *Schwartz v. Avis Rent a Car Sys., LLC*, 2012 U.S. Dist. LEXIS 189251, *21 (D.N.J. Sept. 18, 2012).  Alcoa's reliance on *Jersey Nat'l Bank* for the premise that "contract interpretation is a question of law for the court" is misplaced. *Jersey Nat'l Bank v. Dome Petroleum Ltd.*, 723 F.2d 335, 339 (3d Cir. 1983).  *Jersey Nat'l Bank* merely states that where a contractual provision is clear and unambiguous, it raises no factual issues. *Jersey Nat'l Bank* at 339.  Alcoa's Rule 12(c) motion is inappropriate because there is ambiguity as to the meaning of the contract language of the Agreements, and as to the Agreements' applicability.

A Rule 12(c) motion for judgment on the pleadings is treated like a motion to dismiss under Rule 12(b)(6). *Turbe* 938 F.2d at 428. "[W]hile documents integral to the complaint may be relied upon, even if they are not attached or incorporated by reference, it must also be clear that there exist no material disputed issues of fact regarding the relevance of the document." *Mediacom Se. LLC v. BellSouth Telecomms., Inc.*, 672 F.3d 396, 400 (6th Cir. 2012) (citations, internal quotation marks, and alterations omitted).   Here, the Agreements may not be relied on, because there are material issues of fact in dispute regarding the relevancy and lack of validity of the Agreements.   Therefore, the Agreements should not be considered as part of a Rule 12(c) motion.

## III.   THE AGREEMENTS ARE INVALID AND UNENFORCABLE

Alcoa cannot claim that it was released by a contract that it fraudulently induced and under which it failed to perform.   The contracts that Alcoa asserts release it from liability with respect to environmental damages, are invalid for two reasons:  (1) Alcoa failed to disclose and concealed a known environmental defect at the former Alcoa property; and (2) Alcoa has failed to meet its obligations under the 1997 Agreement to reimburse Defendants for costs incurred to remediate and dispose of PCB contaminated materials.   Alcoa's motion fails to address these facts.

### A.   Alcoa's Fraudulent Inducement

Environmental defects at the former Alcoa property were discovered in October 2013, when two underground storage tanks, whose existence was previously unknown to North River, were discovered at the former Alcoa property. When North River purchased the former Alcoa property from Alcoa, it had knowledge of some contamination at the former Alcoa property. North River was provided environmental reports that were purported to establish the extent of the contamination on the former Alcoa property.  No environmental assessments prior to the demolition of Building 12 was able to uncover the existence of intentionally undisclosed USTs.   The due diligence undertaken by North River to uncover the extent of the contamination was reasonable.   This due diligence did not

9

uncover the USTs under Building 12 because those USTs were constructed in a manner concealing them from view as they were in a subterranean vault buried underneath two floor slabs with the newer floor slab constructed in such a way that it covered the access man-ways for the tanks.

In its motion, Alcoa does not acknowledge its concealment of USTs, the USTs' contamination of Building 12, that costs associated with remediating the contamination caused by the USTs were neither previously contemplated nor bargained for, nor that the USTs are the subject of another matter currently before the District Court of New Jersey.   Rather, Alcoa ignores all of these material facts and filed a motion requesting judgment solely on the pleadings.   Alcoa perpetuated a fraud on Defendants and fraudulently induced Defendants to purchase the property.   These allegations, if proven, will invalidate the alleged release in the 1997 Agreement and any protection it may have afforded Alcoa, if any. *Ingram Corp.* at 1314.   North River alleges that Alcoa was aware of the USTs under Building 12 and, prior to the sale, acted in a manner to conceal the USTs.   At this stage of the proceedings, the Court must accept these facts as true.   Defendants are entitled to discovery on their claims and Alcoa's motion should be denied.

Alcoa committed fraud against the Defendants to induce them to enter into the Agreements. In order to prevail on a fraud claim, a party must prove: "(1) a material misrepresentation or omission of a presently existing or past fact; (2) knowledge or belief by the defendant of its falsity or knowing the omission to be material; (3) intention that the other person rely on it; (4) reasonable reliance thereon by the other person; and (5) resulting damages." *GKE Enters., LLC v. Ford Motor Credit Co. LLC USA*, 2010 U.S. Dist. LEXIS 53714, *11 (D.N.J. May 26, 2010) (citing *Gennari v. Weichert Co. Realtors*, 148 N.J. 582, 610, 691 A.2d 350 (1997)). Deliberate suppression of a material fact that should be disclosed is equivalent to a material misrepresentation (*i.e.,* an affirmative false statement)." *Gleason v. Norwest Mortg., Inc.,* 243 F.3d 130, 145 (3d Cir. 2001); (referencing *Strawn v. Canuso,* 140 N.J. 43, 62, 657 A.2d 420 (1995)).   The concealed facts "must be facts which if known ... would have prevented [the

obligor] from obligating himself, or which materially increase his responsibility." *Ramapo Bank v. Bechtel,* 224 N.J. Super. 191, 198, 539 A.2D 1276 (App.Div.1988). If in addition to the party's silence, there is any statement, even any word or act on his own part, which tends affirmatively to a suppression of the truth, to a covering up or disguising the truth, or to a withdrawal or distraction of the other party's attention or observation from the real facts, then the line is overstepped, and the concealment becomes fraudulent. *Berman v. Gurwicz,* 189 N.J. Super. 89, 93, 458 A.2d 1311 (Ch.Div. 1981). The USTs under Building 12 were not disclosed to North River as part of the property sale. Moreover, it appears that the USTs were intentionally hidden from view, thereby precluding North River from discovering the USTs at any point prior to demolition of Building 12. The existence of the USTs materially increased Defendants' responsibilities under the Agreements. Alcoa intended that Defendants rely on the environmental reports provided by Alcoa and the findings of environmental assessments in Defendants' decision to enter into the Agreements with Alcoa with regard to the former Alcoa property. The contamination of the former Alcoa property caused by the concealed USTs has resulted in substantial harm to Defendants.

Alcoa's fraudulent conduct precludes Alcoa from asserting rights under the Agreements. While releases are presumed to cover all claims within the contemplation of the parties, "an exception to this presumption arises, however, where allegations of fraud and misrepresentation are present*." News America Marketing In-Store Services, LLC v. Floorgraphics, Inc.,* No. 12-1976, at 9 (D.N.J. Sep. 10, 2013) [Attached as **Exhibit M** is a copy of *News America Marketing In-Store Services, LLC v. Floorgraphics, Inc*] (citing *Van Houten Serv., Inc. v. Shell Oil Co.,* 417 F. Supp. 523, 527 (D.N.J. 1975) *aff'd,* 546 F.2d 421 (3d Cir. 1976)). In such an instance, the contract is voidable and the victim may rescind the release. *Id.* at 9, (citing *Windsor Card Shops, Inc. v. Hallmark Cards, Inc.,* 957 F.Supp. 562, 568 n. 8 (D.N.J.1997)); (See also *First Am. Title Ins. Co. v. Lawson,* 177 N.J. 125, 136, 827 A.2d 230 (2003)). Rescission voids the contract *ab initio,* meaning that it is considered "null

from the beginning" and treated as if it does not exist for any purpose. *Black's Law Dictionary* (7th ed.1999).

The alleged release is unenforceable because Alcoa knew of the existence of the USTs and had a duty to disclose their existence.

> The question under those circumstances is whether the failure to volunteer disclosure of certain facts amounts to fraudulent concealment, or, more specifically, whether the defendant is bound in conscience and duty to recognize that the facts so concealed are significant and material and are facts in respect to which he [or she] cannot innocently be silent. Where the circumstances warrant the conclusion that [the seller] is so bound and has such a duty, equity will provide relief.

*Berman v. Gurwicz,* at 93, (quoting *Jewish Center of Sussex County v. Whale,* 165 *N.J. Super.* 84, 89, 397 A.2d 712 (Ch.Div. 1978), *aff'd,* 172 *N.J. Super.* 165, 411 *A.*2d 475 (App.Div. 1980)).

The express language of provision 7(c) of the 1997 Agreement imposed a duty on Alcoa to provide documents to "establish the known environmental conditions of the Property as of the Closing Date." The existence of the USTs was not presented in those documents. In fact, those documents showed the existence of other USTs that had previously been removed, suggesting that all USTs on the premises had already been removed and the contamination associated with them remediated. Alcoa has refused to produce documents regarding its direct knowledge of the existence of the USTs under Building 12.

Alcoa's reliance on the "as is" language of the warranty provision of the 1997 Agreement does not preclude Defendants' fraud claim. Alcoa argues that because the term "as is" negates any representation on the part of the seller with regard to warranty or guarantee, this somehow conveys the idea that the purchaser assumes *all* the associated risks. This argument is unpersuasive. As the court correctly notes in *Southland,* an "as is" provision is merely a warranty disclaimer and as such precludes only claims based on breach of warranty. *Southland Corp. v. Ashland Oil, Inc.,* 696 F. Supp. 994, 1001 (D. N.J 1988). It does not act to shift liability from one party to an agreement to

12

another and is inapplicable in a cause of action that is not based on breach of warranty. *Southland Corp.* at 1001. Therefore, Alcoa cannot rely on the "as is" language in the 1997 Agreement to defeat Defendants' fraud claim.

North River's knowledge that some contamination was present at Building 12 does not trigger a duty to investigate the possibility of USTs in a subterranean vault beneath Building 12. This is particularly true where Alcoa has presented no evidence that the documents it provided to North River contained any indication of the USTs under Building 12 and all USTs disclosed in the documents Alcoa provided North River had been removed.  North River was incapable of knowing the full extent of the hidden contamination at the time that it purchased the former Alcoa property in 1997, despite its due diligence in investigating the former Alcoa property.  Alcoa fraudulently concealed this extensive contamination of the former Alcoa property, previously unknown to North River, in a manner that prevented detection.

Moreover, at this stage in the proceedings, there is no basis for the notion that North River, had it acted "reasonably," would have discovered the subsurface USTs.  (See, e.g., *In re Aspartame Antitrust Litig.*, 2007 U.S. Dist. LEXIS 16995, at *21 (E.D. Pa. Jan. 18, 2007)) ("Issues of diligence and constructive notice, which are inherently factual, generally should not be decided on a motion to dismiss.").  Indeed, North River respectfully asserts that whether or not a reasonable property developer would have further investigated the possibility of subsurface USTs (or potential contamination emanating therefrom) based upon the environmental reports made available likely requires the testimony of an expert qualified in the field of environmental due diligence or investigation.  *Optica, Inc. v. Metro Pub. Adjustment, Inc.*, 2005 U.S. Dist. LEXIS 15281, *47 (D.N.J. July 21, 2005). A "factfinder should not be allowed to speculate without the assistance of expert testimony in an area where the average person could not be expected to have sufficient

13

knowledge or experience." *Id.*, (citing *Kelly v. Berlin*, 300 N.J. Super. 256, 692 A.2d 552 (App. Div. 1997)).

Alcoa's reliance on *Fisher Dev. Co. v. Boise Cascade Corp.*, 37 F.3d 104, 107 (3rd Cir. 1994) for the notion that property owners may allocate the financial burden of environmental cleanup is misplaced. This matter presents substantially different facts and issues than *Fisher*. In *Fisher*, the court expressly notes that it was not alleged that the party responsible for the contamination took "affirmative steps to conceal its condition." *Id.* at 111. Here, Alcoa took affirmative steps to conceal the existence of the USTs. The second slab of concrete was constructed in a manner that concealed the existence of the USTs under Building 12, thereby demonstrating that Alcoa took an affirmative step to conceal the USTs to prevent the discovery of the USTs during any environmental assessment of the former Alcoa property prior to demolition of Building 12.

If Alcoa could prove that it didn't have actual knowledge of the existence of the USTs, which is remarkably unlikely, then the Agreements would nevertheless be voidable because they were entered into under a mutual mistake of fact. "Where a mistake of both parties at the time a contract was made as to a basic assumption on which the contract was made has a material effect on the agreed exchange of performances, the contract is voidable by the adversely affected party. A compromise which is the result of a mutual mistake is not binding and consent to a settlement agreement is not considered freely given when it is obtained as the result of a mistake." *Lampley v. Davis Mach. Corp.,* 219 N.J.Super. 540, 530 A.2d 1254, 1259-60 (App.Div. 1987). In the 1997 Agreement, Alcoa presented that the Environmental Reports made available to North River pursuant to provision 7(c) of the 1997 Agreement "establish[ed] the known environmental conditions of the Property as of the Closing Date." The existence of the USTs was not provided for in those documents.

Alcoa makes no effort, nor can it, to argue that the USTs and the surrounding contamination were not concealed or that North River will fail to establish fraudulent concealment by Alcoa. Accordingly, North River must be allowed to conduct the factual discovery necessary to support its defenses.

### B. Alcoa's Failure to Remit Payment

Even if the Agreements were valid when entered, Alcoa would be unable to claim any rights under the Agreements because Alcoa has failed to meet its obligations under the Agreements to reimburse North River for costs incurred in remediating and disposing of contaminants at the former Alcoa property. Under the terms of the MPPA, Alcoa agreed to pay Defendants "$9,500,000 for the demolition and removal of the structures" and up to $2,5000,000 for the disposal of contaminated material. **Exhibit B** at ¶3. Alcoa has only admitted that it "did agree to contribute limited funds" for the disposal of hazardous material at the former Alcoa property in the 1997 Agreement. Alcoa has refused to pay Defendants the money it owes them because it claims it no longer has "any further obligation to bear environmental cleanup costs" at the former Alcoa property because of the 1999 Agreement.

At no time was Alcoa relieved of its obligation to reimburse North River for the costs of remediating the former Alcoa property.  Elsewhere, Alcoa has erroneously claimed that it did not breach the 1997 Agreement because it was relieved of its obligations to Defendants by the 1999 Agreement.  This claim is neither true nor appropriate for consideration in a Rule 12(c) motion. The 1999 Agreement explicitly states that it was effective only "**to the extent that Building 12 is not demolished**."  In its briefing to the Court, Alcoa purposely misrepresents the language of the 1999 Agreement by omitting the very clause defining the limited circumstance for which the agreement exists.  The provision actually reads, "**to the extent that Building 12 is not demolished**, North River and River Road shall indemnify…." (Emphasis added).  Since Building 12 has effectively been

demolished, Alcoa can make no claims under the Agreements. Furthermore, the 1999 Agreement does not relieve Alcoa of its duty to reimburse North River for the costs it incurs remediating and disposing of Alcoa's contamination of the former Alcoa property. The express terms of the 1999 Agreement neither state nor imply that Alcoa was released or relieved of its obligations under the 1997 Agreement.  The provision specifically states that it is "[i]n addition to" other agreements and does not replace or repeal other provisions.

If the Court were to find that the Agreements were valid when entered, then the Court would still be left with the fact that Alcoa cannot claim rights under the Agreements because Alcoa failed to meet its obligations under the Agreements and therefore cannot now rely on them for relief.

## IV.   ALCOA IS NOT RELEASED OR INDEMNIFIED BY THE AGREEMENTS

The Agreements do not require North River and RRIP to pay for Alcoa's defense or indemnify Alcoa for any judgment rendered against it in this matter. The terms of neither the 1997 Agreements nor the 1999 Agreements provide indemnity to Alcoa from any claims in this matter. But, to the extent there is any ambiguity, "the facts as alleged in the [pleadings], and other documentary evidence attached to the pleading [] must be constructed in the light most favorable to . . . the non-moving party." *Educ. Impact, Inc. v. Danielson*, 2015 U.S. Dist. LEXIS 9467, *20 (D.N.J. Jan. 28, 2015); *Schwartz* at *21. ("ambiguous contractual provisions raise questions of fact that are not appropriately decided on a motion to dismiss"). By way of example, in *Mercedes-Benz,* the Court denied a motion to dismiss on a breach of contract claim because the relevant contractual provision was "potentially ambiguous." *Mercedes-Benz USA, LLC v. ATX Group, Inc.*, 2010 U.S. Dist. LEXIS 84950, *14-16, 2010 WL 3283544 (D.N.J. Aug. 18, 2010).   Specifically, the Court held that although the moving party "offers a reasonable interpretation" of the contract, "interpreting [the contract] in the light best suited to the [non-moving party] shows that the [non-moving party] has stated a claim." *Id.*

16

Alcoa's claim that the 1997 Agreements release Alcoa from "any and all claims with respect to the [former Alcoa property]" is directly contradicted by the terms of the 1999 Agreement. Alcoa cannot rely on the 1999 Agreement for indemnity in this matter because the 1999 Agreement merely provided limited indemnity protections "to the extent that Building 12 is not demolished." Even if a fact-finder were to construe the 1997 Agreement in favor of Alcoa, the express terms of the 1999 Agreement state that it is no longer in effect.  The 1999 Agreement provides that North River is to provide certain indemnity protections only "to the extent that Building 12 is not demolished."[1] As alleged in the Complaint, the crushed concrete originated from the demolished remains of Building 12 during the property development process. As a result, the structure can no longer be used for any purpose and has, in effect, been "demolished."  Accordingly, to the extent that there were any indemnity rights, such rights are no longer in effect based on the terms of the 1999 Agreement. Again, to the extent there is any ambiguity in the agreement, including the meaning of the term "demolished," such ambiguities must be construed in favor of the Defendants, which preclude the granting of judgment at this stage in the proceedings.  (See, e.g., *Educ. Impact, Inc.*, 2015 U.S. Dist. LEXIS 9467, at *20.)

Ultimately, Defendants respectfully assert that there can be little dispute that Defendants must be permitted to proceed with discovery on its direct defenses and affirmative defenses against Alcoa's alleged contract claims.  Lastly, any alleged indemnity claims arising from the 1997 or 1999 Agreements are no longer in effect as Building 12 has effectively been demolished.  For these reasons, Alcoa's motion for partial judgment should be denied.

---

[1] Notably, Alcoa omits this crucial phrase from its recitation of the 1999 Agreement's terms.  *See* Alcoa Brief, p. 8.

17

## CONCLUSION

For the foregoing reasons, Defendant North River Mews Associates, LLC and Third-Party Defendant River Road Improvement Phase II, Inc. respectfully request that the Court deny Alcoa's motion pursuant to Fed. R. Civ. P. 12(c) in its entirety.

Respectfully submitted,

By: s/*Jason T. Shafron*
Jason T. Shafron
Shafron Law Group, LLC
2 University Plaza, Suite 400
Hackensack, NJ  07601
(201) 343-7200
*Attorneys for Defendants Waterside Construction, LLC; 38 COAH. LLC; North River Mews Associates, LLC.; Fred A. Daibes, and Third-Party Defendant River Road Improvement Phase II, Inc.*

18