# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| BOROUGH OF EDGEWATER,<br><br>    Plaintiff,<br><br>    v.<br><br>WATERSIDE CONSTRUCTION, LLC; 38 COAH, LLC; DAIBES BROTHERS, INC.; NORTH RIVER MEWS ASSOCIATES, LLC; FRED A. DAIBES; TERMS ENVIRONMENTAL SERVICES, INC.; ALCOA INC. (formerly known as "Aluminum Company of America"); ALCOA DOMESTIC LLC, as successor in interest to A.P. NEW JERSEY, INC.; JOHN DOES 1-100; and ABC CORPORATIONS 1-100,<br><br>    Defendants,<br><br>and<br><br>WATERSIDE CONSTRUCTION, LLC; 38 COAH, LLC; DAIBES BROTHERS, INC.; NORTH RIVER MEWS ASSOCIATES, LLC; and FRED A. DAIBES,<br><br>    Defendants/Third-Party Plaintiffs,<br><br>    v.<br><br>NEGLIA ENGINEERING ASSOCIATES,<br><br>    Third-Party Defendant, | Civil Action No: 2:14-cv-5060 |

| |
|---|
| and |
| ALCOA DOMESTIC LLC, as successor in interest to A.P. NEW JERSEY, INC., |
|     Defendant/Third-Party Plaintiff, |
|     v. |
| COUNTY OF BERGEN and RIVER ROAD IMPROVEMENT PHASE II, INC., |
|     Third-Party Defendants. |

_____

### ALCOA'S REPLY BRIEF IN SUPPORT OF THE MOTION FOR PARTIAL JUDGMENT ON THE PLEADINGS
_____

**K&L GATES LLP**
One Newark Center
Tenth Floor
Newark, New Jersey 07102
(973) 848-4000

Michael E. Waller
Dana B. Parker
*Attorneys for Defendants Alcoa Inc.*
*and Alcoa Domestic LLC,*
*as successor in interest to*
*A.P. New Jersey, Inc.*

# **TABLE OF CONTENTS**

INTRODUCTION ............................................................................................................ 1

ARGUMENT .................................................................................................................... 2

I. AN AFFIRMATIVE DEFENSE OF FRAUD IS INSUFFICIENT TO DEFEAT ALCOA'S MOTION ............................................................ 2

    a. North River Cannot Maintain a Fraud Claim against Alcoa as a Matter of Law ................................................................................ 2

    b. North River and RRIP Fail to Properly Plead Fraud in this Case ................................................................................................. 6

III. ALCOA'S ALLEGED FAILURE TO REMIT PAYMENT IS IRRELEVANT TO THE RELEASE CONTAINED IN THE PURCHASE AND SALE AGREEMENT .................................................. 8

IV. THE CONTRIVED INTERPRETATION OF THE ENVIRONMENTAL INDEMNITY AGREEMENT BY NORTH RIVER AND RRIP DOES NOT CREATE AMBIGUITY ......... 10

V. NORTH RIVER AND RRIP MUST IMMEDIATELY BEGIN PAYING FOR ALCOA'S DEFENSE IN THIS CASE ............................. 11

CONCLUSION ............................................................................................................... 12

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*In re *18 Richards*,
 81 B.R. 527 (Bankr. D. Minn. 1987) ...........................................................................................8

*175 Broad St., L.L.C. v. Nead Org., Inc.*,
 No. A-3600-11T4, 2013 WL 105287 (N.J. Super. Ct. App. Div. Jan. 10, 2013)
 (per curiam) ............................................................................................................................9, 10

*Amland Props. Corp. Aluminum Co. of Am.*,
 711 F. Supp. 784 (D. N.J. 1989) ................................................................................................4

*Ballow Brasted O'Brien & Rusin P.C. v. Logan*,
 435 F.3d 235 (2d Cir. 2006) .......................................................................................................5

*Belani v. Grover*,
 No. L-4640-06, 2009 WL 4255493 (N.J. Super. Ct. App. Div. Nov. 25, 2009) .......................5

*Bowen Eng'g v. Estate of Reeve*,
 799 F. Supp. 467 (D.N.J. 1992) ................................................................................................10

*Ferguson v. Lion Holdings, Inc.*,
 312 F.Supp.2d 484 (S.D.N.Y 2004) ........................................................................................5, 6

*Gulf Oil Corp. v. Fed. Power Comm'n*,
 563 F.2d 588 (3d Cir. 1977) .....................................................................................................11

*Holdsworth v. Strong*,
 No. 75-1144, 1976 WL 5141 (10th Cir. 1976) ..........................................................................8

*K. Woodmere Assocs., L.P. v. Menk Corp.*,
 316 N.J. Super. 306 (1998) ........................................................................................................5

*Maule v. Philadelphia Media Holdings, LLC*,
 08-3357, 2010 WL 914926 (E.D. Pa. Mar. 15, 2010) .........................................................11, 12

*Murphy v. Gallaqher*,
 80 Civ. 1843, 1981 WL 1628 (E.D.N.Y. 1981) .........................................................................7

*North River Mews Assocs., LLC et al. v. Alcoa Corp. et al.*,
 No. 2:14-cv-08129 (D.N.J.) .....................................................................................................5, 7

*Russell v. Princeton Labs., Inc.*,
 50 N.J. 30 (1967) ........................................................................................................................9

*Waddington N. Am., Inc. v. Sabert Corp.*,
   No. CIV.A. 09-4883 (GEB), 2010 WL 3907036 (D.N.J. Sept. 29, 2010) ................................6

**Other Authorities**

Black's Law Dictionary (8th ed. 1999) ........................................................................................10

Fed. R. Civ. P. 9(b) ........................................................................................................................6

## INTRODUCTION

When Defendant North River Mews Associates, LLC ("North River") knowingly acquired the Former Alcoa Site from Defendant Alcoa Domestic, LLC as successor in interest to A.P. New Jersey, Inc. ("Alcoa") in 1997, North River granted Alcoa a sweeping release and indemnity. Defendant River Road Improvement Phase II, Inc. ("RRIP") also granted Alcoa sweeping indemnities for the same property.[1]

Now, almost 20 years later, North River and RRIP ignore, distort or seek to rescind the specific terms of the contracts at issue in an attempt to create a better deal for themselves than the deals they struck with Alcoa in 1997 and 1999. Alcoa respectfully asks this Court to reject North River's and RRIP's erroneous reading of these contracts, enforce the unambiguous contracts, and pursuant to those contracts (1) dismiss North River's crossclaims against Alcoa; (2) require defendants North River and RRIP to reimburse Alcoa for all legal costs that Alcoa has incurred to defend itself in this lawsuit to date; (3) require defendants North River and RRIP to pay Alcoa's future defense costs in full; and (4) require

---

[1] As set forth in Alcoa's Moving Brief, there are three contracts at issue in this case: (1) the 1997 Purchase and Sale Agreement between Alcoa and North River ("Purchase and Sale Agreement"); (2) the 1997 Multi-Party Agreement between Alcoa, North River and RRIP ("Multi-Party Agreement") and (3) the 1999 Environmental Indemnity Agreement between Alcoa, North River and RRIP ("Environmental Indemnity Agreement"). *See* Alcoa Moving Brief at 5-7.

1

defendants North River and RRIP to indemnify Alcoa for any judgment entered against it.

## ARGUMENT

I. **AN AFFIRMATIVE DEFENSE OF FRAUD IS INSUFFICIENT TO DEFEAT ALCOA'S MOTION**

North River argues that the Purchase and Sale Agreement it signed releasing all claims against Alcoa is unenforceable because it pleads fraud as an affirmative defense in this case. *See* Opp. at 9-10. North River goes on to say that in such an instance the Purchase and Sale Agreement is voidable and subject to rescission. *Id*. at 11.

### a. North River Cannot Maintain a Fraud Claim against Alcoa as a Matter of Law

North River ignores the terms of the Purchase and Sale Agreement that expressly bar its fraud claims. Under Paragraph 5(b) of the Purchase and Sale Agreement, North River agreed that:

> OTHER THAN THE REPRESENTATION AND WARRANTY SET FORTH IN THIS SECTION, BUYER SPECIFICALLY ACKNOWLEDGES THAT SELLER IS SELLING AND BUYER IS PURCHASING THE PROPERTY ON AN "**AS IS, WITH ALL FAULTS' BASIS."** AND THAT BUYER SHALL HAVE AN OPPORTUNITY TO INSPECT THE PROPERTY AND IS NOT RELYING ON ANY REPRESENTATIONS OR WARRANTIES OF ANY KIND WHATSOEVER, EXPRESS OR IMPLIED, FROM SELLER, ITS AGENTS, OR

> REPRESENTATIVES AS TO ANY MATTERS CONCERNING THE PROPERTY…

*See* Alcoa Moving Brief, Waller Cert., Ex. 1. at ¶ 2, 5(b) (emphasis in original). This provision continues and expressly lists, without limitation, the following subjects about which Alcoa was making no warranties:

> (i)  the quality, nature, adequacy and physical condition of the property. . .
>
> (ii) the quality, nature, adequacy, and physical condition of soils, geology and any groundwater;
>
> * * *
>
> (vii) the presence or removal of hazardous or toxic materials, substances or wastes in, on, under, or about the Property or the adjoining or neighboring property….

*Id.* at ¶ 5(b)(i), (ii), and (vii). The Purchase and Sale Agreement also provides that "[a]ll understandings and agreements heretofore had between the parties, oral or written are merged into this Agreement, which alone fully and completely expresses their understanding." *Id.* at ¶ 16.

The parties to the Purchase and Sale Agreement also agreed to the known environmental condition of the Former Alcoa Site:

> (c) Environmental Reports: Seller shall make available to Buyer the reports listed on Schedule 7(c), attached hereto and incorporated by reference, concerning the environmental condition of and contamination in, on, under, or about the Property (the "Environmental Reports"). The parties agree that the Environmental Reports and any and all reports, analyses, surveys, assessments, evaluations or the like prepared by Buyer and its representatives pursuant to Section 7(d)

3

>will establish the known environmental condition of the Property as of the Closing Date.

*Id.* at ¶ 7(c).

The Purchase and Sale Agreement establishes that North River purchased the Former Alcoa Site "as is" with Alcoa making no warranties regarding any environmental condition on the property outside of the Environmental Reports. North River's agreement was an informed one - its purchase of the Former Alcoa site was not akin to the purchase of a consumer good. Here, under Paragraph 5(b) of the Purchase and Sale Agreement, North River was provided the opportunity to conduct due diligence. North River agreed in 1997 to what was known about the environmental condition of the Former Alcoa site. It was agreed that such knowledge was based on environmental reports prepared on behalf of Alcoa, Amland Property Corporation,[2] and "any and all reports, analyses, surveys, assessments, evaluations or the like prepared by Buyer and its representatives pursuant to Section 7(d) [Buyer's Assessment]" of the Purchase and Sale Agreement. *Id*. at ¶¶7(c), 7(d), Schedule 7(c).

---

[2] Before being purchased by North River, the PCB contamination at the Former Alcoa site was the subject of previous, well publicized and lengthy CERCLA litigation. *See Amland Props. Corp. Aluminum Co. of Am.*, 711 F. Supp. 784 (D. N.J. 1989). Certain reports establishing the "known environmental condition" of the site were prepared on behalf of Alcoa's litigation adversary, Amland Property Corporation.

4

North River's would-be fraud claims are plainly barred by the Purchase and Sale Agreement. When used with the sale of real property, "as is" means "the purchaser is acquiring real property in its present state or condition." *K. Woodmere Assocs., L.P. v. Menk Corp.*, 316 N.J. Super. 306, 316 (1998). The term "implies real property is taken with whatever faults it may possess, and that the grantor is released of any obligation to reimburse purchaser for losses or damages resulting from the condition of the property conveyed." *Id*. at 317.

North River cannot maintain an action for damages in the North River Matter based on fraud while simultaneously arguing rescission of the same contracts based on fraud. *Ferguson v. Lion Holdings, Inc.*, 312 F.Supp.2d 484, 498-00 (S.D.N.Y 2004). An allegedly defrauded party must make a choice between affirming or disaffirming a contract. *Id.* at 499. If a contract is affirmed, the party may bring a tort action for fraud damages. *Id.* at 498. If a contract is disaffirmed, the party may seek to rescind the contract and return the consideration he received. *Id.* at 498-99. Here, North River and RRIP impermissibly try to do both. They cannot. *E.g.*, *id.* at 498-00; *Ballow Brasted O'Brien & Rusin P.C. v. Logan*, 435 F.3d 235, 238 (2d Cir. 2006) ("As a general rule … the defrauded party cannot both rescind and maintain an action for deceit."); *Belani v. Grover*, No. L-4640-06, 2009 WL 4255493, at *8 (N.J. Super. Ct. App. Div. Nov. 25, 2009)

("affirmatively elect[ing] to rescind a contract" and "pursu[ing] a claim for breach of contract" are mutually exclusive remedies).

### b. North River and RRIP Fail to Properly Plead Fraud in this Case

Even if North River or RRIP could maintain a fraud claim, there are no actual allegations of fraud against Alcoa. Any claim for fraud must be plead with particularity under Federal Rule of Civil Procedure 9(b) and proven by clear and convincing evidence. *Ferguson v. Lion Holding, Inc.*, 312 F.Supp.2d 484, 499 (S.D.N.Y 2004) (citing *Affiliated FM Ins. Co. v. Jou Jou Designs, Inc.*, No. 90 CIV. 8262 (MJL), 1997 WL 473382, at *2 (S.D.N.Y. Aug. 19, 1997) ("Fraud allegations should specify the time, place, speaker, and content of the alleged misrepresentations or omissions.")). Here, North River's pleadings not only fail to mention this alleged fraud, but completely fail to articulate how Alcoa fraudulently induced it in connection with any contract. Additionally North River fails to relate such "fraud" to the claims arising from the alleged dumping at Veteran's Field by the North River related defendants. Because North River's affirmative defense of fraud was not plead with the requisite particularity, North River cannot rely on it now to argue that the Release it entered into with Alcoa is voidable and subject to rescission. *See Waddington N. Am., Inc. v. Sabert Corp.*, No. CIV.A. 09-4883 (GEB), 2010 WL 3907036, at *5-*8 (D.N.J. Sept. 29, 2010) (granting plaintiff's motion to strike affirmative defenses that incorporated insufficiently pled

6

inequitable conduct allegations; noting that inequitable conduct is analogous to fraud, which must be pled with particularity.

Instead, North River and RRIP rely on allegations in a separate action that North River and 38 COAH Associates, LLC, filed against Alcoa titled *North River Mews Assocs., LLC et al. v. Alcoa Corp. et al.*, No. 2:14-cv-08129 (D.N.J.) ("North River Matter") on December 31, 2014. *See* Amended Complaint ECF 10. It is in that separate action, not the instant case - that North River alleges fraud because it discovered two previously unknown underground storage tanks in 2013 during development of the Former Alcoa Site. *Id.* at 74-83. These two tanks are alleged to contain PCB-contaminated oil, which the Plaintiffs in the North River Matter claim that Alcoa is contractually obligated to pay for this additional PCB cleanup. *Id.* at 84-87. Nowhere in the pleadings in this case does North River or RRIP even mention this alleged fraud, let alone the discovery or existence of these two underground tanks. While North River and RRIP point to facts alleged in pleadings outside of this case, they fail to show there are material issues of fact in **this** case that warrant denial of Alcoa's motion.

Indeed, the allegations of fraud in the North River Matter have no bearing on the sufficiency of the release contained in the Purchase and Sale Agreement. The affirmative defense of fraud here is akin to "fraud in the air" - alleged misrepresentations that led to no consequences. *Murphy v. Gallagher*, 80 Civ.

7

1843, 1981 WL 1628, *3 (E.D.N.Y. 1981) ("'fraud in the air,' to paraphrase... Justice Cardozo, will not suffice"); *In re *18 Richards*, 81 B.R. 527, 530 (Bankr. D. Minn. 1987) ("fraudulent conduct which produces no adverse consequences to the victim. is 'harmless fraud' or 'fraud in the air'"); *Holdsworth v. Strong*, No. 75-1144, 1976 WL 5141, * 6 (10th Cir. 1976) ("'fraud in the air' is not sufficient for a cause of action").

### III. ALCOA'S ALLEGED FAILURE TO REMIT PAYMENT IS IRRELEVANT TO THE RELEASE CONTAINED IN THE PURCHASE AND SALE AGREEMENT

North River contends that the release in the Purchase and Sale Agreement does not bar its claims now because Alcoa has failed to meet its obligations under the Multi-Party Agreement to reimburse North River for costs incurred to remediate and dispose of PCB contaminated materials. *See* Opp. at 9. North River is wrong.

There can be no breach of contract claim against Alcoa for failure to reimburse North River for costs incurred to remediate and dispose of PCB contaminated materials under the Multi-Party Agreement. All of the buildings at the Former Alcoa Site were demolished before 2000 as provided in the Multi-Party Agreement, except for Building 12. In 1999, North River (and/or other Waterside Defendants) decided not to demolish Building 12. *See* Alcoa Moving Brief,

8

Waller Cert., Ex. 3.  Alcoa, North River, and RRIP entered into the Environmental Indemnity Agreement.  *Id.*.

The Environmental Indemnity Agreement contains clear and unambiguous provisions which illustrate that North River, and RRIP released Alcoa from any costs in connection with remediation and disposal of PCB contaminated materials in the Multi-Party Agreement.  *See* Alcoa Moving Brief, Waller Cert., Ex. 3. There can be no contract claim against Alcoa now for failure to reimburse North River for costs incurred to remediate and dispose of PCB contaminated materials from Building 12.  Said differently, once the parties entered into the Environmental Indemnity Agreement, any obligations that Alcoa may have had concerning remediation in Multi-Party Agreement ceased.  Any other interpretation would render the Environmental Indemnity Agreement meaningless.  *See e.g., 175 Broad St., L.L.C. v. Nead Org., Inc.*, No. A-3600-11T4, 2013 WL 105287, at *5 (N.J. Super. Ct. App. Div. Jan. 10, 2013) (per curiam) ("A contract should not be interpreted to render one of its terms meaningless.") (internal quotations omitted); *Russell v. Princeton Labs., Inc.*, 50 N.J. 30, 38 (1967) ("A contract should not be read to vest a party . . . with the power virtually to make his promise illusory.").

## IV. THE CONTRIVED INTERPRETATION OF THE ENVIRONMENTAL INDEMNITY AGREEMENT BY NORTH RIVER AND RRIP DOES NOT CREATE AMBIGUITY

North River and RRIP contend that the Environmental Indemnity Agreement is ambiguous and argue that the phrase "to the extent that Building 12 is not demolished" calls into question the continued validity of the Environmental Indemnity Agreement after Building 12 has been demolished. *See* Opp. at 16-17.[3]

It is black letter law that an indemnity is "a duty to make good *any* loss, damage, or liability incurred by another." *Indemnity*, Black's Law Dictionary (8th ed. 1999) (emphasis added). "Any liability" includes CERCLA claims brought by a plaintiff that has agreed to indemnify the defendant. *Bowen Eng'g v. Estate of Reeve*, 799 F. Supp. 467, 483-89 (D.N.J. 1992). Here, North River and RRIP agreed to defend and indemnify Alcoa for all claims related to Building 12. Considering the entire Environmental Indemnity Agreement, it continues to apply after Building 12 is demolished. *See 175 Broad St., L.L.C.*, 2013 WL 105287, at *3 ("[A] contract must . . . be viewed and interpreted as a whole and not by examining individual phrases independent of one another."); Alcoa Moving Brief, Waller Cert., Ex. 3.

---

[3] Even if North River and RRIP were correct in their interpretation of the Environmental Indemnity Agreement (which they are not) their argument is belied by the fact that they acknowledge Building 12 is not actually and fully demolished. *See* Opp. at 15-16.

The phrase "to the extent that Building 12 is not demolished" isolated by North River and RRIP reflects their choice to leave Building 12 in place in 1999 and forego future contributions from Alcoa. The perverse interpretation advocated by North River and RRIP would permit them to unilaterally and impermissibly extinguish their defense and indemnification obligations for Building 12 and spring the dormant multi-acquisition agreement on PCB disposal back to life after fifteen years. This Court should reject a construction of the Environmental Indemnity Agreement rendering Alcoa's obligations uncertain and indefinite. *Gulf Oil Corp. v. Fed. Power Comm'n*, 563 F.2d 588, 595 (3d Cir. 1977).

### V. NORTH RIVER AND RRIP MUST IMMEDIATELY BEGIN PAYING FOR ALCOA'S DEFENSE IN THIS CASE

As set forth in Alcoa's moving brief, North River and RRIP must pay for Alcoa's defense of the claims asserted by the Borough, TERMS, and Neglia under the Purchase and Sale Agreement, the Multi-Party Agreement, and the Environmental Indemnity Agreement. *See* Alcoa Moving Brief at 13-16. The Court in *Maule v. Philadelphia Media Holdings, LLC* held when interpreting defense obligations in a commercial contract that:

> The duty to defend is broader than the duty to indemnify, since it applies not only to claims that are or reasonably appear to be within the scope of the indemnity obligation but also to claims that arguably are or might be found within that scope. Generally, the duty to defend is triggered if the underlying complaint avers facts that would support indemnification under the agreement, and

11

> the indemnitor must defend until such time as the claim
> is confined to recovery that the contract does not cover.

No. CIV. A. 08-3357, 2010 WL 914926, at *10 (E.D. Pa. Mar. 15, 2010) (internal quotations and citations omitted).

Here there is no question -- and North River and RRIP do not argue otherwise -- that the claims asserted against Alcoa trigger North River's and RRIP's defense obligations. To hold otherwise would erode the basic protections bargained for between Alcoa, North River and RRIP and would render the duty to defend here meaningless. North River, RRIP and Alcoa knowingly bargained for the protection, and North River and RRIP must be required to live up to their end of the bargain and fund Alcoa's defense in this matter.

## **CONCLUSION**

Alcoa respectfully requests this Court grant Alcoa's Motion for Partial Judgment on the Pleadings and enter an Order (1) dismissing the North River crossclaims asserted against Alcoa; (2) requiring North River and RRIP to reimburse Alcoa for all legal costs that Alcoa has incurred to defend itself , plus interest; (3) requiring North River and RRIP to pay Alcoa's future defense costs in full currently; and (4) requiring North River and RRIP to indemnify Alcoa for any judgment entered against it. Alcoa also requests such other and further relief as this Court deems just and proper.

Dated: April 25, 2016

Respectfully submitted,

**K&L GATES LLP**

By: /s/ Michael E. Waller
    Michael E. Waller
    One Newark Center, Tenth Floor
    Newark, New Jersey 07102
    Tel: (973) 848-4000

13