# EXHIBIT A

GROUND LEASE


NORTH RIVER VIEW  ASSOCIATES, LLC
(Landlord)


And


(Tenant)
E. RAE JO


Dated: April  5, 2012


Premises:  660 RIVER ROAD
EDGEWATER, N.J.

HUD 0000044

HUD 0000044

ARTICLE I
DEMISE OF PREMISES .............................................. I
        . Premises.. ...................................... I

ARTICLE II
        POSSESSION .
                . Possession ,

ARTICLE III
        LEASE TERM :
                . Term
                . Extension Options
                . Surrender
ARTICLE IV
        RENT
                . Rent
                . Security

ARTICLE V
        TAXES
                . Real Estate Taxes
                . Personal Property Taxes

ARTICLE VI
        UTILITIES
                . Utilities

ARTICLE VII
        USE AND ASSIGNMENT
                . Use
                . Assignment and Subletting

ARTICLE VIII
        MAINTENANCE AND REPAIRS
                . Tenant's Repairs
                . Alterations
                . Fixtures
                . Title to Improvements

ARTICLE IX
        INSURANCE
                . Tenant's Insurance
                . Insurance Certificates
                . Mutual Release; Waiver of Subrogation

HUD 0000045

HUD 0000045

ARTICLE X
 DAMAGE OR DESTRUCTION
  . Damage and Destruction

ARTICLE XI
 EMINENT DOMAIN
  . Condemnation
  . Termination Right
  . Restoration
  . Award
  . Termination

ARTICLE XII
 SELF HELP
  . Self Help

ARTICLE XIII
 DEFAULT
  . Remedies Upon Tenant's Default..
  . Remedies Upon Landlord's Default
  . Remedies Cumulative

ARTICLE XIV
 QUIET ENJOYMENT
  . Covenants and Warranties II

ARTICLE XV
 SUBORDINATION II
  . Subordination and Attornment. II

ARTICLE XVI
 TRANSFERS BY LANDLORD
  . Transfers of Landlord's Interest..

ARTICLE XVII
 MISCELLANEOUS
  . Holding Over.
  . Non-Waiver of Default
  . Recording
  . Notice
  . Successors and Assigns
  . Time is of the Essence
  . Partial Invalidity

HUD 0000046

HUD 0000046

. Interpretation
. Headings, Captions and References
. Brokerage Commissions
. Governing Law
. Relationship of Parties
. Force Majeure
. Estoppel Certificates
. Indemnification
. Cancellation Of The Lease
. Toxic Waste
. Effective Date
. Option to Purchase & Zoning Contingency.

EXHIBITS

Exhibit A  Legal Description of the Land
Exhibit B  Survey
Exhibit C  Permitted Exceptions
Exhibit D  Subordination, Non-Disturbance and Attornment Agreement
Exhibit E  Declaration of Use Restriction

HUD 0000047

HUD 0000047

GROUND LEASE

THIS GROUND LEASE (this "Lease") is made and entered into as of the Effective Date (as hereinafter defined) by and between NORTH RIVER VIEW ASSOCIATES, a. LIMITED LIABILITY CORPORATION, having an address of c/o Daibes Enterprises,  Portside Drive, Edgewater, New Jersey  ("Landlord") and E. Rae Jo, having an address of   Broadway, Suite , New York, New York

ARTICLE I
DEMISE OF PREMISES

1.1 *Premises.* For and in consideration of the covenants and agreements contained herein and other valuable consideration, Landlord hereby leases to Tenant and Tenant hereby leases from Landlord, upon the following terms and conditions, approximately .. acres of land (the "Land") lying and being on the Township of Edgewater, Bergen County, New Jersey and being more particularly described on Exhibit A attached hereto and by this reference made a part hereof, together with all rights, easements and appurtenances pertaining thereto, all trees, bushes, landscaping and foliage thereon in "As Is and Where Is" condition. The Land and all improvements now or hereafter located thereupon (including without limitation the building currently located thereon) together with the appurtenances pertaining thereto are herein sometimes collectively referred to as the "Premises" in "As Is and Where Is" condition. Notwithstanding the foregoing, Landlord represents and warrants that it is not aware of any condition or set of circumstances which would prohibit Tenant from using the Premises for any lawful use other than that which are set forth in the Deed Restriction, a copy of which is attached hereto as Schedule ' A-1'.  The Premises are depicted on a survey (the "Survey") shown as Exhibit B attached hereto and by this reference made a part hereof.

1.2 Intention of Parties:        Landlord and Tenant have agreed to enter into this Lease agreement  based upon the representations of Tenant and  Landlord made to each other and upon which the Landlord and Tenant have and do rely. The   representations made by the Landlord and Tenant to the other  are:

- The Tenant has the full authority to enter into this lease agreement and the Tenant is financially able to carry out and adhere to the financial and other conditions as set forth in this agreement and any attached Exhibit which sets forth any and all additional monetary requirements;
- The Tenant shall promptly  engage any and all required consultants for the purposes of obtaining the required approvals for the property and so as to complete the Tenant's site plan approval and process in accordance with the Time Schedule as attached hereto as Exhibit 'A-2'.;
- During the term of this agreement and in accordance with the terms and conditions of the 'option to purchase, the Tenant shall comply with the purchase option for the property in accordance with the Exhibit 'A-3' as attached (Final Form of Contract) as well as the terms and conditions of this lease agreement:

**HUD 0000048**

HUD 0000048

## ARTICLE II

### CONSTRUCTION OF PREMISES

2.1  <u>Possession, Right to Demolish and Construct.</u>

(a) For the purposes hereof, the term "Possession Date" shall mean the date upon which the following, where applicable have occurred:

    (i) Landlord shall have tendered vacant possession of the Premises to Tenant, free of any right or claim to right of possession by any entity other than Tenant, free and clear of any encumbrances except the Permitted Exceptions as may  be set forth hereinafter;

    (ii) The date this agreement is executed, whereupon the first  months rental consideration shall be paid and apportioned as hereinafter described .

(b) Landlord and Tenant covenant and agree that they shall use commercially reasonable efforts to cause  the Possession Date as well as any and all other dates to occur.

### ARTICLE III
### LEASE TERM

3.1  <u>Term.</u>

(a) The initial term shall be for Seventy-four () years (the "Term") and shall  commence on the Effective Date (the "Commencement Date"), and shall terminate at the end of the Seventy-fourth year after the Rent Commencement Date (as hereinafter defined). For purposes of this Agreement, the term "Lease Year" shall mean the twelve () month period commencing upon the Rent Commencement Date. Notwithstanding anything herein to the contrary, the Lease Year shall commence with the Rent Commencement Date and shall end on the first day of the month occurring after the end of twelve () full calendar months from the Rent Commencement Date (as hereinafter defined). Where and if applicable in accordance with the terms as set forth herein, each Lease Year subsequent to the first Lease Year after the Rent Commencement Date shall commence on January 1st and ending on December 31st. The parties hereto shall execute a written statement setting forth the Rent Commencement Date and the date of expiration of this Lease promptly after the same shall have been ascertained, and (ii) the "Option Terms" as defined herein and  notice dates also in accordance with the terms and conditions set forth herein,  however,  the enforceability of this Lease shall not be affected should either party fail or refuse to  execute such statement.

**3.2** Extension Options. Tenant shall have one Twenty-Four (24) year option to extend the Term of this Lease ("Option Terms"), upon the same terms and conditions then in effect, except as expressly otherwise provided herein, exercisable by the delivery of written notice to Landlord by Tenant not less than one year (365) days prior to the expiration of the then current Term, as extended, provided, however, that if Tenant shall fail to give any such notice within the aforesaid time limit, Tenant's right to exercise its option shall be void. The base rent to be paid during the extended term shall be adjusted to the Fair Market commercial rental ("FMV") for similar uses being charged within the five mile radius of the property but in no event less than the base rent paid during the seventy-fourth (74th) year of the initial term.     Not less than twelve (12) months prior to the commencement date of the renewal term Landlord and Tenant shall agree upon the fair rental value of the Premises for the renewal term, or failing their agreement by such date, by arbitration in the manner set forth herein below.

(i)     In the event that Landlord and Tenant cannot agree upon the FMV of the Premises for the renewal term no later than six months prior to the expiration of the term of this Lease, then they agree that the matter shall be determined by arbitration in accordance with the commercial arbitration rules of the American Arbitration Association, except as follows: (i) each party shall, within thirty (30) days after such request, appoint one arbitrator and notify the other party of the name and address of the arbitrator so appointed; (ii) if either party shall fail to make such appointment within the time prescribed, then the appointment of an arbitrator on behalf of such party shall be made by the arbitrator already appointed; (iii) the arbitrators so appointed shall meet within ten (10) days after the second arbitrator is appointed and shall, if possible, determine such matter within thirty (30) days after the second arbitrator is appointed, and their determination under oath shall be binding and conclusive on the parties; (iv) if for any reason the two (2) arbitrators fail to agree on such matter within thirty (30) days they shall appoint a third (rd) arbitrator and, in the event of their failure to agree upon such third arbitrator within ten () days thereafter, either party on behalf of both may request such appointment by the then president of the Real Estate Board of New Jersey (if there is such an organization) (or any organization successor thereto) or in his absence or failure, refusal or inability to act within thirty () days, then either party, on behalf of both, may apply to the Presiding Justice of the Superior Court located in Bergen County  for the appointment of the third (3rd) arbitrator, and the other party shall not raise any question as to the Court's full power and jurisdiction to entertain the application and make the appointment; and (v) within thirty () days after the appointment of the third (3rd) arbitrator each of the first two (2) arbitrators shall submit their valuation or determination, as the case may be, to the third (3rd) arbitrator who, within fifteen () days thereafter, must select one or the other of such valuations or determinations, and the selection so made shall in all cases be binding and conclusive upon the parties and judgment upon the decision may be entered in any court having jurisdiction.  Each arbitrator shall be duly sworn to determine

HUD 0000050

HUD 0000050

such matter fairly and impartially.  If any arbitrator should die, be disqualified or incapacitated, or shall fail or refuse to act, before such matters shall have been determined, then, in place of such arbitrator, an arbitrator shall promptly be appointed in the same manner as the arbitrator who shall have died, become disqualified or incapacitated, or who shall have failed or refused to act.  Judgment on such determination of the arbitrators may be entered by either party, upon notice to the other party, in any court having jurisdiction.  Each party shall pay the fees and expenses of the arbitrator appointed by or on behalf of such party and each party shall pay one-half of the fees and expenses of the third arbitrator, if any. The parties shall otherwise share the costs and expenses of the arbitration with respect to the use of the facility with the arbitration occurs.

Other than as is set forth above with respect to the Option, Tenant shall not have any other right to extend the term of this Lease without the express prior written consent of Landlord. It is the intention of the parties to avoid forfeiture of Tenant's rights to extend the Term under the options set forth in this Section . through inadvertent failure to give notice of exercise thereof within the time limits prescribed. Accordingly, if Tenant shall fail to give notice to Landlord of Tenant's election to extend the Term  the Landlord will give notice to the Tenant of Tenant's right to extend this Lease.
Included in the notice the Landlord will give the Tenant an opportunity to cure within a ten (10) day period.  If the Tenant fails to cure there shall be no further opportunity to cure.

3.3 <u>Surrender</u>.  Upon the expiration of the Term hereof and if the Option to Purchase is not exercised, Tenant shall surrender the Premises to Landlord broom clean   and in good order and condition, reasonable wear and tear and damage by fire, casualty and partial condemnation excepted, and free and clear of all liens, chattel mortgages, conditional bills of sale or other security instruments caused by Tenant. Any and all Tenant improvements on and to the property on any nature whatsoever, except for chattels, shall become the property of the Landlord.

ARTICLE IV
RENT

4.1 <u>Rent</u>.  Upon the earlier of issuance of the Certificate of Occupancy or the One Hundred Eightieth Day following the receipt of a construction permit from the Township of Edgewater, ("Rent Commencement Date") the first month's full Base and Additional Rent shall be due and payable ($500,000.00 per year Base Rent) and each subsequent payment of Base and Additional Rent for each month thereafter on or before the first day of each month of the term. Tenant covenants and agrees to pay Landlord at the above referenced address, or such other place as Landlord shall designate in writing, rent on the Premises as follows:

Notwithstanding the foregoing, commencing with the issuance of a Building Permit and until the Rent Commencement Date which shall be no later than eighteen (18) months from issuance of the initial Building Permit (e.g. Demolition; Footings & Foundation), Tenant shall pay to the Landlord equal monthly installments of $12,500.00.

Commencing on the Rent Commencement Date and for a period of five (5) years thereafter, Tenant shall pay annual base rent of $500,000.00 on a triple net basis plus the Additional Rent in accordance with the Rent Schedule attached hereto.

Base Rent and all additional rent shall be payable in advance, in equal monthly installments, on the first day of each and every calendar month subsequent to the Rent.

4.2 <u>Security</u>. The Tenant shall upon execution of this lease agreement pay to the Landlord One Hundred Fifty Thousand ($150,000.00) Dollars representing the lease security for the assurance of performance of the Tenant's obligations in accordance with this lease agreement. In the event the Landlord is required to use any or all of same resulting from Tenant's breach and/or default of the terms and conditions of this agreement, the Tenant shall make an immediate payment in an amount necessary to re-establish the security account to its proper level in accordance with the then rental payments being made in accordance with this rental agreement. In the event the Tenant fails to so perform, such shall be deemed a default in the terms and conditions of this Lease Agreement. Landlord agrees to return to the Tenant one half (1/2) the amount of security deposit (($75,000.00) upon the Tenant obtaining and forwarding a copy of the construction permit issued by the Township of Edgewater and the remaining one half (1/2) ($75,000.00) twelve () months thereafter so long as Tenant is not in Default of any terms and conditions of the lease agreement.

ARTICLE V
TAXES

5.1 <u>Real Estate Taxes</u>. Following the Rent Commencement Date, and thereafter during the Term, Tenant shall pay all real estate taxes and general or special assessments for betterments and improvements that are levied or assessed by any lawful authority on the Premises (hereinafter referred to as "real estate taxes"), and shall pay the real estate taxes to the Landlord on a monthly basis in advance as additional rent. Real estate taxes shall include any taxes assessed in lieu thereof, but shall not include: (i) penalties, interest, income, intangible, franchise, capital stock, estate or inheritance taxes or taxes substituted for or in lieu of the foregoing exclusions; (ii) any roll-back taxes or any assessment for special improvements to the Premises, including but not limited to the widening of exterior roads, the installation of or hook up to sewer lines, sanitary and storm drainage systems and other utility lines and installations, provided that such assessment is made prior to the date which is twenty-four () months after the Commencement Date; or (iii) taxes on rent, gross receipts or revenues of the

HUD 0000052

HUD 0000052

Premises. Landlord shall furnish Tenant with copies of all tax bills on the Premises promptly upon receipt thereof and in sufficient time to allow Tenant to determine whether or not to contest any increase in real estate taxes. If Tenant desires to contest such tax increase, Tenant shall promptly notify Landlord and Tenant shall have the right to do so at its expense and Landlord shall fully cooperate with Tenant in any such proceeding. If, during Tenant's contest of such taxes, contested taxes are required to be paid into court or directly to the taxing authority so as to avoid a tax lien on Landlord's title to the property underlying the Premises, Tenant shall pay such contested tax.

5.2 <u>Personal Property Taxes</u>. Tenant shall pay all taxes assessed on Tenant's personal property on, in or at the Premises. If Landlord has paid any such tax in the first instance, as required by the applicable taxing authority, Tenant shall reimburse Landlord upon Tenant's receipt of paid invoices for such taxes provided that Landlord shall give Tenant notice of any such tax prior to paying same.

ARTICLE VI

UTILITIES

6.1 <u>Utilities</u>.   Tenant shall pay all the applicable utility companies or governmental agencies for all such utilities consumed on the Premises during the Term subsequent to the Possession Date and be responsible for the installation of any required services.

ARTICLE VII

USE AND ASSIGNMENT

7.1 <u>Use</u>. The Premises may be used for any lawful purpose, except as not permitted by the Deed Restriction as attached hereto. Landlord shall at all times during the Term hereof cooperate with Tenant at Tenant's expense in requesting such modifications, variances, special use permits and such other changes in Requirements affecting the Premises, as Tenant may reasonably require in obtaining he approvals as are necessary, however, Tenant hereby acknowledges and agrees to the terms and conditions of the Deed Restrictions relative to the property.,

7.2 <u>Approvals</u>: The Tenant shall concurrent with the execution of this agreement hire and engage the services of any and all consultants as are required to submit documentation so as to obtain any and all necessary local, county and state approvals for the intended use and construction of a 100 unit full service hotel with all modern amenities and ancillary uses of approximately 60,000 square feet, plus an outdoor deck of approximately 40,000, square feet, including, without limitation, a full-service spa, pool and pool amenities similar in style, nature and operation to that of a Canyon Ranch Spa and other types of spas at its sole cost and expense.

An application in proper form along with attendant required documentation shall be filed

HUD 0000053

HUD 0000053

with the appropriate Borough Board for obtaining all required approvals in accordance with the Time Table attached hereto.

Landlord and Tenant agree that James Demetrakis shall be the legal representative to present the project for approvals as required and the Landlord will be responsible for the payment of the legal representation as well as consultant fees and reports before the necessary agencies as required, notices and publications, transcripts (if necessary) etc. , however, all such fees will be subject to approval of the Tenant which approval shall not be unreasonably withheld or delayed.

7.3 <u>Assignment and Subletting</u>.    Tenant may not assign this Lease without the prior written consent of the Landlord, which consent Landlord agrees it shall not unreasonably withhold, condition or delay. Landlord agrees that in the event the assignee is a company whose shares of stock or other equity is traded on a nationally recognized stock exchange, Landlord's consent to an assignment of the lease will not be required, however, Tenant shall give Landlord notice in advance of such proposed assignment with full financial documentation so as to give Landlord a full opportunity to evaluate the proposed assignment. .   Landlord agrees that Tenant shall have the right, without Landlord's consent, to mortgage the Lease and/or assign the lease in connection with financing secured by Tenant and in the event of any default by Tenant, the lender shall have the right to further assign the lease without Landlord's consent provided, however, that there is then no arrearage in Basic Rent or additional rent. Tenant shall have the right to sublet the Premises or any part of the same, without requiring consent of Landlord.

In the event of a permitted  assignment the Tenant shall  be relieved of all liability of the terms and conditions of this agreement.


ARTICLE VIII
MAINTENANCE AND REPAIRS

8.1 <u>Tenant's Repairs</u>. During the Term hereof, Tenant shall maintain the Premises in reasonably good condition and shall be responsible for all repairs to the Premises~. It is the intention of the parties that all development and construction on and to the Premises required hereunder shall be at Tenant's sole cost and responsibility and Landlord shall have no  obligation with respect thereto, except as may be specifically otherwise set forth herein.

8.2 <u>Alterations</u>. Tenant shall have the right, at its sole cost, responsibility, and expense, with the consent of the Landlord, which consent Landlord agrees it shall not unreasonably withhold, condition or delay, to make at any time and from time to time, alterations to the Premises and construct other improvements on the Premises, so long as same are in compliance with all Requirements and Approvals (as hereinafter defined). Landlord herewith approves of the construction plans annexed hereto and made a part hereof. Landlord agrees that following Tenant's initial construction in accordance with the annexed plans, Tenant shall be permitted to perform any alteration of any type or nature, without limitation, including demolition of structures, without requiring consent of Landlord

provided, however, that Tenant complies with all applicable rules, laws and regulations of all governmental and quasi-governmental bodies and agencies having jurisdiction there. Over Landlord will cooperate with Tenant and will execute all instruments necessary or appropriate to obtain all Approvals to make such alterations and improvements from the applicable governmental and quasi-governmental authorities to satisfy the Requirements.

    8.3  <u>Fixtures</u>.  Any trade fixtures, furniture, equipment and other personal property that Tenant places or installs in the Premises at its expense prior to or during the Term hereof shall remain Tenant's property and may be removed by Tenant provided that Tenant shall repair any material damage to the Land caused by such removal at its sole cost and expense.

    8.3  <u>Title to Improvements</u>.    Until the expiration or sooner termination of this Lease, title to any building, improvements or building equipment placed, erected or installed on the Premises by Tenant (collectively "Tenant's Improvements"), and any alteration, change or addition thereto shall remain solely with Tenant; and Tenant also shall be entitled to deduct all depreciation on Tenant's income tax returns for Tenant's Improvements.

ARTICLE IX
INSURANCE

    9.1  <u>Tenant's Insurance</u>.  From and after the Possession Date, Tenant will maintain commercial general liability insurance covering the Premises against claims for personal injury and damage to property with a limit of Five Million and ($5,000,000.00) Dollars  per occurrence and in the aggregate as applicable for bodily injury, personal injury or property damage. Tenant may have a basic policy of $,,. with the balance of the insurance provided by umbrella, excess or a blanket coverage, provided that Landlord at all times has not less than $5,000,000.00 of insurance coverage. Tenant will also maintain workers' compensation or similar insurance to the extent required by law. The Landlord shall be named as an additional insured.

    9.2  <u>Insurance Certificates</u>. All of the foregoing insurance policies required pursuant to Section . above will provide that Landlord shall be given  notice by any such insurance company prior to the cancellation, termination or alteration of the terms or limits of such coverage in accordance with the provisions of any such insurance policy. Tenant will deliver to Landlord the foregoing insurance policies or certificates thereof within thirty () days of the Effective Date and evidence of all renewals or replacements of same not less than ten () days prior to the expiration date of such policies. All such policies

may be maintained under a "blanket insurance policy" of Tenant.

9.3 <u>Mutual Release; Waiver of Subrogation</u>. Landlord and Tenant hereby each release the other party and anyone claiming through or under the other party by way of subrogation or otherwise from any and all liability for any loss of or damage to property, whether caused by the negligence or fault of the other party. In addition, provided that there is then no additional cost, charge or premium, Landlord and Tenant shall cause each any insurance policy carried by them insuring the Premises, Land or the contents thereof, to be written to provide that the insurer waives all rights of recovery by way of subrogation against the other party hereto in connection with any loss or damage covered by the policy.


ARTICLE X
DAMAGE OR DESTRUCTION

10.1 <u>Damage and Destruction</u>. If any improvements on the Premises are damaged or destroyed during the Term by a casualty loss, Tenant shall either (i) promptly and diligently rebuild and restore same, at its expense, to its condition prior to such destruction, or (ii) promptly raze any improvements and place the Premises in a safe manner. Tenant shall have full use of and the right to apply any insurance proceeds available for such rebuilding and restoration. During any such period of time between the date of destruction or casualty and the completion of rebuilding or repair, to the extent that Tenant shall not have the ability to use the Premises for the operation of its business, Tenant shall be entitled to an abatement of base rent.


ARTICLE XI
EMINENT DOMAIN

10.1 <u>Condemnation</u>. If after the execution of this Lease and prior to the expiration of the Term, the whole of the Premises shall be taken under power of eminent domain by any public or private authority, or conveyed by Landlord (subject to Tenant's prior written approval) to said authority in lieu of such taking, then this Lease and the Term hereof shall cease and terminate as of the date of such taking; subject, however, to the right of Tenant, at its election, to continue to occupy the Premises, subject to the terms and provisions of this Lease, for all or such part, as Tenant may determine, of the period between the date of such taking and the date when possession of the Premises shall be taken by the taking authority and any unearned rent or other charges, if any, paid in advance, shall be refunded to Tenant; subject, further, to Tenant's right to keep this Lease in full force and effect in accordance with all governmental requirements, if termination hereof

HUD 0000056

HUD 0000056

would reduce any award for a taking, as set forth herein below in this Article XI.

10.2 <u>Termination Right</u>. If, after the execution of this Lease and prior to the expiration of the Term, any taking under the power of eminent domain by a public or private authority or any conveyance by Landlord in lieu thereof, shall result in:

10.2.1 a reduction of ten (10%) percent or more of the area of the Land;

10.2.2 The reduction of the parking area of the Premises to below the amount required by law; or

10.2.3 A taking of either a portion of the Land which taking materially impedes or interferes with access to the Premises or the operation of Tenant's business; then Tenant may, at its election, terminate this Lease by giving Landlord notice of the exercise of Tenant's election within days after Tenant shall receive actual notice of such taking. In the event of termination by Tenant under the provisions of this Section ., this Lease and the Term hereof shall cease and terminate as of the date of such taking, subject to the right of Tenant, at its election, to continue to occupy the Premises, subject to the terms and provisions of this Lease, for all or such part, as Tenant may determine, of the period between the date of such taking and the date when possession of the Premises shall be taken by the appropriating authority, and any unearned rent or other charges, if any, paid in advance by Tenant shall be refunded to Tenant. Notwithstanding anything in the foregoing to the contrary, if any condemnation award for any taking would be reduced by the termination of this Lease with respect to a taking, as hereinabove set forth, then Tenant may elect to keep this Lease in full force and effect so as to obtain the highest possible award from the condemning authority.

10.3 <u>Restoration.</u>

10.3.1 In the event of a taking in respect of which Tenant shall not have the right to elect to terminate this Lease or, having such right, shall not elect to terminate this Lease (a "Non-Termination Taking"), this Lease and the Term hereof shall continue in full force and effect and the Tenant elects to promptly and diligently effect the "Restoration" (as hereinafter defined) through application of the "Restoration Portion", as hereinafter defined and set forth. If this Lease is not terminated as a result of a taking, as set forth hereinabove in this Section ., Tenant shall be entitled to receive the entire award except for that portion (the "Restoration Portion") of the award necessary for the Restoration. If the entire award is

HUD 0000057

HUD 0000057

insufficient for the Restoration, then the entire award shall be the Restoration Portion and Tenant shall have the right to terminate this Lease by written notice to Landlord within thirty () days after the insufficiency of the Restoration Portion is actually known to Tenant. The term "Restoration" herein means the restoration of the remaining portions of the Premises, including any and all improvements made theretofore, together with the remaining portions of the parking areas and other common areas of the Premises, to an architectural whole in substantially the same condition that the same were in prior to such taking. A just proportion of the rent reserved hereunder and any other charges payable by Tenant hereunder, according to the nature and extent of the injury to the Premises and to Tenant's business, shall be suspended or abated until the completion of such restoration and thereafter the rent and any other charges shall be reduced pro-rata based upon the percentage of the Premises taken.

 10.3.2 <u>Award</u>. All compensation awarded for any taking of the Land, shall belong to Tenant. Landlord
hereby assigns to Tenant all of Landlord's Award.

 10.3.3 <u>Termination</u>. In the event of any termination of this Lease as the result of the provisions of this Article XI, Landlord and Tenant, effective as of such termination, shall be released, each to the other, from all liability and obligations thereafter arising under this Lease.

ARTICLE XII
SELF HELP

 11.1 <u>Self Help</u>. If Landlord or Tenant default in the performance of any obligation imposed on it by this Lease and does not cure such default within thirty () days after written notice from the other party specifying the default (or does not within said period commence and diligently proceed to cure such default), the other party, without waiver of or prejudice to any other right or remedy it may have, shall have the right at any time thereafter to cure such default for the account of the defaulting party, and the defaulting party shall reimburse the other party for any reasonable, actual, out-of-pocket amount paid and any expense or contractual liability so incurred upon invoice. In the  event of emergencies, or where necessary to prevent injury to persons or damage to  property, either party may cure a default by the other party before the expiration of the  waiting period with written or oral notice appropriate to the circumstances to the other  party. Any sums owed by Landlord to Tenant under this Section  or pursuant to  the other provisions of this Lease.

**HUD 0000058**

HUD 0000058

ARTICLE XII
DEFAULT

12.1 <u>Remedies Upon Tenant's Default</u>.  In the event Tenant shall at any time fail to pay rent or other monetary amounts herein required to be paid by Tenant and such failure shall continue after thirty (30) days prior notice from Landlord, or Tenant shall fail to observe or perform any of the other covenants and agreements

required to be performed and observed by Tenant hereunder and any such default, except for the payment of rent which shall have no further extension to perform, shall continue for a period of thirty (30) business days after notice to Tenant and Tenant shall not thereafter cure such default (or if such default is incapable of being cured in a reasonable manner within thirty (30) business days then if Tenant has not commenced to cure the same within said thirty (30) business day period and thereafter to diligently prosecute the same to completion) then Landlord shall be entitled at its election, to exercise concurrently or successively, anyone or more of the following rights:

12.2  to bring suit for the collection of the rent or other amounts for which Tenant may be in default, or for the performance of any other covenant or agreement devolving upon Tenant.

12.3  pursuant to a Court order, to re-enter the Premises with process of law and take possession thereof, and thereupon Landlord may expel all persons and remove all property there from, without becoming liable to prosecute therefore, and relet the Premises and receive the rent there from, applying the same first to the payment of the reasonable expenses of such re-entry, and then to the payment of the monthly rental accruing hereunder, the balance, if any, to be paid to Tenant. Tenant shall remain liable for any deficiency after such application. Landlord shall use its best efforts to re-let the Premises. The commencement and prosecution of any action by Landlord , or the appointment of a receiver, or any execution of any decree obtained in any action to recover possession of the Premises, or any permitted re-entry, shall not be construed as an election to terminate this Lease unless Landlord shall, in writing, expressly exercise its election to declare the Term hereunder ended and to terminate this Lease, and, unless this Lease be expressly terminated, such re-entry or entry by Landlord, whether had or taken under summary proceedings or otherwise,

**HUD 0000059**

HUD 0000059

shall not be deemed to have absolved or discharged Tenant from any of its
obligations and liabilities for the remainder of the Term of this Lease required to be
performed and observed by Tenant hereunder and any such default,
except for the payment of rent which shall have no further extension to perform,
shall continue for a period of thirty () business days after notice to Tenant and
Tenant shall not thereafter cure such default (or if such default is incapable of
being cured in a reasonable manner within thirty () business days then if Tenant   has not
commenced to cure the same within said thirty () business day period
and thereafter to diligently prosecute the same to completion) then Landlord shall
be entitled at its election, to exercise concurrently or successively, anyone or
more of the following rights:

12.4  to bring suit for the collection of the rent or other amounts for which Tenant
may be in default, or for the performance of any other covenant or
agreement devolving upon Tenant.

12.5  pursuant to a Court order, to re-enter the Premises with process of law and take
possession thereof, and thereupon Landlord may expel all persons and remove all property
there from, without becoming liable to prosecute therefore, and relet the
Premises and receive the rent there from, applying the same first to the
payment of the reasonable expenses of such re-entry, and then to the
payment of the monthly rental accruing hereunder, the balance, if any, to be
paid to Tenant. Tenant shall remain liable for any deficiency after such
application. Landlord shall use its best efforts to re-let the Premises. The
commencement and prosecution of any action by Landlord , or the appointment of a
receiver, or any execution of any decree obtained in any action to recover possession of
the Premises, or any permitted re-entry, shall not be construed as an election to
terminate this Lease unless Landlord shall, in writing, expressly exercise its
election to declare the Term hereunder ended and to terminate this Lease,
and, unless this Lease be expressly terminated, such re-entry or entry by
Landlord, whether had or taken under summary proceedings or otherwise,
shall not be deemed to have absolved or discharged Tenant from any of its
obligations and liabilities for the remainder of the Term of this Lease.

12.6  In the case of a default with respect to a payment of Rent by Tenant to
Landlord, to terminate this Lease, re-enter the Premises pursuant to a Court order and take
possession thereof.  In the event Landlord shall elect to terminate this Lease, as
aforesaid, all rights and obligations of Tenant, and of any permitted
successors or assigns, shall cease and terminate, except that Landlord shall
have and retain full right to sue for and collect all Rents of which Tenant
shall then be in default, and all damages to Landlord by reason of any such

**HUD 0000060**

HUD 0000060

breach, Landlord having the duty and obligation to mitigate said damage, and Tenant shall surrender and deliver up the Premises to Landlord and upon any default by Tenant in so doing, Landlord shall have the right to recover possession by summary proceedings or judicial action  and to apply for the appointment of a  receiver and for other ancillary relief in such action and Landlord shall again have and enjoy the Premises, fully and completely, as if this Lease had never been made. Tenant hereby expressly waives any and all rights of redemption granted by or under any present or future laws in the event of Landlord's obtaining possession of the Premises by reason of the breach or violation by Tenant of any of the covenants and conditions in this Lease contained.

12.7 Remedies Upon Landlord's Default.  In the event that Landlord shall at any time be in default in the observance or performance of any of the covenants and agreements required to be performed and observed by Landlord hereunder and any such default shall continue for a period of thirty (30)    days after written notice to Landlord and Landlord shall not thereafter cure such default (or if such default is incapable of being cured in a reasonable manner within thirty (30) days then, if Landlord has not commenced to cure the same within said thirty (30) day period and thereafter diligently prosecuted the same to completion), Tenant shall be entitled at its election, to exercise concurrently or successively, any one or more of the following rights, in addition to all remedies otherwise provided in this Lease and otherwise available at law or in equity under the laws of the United States or the State of New Jersey.

## ARTICLE XIV
## QUIET ENJOYMENT

13.1 Covenants and Warranties.  Landlord covenants and warrants that Landlord is the true and lawful owner of the Premises which is subject only to the Permitted Exceptions and has good right and full power to let and lease the same. Landlord agrees that, contingent upon Tenant's compliance with the terms of this Lease, Tenant shall quietly and peaceably hold, possess and enjoy the Premises for the full term of this Lease without any hindrance or molestation by Landlord or by the agents or employees of Landlord, and Landlord will defend the title to the Premises and the use and occupancy of the same by Tenant against the claims of all persons whomsoever, except those claiming by or through Tenant and will indemnify and hold Tenant harmless from any and all losses, costs, expenses or liabilities due or attributable to a breach by Landlord of the warranties set forth in this Section ..  Landlord further represents and warrants that it is not aware of any condition or set of circumstances which would prohibit Tenant from using the Premises for any lawful use in accordance with the terms and conditions of the filed Deed Notice attached hereto and made part hereof.

HUD 0000061

HUD 0000061

The Landlord and Tenant acknowledge receipt of such and agree to be bound by the terms and conditions as set forth therein which are incorporated herein as if fully set forth.

### ARTICLE XV
### SUBORDINATION

14.1 Subordination and Attornment.

14.1.1   In all events notwithstanding anything contained herein to the contrary, Landlord's fee simple title shall be superior to any leasehold mortgage(if any) on the Premises, and such leasehold mortgage shall take subject to same with the intent of the parties being that a foreclosure of the leasehold mortgage shall in no event eliminate Landlord's fee title interest.

14.1.2  Tenant shall, upon the written request of Landlord, subordinate this Lease to the lien of any mortgage upon the Premises, provided that the holder of any such mortgage ("Mortgagee") shall enter into a written agreement with Tenant providing that (i) in the event of foreclosure or other action taken under the mortgage by Mortgagee, this Lease and the rights of Tenant hereunder shall not be disturbed or diminished, but shall continue in full force and effect so long as Tenant complies with the terms hereof; (ii) in no event shall any monetary term or provision of this Lease be altered. Such agreement shall be substantially in the form attached hereto as Exhibit E. As used herein, "mortgage" shall include mortgages, deeds of trust, deeds to secure debt or other similar instruments, and any modifications or extensions of same.

### ARTICLE XVI
### TRANSFERS BY LANDLORD

15.   Transfers of Landlord's Interest. No transfer or sale of Landlord's interest hereunder shall release Landlord from any of its obligations or duties hereunder prior thereto. Landlord shall be released of any ongoing obligations hereunder from and after the date of such transfer upon the assumption of all such obligations and duties by the transferee of Landlord.

### ARTICLE XVII
### MISCELLANEOUS

16.1  Holding Over. In the event of Tenant's continued occupancy of the Premises after the expiration of the Term, or any earlier termination provided or permitted by this Lease, such tenancy shall be from month-to-month and such

HUD 0000062

HUD 0000062

continued occupancy shall not defeat Landlord's right to possession of the  Premises. During such holdover period, all covenants, provisions, obligations and
conditions of this Lease shall remain in full force and effect during such month-to-month tenancy.

16.2  <u>Non-Waiver of Default</u>. No acquiescence by either party to any default by
 the other party hereunder shall operate as a waiver of its rights with respect to any
 other breach or default, whether of the same or any other covenant or condition,
 nor shall the acceptance of rent by Landlord at any time constitute a waiver of any
 rights of Landlord.

16.<u>3 Recording</u>. This Lease shall not be recorded. A Memorandum may be
recorded by Landlord or Tenant as hereinabove set forth.

16.4 <u>Notice</u>. Any notice or consent required to be given by or on behalf of any
party hereto to any other party shall be in writing and mailed by registered or
certified mail, return receipt requested or delivered personally, including by nationally recognized air courier or expedited mail service which gives proof of receipt, addressed as follows:

If to Landlord:

>     North River View  Associates, LLC
>     c/o Daibes Enterprises
>      Portside Drive
>     Edgewater, N.J.
>     Attention: Berek Don

If to Tenant:

>     E.  Rae Jo
>     1650 Broadway, Suite 1003
>     New York, N.Y. 10019

>     With a copy sent simultaneously by similar means to:
>     Barry P. Fox, Esq.
>     1500 Broadway, 21st Floor
>     New York, New York 10036-4052

**HUD 0000063**

HUD 0000063

Or at such other address as may be specified from time to time in writing. All such notices hereunder shall be deemed to have been given on the date of delivery or the date marked on the return receipt unless delivery is refused or cannot be made because of any incorrect address provided by the addressee, in which case the date of postmark shall be deemed the date notice has been given. Any notice required or permitted by either party hereunder may be made on their behalf by their legal representative.

16.5  <u>Successors and Assigns</u>. All covenants, promises, conditions, representations, and agreements herein contained shall be binding upon, apply and inure to the parties hereto and their respective heirs, executors, administrators, successors, and permitted assigns.

16.6  Intentionally Deleted.

16.7  <u>Partial Invalidity</u>. If any provision of this Lease or the application thereof to any person or circumstance shall to any extent be held invalid, then the remainder of this Lease or the application of such provision to persons or circumstances other than those as to which it is held invalid shall not be affected thereby, and each provision of this Lease shall be valid and enforced to the fullest extent permitted by law.

16.8  <u>Interpretation</u>. In interpreting this Lease in its entirety, the printed provisions of this Lease and any additions written or typed thereon shall be given equal weight, and there shall be no interference, by operation of law or otherwise, that any provision of this Lease shall be construed against either party hereto.

16.9  <u>Headings, Captions and References</u>. The section captions contained in this Lease are for convenience only and do not in any way limit or amplify any term    or provision hereof.  The use of the terms "hereof," "hereunder" and "herein" shall refer to this Lease as a whole, inclusive of the Exhibits, except when noted otherwise. The use of the masculine or neuter genders herein shall include the masculine, feminine and neuter genders and the singular form shall include the plural when the context so requires.

**THE REMAINDER OF THIS PAGE IS INTENTIONALLY LEFT BLANK**

HUD 0000064

HUD 0000064

16.10  Brokerage Commissions.  Landlord and Tenant each warrant and represent to the other that there are no brokers', finders' fees or any real estate commissions due to any broker, agent or other party in connection with the negotiation or execution of this Lease or on behalf of either of them Landlord and Tenant hereby agree to indemnify and hold the other harmless from and against any and all costs, expenses, liabilities, causes of action, claims or suits by any party for compensation, commissions, fees or other sums claimed to be due or owing with respect to the representation of Landlord or Tenant, as applicable, in effecting this Lease and from and against all cost, expense, liability or damage (including without limitation reasonable attorneys' and other costs of legal representation) arising in connection with a breach of the warranty in this lease agreement.

16.11  Governing Law.  This Lease shall be construed under the laws of the State of New Jersey and jurisdiction for any and all disputes shall be in the Bergen County Superior Court, Hackensack, N.L

16.12  Relationship of Parties.  Nothing herein shall be construed so as to constitute a joint venture or partnership between Landlord and Tenant.

16.13  Force Majeure.  In the event that either party shall be delayed or hindered in, or prevented from, the performance of any work, service, or other act required under this Lease to be performed by the party and such delay or hindrance is due to strikes, lockouts, acts of God, governmental restrictions, enemy act, civil commotion, fire or other casualty, or other causes of a like nature beyond the control of the party so delayed or hindered, then performance of such work, service, or other act shall be excused for the period of such delay and the period for the performance of such work, service, or other act shall be extended for a period equivalent to the period of such delay.  In no event shall a lack of financing be deemed an unavoidable delay hereunder.

16.14  Estoppel Certificates.  Within twenty (20) days after the request by either party, the other party agrees to deliver to the requesting party and to any potential mortgagee, assignee or purchaser of the requesting party's interest in the Premises or this Lease an estoppel certificate, in form and substance reasonably satisfactory to the requesting party, certifying that this Lease is unmodified and in full force and effect (or, if there have been modifications, whether same is in full force and effect as modified, and stating the modifications), that, to the certifying party's reasonable knowledge and belief, there are no defenses or offsets thereto (or stating those claimed by the certifying party), that there are no defaults by the certifying party or, to the reasonable knowledge and belief of the certifying party, on the part of the requesting party (or, if such defaults exist, stating their nature) and such other matters as the requesting party may reasonably request; provided,

however, that no such estoppel certificate shall be deemed to amend or modify this Lease.

16.15 <u>Toxic Waste</u>.

16.15.1 Landlord warrants and represents that to the best of it knowledge the Premises does not now contain any hazardous, toxic materials, fuel storage tanks or polychlorinated biphenyls or any other substances defined by the appropriate governmental authority as a hazardous waste. Landlord warrants and represents that (i) the Premises,   including, but not limited to, the soil, groundwater and soil vapor, do not  contain any Hazardous Substance, (ii) Landlord is not subject to any existing, pending or, to its best knowledge, threatened investigation by any governmental authority  under any applicable federal, state or local law, regulation or ordinance pertaining to air, soil and water quality, the handling, transportation, storage,   treatment, usage, or disposal of Hazardous Substances, air emissions, and other environmental matters, (iii) any handling, transportation, storage,  treatment, or use of Hazardous Substances that has occurred on the   Premises to date has been in compliance with all applicable federal, state, and local laws, regulations and ordinances, and (iv) no leak, spill, release, discharge, emission, or disposal of Hazardous Substances has occurred on the Premises to date.

**THE REMAINDER OF THIS PAGE IS INTENTIONALLY LEFT BLANK**

16.15.2  "Hazardous Substances" for purposes of this Lease shall be interpreted broadly to include, but not be limited to, any material or substance that is defined or classified under federal, state, or local laws as: (a) a "hazardous substance" pursuant to section  of the Comprehensive Environmental Response, Compensation and Liability Act, 42 U.S.C. §9601 (14), section 311 of the Federal Water Pollution Control Act, U.S.C. §1321 , as now or hereafter amended; (b) a "hazardous waste" pursuant to section1004  or section 3001 I of the Resource Conservation and Recovery Act,  42 U.S.C. §§ 6903 ,6921 , as now or hereafter amended; (c) a toxic pollutant under section (a)(l) of the Federal Water Pollution Control Act,  U.S.C. §307 (a)(1 ); (d) a "hazardous air pollutant" under section 112  of the Clean Air Act, 42 U.S.C. §7412 , as now or hereafter amended; (e) a "hazardous material" under the Hazardous Materials Transportation Uniform Safety Act of 1990 , 49 U.S.C. App. §1802 (4), as now or hereafter amended; (f) toxic or hazardous pursuant to regulations promulgated now or hereafter under the aforementioned laws; or (g) presenting a risk to human health or the environment under other applicable federal, state or local laws, ordinances, or regulations, as now or as may be passed or promulgated in the future. "Hazardous Substances" shall also mean any substance that after release into the environment and upon exposure, ingestion, inhalation, or assimilation, either directly from the environment or directly by ingestion through food chains, will or may reasonably be anticipated to cause death, disease, behavior abnormalities, cancer, or genetic abnormalities. "Toxic or Hazardous Substances" specifically includes, but is not limited to, asbestos, polychlorinated biphenyls ("PCBs"), petroleum and petroleum-based derivatives, and urea formaldehyde.

16.15.3  Landlord further warrants, represents and covenants that no Hazardous Substance will be present in or on the Premises from and after the Effective Date or otherwise used or permitted to be used in, on, or about the Premises by Landlord in accordance with the prior use and as set forth in the environmental reports forwarded by Landlord to Tenant.

16.15.4  The parties acknowledge and agree that if Tenant handles certain environmentally regulated substances as part of its intended operations. Tenant shall handle, store, and dispose of such substances in strict compliance with all governmental regulations related to same and to hold Landlord harmless from any action or claim related to such substances.

16.15.5 Landlord shall comply with the requirements of Environmental Laws relating to the Premises, except to the extent they arise from Tenant's operations thereon.

16.15.6  In the event any Hazardous Substances for which Landlord is responsible hereunder are detected at the Premises, Landlord shall: () use diligent efforts to obtain written confirmation from each and every governmental agency or authority with jurisdiction that (A) all violations of the Environmental Laws existing at the Premises, unless caused by Tenant's Discharges, have been cured; () all Hazardous Substances located at, on, in, under or emanating from the Premises, unless caused by Tenant Discharges, have been remediated; which obligations of (A) and  shall be performed in compliance with Environmental Laws and this Lease (such confirmations hereinafter referred to as the "Compliance Confirmations"); conduct any remediation on the Demised Premises so that any Hazardous Substances at, on, in, under or emanating from the Demised Premises will not pose a material risk to users (including, without limitation, customers, employees and contractors) of the Demised Premises; not allow the presence of such Hazardous Substances, or any effort to investigate or remediate such Hazardous Substances, to interfere with Tenant's operations at the Demised Premises; use diligent efforts to conduct any activities necessary to obtain Compliance Confirmations for the Demised Premises, and to store any equipment used for such purpose, behind the buildings at the Demised Premises to screen all such activities, and any equipment used for such purpose, from the public view; and  not allow the posting of any signage concerning such Hazardous Substances at the Demised Premises. Landlord's obligation hereunder shall include responsibility to properly remove and dispose of all contaminated media to the extent necessary for Tenant to construct its building and develop the Premises, according to the site plan for which Tenant receives approvals from governmental authorities with jurisdiction.

16.15.7  If Hazardous Substances for which Landlord is liable are detected at the Demised Premises Landlord must immediately commence carrying out its obligations in accordance with this agreement. Should Landlord fail to use diligent efforts to obtain the Compliance Confirmations, Tenant may, at any time thereafter, give Landlord notice of such failure and an opportunity to cure within thirty (30) days of such notice. If, at the expiration of such time to affect a cure, Landlord has not done so, Tenant may affect such cure. Nothing herein shall be deemed to create an obligation on Tenant's part to obtain the Compliance Confirmations and no action on Tenant's part shall create such an obligation. Once Tenant commences actions necessary or helpful to obtaining the Compliance Confirmations, Tenant may

HUD 0000068

HUD 0000068

discontinue such actions at any time, in Tenant's sole discretion, without
any effect upon Landlord's or Tenant's obligations under this Lease, except that in the event
that Tenant is required prior to the Rent Commencement Date to remove any such Hazardous
Substances, the period of time within which the Rent Commencement Date shall occur shall
be extended day-for-day for each day of the delay caused by the existence and removal of
the Hazardous Substances.

Landlord shall reimburse Tenant for any actual and paid Compliance Costs expended by
Tenant in pursuing Compliance Confirmations. Tenant shall provide to
Landlord documentation evidencing actual Compliance Costs
 expended by Tenant. Landlord will reimburse Tenant for said Compliance
Costs incurred and paid by Tenant with respect to the removal of Hazardous Substances in
the event Tenant performs the work within Thirty(30) days of its receipt and confirmation of
the expenses paid   evidencing Tenant's expenditure of same. Should Landlord fail to
 reimburse Tenant within said ten () day period, Tenant may, in addition
to all other remedies available under this Lease or elsewhere, deduct such
sums from Base Rent and other sums due Landlord under this Lease.


   16.15.8  Each party shall simultaneously provide the other with a copy of any
document or correspondence of any nature submitted by or on behalf of it to
any governmental entity to meet such party's obligations pursuant to this
agreement, and shall provide the other with a copy of any document or
correspondence of any nature received by the other from such governmental
entities within three (3) days of each party's receipt of same. Each party
shall immediately notify it of each party's receipt of notice of an
environmental claim or problem.

   16.15.9 Notwithstanding any other provisions of this Lease, Tenant shall be
responsible for only compliance with Environmental Laws associated with
spills or discharges of Hazardous Substances by Tenant, its employees,
contractors or agents ("Tenant's Discharges"). Landlord shall be
responsible for compliance with Environmental Laws associated with the
presence of any Hazardous Substances at the Premises unless they are
attributable to Tenant's Discharges.

   16.15.10 _Each party shall indemnify, defend and hold the other party
harmless from and against any and all claims, losses, liabilities, lawsuits,  fees,
 damages and expenses (including, but not limited to, attorney's and other professionals'
incurred to enforce this indemnity or otherwise) arising directly or indirectly
 from, out of, or by reason of any breach of the first party's representations,
 warranties, covenants, or other obligations under this agreement

**HUD 0000069**

HUD 0000069

16.15.11  The parties agree that if any remediation is required to be conducted at the Premises the standards of such remediation shall be no more stringent than necessary to meet the minimum standards of Environmental Laws, including, without limitation, the non-residential cleanup standards of the New Jersey Department of Environmental Protection, except, if by leaving Hazardous Substances in place, the cost of Tenant's development will be increased or if Tenant's use will be adversely affected thereof, in which case, Hazardous   Substances must be removed by the party which is responsible for such remediation or removal hereunder. Landlord hereby agrees to allow any institutional controls or engineering controls or the like, as those terms are defined in the Environmental Laws, as part of any remediation, if acceptable to the appropriate regulatory authority.   in the event of a conflict between the terms of this Section and any other terms of this Lease, the terms of this Section shall govern.

16.15.12  The terms of this Section shall survive the expiration or early termination of this Lease.

16.15.13  Effective Date. The effective date shall be the date that both parties simultaneously execute this agreement.

Existing Information.  Upon execution of this agreement, the Landlord has delivered to Tenant all engineering, environmental and other studies with regard to the Premises in Landlord's possession, including without limitation any drawings for existing buildings, site work, and utilities, of which Tenant acknowledges receipt thereof.
It is further understood and agreed that this lease is subject to attorney review which shall expire on Monday, April 9, 2012 at 3:00 PM.

ARTICLE XVIII
OPTION TO PURCHASE & ZONING APPROVAL CONTINGENCY

17.1 Zoning Approval:  The Landlord and Tenant shall make prompt application, in accordance with the Time Schedule attached hereto, so as to diligently pursue the granting of required local approvals for the operation of a spa and 100 room hotel in compliance with the rules and regulations of the appropriate local Board of the Borough of Edgewater, N.J. and other required agencies. Any and all submissions made by Tenant shall be in the name of the Landlord and forwarded to the Landlord and James D. Demetrakis, Esq., Portside Drive, P.O. Box , Edgewater, N.J. 07020 for his review and approval, which shall not be unreasonably withheld, conditioned or delayed, prior to submission. Landlord shall advise Tenant of any objections within five (5) days of receipt of the documentation, and if no such notice of objection is received, the submission will be deemed as having no objection. The Tenant shall deliver to the Landlord and his representative a full site plan as required by the

local, county and state agencies so as to enable the filing of the application for a hearing date for 'site plan approval' no later than June 6, 2012 at Tenants sole cost and expense, as well as the retaining the services of any and all necessary consultants for the preparation of reports, submissions and giving of testimony at the hearings for all approvals at Tenants sole cost and expense.

ARTICLE XIX
OPTION TO PURCHASE

18.1 The Tenant shall have an option to purchase the property in accordance with the terms and conditions as set forth hereinafter:

1. The Tenant may exercise the option to purchase the property from the Landlord during the seventh (7th) through tenth (10th) years of execution of the lease.
2. The Tenant, if exercising its option shall provide the Landlord with written notice by certified mail, return receipt requested, no later than one hundred eighty (180) days prior to the Landlord with the expiration of the tenth (l0th) year following the Effective Date and deliver to the notice a good faith deposit in the amount of Two Hundred Fifty Thousand ($250,000.00) dollars which shall be applied to the Purchase Price and be considered the initial deposit as to be applied t the Contract to Purchase as attached hereto.
3. The Purchase Price is agreed to by and between the Landlord and Tenant to be Seven Million ($7,000,000.00) Dollars cash.

4. The closing and transfer of ownership shall take place no later than ninety (90) days after date of notice. Time Being of The Essence.
4. In the event the Tenant does not provide the notice as required, the option shall automatically terminate without any requirement of notice from the Landlord and  . be null and void and of no further affect.

**HUD 0000071**

HUD 0000071

IN WITNESS WHEREOF, this Lease has been executed under seal as of the
Effective Date.


LANDLORD:

NORTH RIVER VIEW  ASSOCIATES, LLC

By: _____
FRED A. DAIBES, Managing Member


Date of Execution: April 6TH, 2012


TENANT:

E. Rae Jo and/or his assigns

By: _____
       E. Rae Jo


Date of Execution:   April 6TH, 2012  ,