David R. Pierce, Esq.  #1812
LINDABURY, McCORMICK, ESTABROOK & COOPER P.C.
53 Cardinal Drive
P. O. Box 2369
Westfield, New Jersey 07091
(908) 233-6800
Attorneys for Defendant,
TERMS Environmental Services, Inc.

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

Civil Action No.: 2:14-cv-05060-ES-MAH

BOROUGH OF EDGEWATER,

     Plaintiff

vs.

WATERSIDE CONSTRUCTION, LLC; 38 COAH,
LLC; DAIBES BROTHERS, INC.; NORTH RIVER
MEWS ASSOCIATES, LLC; FRED A. DAIBES;
TERMS ENVIRONMENTAL SERVICES, INC.;
ALUMINUM COMPANY OF AMERICA; A.P.
NEW JERSEY, INC.; JOHN DOES 1-100; and
ABC CORPORATIONS 1-100,

     Defendants

CERTIFICATION OF
RONALD DOONEY

*Document Filed Electronically*

Ronald Dooney, hereby certifies the following statements of fact:

1.  I am the principal of TERMS Environmental Services, Inc. ("TERMS") and, as such,

    am fully familiar with the facts and circumstances of this matter.

2.  I am a Licensed Site Remediation Professional, licensed by the State of New Jersey.

3128453v1

3.  TERMS is an environmental consulting firm.

4.  TERMS was retained by Edgewater in 2011 to conduct a Preliminary Assessment required under the Department of Environmental Protection's Green Acres program and investigate surface and subsurface conditions at Veteran's Field.

5.  TERMS' investigation in 2011 determined that Veteran's Field contained historic fill and hazardous substances, including several polyaromatic hydrocarbons ("PAHs"), extractable petroleum hydrocarbons ("EPH") and polychlorinated biphenyls (PCBs") at concentrations in excess of the New Jersey Department of Environmental Protection's residential direct contact cleanup standards. Attached hereto as Exhibit A is a true copy of the Site/Remedial Investigation Report, October 25, 2011 prepared by TERMS.  Exhibit A at W008929.

6.  PCBs were detected at four locations within Veteran's Field at concentrations in excess of the New Jersey Department of Environmental Protection's residential direct contact cleanup standards. Attached hereto as Exhibit B is a true copy of a remediation oversight proposal prepared by TERMS. Exhibit B at T0061220.

7.  EPH was detected a single location at Veteran's Field at a concentration in excess of the New Jersey Department of Environmental Protection's residential direct contact cleanup standards. Id.

8.  PAHs were deemed to be present throughout Veteran's Field as part of historic fill at concentrations in excess of the New Jersey Department of Environmental Protection's residential direct contact cleanup standards and an impervious cap was to be installed to isolate the PAH contaminants from direct contact.

2

3128453v1

9. Edgewater decided that the PCBs in concentrations exceeding the New Jersey Department of Environmental Protection's residential direct contact cleanup standards should be remediated by removal of the PCBs. See Exhibit B.

10. Edgewater requested a proposal from TERMS, and subsequently entered into a contract with TERMS, pursuant to which TERMS was to, among other things, prepare a Remedial Action Work Plan and provide oversight for: a) removal of the PCBs from four "hot spots" where PCBs had been detected; b) removal of EPH from a single location where concentrations exceeded the New Jersey Department of Environmental Protection's residential direct contact cleanup standards; and c) installation of an engineering control over the historic fill at Veteran's Field to cap the remaining PAH contamination. See Exhibit B at T0061220.

11. The highest concentration of PCBs detected at Veteran's Field during the sampling in 2011 was 2.151 parts per million (milligrams/kilogram). Exhibit A at W008936-938.

12. During the Project Waterside had control over access to Veteran's Field, possessing the key to the locked gate at the Project site.

13. During the excavation and removal of the contamination from the hot spots, TERMS had personnel stationed at Veteran's Field during all work in order to observe the remedial activities.

14. As a result of the impacts of Superstorm Sandy, Edgewater decided to increase the final elevation at Veteran's Field to elevate it above the flood elevation.

3

15. Plaintiff's decision to increase the final elevation at Veteran's Field had the effect of requiring Waterside to find and import a substantial additional volume of fill material for Veteran's Field.

16. Work on the Veteran's Field Project resumed in the first quarter of 2013.

17. Despite Plaintiff's knowledge, through Neglia, that Waterside had failed to abide by the protocol for bringing fill material to Veteran's Field and, on more than one occasion, brought fill material to Veteran's Field before testing which was subsequently determined by testing not to be suitable for use at Veteran's Field, Plaintiff did not take any action against Waterside, or shut the Veteran's Field Project down at any time prior to the incident which occurred on September 7, 2013.

18. TERMS never transported any material, including, but not limited to demolition debris from the Former Alcoa Site, to Veteran's Field.

19. On September 12, 2013 TERMS' personnel collected two composite samples of crushed concrete material that had been stockpiled at Veteran's Field and submitted the samples for laboratory analysis. Attached hereto as Exhibit C is a true copy of the laboratory analytical report from Alpha Analytical which reports the analytical results of the samples collected on September 12, 2013 and contains a chain of custody document showing that the samples were collected by Matt Follo of TERMS on September 12, 2013. Exhibit C at T004783.

20. The results of the laboratory analysis of the samples of crushed concrete material obtained from Veteran's Field were received by TERMS on September 23, 2013 and

4

indicated that the crushed concrete material was contaminated with PCBs. Exhibit C at T0084745-748.

21. The concentrations of PCBs reported in the analytical results received on September 23, 2013 were 71.9 and 99.4 parts per million. Id.

22. After receipt of the analytical results on September 23, 2013, TERMS notified Neglia and Waterside that the crushed concrete material was not suitable for use at Veteran's Field and had to be removed. Attached hereto as Exhibit D is a true copy of an email dated September 24, 2013 from Peter Lakatos of TERMS to Matt Vereb of Waterside and copied to Michael Berliner of Neglia and myself advising that the crushed concrete material was not suitable for use at Veteran's Field and had to be removed.

23. On September 30, 2013, TERMS' personnel collected twenty-seven additional samples of material from Veteran's Field on September 30, 2013 and submitted the samples for laboratory analysis. Attached hereto as Exhibit E is a true copy of the laboratory analytical report from Alpha Analytical which reports the analytical results of the samples collected on September 30, 2013 and contains a chain of custody document showing that the samples were collected by TERMS on September 30, 2013.   Exhibit E at T0010444-446.

24. The results of the laboratory analysis of the samples of crushed concrete material obtained from Veteran's Field were received by TERMS on October 3, 2013 and indicated that the crushed concrete material was contaminated with PCBs with concentrations up to 448.2 parts per million. Exhibit E at T0010364-398.

5

25. At Edgewater's request, TERMS conducted extensive sampling at Veteran's Field in October and November 2013.

26. Subsequent to October 3, 2013, Edgewater, Waterside and TERMS engaged in discussions regarding the importation of PCB contaminated fill to Veteran's Field and how to remedy that. During these discussions, Waterside requested that all of the analytical data collected by TERMS be validated.

27. Edgewater agreed to have the analytical data validation by a laboratory and authorized TERMS to undertake that process.

28. The data validation process was completed and nearly all of the analytical results obtained by TERMS were affirmatively validated as accurate and usable.

29. On February 18, 2014, based upon the sampling and analytical data obtained by TERMS, Plaintiff approved a Remedial Action Workplan developed by TERMS, which called for the excavation and disposal of the PCB contaminated materials, and authorized TERMS to supervise the implementation of that Workplan.

30. Based upon instructions from Plaintiff's representatives, TERMS prepared and submitted to the United States Environmental Protection Agency ("USEPA"), a Self-Implementing Plan ("SIP") for investigation and remediation of the PCB contamination at Veteran's Field.

31. In November, 2013, TERMS issued invoice "13-Veterans Field, Edgewater-4" to Edgewater in the amount of $161,390.00 for services rendered in connection with the Veteran's Field Project. A true copy of invoice "13-Veterans Field, Edgewater-4" is attached hereto as Exhibit F.

6

32. Edgewater paid $128.484.50 towards invoice "13-Veterans Field, Edgewater-4", leaving a balance due of $32,905.50.

33. In February, 2014, TERMS issued invoice "14-Veterans Field, Edgewater, NJ-PCBs" to Edgewater in the amount of $139,957.55 for services rendered in connection with the investigation of the PCB contamination at Veteran's Field subsequent to September 7, 2013, including sampling and analysis of material at Veteran's Field, for data validation costs and preparation of Remedial Action Workplans, including the Self Implementing Plan submitted to the US Environmental Protection Agency the Veteran's Field Project. A true copy of invoice "14-Veterans Field, Edgewater, NJ-PCBs" is attached hereto as Exhibit G.

34. In February, 2014 TERMS issued invoice "14-Veterans Field, Edgewater, NJ (Valid)" to Edgewater in the amount of $29,242.41 for services rendered in connection with the data validation portion of the Veteran's Field Project. A true copy of invoice "14-Veterans Field, Edgewater, NJ (Valid)" is attached hereto as Exhibit H.

35. Despite demand, Edgewater has failed and refused to pay TERMS for the balance due on invoice "13-Veterans Field, Edgewater-4" and for any of the amounts due under invoices "14-Veterans Field, Edgewater, NJ-PCBs" and "14-Veterans Field, Edgewater, NJ (Valid)".

36. The balance due to TERMS from Edgewater is $202,145.46.

37. After the termination of Plaintiff's relationship with TERMS, TERMS withdrew the SIP previously submitted to USEPA. Attached hereto as Exhibit I is a true copy of my

7

email to the USEPA withdrawing the Self Implementing Plan previously submitted. (T0107145).

38. The US Environmental Protection Agency never transmitted to TERMs any comments on, or review of, the Self-Implementing Plan that TERMS submitted on behalf of the Borough of Edgewater.

I hereby certify that the foregoing statements made by me are true. I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.

Dated: _____1/29___, 2020          _____
                                   RONALD DOONEY

8

3128453v1