# K&L GATES

January 31, 2020

**VIA ELECTRONIC FILING**

Hon. John Michael Vazquez, U.S.D.J.
U.S. District Court
Martin Luther King Building & U.S. Courthouse
50 Walnut Street
Newark, New Jersey 07102

Michael E. Waller
T 973-848-4132
F 973-848-4001
Michael.waller@klgates.com

RE:  *North River Mews v. Alcoa et al.*
     Case No.: 2:14-cv-08129 (JMV-JBC)

Dear Judge Vazquez:

On behalf of Defendants Arconic Inc. and Arconic Domestic, LLC (collectively "Arconic"), we submit this letter summarizing Arconic's substantive arguments in support of its proposed motions for summary judgment as to certain claims between North River Mews Associates, LLC, 38 COAH Associates, LLC., (collectively "North River") and River Road Improvement Phase II, Inc. ("RRIP") and Arconic in the above-captioned case.

## I. North River's claims must be dismissed based on the express terms of its contracts with Arconic.

Property buyers and sellers may allocate the financial burden of environmental cleanup among themselves by contract. *Fisher Dev. Co. v. Boise Cascade Corp.*, 37 F.3d 104, 107 (3d Cir. 1994). North River and Arconic did that here. In the Purchase and Sale Agreement for the Former Alcoa Site, North River expressly and unambiguously released Arconic from any claims arising from hazardous substances at the Site. (Arconic's Statement of Material Facts ("SUMF") ¶ 20). The release forecloses all of the claims asserted by North River in its Second Amended Complaint. (SUMF ¶¶ 103-108). It is irrelevant whether North River knew of the specific environmental harm for which it now seeks damages when it granted the release. *Fisher Dev.*, 37 F.3d at 110 n.1. The plain language of the release controls.

## II. North River's CERCLA § 107 claim against Arconic should be dismissed because the response action was not consistent with the National Contingency Plan.

North River cannot recover response costs related to Building 12 because its response action was not consistent with the National Contingency Plan ("NCP"). CERCLA § 107(a), 42 U.S.C. § 9607(a) (2018). There is no evidence that North River complied with any of the NCP's "public comment" requirements (*see* 40 C.F.R. § 300.700(c)(6) and 40 C.F.R. § 300.430; (SUMF ¶ 65), or that it discharged its duty under the NCP to develop and analyze alternative remedial courses of action for Veterans Field (*see* 40 C.F.R. §§ 300.68(e) through (i); SUMF ¶ 64). These failures alone demonstrate that North River's actions were not consistent with the NCP. *See County Line Inv. Co. v. Tinney,* 933 F.2d 1508, 1514 (10th Cir. 1991) (public comment); *Pierson Sand and*

*Gravel, Inc. v. Pierson Twp.*, 43 ERC (BNA) 1559 (6th Cir. 1996) (alternative remedial courses). This entitles Arconic to summary judgment on North River's CERCLA claim. *United States v. Hardage*, 982 F.2d 1436, 1447 (10th Cir. 1992).

### III.   North River's CERCLA § 113(f) claim should be dismissed because North River has not been sued under CERCLA §106 or § 107.

A party that has not been sued under CERCLA § 106 or § 107(a) may not obtain contribution from other potentially liable parties under CERCLA § 113(f). *Cooper Industries, Inc. v. Aviall Services, Inc.,* 543 U.S. 157, 161 (2004); *U.S. v. Atlantic Research,* 551 U.S. 128, 133 (2007); CERCLA § 113(f), 42 U.S.C. § 9613(f) (2018). North River has not been sued under CERCLA § 106 or § 107(a) in connection with the remediation of the underground storage tanks beneath Building 12, which forms the basis for its CERCLA § 113(f) claim. Moreover, North River cannot recover under CERCLA § 113(f) because, as shown in the preceding section, Arconic is not liable under CERCLA § 107(a). *See Transtech Indus., Inc. v. A & Z Septic Clean*, 798 F. Supp. 1079, 1086 (D.N.J. 1992) ("First, the plaintiff must show that the defendant has incurred section 107(a) liability. Then, it can sue for contribution under section 113(f)(1)."). For both of these reasons, North River's § 113(f)(1) claim must be dismissed.

### IV.   North River's Breach of Contract and Breach of Implied Covenant of Good Faith and Fair Dealing claims against Arconic should be dismissed.

North River's Breach of Contract claim against Arconic is based on the theory that Arconic was "contractually obligated to convey to plaintiffs real property free of hidden dangerous [sic] and defects and/or to pay costs to remediate and investigate PCB contamination." (SUMF ¶ 104). But the Purchase and Sale Agreement says the opposite. The parties agreed in that contract that Arconic made no representations or warranties regarding the physical condition of the property, including the presence of hazardous substances or wastes in, on, or under the property. (SUMF ¶¶ 9-11). The parties further agreed that Arconic was expressly selling the site "AS IS, WITH ALL FAULTS." (SUMF ¶ 9). Arconic also provided North River with environmental reports identifying areas of environmental concern at the Property, including PCB contamination in Building 12—and the parties agreed that those reports, plus any due diligence North River decided to undertake prior to the closing, would establish the "known environmental condition of the Property as of the Closing Date." (SUMF ¶ 13). Finally, North River released Arconic from liability for "any response costs or claims that may arise as a result of the actions or inactions of [Arconic] and any previous owner, operator, or third party on or with respect to the Property relating to hazardous substances." (SUMF ¶ 20). There is no carve-out in any of these provisions for previously unknown or undisclosed environmental liabilities. (SUMF ¶ 20). On the contrary, the plain language of the "no representations or warranties" provision, the "AS-IS" provision, and the "known environmental condition" provision recognize that there may be unknown environmental contamination at the site—and that North River knowingly accepted that risk and absolved Arconic of any potential liability for it.

North River's breach of contract claim appears also to be based on an alleged breach of the Multi-Party Acquisition Agreement ("MPAA"). If so, that argument fails because North River never

provided Alcoa with written notice of the alleged breach and an opportunity to cure, which were required by the MPAA.  (SUMF ¶ 12).

### V. Arconic is entitled to summary judgment on its claim for Breach of Contract against North River.

Pursuant to the MPAA, North River agreed to demolish and remove existing structures at the Former Alcoa Site in compliance with a Remedial Action Workplan and with federal and state laws, and under the supervision of the County of Bergen. (SUMF ¶¶ 27-29).  Any provisions in the MPAA governing the demolition, removal, and remediation of Building 12 were extinguished by the parties' subsequent agreements allowing North River to keep Building 12 standing and put it to beneficial use.  If, however, this Court concludes that some or all of the provisions of the MPAA survived through 2014, and if North River is found to have directed Waterside Construction to illegally dump PCB-contaminated concrete rubble from Building 12 on Veterans Field, this was a direct breach of North River's obligations under the MPAA.  Arconic has incurred damages resulting from this breach, including fees and cost of defending claims against it in the *Borough of Edgewater* matter, and any amount Arconic becomes obligated to pay to any other party in that action.

### VI. North River's tort claims (Negligence, Strict Liability, and Negligent or Fraudulent Concealment) should be dismissed.

All of North River's tort claims are barred by the economic loss doctrine which prohibits plaintiffs from recovering in tort economic losses to which their entitlement only flows from a contract. *Travelers Indem. Co. v. Dammann & Co., Inc*., 594 F.3d 238, 244 (3d Cir. 2010).  Here, North River seeks the same damages for its breach of contract claims as it seeks in its tort claims; therefore, its tort-based claims are not extrinsic to its contract claim and must be dismissed under the economic loss doctrine.  *See RNC Sys., Inc. v. Modern Tech. Grp*., Inc., 861 F. Supp. 2d 436, 455 (D.N.J. 2012) (dismissing fraud claims under the Economic Loss Doctrine when damages sought were identical to the damages sought in breach of contract claim).

North River's Negligent Concealment and Fraudulent Concealment claims fail for two additional reasons.  First, those claims are based entirely on the inadmissible opinions of North River's expert, Mr. David Hoffman, which Arconic will ask this Court to exclude under Fed. R. Evid. 702 prior to deciding the summary judgment motions.  And, to the extent that North River has suggested that its Fraudulent Concealment Claim is actually a Fraudulent Inducement Claim, that claim is barred by the Integration Clause in the Purchase and Sale Agreement.  (SUMF ¶ 11).

Respectfully submitted,

*s/ Michael E. Waller*
Michael E. Waller

cc:  All Counsel of Record (via ECF)