**K&L GATES**

January 31, 2020

**VIA ELECTRONIC FILING**

Hon. John Michael Vasquez, U.S.D.J.
U.S. District Court
Martin Luther King Building & U.S. Courthouse
50 Walnut Street
Newark, New Jersey 07102

Charles F. Rysavy
T +1 973 848 4053
F +1 973 848 4001
Charles.rysavy@klgates.com

RE: *Borough of Edgewater v. Waterside Construction, LLC et al.*;
Case No.: 2:14-cv-05060 (JMV-JBC)

Dear Judge Vazquez:

On behalf of Defendants Arconic Inc. and Arconic Domestic, LLC (collectively "Arconic"), we submit this letter summarizing Arconic's substantive arguments in support of its proposed motions for summary judgment as to the claims by Plaintiff Borough of Edgewater in this matter.

**I.     The Borough's CERCLA claim should be dismissed because its response action was not consistent with the National Contingency Plan.**

The Borough cannot recover response costs related to the Veterans Field remediation because its response action was not consistent with the National Contingency Plan ("NCP").  CERCLA § 107(a); 42 U.S.C. § 9607(a) (2018).  There is no evidence that the Borough complied with any of the NCP's "public comment" requirements (*see* 40 C.F.R. § 300.700(c)(6) and 40 C.F.R. § 300.430), or that it discharged its duty under the NCP to develop and analyze alternative remedial courses of action for Veterans Field (*see* 40 C.F.R. §§ 300.68(e) through (i); Arconic's Statement of Material Facts ("SUMF") ¶¶ 90-91).  These failures alone demonstrate that the Borough's actions were not consistent with the NCP.  *See County Line Inv. Co. v. Tinney,* 933 F.2d 1508, 1514 (10th Cir. 1991) (public comment); *Pierson Sand and Gravel, Inc. v. Pierson Twp.*, 43 ERC (BNA) 1559 (6th Cir. 1996) (alternative remedial courses).  This entitles Arconic to summary judgment on the Borough's CERCLA claim.  *United States v. Hardage*, 982 F.2d 1436, 1447 (10th Cir. 1992).

**II.    The Borough's CERCLA claim should be dismissed because Arconic is not a "responsible party" regarding the Veterans Field remediation.**

The Borough alleges that Arconic is a "responsible party" under CERCLA § 107(a) because Arconic is a "current owner or operator" of the Veterans Field "facility", and a "former owner or operator" of that facility when hazardous substances were disposed of there.  (SUMF ¶ 95).  But *the Borough*, not Alcoa, has always owned and operated Veterans Field. (SUMF ¶ 67).

The Borough also claims that Arconic "arranged" for the disposal of hazardous substances at Veterans Field.  (SUMF ¶ 96).  But Alcoa sold the alleged source property (Building 12) and all materials on it sixteen years before the alleged disposal.  (SUMF ¶¶ 8, 49-54).  Alcoa was not even

aware that Building 12 was being demolished, much less controlled or "arranged" for the demolition debris to be transported to Veterans Field, or anywhere else. (SUMF ¶ 54). Even if the original Multi-Party Agreement were found to be an "arrangement," that "arrangement" expired when North River Mews Associates, then owner of Building 12, decided not to demolish the building. (SUMF ¶¶ 33-40). The subsequent Funding Agreement and Environmental Indemnity Agreement between the Parties merely acknowledged that North River *might* demolish the building in the future. (SUMF ¶ 38). This is insufficient to establish "arranger" liability. *See Burlington N. & Santa Fe Ry. Co.*, 556 U.S. 599, 612-13 (2009) (seller's knowledge that product might later be dumped or discarded by third party insufficient to prove that seller "arranged for disposal").

### III. The Borough's Unjust Enrichment claim fails because the Borough had an independent duty to remediate Veterans Field.

A plaintiff with an independent legal duty to remediate a contaminated site may not recover its cleanup costs from other parties under an unjust enrichment theory. *See SC Holdings, Inc. v. A.A.A. Realty Co.*, 935 F. Supp. 1354, 1372 (D.N.J. 1996); Restatement of Restitution § 106 (1937). The Borough had an independent duty to remediate Veterans Field as the owner of the site (*see* CERCLA § 107); therefore, its Unjust Enrichment claim fails.

### IV. The Borough's Strict Liability claim must be dismissed for lack of proximate causation.

The Borough's claim for strict liability in tort asserts that Arconic's generating, disposing and/or arranging for the disposal of PCB-contaminated concrete from Building 12 was an "abnormally dangerous" or "ultrahazardous" activity. (SUMF ¶ 97). A claim for strict liability in tort requires proof of harm proximately caused by the defendant's actions. *Cruz-Mendez v. ISU/Ins. Servs. of San Francisco*, 156 N.J. 556, 574 (1999). A third party's subsequent actions that harm the plaintiff may constitute a superseding intervening cause "breaking the causal chain" between the defendant's actions and the harm—if the third party's actions were not "reasonably foreseeable" or were "highly extraordinary." *Yun v. Ford Motor Co.*, 276 N.J. Super. 142, 152 (App. Div. 1994) ("senseless" and "extraordinarily dangerous" actions were superseding intervening cause). In such circumstances, proximate causation is a question of law to be decided by the court. *Caputzal v. Lindsay Co.*, 48 N.J. 69, 78-79 (1966); *Yun*, 276 N.J. Super. at 154.

The unforeseeable, extraordinary, and senseless actions of Waterside Construction in allegedly dumping contaminated materials at Veterans Field in violation of federal and state laws, constituted a superseding intervening cause that broke the causal chain between actions taken by Arconic fifty or more years earlier that allegedly caused PCB contamination in Building 12, and the Borough's claimed harm at Veterans Field. (SUMF ¶ 97).

### V. The Borough's Spill Act claim should be dismissed because Arconic was not in any way responsible for the discharge of hazardous substances at Veterans Field.

Alcoa is neither a person "who has discharged a hazardous substance" nor a person "in any way responsible for a discharged hazardous substance . . ." as relevant to this case. N.J.S.A. § 58:10-

23.11f(a)(2) ("Spill Act"). A "discharge" under the Spill Act occurs only if there is "a release into the air, water or land of a hazardous or toxic substance." *Atl. City Mun. Utilities Auth. v. Hunt*, 210 N.J. Super. 76, 96 (App. Div. 1986). Alcoa is not a "discharger" here, given that it sold Building 12 in 1997 and the NJDEP concluded that, at least as of 2010, no contamination from Building 12 had entered the environment. (SUMF ¶ 48).

Nor is Alcoa otherwise "in any way responsible for a discharged hazardous substance" under the Spill Act because Alcoa did not exert "ownership or control over the property at the time of the damaging discharge, or control over the hazardous substance that caused the contamination." *New Jersey Sch. Dev. Auth. v. Marcantuone*, 428 N.J. Super. 546, 559 (App. Div. 2012); *New Jersey Tpk. Auth. v. PPG Indus., Inc.*, 197 F.3d 96, 106 (3d Cir. 1999). No one claims that Alcoa had any control over Veterans Field where the alleged discharge occurred. (SUMF ¶¶ 49-54, 67, 81-82, 94-102, 103-108). Nor did Alcoa have any control over the hazardous materials themselves at the time of the discharge, as noted in Section II *infra.*

### VI. Arconic owed no common law negligence duty to the Borough regarding North River's reuse or disposal of Building 12 materials.

The Borough's Negligence claim is based on the unsupported theory that Arconic owed the Borough a legal duty *in perpetuity* to monitor North River's reuse or disposal of PCB-contaminated materials from Building 12, to properly "track" PCBs in Building 12 materials, and to provide advance warning to any third party that owned property where the demolished materials might be placed. (SUMF ¶ 98). No existing law imposes this duty. Were this court to consider creating such a legal duty,[1] it would have to analyze the reasonableness, public policy, fairness and common sense of imposing that duty. *Sanchez v. Indep. Bus Co., Inc.,* 358 N.J. Super 74, 81 (App. Div. 2003); *Maisonave v. Newark Bears Prof'l Baseball Club*, 185 N.J. 70, 80 (2005). None of these factors supports imposing such a duty here.

North River was aware since 1997 that the materials in Building 12 were contaminated with PCBs. (SUMF ¶ 17). It is also undisputed that North River intended to develop, not demolish, Building 12; however, *if* North River ever decided to demolish the building, it would be solely responsible for complying with federal, state, and local laws regarding disposal and reuse of the demolished materials. (SUMF ¶¶ 34-40). Finally, Arconic was not even aware that North River and Waterside demolished Building 12 until months later. (SUMF ¶ 54). Reasonableness, public policy, fairness and common sense do not support imposing a duty under these facts.

Respectfully submitted,

*s/ Charles Rysavy*
Charles F. Rysavy

cc:   All Counsel of Record (via ECF)

---

[1] The existence and scope of a duty of care are legal issues to be determined by the court, not the fact finder. *Carvahlo v. Toll Bros.*, 143 N.J. 565, 572 (1996).