**K&L GATES**

January 31, 2020

Dana B. Parker
T +1 973 848 4061
F +1 973 848 4001
dana.parker@klgates.com

**VIA ELECTRONIC FILING**

Hon. John Michael Vazquez, U.S.D.J.
U.S. District Court
Martin Luther King Building & U.S. Courthouse
50 Walnut Street
Newark, New Jersey 07102

RE:   *Borough of Edgewater v. Waterside Construction, LLC et al.*
      Case No.: 2:14-cv-05060 (JMV-JBC)

Dear Judge Vazquez:

On behalf of Defendants Arconic Inc. and Arconic Domestic, LLC (collectively "Arconic"), we submit this letter summarizing Arconic's substantive arguments in support of its proposed motions for summary judgment as to certain claims between the Daibes Defendants,[1] Third-Party Defendant River Road Improvement Phase II, Inc. ("RRIP"), and Arconic.

I.   **The Daibes Defendants' CERCLA § 107 claim fails because they did not incur any response costs at Veterans Field consistent with the National Contingency Plan.**

There is no evidence that the Daibes Defendants incurred any relevant response costs related to Veterans Field because the remediation that is the subject of this lawsuit was performed entirely by the Borough or at its direction. (Arconic's Statement of Material Facts ("SUMF") ¶¶ 88-93). Therefore, the Daibes Defendants' CERCLA § 107 claim against Arconic must be dismissed. CERCLA § 107(a), 42 U.S.C. § 9607(a) (2018). But even if the Daibes Defendants did incur response costs of which Arconic is unaware, they could not recover such costs because their response action was not consistent with the National Contingency Plan ("NCP"). *Id*. There is no evidence that the Daibes Defendants' work was in compliance with the NCP's "public comment" requirements (*see generally* 40 C.F.R. § 300.700(c)(6) and 40 C.F.R. § 300.430; SUMF ¶ 65), or that the Daibes Defendants discharged their duty under the NCP to develop and analyze alternative remedial courses of action for Veterans Field (*see* 40 C.F.R. §§ 300.68(e) through (i); SUMF ¶¶ 64-66). These failures alone are sufficient to find that the Daibes Defendants did not substantially comply with the NCP. *See County Line Inv. Co. v. Tinney*, 933 F.2d 1508, 1514 (10th Cir. 1991) ("public comment" requirements); *Pierson Sand and Gravel, Inc. v. Pierson Twp*., 43 ERC (BNA) 1559 (6th Cir. 1996) (alternative remedial courses). Failure to prove compliance with the NCP is

---

[1] Several of the defendants are related companies that are owned and/or controlled by Fred A. Daibes. The defendants, collectively referred to as the "Daibes Defendants," include Waterside Construction, LLC; North River Mews Associates, LLC ("North River"); 39 COAH Associates, LLC; Daibes Brothers, Inc.; and Fred A. Daibes. Third-Party Defendant River Road Improvement Phase II, Inc. ("RRIP") is also owned and/or controlled by Fred A Daibes.

grounds for summary judgment. *See United States v. Hardage*, 982 F.2d 1436, 1447 (10th Cir. 1992).

## II. The Daibes Defendants' CERCLA § 107 Claim should be dismissed because Arconic is not a "responsible party" regarding the Veterans Field remediation.

CERCLA liability may be imposed on a defendant in a cost recovery action only if the plaintiff proves that the defendant is a "responsible party" under one of the following categories, as relevant to this action: (1) a current owner or operator of a vessel or facility; (2) a former owner or operator of a facility at the time of disposal of any hazardous substance at such facility; or (3) a person who arranged for disposal or treatment, or arranged for the transportation for disposal or treatment, of hazardous substances to a facility. CERCLA § 107(a). The Daibes Defendants allege that Arconic is an "owner and/or operator" of the Veterans Field "facility." (SUMF ¶ 105). But the Borough is the current owner and operator of Veterans Field, and has been so at all times relevant to this action. (SUMF ¶ 67).

The Daibes Defendants also claim that Arconic "arranged" for the "disposal" of hazardous substances at Veterans Field. (SUMF ¶ 105). But Alcoa sold the property, including Building 12, and all materials on it sixteen years before the alleged disposal. (SUMF ¶¶ 8, 49-54). Alcoa was not even aware that Building 12 was being demolished, much less controlled or "arranged" for the demolition debris to be transported to Veterans Field, or anywhere else. (SUMF ¶ 54). Even if the original Multi-Party Agreement were found to be an "arrangement," that "arrangement" expired when North River, then owner of Building 12, decided not to demolish the building. (SUMF ¶¶ 33-40). The subsequent Funding Agreement and Environmental Indemnity Agreement between the Parties merely acknowledged that North River *might* demolish the building in the future. (SUMF ¶ 38). This is insufficient to establish "arranger" liability. *See Burlington N. & Santa Fe Ry. Co.*, 556 U.S. 599, 612-13 (2009) (seller's knowledge that product might later be dumped or discarded by third party insufficient to prove that seller "arranged for disposal").

## III. The Daibes Defendants' CERCLA § 113(f) claim should be dismissed because Arconic is not liable under CERCLA 107.

The Daibes Defendants cannot recover from Arconic for contribution under CERCLA § 113(f), because, as shown in the preceding section, they cannot prove Arconic's liability under CERCLA § 107. *See Transtech Indus., Inc. v. A & Z Septic Clean*, 798 F. Supp. 1079, 1086 (D.N.J. 1992) ("First, the plaintiff must show that the defendant has incurred section 107(a) liability. Then, it can sue for contribution under section 113(f)(1)."); *Bonnieview Homeowners Ass'n v. Woodmont Builders, L.L.C.*, 655 F. Supp. 2d 473, 500 (D.N.J. 2009) (same); CERCLA § 113(f), 42 U.S.C. § 9613(f) (2018).

## IV. North River Mews and RRIP must defend and indemnify Arconic in connection with all claims against it in the Edgewater Matter.

Contract interpretation is a question of law in New Jersey. *Dome Petroleum Ltd. v. Employers Mut. Liab. Ins. Co.,* 767 F.2d 43, 47 (3d Cir. 1985). If the contract language is clear and

unambiguous, judgment may be entered "despite the parties' differing views as to what consequences flow from those clauses." *United States v. Bills*, 639 F. Supp. 825, 829 (D.N.J. 1986), *modified on other grounds*, 822 F.2d 373 (3d Cir. 1987). Here, the terms of the Purchase and Sale Agreement, the Multi-Party Agreement ("MPAA"), and the 1999 Environmental Indemnity Agreement clearly and unambiguously require that North River and RRIP defend and indemnify Arconic against any and all claims arising out of any hazardous materials at the Former Alcoa Site. (SUMF ¶¶ 20-23, 33-40). This includes all claims asserted against Arconic in this matter. (SUMF ¶¶ 20-23, 33-40). The objective intent of the parties in light of circumstances surrounding the transactions further supports Arconic's right to full indemnity for these claims. (SUMF ¶ 38).

**V.     Summary Judgment should be entered in Arconic's favor on its claim for breach of contract against North River and RRIP.**

Any provisions in the MPAA governing the demolition, removal, and remediation of Building 12 were extinguished by the parties' subsequent agreements allowing North River to keep Building 12 standing and put it to beneficial use. If, however, this Court concludes that some or all of the provisions of the MPAA survived through 2014, and if North River is found to have directed Waterside Construction to illegally dump PCB-contaminated waste from Building 12 on Veterans Field, the Daibes Defendants will have breached the MPAA. Pursuant to the MPAA, North River and RRIP agreed to demolish and remove existing structures at the Former Alcoa Site, which was to be completed in accordance with a Remedial Action Workplan submitted to the DEP and approved by Arconic, and with state and federal law. (SUMF ¶ 29). The Daibes Defendants never told Arconic they were demolishing Building 12, let alone sought Arconic's approval for a Remedial Action Workplan. (SUMF ¶ 54). The Daibes Defendants' failure to comply with the terms of the MPAA resulted in events for which the Borough asserted claims against Arconic. Arconic has incurred damages resulting from this breach in the form of fees and cost of defense, and any amount Arconic may become obligated to pay the Borough.

**VI.    All of North River's claims against Arconic should be dismissed because North River contractually released Arconic from such claims.**

North River, RRIP, and the other Daibes Defendants, asserted various claims against Arconic for contribution under common law, CERCLA, and the Spill Act. (SUMF ¶¶ 94-102). However, in the Purchase and Sale Agreement, North River expressly released Arconic from claims arising under state law, CERCLA, and the Spill Act, and may not now assert claims that are within the scope of that express release. (SUMF ¶ 20).

Respectfully submitted,

*s/ Dana B. Parker*
Dana B. Parker

cc:  All Counsel of Record (via ECF)