UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

BOROUGH OF EDGEWATER,

*Plaintiff,*

vs.

WATERSIDE CONSTRUCTION, LLC; 38
COAH, LCC; DAIBES BROTHERS, INC.;
NORTH RIVER MEWS ASSOCIATES,
LLC; FRED A. DAIBES; TERMS
ENVIRONMENTAL SERVICES, INC.;
ALCOA INC (formerly known as
"Aluminum Company of America");
ALCOA DOMESTIC LLC, as successor in
interest to A.P. NEW JERSEY, INC.;
HUDSON SPA, LLC; JOHN DOES 1-100;
and ABC CORPORATIONS 1-100,

*Defendants,*

and

WATERSIDE CONSTRUCTION, LLC; 38
COAH, LLC; DAIBES BROTHERS, INC.;
NORTH RIVER MEWS ASSOCIATES,
LLC and FRED A. DAIBES,

*Defendants/Third Party Plaintiffs,*

vs.

NEGLIA ENGINEERING ASSOCIATES,

*Third Party Defendant,*

and

Civil Action No. 2:14-cv-05060 (JMV-JBC)

ALCOA DOMESTIC, LLC as successor in
interest to A.P. NEW JERSEY, INC.,

        *Defendant/Third Party Plaintiff,*

vs.

COUNTY OF BERGEN and RIVER ROAD
IMPROVEMENT PHASE II, INC., and
HUDSON SPA, LLC,

        *Third Party Defendants.*

---

## BRIEF IN SUPPORT OF DEFENDANT, HUDSON SPA, LLC'S
## NOTICE OF MOTION FOR SUMMARY JUDGMENT

---

Kevin C. Corriston, Esq. (041251988)
On the Brief
Breslin and Breslin, P.A.
41 Main Street
Hackensack, New Jersey 07601
(201) 342-4014
Attorneys for Defendant, Hudson Spa, LLC

## TABLE OF CONTENTS

TABLE OF CONTENTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . i

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

PRELIMINARY STATEMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

STATEMENT OF MATERIAL FACTS NOT IN DISPUTE . . . . . . . . . . . . . . . . . . . . . . . . . 4

LEGAL ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

    POINT I.   HUDSON SPA IS ENTITLED TO SUMMARY JUDGEMENT
              INSOFAR AS HUDSON SPA WAS NOT NEGLIGENT,
              OWED NO DUTY IN REGARD TO THE DISPOSING
              OF ANY MATERIALS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

    POINT II. HUDSON SPA IS NOT LIABLE UNDER THE SPILL ACT
              INSOFAR AS THEY DID NOT DISCHARGE THE HAZARDOUS
              SUBSTANCE, HAD NO RESPONSIBILITY FOR THE
              EXISTENCE OF THE HAZARDOUS SUBSTANCE, AND IS
              NOT A CORPORATE SUCCESSOR TO THE DISCHARGER
              OR ANY PERSON RESPONSIBLE FOR THE HAZARDOUS
              SUBSTANCE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

    POINT III. THERE ARE NO GENUINE ISSUES OF MATERIAL FACT IN
              DISPUTE AS IT RESPECTS HUDSON SPA AND THEREFORE
              HUDSON SPA IS ENTITLED TO SUMMARY JUDGMENT. . . . . . . . . . . . 12

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

## TABLE OF AUTHORITIES

CASES:

Harpell v. Pub. Surv. Coord. Transp., 20 N.J. 309 (1956) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Townsend v. Pierre, 221 N.J. 36 (2015) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Buckelew v. Grossbard, 87 N.J. 512 (1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Rosenberg v. Otis Elevator Co., 366 N.J. Super. 292 (App. Div. 2006) . . . . . . . . . . . . . . . . . . 6

Wang v. Allstate Insurance Co., 125 N.J. 2 (1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Caputzal v. Lindsay, 58 N.J. 69 (1966) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Brill v. Guardian Life Ins. Co. of America, 142 N.J. 520 (1995) . . . . . . . . . . . . . . . . . . . . 12, 13

Kaufman v. Provident Life & Casualty Ins. Co., 828 F.Supp. 275 (D.N.J. 1992) . . . . . . . . . . . 12

Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 584 (1986) . . . . . . . . . . . . . . . . . 12

Armbruster v. Unysis Corp., 32 F.3d 768 (3d Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13


STATUTES:

N.J.S.A. 58:10-23.11g(2)(a) (West) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9


COURT RULES:

Rule 56a . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

## PRELIMINARY STATEMENT

This case involves improper disposal of hazardous substances that existed underground on the premises of 660 River Road, Edgewater, New Jersey. Defendant, Hudson Spa, LLC (hereinafter referred to a Hudson Spa) is the tenant of the property in question, which is owned by Defendant, North River View Associates, LLC (hereinafter referred to as "North River View Associates"). At the time the Ground Lease was entered into on April 5, 2012, the property was an unimproved lot that had previously been in use by Defendants, Arconic Inc./Domestic LLC (hereinafter referred to as "Arconic") for the storage and/or use of chemicals.

It was during the tenancy of Arconic that toxic substances entered the concrete or soil on the premises of 660 River Road, as evidenced by former litigation between North River View Associates and Arconic that led to a 1997 agreement to demolish and remove all structures and improvements then existing at the 660 River Road site.

Hudson Spa had no knowledge that hazardous waste existed on the premises of 660 River Road prior to or following the beginning of their tenancy. The Ground Lease that was drafted by the landlord, North River View Associates, indicated that the landlord had no knowledge of the presence of any hazardous, toxic materials, or any other substances defined by the appropriate governmental authority as a hazardous waste – despite North River View Associates being party to the 1997 agreement to remove structures from the site because of the possibility of toxic substances entering the ground.

Hudson Spa had no responsibility for the development of their desired structure built on the subject premises of 660 River Road. Hudson Spa did not remove any concrete from the premises nor dispose of any concrete, dirt or debris from the site insofar as they were not

1

responsible for carrying out the improvements to the site. Furthermore, the developer's agreement provides that the developer was not permitted to remove soil and rock from the construction site without obtaining a permit from Edgewater and that all refuse materials for the development site will be collected and disposed of in accordance with the law.

It was the developer's obligation to remove debris from the site in accordance with law and Hudson Spa owed no duty as it respected that activity. Well before any involvement by Hudson Spa, the removal of toxic substances from the premises of 660 River Road was the obligation of those parties subject to the 1997 Multiparty Agreement. Hudson Spa, as tenants of the subject property of 660 River Road, had no duty to handle the disposal of any debris from their site nor is there any evidence that Hudson Spa directed, condoned, participated or had knowledge of said activities. Accordingly cannot be found negligent in handling or disposing waste from the subject property.

In arranging for the disposal of the PCB-contaminated materials that were generated by Alcoa's Operations at the Alcoa Site, the Arconic defendants directly and/or indirectly entered into a 1997 multiparty property acquisition agreement which, among other things, specifically authorized North River View Associates and others to reuse certain PCB-contaminated materials from the Arconic Site in accordance with applicable laws. (See Exhibit C at 33).

Hudson Spa was not a party to the 1997 Multiparty Agreement and accordingly had no obligation to demolish and remove structures and improvements on the subject property

On January 31, 2020, Defendant, TERM Environmental Services Inc. filed with the court their request to file for Summary Judgment (Document 312) which contained no such request against Hudson Spa.

On January 31, 2020, Defendant, County of Bergen (hereinafter referred to as "Bergen County") filed with the court their request to file for Summary Judgment and Statement of Facts Not in Dispute (Documents 312 and 312-1) seeking to file for Summary Judgment solely against the Daibes Defendants.

On January 31, 2020, Arconic filed with the court their requests to file for Summary Judgment against North River View Associates (Document 315), Defendant, Borough of Edgewater (hereinafter referred to as "Edgewater) (Document 316) and Third Party Defendant, River Road Improvement Phase II, Inc. (hereinafter referred to as "River Road") (Document 317). No request was filed as to Hudson Spa.

On January 31, 2020, Edgewater filed with the court their request to file for Summary Judgment (Document 319) which contained no such request against Hudson Spa

## STATEMENT OF MATERIAL FACTS NOT IN DISPUTE

1.  Hudson Spa entered into a ground lease with landlord North River View Associates,
    LLC, on April 5, 2012, for the premises of 660 River Road, Edgewater, New Jersey.  See
    Ground Lease attached hereto as Exhibit A.

2.  Article 16, section 15 of the ground lease pertains to the potential presence of toxic waste
    on the leased premises. In this section, North River View Associates, LLC guaranteed
    Hudson Spa that no toxic waste existed on the premises, and that they would not be
    responsible for disposal of any hazardous waste that they did not introduce to the
    property.

3.  Subsection 1 of article 16, section 15 of the ground lease states: Landlord warrants and
    represents that to the best of its knowledge the Premises does not now contain any
    hazardous, toxic materials, fuel storage tanks or polychlorinated biphenyls or any other
    substances defined by the appropriate governmental authority as a hazardous waste.

4.  Subsection 3 of article 16, section 15 of the ground lease provides that "Landlord further
    warrants, represents and covenants that no Hazardous Substance will be present in or on
    the Premises from and after the Effective Date or otherwise used or permitted to be used
    in, on, or about the Premises by Landlord in accordance with the prior use and as set forth
    in the environmental reports forwarded by Landlord to Tenant.

5.  Subsection 5 of article 16, section 15 of the ground lease states that "Landlord shall
    comply with the requirements of Environmental Laws relating to the Premises, except to
    the extent they arise from the Tenant's operations thereon.

6.    Subsection 9 of article 16, section 15 of the ground lease provides: "Notwithstanding other provisions of this Lease, Tenant shall be responsible for only compliance with Environmental Laws associated with spills or discharges of Hazardous Substances by Tenant, its employees, contractors or agents. Landlord shall be responsible for compliance with Environmental Laws associated with the presence of any Hazardous Substances at the Premises unless they are attributable to Tenant's Discharges."

7.    As per point 12 of the developer's agreement, the developer was not permitted to remove soil and rock from the construction site without obtaining a permit. Point 27 states that "all refuse and recycling materials for the development site will be collected and disposed of in accordance with the law."

8.    Fred Daibes, Daibes Brothers, 38 COAH or North River View Associates purposely and/or improperly caused concrete from Alcoa Building 12 to be crushed at the Alcoa Site and then transported to and disposed of at Veteran's Field.

9.    As per the 1997 Multiparty Agreement, North River View Associates and others had an obligation to demolish and remove all structures and improvements then existing at the Alcoa Site, including the subject structure, building 12.

10.   In spite of exhaustive discovery conducted in this matter no evidence has been adduced which demonstrates any acts or omissions by Hudson Spa as it respects the "disposal or treatment of hazardous substance" nor has any expert or any lay witness opined any liability for same on the party of Hudson Spa.

## LEGAL ARGUMENT

## POINT I

HUDSON SPA IS ENTITLED TO SUMMARY JUDGEMENT INSOFAR
AS HUDSON SPA WAS NOT NEGLIGENT, OWED NO DUTY IN
REGARD TO THE DISPOSING OF ANY MATERIALS.

Hudson Spa is entitled to summary judgment insofar as there is no evidence to support the position that Hudson Spa had any role whatsoever in connection with the alleged dumping of toxic substances on veteran's field in Edgewater, New Jersey.

Negligence is defined as conduct that falls below the standard established by law for the protection of others against an unreasonable risk of harm. Harpell v. Pub. Surv. Coord. Transp., 20 N.J. 309, 316 (1956). To sustain a cause of action for negligence, a plaintiff must establish the following four elements: (1) a duty of care, (2) a breach of that duty, (3) proximate cause, and (4) actual damages. Townsend v. Pierre, 221 N.J. 36, 51 (2015). The plaintiff in negligence action bears the burden of establishing each of these elements "by some competent proof." Buckelew v. Grossbard, 87 N.J. 512, 525 (1981).

The existence of a duty is a question of law that the courts must decide. Rosenberg v. Otis Elevator Co., 366 N.J. Super. 292, 304 (App. Div. 2004). Courts will consider fairness and policy, foreseeability of injury to others arising from the alleged conduct, the relationship between the parties, and the impact on the public. Id.

The question of whether a duty exists is a matter of law properly decided by the court and not the jury. Wang v. Allstate Insurance Co., 125 N.J. 2, 15 (1991); Caputzal v. Lindsay, 58 N.J. 69 (1966). The facts of a case inform the Court in determining whether a duty exists. Wang, supra, 125 N.J. at 15. As discussed herein, Plaintiff has failed to establish that Hudson Spa was

negligent, nor owed plaintiffs any duty, as it respects the controversy at issue and thus Hudson Spa is entitled to summary judgment.

Here, Plaintiff cannot produce any evidence that Hudson Spa was negligent as they did not control selection of the developer whom was to construct improvements on their leased property, nor was Hudson Spa involved with, or responsible for, the construction or removal of debris from the site.  Additionally, no duty exists at common law for a tenant to ensure that the developer utilized by the landlord adheres to federal and state disposal laws.

Hudson Spa had no knowledge that alleged toxic substances were located on the premises and were assured to the contrary by the landlord in the Ground Lease entered into on April 5, 2012. (See Exhibit. A)  Article 16, section 15 of the Ground Lease pertains to the potential presence of toxic waste on the leased premises.  In this section, North River View Associates guaranteed Hudson Spa that no toxic waste existed on the premises, and that they (Hudson Spa) would not be responsible for disposal of any hazardous waste that they did not introduce to the property.  Accordingly, that clause of the Ground Lease absolves and indemnifies Hudson Spa of any duty to dispose any hazardous waste located at 660 River Road, Edgewater, New Jersey, unless it was there as a result of their own conduct.

Additionally, Subsection 3 of article 16, section 15 of the Ground Lease provides that "Landlord further warrants, represents and covenants that no Hazardous Substance will be present in or on the Premises from and after the Effective Date or otherwise used or permitted to be used in, on, or about the Premises by Landlord in accordance with the prior use and as set forth in the environmental reports forwarded by Landlord to Tenant. (See Exhibit A)  Subsection 5 of article 16, section 15 of the Ground Lease states that "Landlord shall comply with the

7

requirements of Environmental Laws relating to the Premises, except to the extent they arise from the Tenant's operations thereon. Subsection 9 of article 16, section 15 of the Ground Lease provides: "Notwithstanding other provisions of this Lease, Tenant shall be responsible for only compliance with Environmental Laws associated with spills or discharges of Hazardous Substances by Tenant, its employees, contractors or agents - Landlord shall be responsible for compliance with Environmental Laws associated with the presence of any Hazardous Substances at the Premises unless they are attributable to Tenant's Discharges."

Finally, point 12 of the Developer's Agreement mandated that any developer hired to improve 660 River Road required a permit in order to remove soil and rock from the construction site. (See Exhibit B) Point 27 stated that all refuse materials from the development site will be collected and disposed of by the developer in accordance with the law, placing a duty on the developer of the property, not the tenant.

In spite of extensive discovery in this matter, Plaintiff cannot point to any evidence that Hudson Spa committed any act of negligence, either by action or omission, nor that it owed a duty of care, much less breached any duty it may have owed. Additionally, there is no evidence in the record that Hudson Spa possessed any knowledge whatsoever of any tortuous acts complained of by Plaintiffs. As such, Hudson Spa is entitled to Summary Judgment as a matter of law.

## POINT II

HUDSON SPA IS NOT LIABLE UNDER THE SPILL ACT INSOFAR AS
THEY DID NOT DISCHARGE THE HAZARDOUS SUBSTANCE,
HAD NO RESPONSIBILITY FOR THE EXISTENCE OF THE HAZARDOUS
SUBSTANCE, AND IS NOT A CORPORATE SUCCESSOR TO THE DISCHARGER
OR ANY PERSON RESPONSIBLE FOR THE HAZARDOUS SUBSTANCE

Whenever one or more dischargers or persons cleans up and removes a discharge of a

hazardous substance, those dischargers and persons have a right of contribution against all other

dischargers and persons in any way responsible for a discharged hazardous substance or against

other persons who are liable for the cost of the cleanup and removal of that discharge of a

hazardous substance. See N.J.S.A. 58:10-23.11g(2)(a).  In an action for contribution, the

contribution plaintiffs need prove only that a discharge occurred for which the contribution

defendant or defendants are shown to be in some way responsible for the discharge. Id.

There has been no evidence adduced that Hudson Spa had any responsibility for the

discharge of any hazardous substances.  Hudson Spa, as lessors of the subject property, did not

facilitate the removal of hazardous substances, had no connection to the existence of the

hazardous substances on the subject premises, were assured in the Ground Lease that there were

no hazardous substances existing on the premises, and were informed in the developer's

agreement that the developer would act in accordance with law and obtain permits prior to

removing materials from the site.

Plaintiffs have no evidence that Hudson Spa had knowledge that toxic substances were

located on the premises and to the contrary, Hudson Spa was assured of same by the landlord, as

per the ground lease entered into on April 5, 2012 (see Exhibit A).  Article 16, section 15 of the

ground lease pertains to the potential presence of toxic waste on the leased premises.  In this

9

section, North River View Associates guaranteed Hudson Spa that no toxic waste existed on the premises, and further that Hudson Spa would not be responsible for disposal of any hazardous waste that they did not introduce to the property. At that time, North River View Associates were fully aware that the property was subject to a 1997 Multiparty Agreement to dispose of PCB-contaminated materials at the subject property.

In arranging for the disposal of the PCB-contaminated materials that were generated by Arconic's Operations at the Alcoa Site, Arconic directly and/or indirectly entered into a 1997 multiparty property acquisition agreement which, among other things, specifically authorized North River View Associates and others to reuse certain PCB-contaminated materials from the Alcoa Site in accordance with applicable laws. (See Exhibit C at 33). As per the 1997 Multiparty Agreement, North River View Associates and others had an obligation to demolish and remove all structures and improvements then existing at the Alcoa Site, including the subject structure, building 12. Id.

Furthermore, there is no evidence whatsoever suggesting that Hudson Spa was associated with the decision to dispose of the hazardous substances on Veteran's field. Hudson Spa had absolutely no involvement with construction and removal of materials on the subject property, had no influence over the course of construction of the property they were leasing, and had absolutely no knowledge of hazardous substances existing or being removed from the property. Additionally, point 12 of the developer's agreement mandated that any developer hired to improve 660 River Road required a permit in order to remove soil and rock from the construction site. (See Exhibit B). Point 27 stated that all refuse materials from the development site will be collected and disposed of by the developer in accordance with the law, placing that duty on the

10

developer of the property, not the tenant. <u>Id</u>.  There is no evidence demonstrating that Hudson Spa ever arranged by contract, agreement, direction or otherwise for the disposal of the subject hazardous substances at Veteran's Field.

 In light of these facts, Hudson Spa is not liable under the Spill Act.

## POINT III

THERE ARE NO GENUINE ISSUES OF MATERIAL FACT IN
DISPUTE AS IT RESPECTS HUDSON SPA AND THEREFORE
HUDSON SPA IS ENTITLED TO SUMMARY JUDGMENT.

Pursuant to Rule 56(a), a court shall grant summary judgment if the movant shows that there is

no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of

law.

In deciding motions for summary judgment, the court determines whether the competent

evidential material is "sufficient to permit a rational fact finder to resolve the alleged disputed

issue in favor of the non-moving party." Brill v. Guardian Life Ins. Co. of America, 142 N.J. 520,

540 (1995). Where the proffered evidence is so one-sided that a rational fact finder could only

resolve the issue in favor of the moving party, summary judgment is appropriate. Id. The

standard requires the non-moving party to "do more than simply show that there is some

metaphysical doubt as to the material facts." Kaufman v. Provident Life & Casualty Ins. Co., 828

F.Supp. 275, 281 (D.N.J. 1992). (quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475

U.S. 574, 586 (1986) [discussing federal summary judgment, adopted for use by New Jersey

courts in Brill, supra, 142 N.J. at 520)].

Thus, denial of a motion for summary judgment is only permitted "where the party opposing the

motion has come forward with evidence that creates a 'genuine issue as to any material fact

challenged." Id. at 529. A genuine issue of material facts only exists if, "considering the burden

of persuasion at trial, the evidence submitted by the parties on the motion, together with all

legitimate inferences therefrom favoring the non-moving party, would require submission of the

issue to the trier of fact." Id. at 540. Immaterial or frivolous evidence is insufficient to defeat a

motion for summary judgment. Id.  Additionally, evidence that "is merely colorable or not significantly probative" is insufficient to withstand a motion for summary judgment. Armbruster v. Unysis Corp., 32 F.3d 768, 777 (3d Cir. 1994).

Hudson Spa is entitled to summary judgment and dismissal from the Complaint insofar as Plaintiffs can point to no evidence demonstrating that Hudson Spa was in violation of either statutory or common law or was negligent in the disposal of any toxic waste on the subject premises.

Hudson Spa was not responsible for the construction or removal of materials on their leased premises and took no action whatsoever in the unearthing and disposal of any alleged toxic waste present at 660 River Road.  To the contrary, North River View Associates, LLC, guaranteed to Hudson Spa that no toxic waste was present on the premises and further assumed any and all liability for disposal of toxic waste from the premises, that was not specifically attributable to Hudson Spa.

There is no evidence that suggests that any of the hazardous materials taken from the 660 River Road construction site were there attributable to Hudson Spa.  North River View Associates clearly knew of the potential existence of hazardous materials on the property as they were party to the 1997 Multiparty Agreement which specifically addressed hazardous substances in former building 12 on the site.   Accordingly, Hudson Spa owed no duty of care as to the disposal of toxic materials from their leased property and was not involved with the unearthing and improper disposal of said alleged toxic materials.  Hudson Spa is therefore entitled to summary judgment as a matter of law.

## CONCLUSION

For the foregoing reasons, Hudson Spa respectfully requests that this Court grant its Motion for

Summary Judgment, dismissing any and all claims asserted against Hudson Spa.

Respectfully submitted,

BRESLIN AND BRESLIN, P.A.
Attorneys for Defendant, Hudson Spa, LLC

Kevin C. Corriston

Date: 9/11/2020

14