**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

BOROUGH OF EDGEWATER,

Plaintiff,

v.

WATERSIDE CONSTRUCTION, LLC; 38 COAH, LLC; DAIBES BROTHERS, INC.; NORTH RIVER MEWS ASSOCIATES, LLC; FRED A. DAIBES; TERMS ENVIRONMENTAL SERVICES, INC.; ALCOA INC. (formerly known as "Aluminum Company of America"); ALCOA DOMESTIC LLC, as successor in interest to A.P. NEW JERSEY, INC.; et al.,

Defendants,

(caption continued on next page)

Case Nos.: 2:14-CV-05060-JMV-JBC
2:14-cv-08129-MCA-LDW
Hon. John M. Vazquez, U.S.D.J.
Hon. James B. Clark, III, U.S.M.J.

---

**ARCONIC DEFENDANTS' REPLY BRIEF**
**IN FURTHER SUPPORT OF MOTION FOR SUMMARY JUDGMENT**
**AGAINST THE DAIBES DEFENDANTS**

---

**K&L Gates LLP**
One Newark Center, Tenth Floor
Newark, New Jersey 07102
Tel: (973) 848-4000
*Attorneys for Arconic Inc. (f/k/a/ Alcoa Inc.) and Arconic Domestic, LLC (f/k/a/ Alcoa Domestic, LLC, as successor in interest to A.P. New Jersey, Inc.)*

*On the Brief:*
Michael E. Waller, Esq.
Charles F. Rysavy, Esq.
Dana B. Parker, Esq.

**K&L Gates LLP**
One Newark Center, Tenth Floor
Newark, New Jersey 07102
Tel: (973) 848-4000
*Attorneys for Arconic Inc. (f/k/a/ Alcoa Inc.)*
*and Arconic Domestic, LLC (f/k/a/ Alcoa Domestic, LLC,*
*as successor in interest to A.P. New Jersey, Inc.)*

(continued from previous page)

WATERSIDE CONSTRUCTION, LLC; 38 COAH, LLC; DAIBES BROTHERS, INC.; NORTH RIVER MEWS ASSOCIATES, LLC; and FRED A. DAIBES,

    Defendants/Third-Party Plaintiffs,

    v.

NEGLIA ENGINEERING ASSOCIATES,

    Third-Party Defendant,

and

ALCOA DOMESTIC, LLC, as successor in interest to A.P. NEW JERSEY, INC.,

    Defendant/Third-Party Plaintiff,

    v.

COUNTY OF BERGEN and RIVER ROAD IMPROVEMENT PHASE II, INC., and HUDSON SPA, LLC,

    Third-Party Defendants.

# TABLE OF CONTENTS

**PAGE**

PRELIMINARY STATEMENT ....................................................................1

ARGUMENT ....................................................................................3

I. The Daibes Defendants' improper responses to Arconic's Statement of Undisputed Material Facts requires the Court to accept as undisputed Arconic's Statement of Facts in its Motion for Summary Judgment. ....................................................................3

II. The Release and Indemnity provisions in the Purchase and Sale Agreement and the Environmental Indemnity Agreement bar the claims of North River and RRIP....................................................3

a. North River and RRIP have presented no genuine evidence of fraudulent concealment of material information by Arconic. ..............4

b. There was no mutual mistake. ....................................................8

III. The Daibes Defendants cannot recover against Arconic under CERCLA because they incurred no response costs at Veterans Field and because Arconic is not liable under CERCLA. ....................................10

IV. Arconic did not breach either the Multi-Party Agreement or the Purchase and Sale Agreement ....................................................11

V. Arconic did not fraudulently induce North River or RRIP to enter into the PSA, the MPAA, or any other contract. ....................................13

CONCLUSION ..................................................................................14

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Argabright v. Rheem Mfg. Co.*,
201 F. Supp. 3d 578 (D.N.J. 2016) .......... 4

*County Line Inv. Co. v. Tinney*,
933 F.2d 1508 (10th Cir. 1991) .......... 10

*Fireman's Fund Insurance Co. v. City of Lodi*,
302 F.3d 928 (9th Cir. 2002) .......... 10

*Fisher Dev. Co. v. Boise Cascade Corp.*,
37 F.3d 104 (3d Cir. 1994) .......... 8, 9

*Mercer Cty. Childrens Med. Daycare, LLC v. O'Dowd*,
No. CV 13-1436, 2015 WL 5822291 (D.N.J. Oct. 1, 2015) .......... 13

*Pathfinder L.L.C. v. Luck*,
No. CIV.A. 04-1475, 2005 WL 1206848 (D.N.J. May 20, 2005) .......... 8

*United States v. Atl. Research Corp.*,
551 U.S. 128 (2007) .......... 10

*United States v. Northeastern Pharmaceutical & Chemical Co.*,
810 F.2d 726 (8th Cir. 1986), *cert. denied*, 484 U.S. 848 (1987) .......... 10

*Winslow v. Corporate Express, Inc.*,
364 N.J. Super. 128 (App. Div. 2003) .......... 4

**Statutes**

CERCLA § 107 .......... 2, 10, 11

CERCLA § 113 .......... 11

**Other Authorities**

Local Rule 56.1 .......... 3

Restatement (Second) of Contracts § 152 (1981) ....................................................8

## PRELIMINARY STATEMENT

In an effort to avoid the sweeping release and indemnity provisions of the 1997 Purchase and Sale Agreement ("PSA") and 1991 Environmental Indemnity Agreement ("EIA"), North River and RRIP argue, without any evidence, that Arconic deliberately concealed and misrepresented material information in connection with the sale of the Former Alcoa Site. As a result of this alleged fraud and/or fraud in the inducement, North River and RRIP now argue the contracts are void. But North River and RRIP are not seeking the remedy of rescission, which defeats their arguments right out of the gate.

As for the substance of their claims of fraudulent concealment/ misrepresentation/inducement, North River and RRIP point to nothing in the record suggesting any intentional concealment or misrepresentation necessary to support a fraud, or fraud in the inducement, defense to Arconic's claims.

North River and RRIP also argue that now, over 20 years after signing the PSA and 1997 Multi-Party Property Acquisition Agreement ("MPAA"), the indemnification provisions in those contracts are voidable based on a "mutual mistake" among the parties over the existence of underground storage tanks under Building 12. However, both parties were sophisticated business entities well aware that the Site was heavily contaminated, yet North River knowingly accepted the risk

of any unknown contamination and potential future liability arising from any condition at the Site by signing the PSA and EIA.

The Daibes Defendants[1] failed to oppose Arconic's argument that their CERCLA § 107 claim fails because they did not incur *any* response costs at Veterans Field, much less costs consistent with the National Contingency Plan. Accordingly, Arconic is entitled to summary judgment regarding that claim.

Finally, North River and RRIP claim that Arconic breached the MPAA and PSA, thus releasing them from any obligation under those agreements. North River and RRIP fail to explain how Arconic, in 2013, breached any requirement of the MPAA fourteen years after it was extinguished by the parties' execution of the EIA. North River's claims that Arconic breached Section 7(c) of the PSA by failing to disclose the presence of underground storage tanks beneath Building 12 is contrary to the undisputed facts that the parties agreed Arconic made no representations or warranties regarding the environmental condition of the site.

---

[1] Several of the defendants are related companies that are owned and/or controlled by Fred A. Daibes. These Defendants collectively referred to as the "Daibes Defendants," include Waterside Construction, LLC; North River Mews Associates, LLC; 38 COAH, LLC; Daibes Brothers, Inc.; and Fred A. Daibes. Third-Party Defendant River Road Improvement Phase II, Inc. is also owned and/or controlled by Fred A Daibes. The CERCLA § 107 claim against Arconic was brought on behalf of all of the Daibes Defendants.

North River and RRIP should be held liable to Arconic under the theories of indemnification and breach of contract, and the Daibes Defendants' claim against Arconic should be dismissed.

## ARGUMENT

### I. The Daibes Defendants' improper responses to Arconic's Statement of Undisputed Material Facts requires the Court to accept as undisputed Arconic's Statement of Facts in its Motion for Summary Judgment.

The Daibes Defendants' opposition to Arconic's Motion for Summary Judgment (ECF No. 382 ("Daibes Defendants Br.")) relies on their Response to Arconic's Statement of Undisputed Material Facts (ECF No. 328-1) (the "Responsive SUMF"). Arconic adopts for purposes of this Reply its Motion to Strike the Daibes Defendants' Responsive SUMF. For the reasons stated therein, the Court should accept as undisputed all facts in Arconic's Statement of Undisputed Facts because the Daibes Defendants' Responsive SUMF fails entirely to comply with Local Rule 56.1 and the Court's directives to the parties regarding their Rule 56.1 Statements.

### II. The Release and Indemnity provisions in the Purchase and Sale Agreement and the Environmental Indemnity Agreement bar the claims of North River and RRIP.

North River and RRIP do not argue that the release and indemnity provisions contained in the PSA or the indemnity provision in the EIA are anything less than clear and unambiguous. Instead, they argue, without any evidence, that those

provisions are void because Arconic *fraudulently* concealed material information in connection with the sale of the Former Alcoa Site. They also argue that the indemnification provisions in both agreements are unenforceable because of a mutual mistake. Both of these arguments are without merit and fail as a matter of law.

**a. North River and RRIP have presented no genuine evidence of fraudulent concealment of material information by Arconic.**

A claim of fraudulent concealment, whether as an affirmative claim or as a defense to a breach of contract, requires a plaintiff to establish five elements: "(1) a material misrepresentation of a presently existing or past fact; (2) knowledge or belief by the defendant of its falsity; (3) an intention that the other person rely on it; (4) reasonable reliance thereon by the other person; and (5) resulting damages." *Argabright v. Rheem Mfg. Co.*, 201 F. Supp. 3d 578, 602 (D.N.J. 2016). As summarized by New Jersey Courts, in the absence of any deliberate conduct, there can be no material misrepresentation necessary to support a fraudulent concealment claim. *See Winslow v. Corporate Express, Inc.*, 364 N.J. Super. 128, 139 (App. Div. 2003) (the suppression of a material fact that should be disclosed must be deliberate to support a common law fraud action).

North River and RRIP contend that Arconic "knew of a material adverse condition of the property" that it "intentionally failed" to disclose; that is, Arconic deliberately failed to produce and concealed from them the existence of the two

underground storage tanks under Building 12. (Daibes Defendants Br., at 14). Aside from being untrue, North River and RRIP point to no evidence of any deliberate conduct by Arconic. Indeed, none exists. The record establishes just the opposite.

Under the 1997 MPAA, the *entire site* was to be razed and all hazardous materials remediated, funded *by Arconic*. (Arconic's Statement of Undisputed Material Facts ("SUMF") ¶ 24; Certification of Dana B. Parker, dated Sept. 11, 2020 (ECF No. 359) ("Parker Cert.") 11, Ex. 10). If North River had gone ahead with demolishing Building 12 along with the other buildings, which was its express intent at the time of the sale, the USTs under Building 12 would have been discovered and their removal and remediation would have been paid for by Arconic as part of the overall cost of the demolition and removal. Therefore, for Arconic to have *intentionally* concealed evidence of the USTs or *intentionally* failed to produce evidence of them prior to the sale, Arconic would have had to be prescient enough to know *before the sale* that North River would insist on not demolishing Building 12 *after the sale* and that they would be willing to give up all rights and indemnify Arconic for any environmental conditions at the Building 12 site. This scenario, of course, is nonsense. More importantly, neither North River nor RRIP have offered any evidence that it occurred—or, indeed, *any* evidence of Arconic's supposedly fraudulent intent.

It is also undisputed that North River agreed in the PSA that Arconic was making no representations or warranties regarding the conditions at the site, including the presence of hazardous substances. (*See* ECF No. 345 ("Arconic Br.") at 29). North River also agreed that it was not relying upon any representations or warranties by Arconic. (SUMF ¶ 9; Parker Cert. ¶ 5, Ex. 4). North River and RRIP further agreed to take the site "AS IS, WITH ALL FAULTS." (Arconic Br. at 29) (all caps in original). Finally, North River agreed that the known environmental condition of the site, which North River and RRIP now seek to disown, would be composed of (1) information obtained from the environmental reports appended to the PSA, and (2) North River's own due diligence. (Arconic Br. at 29).

There is also undisputed evidence that Arconic sent North River historic building information before the sale that included technical drawings of underground storage tanks under Building 12. That undisputed evidence includes contemporaneous notes by Arconic's Vice President of Environmental Health & Safety and Chief Sustainability Officer, Kevin McKnight, reflecting North River's request for, and Arconic's mailing of, all plant drawings. (*See* ECF No. 361 ("Opp. SUMF") ¶ 46, Parker Cert. ¶ 8, Ex. 7; Certification of Malory M. Pascarella, dated September 11, 2020, ECF No. 361 ("Pascarella Cert."), ¶ 14, Ex. 13). It also includes a cover letter from Arconic dated before the sale enclosing voluminous historic plant records and drawings to North River. (Opp. SUMF ¶ 46, Parker Cert., ¶ 10, Ex. 9).

Other than claiming that they never received the records and drawings, North River and RRIP offer nothing to refute this evidence.

Moreover, whether North River actually received the documents is irrelevant because the undisputed evidence is that Arconic *intended* to send them and *believed* it had. This evidence conclusively rebuts North River's and RRIP's unsupported assertions of fraudulent intent by Arconic.

It is also important to keep in mind that Fred Daibes, acting on behalf of North River, was and is a sophisticated real estate developer, who had the right and duty to conduct his own due diligence of a site he knew was contaminated. Indeed, this Court has already recognized as much:

> You have a sophisticated party, you have the right to do your own due diligence, you have the right to conduct your own testing. You know, it's a contaminated site. I mean it's referenced right in the document. So to say these two underground storage tanks were the deal breaker because we knew we were buying a PCB contaminated site, because these sophisticated parties, who had the right to do due diligence, you know, you make it sound like you represent babes in the woods. But it can't be any clearer in the documents. Everybody knows you're getting a hazardous waste site.

(*See* Certification of Reymond E. Yammine, dated December 7, 2020, Ex. 1, at 76:22-77:7). North River/Mr. Daibes went forward with the purchase after either receiving the plant records and drawings, requesting but not receiving the documents, or not requesting them at all.

North River's actions speak louder than the words in its Brief. North River and RRIP knew they were getting a contaminated site and they still purchased the property AS IS, waiving all rights to pursue Arconic for any known or unknown environmental condition on the Property. Accordingly, North River cannot prove the reliance elements of its fraud claims.

**b. There was no mutual mistake.**

An agreement is voidable under the doctrine of mutual mistake only when both parties make a mistake "as to a basic assumption" of the agreement. Restatement (Second) of Contracts § 152 (1981). The appropriate remedy for a mutual mistake of fact is rescission. *Fisher Dev. Co. v. Boise Cascade Corp.*, 37 F.3d 104, 111-12 (3d Cir. 1994); *Pathfinder L.L.C. v. Luck*, No. CIV.A. 04-1475, 2005 WL 1206848, at *6 (D.N.J. May 20, 2005). The party seeking rescission must prove, at a minimum, that *both* parties "are under substantially the same erroneous belief as to the facts." *Id*.

North River and RRIP cannot pursue a theory of "mutual mistake" because *the remedy they seek is not rescission*.

Substantively, North River and RRIP do not cite to any evidence establishing that both parties were under the same erroneous belief as to any facts. The terms of the PSA (with attached environmental reports) and MPAA plainly identify the site

as contaminated, and all parties understood the possibility that as-yet uncovered additional contamination existed.

For this reason, North River and RRIP's reliance on *Fisher Development* is entirely misplaced. In that case, the Third Circuit affirmed the lower court's finding that the defendant had failed to establish the existence of a mutual mistake. *Fisher Dev. Co.*, 37 F.3d at 112. The parties had presented no evidence to show that they "entered their settlement agreement and exchanged their general releases based on an affirmative understanding that there were no environmental problems on the premises." *Id.* On the contrary, the record showed the opposite. *Id.* "The parties exchanged general, rather than limited, releases because they understood that all facts concerning the leasehold and their prior relationship were not necessarily known and that currently unknown facts could later give rise to liabilities." *Id.* Where the "possibility of problems on the premises was a basic assumption of the parties," there can be no mutual mistake. *Id.*

That is the precise situation here. North River and RRIP agreed in the PSA and EIA to give Arconic a broad release from all claims related to hazardous substances in clear recognition of the "possibility of problems" at the Site. (SUMF

¶¶ 20, 37; Parker Cert. ¶ 5, Ex. 4, Sect. 7; Parker Cert. ¶ 18, Ex. 17).[2] The mere fact that North River now claims that it was unaware of a *specific* environmental condition is immaterial. *Id.* at 110 n.1.

North River and RRIP's mutual mistake theory fails as a matter of law and undisputed fact.

## III. The Daibes Defendants cannot recover against Arconic under CERCLA because they incurred no response costs at Veterans Field and because Arconic is not liable under CERCLA.

The Daibes Defendants failed to oppose Arconic's argument that their CERCLA § 107 claim fails because they did not incur any response costs at Veterans Field, much less costs consistent with the National Contingency Plan.

In order to recover response costs under CERCLA § 107, a party must prove, at a minimum, that it incurred responses costs. CERCLA § 107(a)(4)(B), 42 U.S.C. § 9607(a)(4)(B); *United States v. Atl. Research Corp.*, 551 U.S. 128, 139 (2007). The party must also prove that any remedial actions they conducted were consistent with the National Contingency Plan. *Fireman's Fund Insurance Co. v. City of Lodi*, 302 F.3d 928, 950 (9th Cir. 2002); *County Line Inv. Co. v. Tinney*, 933 F.2d 1508, 1512 (10th Cir. 1991) (citations omitted); *United States v. Northeastern*

[2] To the extent the Court finds the MPAA applicable to the 2013 demolition of Building 12, the MPAA contains similar broad releases. (SUMF ¶ 24; Parker Cert., ¶ 11, Ex. 10, ¶ 16).

*Pharmaceutical & Chemical Co.*, 810 F.2d 726, 747 (8th Cir. 1986), *cert. denied*, 484 U.S. 848 (1987).

As shown in detail in Arconic's moving brief, the record is devoid of any evidence satisfying either requirement. (*See* Arconic Daibes Br. at 20-26). It is simply undisputed that the Daibes Defendants did not conduct any response actions regarding the contamination at Veterans Field.

Arconic is also not liable under CERCLA § 107 for the remediation of Veterans Field because it was not an arranger as argued by the Daibes Defendants. (*See* ECF No. 373, Arconic's opposition to the Borough's Motion for Summary Judgment at 4-20). The Daibes Defendants' claim for contribution under CERCLA § 113(f) must be dismissed.

## IV. Arconic did not breach either the Multi-Party Agreement or the Purchase and Sale Agreement.

North River and RRIP argue that Arconic breached the MPAA by not paying for the removal of hazardous substances found at the site in 2013. (Daibes Defendants Br. at 17). But by this time, the MPAA was long extinguished by operation of the EIA, which was signed by North River and RRIP in 1999. The MPAA required that Building 12 be demolished along with all other buildings at the site. The parties entered into the EIA so that North River and RRIP could keep Building 12 standing and put it to use. (Arconic Br. at 31). In exchange, North River and RRIP agreed to have sole physical and legal responsibility for Building

12 going forward; a critical component of the parties' agreement. (Arconic Br. at 31; SUMF ¶¶ 38-39; Parker Cert. ¶ 18, Ex. 17). Under the terms of the EIA, any obligation under the MPAA that could have required Arconic to pay for the removal of hazardous substances at the Building 12 site was extinguished by the EIA. North River and RRIP offer no explanation for how Arconic could be subject to the requirements of the MPAA fourteen years after it was extinguished. (SUMF ¶ 36; Parker Cert. ¶ 3, Ex. 2).

North River and RRIP also argue that Arconic breached Section 7(c) of the Purchase and Sale Agreement, regarding the site's "known environmental conditions," by "failing to disclose of [sic] a known and material defect present" at the Alcoa site. (Daibes Defendants Br. at 17). Section 7(c), however, only defined the agreed-upon known environmental conditions at the Site at the time of sale. (Arconic Br. at 6). There is nothing in the PSA suggesting that the "known environmental condition" of the site constituted 100% of all environmental contamination at the site. Quite the opposite. The PSA stated in all capital letters that Arconic was making no representations or warranties regarding the environmental condition of the site above or below the surface of the ground. *Id*. In fact, the parties further acknowledged the very existence of unknown environmental conditions by entering into a series of risk-shifting clauses that delimited each parties' responsibilities. (SUMF ¶ 20; Parker Cert. ¶ 5, Ex. 4).

Even if the MPAA was not extinguished by the EIA, there is no evidence that North River or RRIP complied with the written notice of breach provisions of the PSA, which expressly incorporates the MPAA by reference. Section 8(a) of the PSA provides: "If Seller fails to perform any of its obligations under this Agreement or the Multi Party Agreement, the same shall constitute a default of this Agreement and thereupon Buyer, at its option, may declare forfeiture by written notice to Seller ("Notice of Seller's Default)." (SUMF ¶ 20; Parker Cert. ¶ 5, Ex. 4, §8(a)). Under Section 12 of the PSA all such notices must be "in writing" and personally served "or sent by certified or registered mail, postage prepaid, return receipt requested." (*Id.*, §12). That notice triggers a 45 day cure period. *Id*. No such notice was provided by North River or RRIP, which would have provided Arconic with the opportunity to cure any alleged breach.

**V. Arconic did not fraudulently induce North River or RRIP to enter into the PSA, the MPAA, or any other contract.**

North River and RRIP argue that Arconic may not assert rights under either the PSA or the MPAA because Alcoa fraudulently induced North River to enter into these contracts. (Daibes Defendants Br. at 12-15, 18-20). This argument fails for two reasons previously discussed: First, there is no evidence that Arconic deliberately concealed or misrepresented anything in connection with the sale of the Site; and second, North River and RRIP do not seek rescission under the PSA or the MPAA, which would be their only available remedy. *See, e.g., Mercer Cty.*

*Childrens Med. Daycare, LLC v. O'Dowd*, No. CV 13-1436, 2015 WL 5822291, at *4 (D.N.J. Oct. 1, 2015) ("[T]he remedy for fraudulent inducement into a contract is that the contract is voidable at the election of the defrauded party.").

**CONCLUSION**

For the foregoing reasons and for the reasons set forth in Arconic's moving papers, Arconic respectfully requests that this Court (i) grant summary judgment in Arconic's favor on its Counterclaims against North River and RRIP and (ii) dismiss all claims by the Daibes Defendants against Arconic.

Dated: December 7, 2020

Respectfully submitted,

**K&L GATES LLP**

By: */s/ Michael E. Waller*

Michael E. Waller
Charles F. Rysavy
Dana B. Parker
One Newark Center, Tenth Floor
Newark, New Jersey 07102
Tel: (973) 848-4000
michael.waller@klgates.com
charles.rysavy@klgates.com
dana.parker@klgates.com
*Attorneys for Arconic Inc. (f/k/a Alcoa Inc.) and Arconic Domestic, LLC (f/k/a Alcoa Domestic LLC, as successor in interest to A.P. New Jersey, Inc.)*