Not for Publication

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| BOROUGH OF EDGEWATER,<br><br>       Plaintiff,<br><br>  v.<br><br>WATERSIDE CONSTRUCTION, LLC; 38 COAH , LLC; DAIBES BROTHERS, INC.; NORTH RIVER MEWS ASSOCIATES, LLC; FRED A. DAIBES; TERMS ENVIRONMENTAL SERVICES, INC.; ALCOA INC.; ALCOA DOMESTIC, LLC, as successor in interest to A.P. NEW JERSEY, INC.; HUDSON SPA, LLC; JOHN DOES 1-100; ABC CORPORATIONS 1-100,<br><br>       Defendants<br><br>and<br><br>WATERSIDE CONSTRUCTION, LLC; 38 COAH LLC; DAIBES BROTHERS, INC.; NORTH RIVER MEWS ASSOCIATES, LLC; FRED A. DAIBES,<br><br>       Defendants/ Third-Party Plaintiffs<br><br>  v.<br><br>NEGLIA ENGINEERING ASSOCIATES,<br><br>       Third-Party Defendants,<br><br>and<br><br>ALCOA DOMESTIC, LLC as successor in interest to A.P. NEW JERSEY, INC.,<br><br>       Defendant/Third-Party Plaintiff, | Civil Action No. 14-5060<br><br>**OPINION** |

v.

COUNTY OF BERGEN; RIVER ROAD IMPROVEMENT PHASE II, INC.; HUDSON SPA, LLC,

        Third-Party Defendants.

**John Michael Vazquez, U.S.D.J.**

        Presently before the Court is a motion for summary judgment (D.E. 346) filed by Bergen County. The motion addresses a breach of contract claim asserted by Arconic Inc. (f/k/a Alcoa Inc.) and Arconic Domestic, LLC (f/k/a Alcoa Domestic LLC, as successor in interest to A.P. New Jersey, Inc.) (collectively "Arconic") against Bergen County and a claim for indemnification asserted by Bergen County against North River Mews Associates, LLC ("North River") and River Road Improvement Phase II, Inc. ("RRIP").

        The Court has reviewed all submissions made in support and in opposition to the motions and considered the motions without oral argument pursuant to Fed. R. Civ. P. 78(b) and L. Civ. R. 78.1(b). For the reasons stated below, Bergen County's motion for summary judgment (D.E. 346) is **GRANTED**.[1]

---

[1] The current motions are part of a large number of motions for summary judgment filed in this matter. All pending motions are listed in the Procedural History section of this Opinion. If the Court were to address all motions in a single opinion, the results would be unwieldly. As a result, the Court addresses the motions individually or in groups. The Court also does not repeat each and every alleged fact in each opinion. Instead, the Court focuses on the facts pertinent to each motion (or motions) as asserted by the parties to the motion(s). Therefore, if the facts in one opinion appear to be distinguishable from facts in another opinion, it is because those are the facts asserted by the party or parties in its/their respective motions.

## I. BACKGROUND

This matter stems from an allegation that certain Defendants used polychlorinated biphenyl ("PCB")[2] contaminated material as fill in a public park project. The park is owned by Plaintiff Borough of Edgewater, but the contaminated materials (or at least some of them) came from a property previously owned by Arconic.

### A. Facts[3]

Arconic constructed and operated an industrial plant (the "Alcoa Property") from 1914-1965 in Edgewater, New Jersey. BE SOMF ¶ 1. A structure, referred to as "Building 12," was constructed on that site in 1938. BE SOMF ¶ 3. The site was subsequently acquired by Amland Properties Corporation ("Amland"), who then discovered PCB contamination throughout the property. Amland sued Arconic, which resulted in a settlement and the site was conveyed to Arconic (then an Alcoa entity named A.P. New Jersey, Inc. ("AP"), which later became Arconic Domestic, LLC). BE SOMF ¶ 12. The Amland settlement agreement required that the deed contain a legend notice stating that "[t]his property may be contaminated with hazardous substances including Polychlorinated Biphenyls." BE SOMF ¶ 11.

---

[2] According to the Environmental Protection Agency, PCBs are a group of man-made organic chemicals consisting of carbon, hydrogen and chlorine atoms. *United States Environmental Protection Agency, Learn about Polychlorinated Biphenyls (PCBs)*, https://www.epa.gov/pcbs/learn-about-polychlorinated-biphenyls-pcbs. PCBs have been demonstrated to cause a variety of adverse health effects. *Id.*

[3] Many of the facts are derived from Plaintiff Borough of Edgewater's statement of material facts (D.E. 319-1), which will be referred to as "BE SOMF"; Bergen Count's statement of material facts (D.E. 314-1) will be referred to as "BC SOMF"; and Arconic's responsive statement of facts (D.E. 331-1) will be referred to as "A Response. Edgewater's facts are used to provide context and background; the Court does not rely on Edgewater's facts in deciding the current motion.

In 1997, Arconic sold the property to North River, an entity affiliated with Fred Daibes. Pursuant to the terms of the Purchase and Sale Agreement ("PSA") and the related Multi-Party Property Acquisition Agreement ("MPAA"), Arconic (then AP) agreed to pay RRIP up to $12,000,000 for the demolition, removal, and proper disposal of the buildings on the site pursuant to a Remedial Action Work Plan. BE SOMF ¶ 41. Later that year, North River requested permission to postpone the demolition of Building 12. BE SOMF 52. In 2006, the portion of the Alcoa Property containing Building 12 was transferred from North River to 38 COAH, another entity affiliated with Fred Daibes. BE SOMF ¶ 65. In 2010, certain areas of the exterior walls on Building 12 became unstable and fell. BE SOMF ¶ 68.

In 2011, Plaintiff Edgewater looked to improve Veterans Field, a 27-acre public park owned by the borough. BE SOMF ¶¶ 75-76. TERMS, an environmental consulting firm, was retained as a consultant and Licensed Site Remediation Professional for the project. After a bidding process, Waterside, a construction company managed by Fred Daibes, was awarded the contract for the improvement project. BE SOMF ¶¶ 80, 85, 86.

When the amount of fill needed at the Veterans Field project increased, Waterside imported and used the PCB-contaminated material from Building 12 as fill on Veterans Field. BE SOMF ¶ 93. Edgewater asserts that on September 7, 2013, after advising Neglia (the engineer assigned to the project) that no work would be performed over the weekend, Waterside dumped unapproved fill on the site and then covered the fill when the Neglia supervisor arrived to the site. BE SOMF ¶¶ 95-98. Edgewater alleges that Waterside continued to import contaminated materials from September 7, 2013 to October 3, 2013, when TERMS issued a letter advising of the PCB contamination and closed the Veterans Field site for an assessment. BE SOMF ¶¶ 106-107.

Veterans Field had PCB contamination before the project began, with the highest level being 2.5 parts per million ("ppm"). BE SOMF ¶ 78. Sampling done after the site was closed in October 2013 found that fill materials used throughout the site were contaminated with PCBs, including (1) crushed concrete with levels ranging from 100-350 ppm used for concrete sidewalks and cement pads, and (2) concrete combined with soil with levels ranging from 10-350 ppm used as fill on the field and under paved areas. BE SOMF ¶ 11. Impacted materials were excavated pursuant to an EPA-approved Self-Implementing Plan and disposed off-site. BE SOMF ¶ 115.

## II.  Procedural History

Edgewater first filed suit on August 12, 2014. D.E. 1. Arconic filed a Third-Party Complaint against the County of Bergen and RRIP on December 5, 2014. D.E. 23. On February 27, 2018, the separate matters docketed as 14-8129 and 14-50560 were consolidated. D.E. 255. Multiple parties have filed multiple motions for summary judgment in this matter. The motions are as follows:

- Motion by TERMS for summary judgment against Edgewater (D.E. 339);
- Motion by Hudson Spa for summary judgment against Edgewater (D.E. 342);
- Motion by Arconic for summary judgment against Edgewater (D.E. 344);
- Motion by Arconic for summary judgment against Fred Daibes and North River;
- Motion by Bergen County for summary judgment against Alcoa, North River, and RRIP (D.E. 346);
- Motion by Edgewater for summary judgment against the Waterside Entities on Count XI (D.E. 347);
- Motion by Edgewater for summary judgment against the Waterside Entities on Counts II and VI (D.E. 348);
- Motion by Edgewater for summary judgment against Alcoa on Count I (D.E. 349);
- Motion by Edgewater for summary judgment against the Waterside Entities on Count I (D.E. 350);
- Motion by Arconic for summary judgment against North River, 38 COAH, and RRIP (D.E. 351);
- Motion by Edgewater for summary judgment against Alcoa on Count II (D.E. 352); and

- Motion by Edgewater for summary judgment against the Waterside Entities on Count II (D.E. 353).

This Opinion address only the motion for summary judgment filed by Bergen County (D.E. 346).

### III.  LEGAL STANDARD

A moving party is entitled to summary judgment where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact in dispute is material when it "might affect the outcome of the suit under the governing law" and is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Disputes over irrelevant or unnecessary facts will not preclude granting a motion for summary judgment. *Id.* "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the nonmoving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.'" *Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004) (quoting *Anderson*, 477 U.S. at 255)). A court's role in deciding a motion for summary judgment is not to evaluate the evidence and decide the truth of the matter but rather "to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249.

A party moving for summary judgment has the initial burden of showing the basis for its motion and must demonstrate that there is an absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). After the moving party adequately supports its motion, the burden shifts to the nonmoving party to "go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Id.* at 324 (internal quotation marks omitted). To

withstand a properly supported motion for summary judgment, the nonmoving party must identify specific facts and affirmative evidence that contradict the moving party. *Anderson*, 477 U.S. at 250. "[I]f the non-movant's evidence is merely 'colorable' or is 'not significantly probative,' the court may grant summary judgment." *Messa v. Omaha Prop. & Cas. Ins. Co.*, 122 F. Supp. 2d 523, 528 (D.N.J. 2000) (quoting *Anderson*, 477 U.S. at 249-50)).

Ultimately, there is "no genuine issue as to any material fact" if a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case." *Celotex Corp.*, 477 U.S. at 322. "If reasonable minds could differ as to the import of the evidence," however, summary judgment is not appropriate. *See Anderson*, 477 U.S. at 250-51.

## IV. DISCUSSION

Bergen County moves for summary judgment on two claims: (1) Arconic's claim for breach of contract asserted against Bergen County, and (2) Bergen County's claim for indemnification asserted against North River and RRIP.[4]

### A. Arconic's Claim for Breach of the MPAA

Bergen County moves for summary judgment on Alcoa's claim for breach of contract, based on the June 27, 1997 MPAA. The MPAA was entered into by Arconic (then known as A.P.), Bergen County, North River, and RRIP. Pansulla Cert. (D.E. 346-3), Ex. 3 ("MPAA"). Under the terms of the MPAA, North River and RRIP agreed to demolish and remove structures on the Alcoa Property. The MPAA provided that Arconic agreed to sell the Alcoa Property to North River, that North River and RRIP would demolish all structures on the Alcoa Property, and

---

[4] Bergen County's brief in support of its motion (D.E. 346-2) will be referred to as "County Brf."; Arconic's brief in opposition (D.E. 369) will be referred to as "Arconic Brf."; North River and RRIP's brief in opposition (D.E. 383) will be referred to as "NR Brf."; and Bergen County's brief in reply (D.E. 401) will be referred to as "County Reply."

that Arconic would pay up to $9.5 million for the demolition and removal of the structures.

MPAA, ¶¶ 1-3. As to Bergen County, the MPAA provides as follows:

> The County shall supervise the demolition of the [Arconic] property and shall administer the disbursement of funds to RRIP with the funds provided to it by [Arconic]. [Arconic], upon the execution of this Agreement, shall make an initial deposit with the County of Bergen in the sum of $2,000,000 to be disbursed in accordance with the terms of this Agreement. The RRIP shall make periodic requisitions for demolition, removal and the related work completed, and said requisitions shall be funded at a minimum of once per month, or more frequently as the approved demolition and removal schedule may require. Upon satisfactory monthly inspections, the County shall, upon notice to [Arconic], forthwith authorize the disbursement of funds to RRIP
>
> [Arconic] will provide additional funds to the County of Bergen in the amount of, and upon receipt of, approved requisitions from RRIP for work performed on the demolition and removal of the structures. [Arconic] shall continue to provide funds to the County of Bergen until the County of Bergen has received sufficient funds to satisfy [Arconic]'s liability to RRIP for the demolition and removal of the structures.

MPAA, ¶ 4.

As to timing, the MPAA provides that

> [t]he acquisition of the [Arconic] property and the demolition, removal and remediation of the [Arconic] buildings and structures shall be performed at the same time as construction of New River Road (Phase II) which shall be performed by [Edgewater Residential Community, LLC ("ERC"] or its agents, in accordance with the Boswell Plans and specifications.

MPAA, ¶ 5.

Paragraph 10 of the MPAA indicates the following:

> The County guarantees to [Arconic] that the demolition and removal of the [Arconic] structures and building will be completed as provided in the Remedial Action Workplan and the approved demolition plan. This guarantee is effective and enforceable only if [Arconic] is not in default of its obligations set forth in paragraph 4 of the Agreement.

8

MPAA, ¶ 10.

On September 23, 1997—a few months after entering the MPAA—Arconic (then AP), Bergen County, North River, and RRIP entered into a Funding Agreement, which refers to the MPAA. Pansulla Cert., Ex. P. The Funding Agreement provides in part that

> to the extent that Building 12 is not demolished, A.P. shall withhold or cause Bergen County to withhold payment of $500,000 of the demolition funding until the following conditions are satisfied: (i) [Arconic] receives full payment of the Purchase Price . . .; and (ii) [Arconic] receives a "No Further Action" letter from the NJDEP[.]

Funding Agreement, ¶ 5.

Arconic and North River later agreed that Building 12 did not have to be demolished and entered into a subsequent Environmental Indemnity Agreement ("EIA"), to which Bergen County was not a party. On January 18, 2001, Arconic sent a letter to Bergen County directing the County to release all remaining funds that it held to North River. The letter stated as follows:

> [Arconic] has completed an agreement with [North River], allowing the release of $500,000 in the account held by Bergen County as part of the Funding Agreement related to Alcoa's former Edgewater Works. [Arconic] will hold an irrevocable Letter of Credit securing [North River's] obligation to obtain a No Further Action Letter on the remaining portions of the property (including but not limited to Building 12) by December 31, 2002.
>
> You are hereby authorized to pay $500,000 to [North River] and to send the interest remaining in the account to [Arconic].

Pansulla Cert., Ex. Q. Bergen County then released the funds to North River. BC SOMF ¶ 46. Bergen County asserts that its role under the MPAA was completed once all funds had been disbursed. County Brf. at 11.

Arconic now contends that Bergen County breached the MPAA when the Waterside Defendants demolished Building 12 because the MPAA required Bergen County to supervise the

9

demolition of the Alcoa Property. Arconic Brf. at 2. Specifically, Arconic points to provisions of the MPAA requiring Bergen County to approve and supervise the work performed by RRIP, guaranteeing that the demolition and removal of the structures would be completed as provided in the Remedial Action Workplan. Arconic Brf. at 2. Neither party asserts that Bergen County had any actual involvement with the demolition of Building 12 or the subsequent disposal of its material at Veterans Field. Instead, Arconic asserts that the improper disposal would not have occurred had Bergen County fulfilled its duties under the MPAA. Arconic Brf. at 1-2.

To state a claim for breach of contract under New Jersey law, a party must allege (1) the existence of a contract; (2) breach of the contract; (3) damages as a result of the breach; and (4) that the complaining party performed its own duties under the contract. *Pollack v. Quick Quality Restaurants, Inc.*, 452 N.J. Super. 174, 188 (App. Div. 2017) (citing *Globe Motor Co. v. Igdalev*, 225 N.J. 469, 482 (2016)). In interpreting a contract, a court must determine the intention of the parties as revealed by the language in the agreement. *Globe Motor*, 225 N.J. at 483 (citation omitted). To this end, the plain language of the contract is ordinarily the best indicator of the parties' intent. *Chubb Customs Ins. Co. v. Prudential Ins. Co. of Am.*, 195 N.J. 231, 238 (2008) (citation omitted). In other words, unless an actual ambiguity in the contract exists, a court should not engage in a strained reading of the agreement to justify a different result than that which the parties bargained for. *Id.* (citation omitted). An ambiguity exists when a contract term is "susceptible to at least two reasonable alternative interpretations[.]" *Id.* (citing *Nester v. O'Donnell,* 301 *N.J. Super.* 198, 210 (App. Div. 1997)). If a contract's term is ambiguous, a court may consider extrinsic evidence to interpret the term. *Id.* (citation omitted). A court will also normally construe the ambiguous term against the drafting party if the parties had "unequal bargaining power." *Id.*

Arconic first contends that the EIA extinguished the obligations of North River and Bergen County under the MPAA. If accurate, then Bergen County would not be in breach of the MPAA. Arconic Brf. at 3. As explained in this Court's 2016 Opinion:

> The Environmental Indemnity Agreement concerned a discrete part of the [Arconic] Site, Building 12, and only to the extent the building was "not demolished" as originally contemplated by the parties. Since Building 12 has actually been demolished, the Environmental Indemnity Agreement no longer appears relevant and the Purchase and Sale as well as the Multi-Party Agreement remain in full force and effect.

D.E. 184 at 13. Arconic has not provided a sufficient basis to disturb this observation. As a result, the Court looks to Bergen County's obligations under the MPAA.

Specifically, the Court must decide whether Bergen County's obligations under the MPAA were satisfied when it released the remaining funds in 2001. The starting point of this analysis is the language of the contracts. The MPAA contemplates that the structures on the Alcoa Property would be removed. MPAA, ¶ 10 ("The County guarantees to [Arconic] that the demolition and removal of the [Arconic] structures and building will be completed as provided in the Remedial Action Workplan and the approved demolition plan."). Yet, the MPAA must be read in light of the subsequent Funding Agreement, which provides that "to the extent that Building 12 is not demolished, [Arconic] shall withhold or cause Bergen County to withhold payment of $500,000 of the demolition funding" until certain conditions are satisfied. Funding Agreement, ¶ 5. The Funding Agreement allows for the possibility that Building 12 would not be demolished. It therefore created two options for Bergen County to fulfill its obligations with respect to Building 12: either supervising Building 12's demolition or retaining $500,000 until the conditions were met.

Against that backdrop enters the letter from Arconic to Bergen County, instructing Bergen County to release the $500,000. The letter specified that Arconic would take over the duty of securing North River's obligation to obtain a No Further Action Letter via an irrevocable Letter of Credit and instructed Bergen County to release the $500,000. Once Bergen County released the funds, with Arconic having assumed Bergen County's role, there was nothing further for Bergen County to do under the MPAA.

Arconic's brief does not discuss the impact of the letter. This Court construes the letter as a modification to the MPAA. A modification can be made by the actions and conduct of the parties, so long as that intention is mutual and clear. *Elliott & Frantz, Inc. v. Ingersoll-Rand Co.*, 457 F.3d 312, 322 (3d Cir. 2006) (citing *County of Morris v. Fauver*, 707 A.2d 958, 967 (N. J. 1998). The letter sent by Arconic evinces a clear intent to alter Bergen County's obligations under the MPAA and Funding Agreement. And Bergen County acted in accordance with Arconic's instruction. Arconic cannot now hold Bergen County in breach when Bergen County behaved exactly as Arconic instructed it to do.

Bergen County's motion for summary judgment as to Arconic's breach of contract claim is granted. Having decided that Bergen County did not breach, the Court does not address Bergen County's statute of repose arguments.

### B. Claim for Indemnification

Bergen County next argues that it is entitled to summary judgment on its indemnification claim against North River and RRIP. North River and RRIP respond that they only agreed to defend Bergen County with respect to claims "arising from the performance" of the MPAA. Waterside Brf. at 13. The claims against Bergen County, they contend, are unrelated to performance under the MPAA because the claims are not based on any actual rights or obligations

of the County under the MPAA. Waterside Brf. at 13. In short, North River and RRIP agree with Bergen County's assertion that it completed its obligations under the MPAA in 2001. Waterside Brf. at 14. Because Bergen County completed its obligations, they argue, Arconic's claim does not arise from Bergen Count's performance of the MPAA.[5]

An indemnity provision "is to be construed in accordance with the rules for construction of contracts generally." *Mantilla v. NC Mall Assocs.*, 770 A.2d 1144, 1150 (N.J. 2001). If an indemnification provision is ambiguous, a court must strictly construe it against the indemnitee. *Hill v. Com. Bancorp, LLC*, No. CIV. 09-3685, 2011 WL 2293324, at *5–6 (D.N.J. June 8, 2011) (citing *Mobile Dredging & Pumping Co. v. City of Gloucester*, No. 04–4624, 2005 WL 1876080 (D.N.J. Aug. 4, 2005). If the provision is unambiguous, a "contract indemnity clause should be interpreted like all contracts, looking at both the language of the contract and the intent of the parties." *Id.* "New Jersey law does not require specificity in indemnity clauses nor does it require strict construction of those clauses." *Mobile Dredging*, 2005 WL 1876080, at *3 (citing *First Jersey Nat. Bank v. Dome Petroleum Ltd.*, 723 F.2d 335, 339–340 (3d Cir.1983)).

The relevant provision of the MPAA provides:

> *It is understood and agreed that North River and RRIP shall defend and save the County and [Arconic] harmless from any and all claims that may be filed in any Court arising from the performance of this Agreement. In connection with the defense of any claim, the County and [Aronic] shall be entitled to select their own counsel. The County and [Arconic] shall fully cooperate in any such litigation provided, however, that neither the County nor [Arconic] shall be under any obligation to expend any funds for any purpose whatsoever in connection with such litigation. Should the County or [Arconic] be named as a party in any court, administrative or other action or proceeding, North River and RRIP agree to*

---

[5] In response to motions filed by Arconic, the Waterside Defendants have asserted that the MPAA is invalid because it was fraudulently induced. The Waterside Defendants do not make that same argument here, and the Court therefore does not address it.

> *reimburse the County and/or [Arconic] (as applicable) for the cost of any legal, expert or other fees expended by the County and/or [Arconic] in such action or proceeding.*

MPAA, ¶ 16 (emphasis added).

North River and RRIP focus on the phrase "arising from the performance of this Agreement." Courts interpreting "arising out of" language "have given it broad scope." *SGS U.S. Testing Co. v. Takata Corp.*, No. 09-6007 (KM), 2016 U.S. Dist. LEXIS 47132, at *25 (D.N.J. Apr. 6, 2016). The terms "arising out of" and "arising from" in indemnity agreements generally relate to the subject matter of the agreement. *Morales v. Sussex County Cmty. College*, 2018 N.J. Super. Unpub. LEXIS 5331, at *9 (Super. Ct. 2018) (citing *Leitao v. Damon G. Douglas Co.*, 693 A.2d 1209 (Super. Ct. App. Div. 1997)). New Jersey courts have "construed the words 'arising out of' in accordance with their common and ordinary meaning as referring to a claim 'growing out of' or having its 'origin in' the subject matter." *Leitao*, 693 A.2d 1209, 1212 (citing New Jersey cases).

The Court finds that the alleged breach of contract claim does arise from Bergen County's performance of the MPAA. Arconic's claim against Bergen County is essentially that Bergen County breached the MPAA. Such a claim is based entirely on the MPAA and certainly has its "origin in" Bergen County's performance of the MPAA. To be clear, North River and RRIP do not argue that the provision does not apply to claims asserted between or among the parties to the agreement. Instead, North River and RRIP argue that Bergen County had completed its obligations under the MPAA so the indemnification provision does not apply. Tellingly, North River and RRIP cite no legal authority for this proposition. The language "any and all claims that may be filed in any court" suggests a broad construction. That language does not lend itself to a reading that North River and RRIP need only indemnify Bergen County from claims that are ultimately

14

successful or which they deem to be meritorious. The fact that the parties dispute whether Bergen County's obligations had been completed at that time does not change that the claim arises out of Bergen County's performance of the MPAA.

The final sentence of the provision further supports a broad reading and requires North River and RRIP to indemnify Bergen County. That sentence provides as follows: "Should the County . . . be named as a party in any court . . . North River and RRIP agree to reimburse the County . . . for the cost of any legal, expert or other fees expended by the County . . . in such action or proceeding." MPAA, ¶ 16. The language is not only unambiguous, it is broad. Bergen County has been named as a party in this court. North River and RRIP are therefore required to reimburse Bergen County for its costs in this action.

The claim asserted against Bergen County is for breach of the MPAA. An alleged breach of the agreement constitutes a claim arising from the performance of that agreement. Bergen County's motion for summary judgment as to indemnification is therefore granted.

V.     **CONCLUSION**

Bergen County's motion for summary judgment (D.E. 346) is GRANTED. An appropriate Order accompanies this Opinion.


Dated: August 18, 2021

_____
John Michael Vazquez, U.S.D.J.
