# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| BOROUGH OF EDGEWATER,<br><br>　　Plaintiff,<br><br>　　v.<br><br>WATERSIDE CONSTRUCTION, LLC; 38 COAH, LLC; DAIBES BROTHERS, INC.; NORTH RIVER MEWS ASSOCIATES, LLC; FRED A. DAIBES; TERMS ENVIRONMENTAL SERVICES, INC.; ALCOA INC. (formerly known as "Aluminum Company of America"); ALCOA DOMESTIC LLC, as successor in interest to A.P. NEW JERSEY, INC.; et al.,<br><br>　　Defendants,<br><br>(caption continued on next page) | Case Nos.: 2:14-CV-05060-JMV-AME<br>　　　　　　　2:14-cv-08129-MCA-LDW<br>Hon. John M. Vazquez, U.S.D.J.<br>Hon. André M. Espinosa, U.S.M.J. |

_____

## BRIEF OF ARCONIC IN SUPPORT OF ITS MOTION FOR RECONSIDERATION

_____

*On the Brief:*
Michael E. Waller, Esq.
Charles F. Rysavy, Esq.
Malory Pascarella, Esq.

**K&L Gates LLP**
One Newark Center, Tenth Floor
Newark, New Jersey 07102
Tel:  (973) 848-4000
*Attorneys for Arconic Inc. (f/k/a/ Alcoa Inc.) and Arconic Domestic, LLC (f/k/a/ Alcoa Domestic, LLC, as successor in interest to A.P. New Jersey, Inc.)*

(continued from previous page)

WATERSIDE CONSTRUCTION, LLC; 38 COAH, LLC; DAIBES BROTHERS, INC.; NORTH RIVER MEWS ASSOCIATES, LLC; and FRED A. DAIBES,

    Defendants/Third-Party Plaintiffs,

v.

NEGLIA ENGINEERING ASSOCIATES,

    Third-Party Defendant,

and

ALCOA DOMESTIC, LLC, as successor in interest to A.P. NEW JERSEY, INC.,

    Defendant/Third-Party Plaintiff,

v.

COUNTY OF BERGEN and RIVER ROAD IMPROVEMENT PHASE II, INC., and HUDSON SPA, LLC,

    Third-Party Defendants.

## **TABLE OF CONTENTS**

                                                **Page**

PRELIMINARY STATEMENT ...................................................................................1

ARGUMENT .................................................................................................................2

THE RULINGS ON ARCONIC'S SUMMARY JUDGMENT MOTIONS OVERLOOKED DISPOSITIVE LEGAL AND FACTUAL MATTERS THAT WARRANT RECONSIDERATION. ..............................2

    A.    The Opinion does not address either North River's burden to prove "intent" as an element of its fraudulent inducement claim, or its complete failure to provide any evidence to satisfy that burden. ...................................................................................4

    B.    The Court errantly held that, if successful on its fraudulent inducement claim, North River would be entitled to rescission of the PSA. ......................................................................................10

CONCLUSION ............................................................................................................15

i

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*ABS Brokerage Servs. v. Penson Fin. Servs., Inc.*,
   No. 09-4590, 2010 WL 3257992 (D.N.J. Aug. 16, 2010) ............................. 3, 11

*Cooper v. Borough of Wenonah*,
   977 F. Supp. 305 (D.N.J. 1997) ........................................................................ 11

*Driscoll v. Burlington-Bristol Bridge Co.*,
   28 N.J. Super. 1 (App. Div. 1953) .................................................................... 14

*Hilton Hotels Corp. v. Piper Co.*,
   214 N.J. Super. 328 (1986) ........................................................................... 11, 3

*Interfaith Cmty. Org. v. Honeywell Int'l, Inc.*,
   215 F. Supp. 2d 482 (D.N.J. 2002) ..................................................................... 3

*Intertech Assocs., Inc. v. City of Paterson*,
   255 N.J. Super. 52 (App. Div. 1992) ................................................................ 11

*Katz v. Aetna Cas. & Sur. Co.*,
   972 F.2d 53 (3d Cir. 1992) .................................................................................. 6

*Max's Seafood Cafe ex rel. Lou-Ann, Inc. v. Quinteros*,
   176 F.3d 669 (3d Cir. 1999) ................................................................................ 3

*McGovern v. City of Jersey*,
   No. 98-5186, 2008 WL 58820 (D.N.J. Jan. 2, 2008) .......................................... 3

*Mercedes–Benz USA LLC v. Coast Auto. Group, Ltd.*,
   2006 WL 2830962 (D.N.J. Sept. 29, 2006) ......................................... 11, 12, 13

*Metex Mfg. Corp. v. Manson*,
   No. CIV. 05-2948 (HAA), 2008 WL 877870 (D.N.J. Mar. 28,
   2008) ................................................................................................................... 4

*Prudential Ins. Co. of Am. v. Bank of Am., Nat.' Ass'n*,
   No. 13-1586, 2014 WL 2999065 (D.N.J. Jul. 2, 2014) ....................................... 3

*Razak v. Uber Techs., Inc.*,
   951 F.3d 137 (3d Cir.) *amended*, 979 F.3d 192 (3d Cir. 2020)..........................10

*Sabatini v. Its Amore Corp.*,
   455 Fed. Appx. 251 (3d Cir. 2011)......................................................................3

*Stochastic Decisions, Inc. v. DiDomenico*,
   236 N.J. Super. 388 (App. Div. 1989)..................................................................4

*TekDoc Servs., LLC v. 3i-Infotech Inc.*,
   2013 WL 2182565 (D.N.J. May 20, 2013).......................................................4, 5

*Walter v. Holiday Inns, Inc.*,
   784 F. Supp. 1159 (D.N.J. 1992).......................................................................12

**Other Authorities**

Local Rule 7.1(i) ................................................................................*passim*

Arconic Inc. (f/k/a/ Alcoa Inc.) and Arconic Domestic, LLC (f/k/a/ Alcoa Domestic, LLC, as successor in interest to A.P. New Jersey, Inc.) (collectively, "Arconic"), submits this Motion for Reconsideration of the Court's August 17, 2021, Opinion, ECF No. 418 ("Opinion") denying in part: Arconic's motion for summary judgment (ECF No. 345) against Waterside Construction, LLC, 38 COAH, LLC, North River Mews Associates, LLC ("North River"), River Road Improvement Phase II, Inc. ("RRIP"), Daibes Brothers, Inc., and Fred Daibes; and (2) Arconic's motion for summary judgment (ECF No. 351) against North River and 38 COAH and RRIP (together, the "Motions").

## PRELIMINARY STATEMENT

Arconic seeks reconsideration of this Court's August 17, 2021, Opinion and Order, pursuant to Local Rule 7.1, to correct a clear error of law brought about when the Court overlooked certain dispositive factual and legal matters presented in the Motions. Specifically, the Opinion does not address Arconic's argument that North River failed to provide any evidence—much less the required clear and convincing evidence—that Arconic *intended* to fraudulently induce North River into entering into the Purchase and Sale Agreement ("PSA") or 1997 Multi-Party Purchase Agreement ("MPAA") when it purchased the former Alcoa manufacturing facility in Edgewater. The second "clear error of law" occurred when the Court held that North River would be entitled to rescission of the PSA if successful on its fraudulent

1

inducement claim, although undoing a transaction that occurred twenty years ago would be impossible.

Finally, the Opinion identifies the "Waterside Defendants" as the parties to which its holdings apply, although the holdings should apply only to North River and RRIP.[1]

Once these errors are corrected, all of Arconic's Motions should be granted, inasmuch as this Court denied those Motions based solely on its ruling that the fraudulent inducement claim survived summary judgment, and that success by North River on that claim could result in rescission of the PSA.

## ARGUMENT

### The rulings on Arconic's Summary Judgment Motions overlooked dispositive legal and factual matters that warrant reconsideration.

A court may grant a motion for reconsideration under Local Civil Rule 7.1(i) if: (1) "an intervening change in the controlling law has occurred; (2) evidence not previously available has become available; or (3) it is necessary to correct a clear

---

[1] The PSA was signed on behalf of Arconic and North River. (Arconic's Statement of Undisputed Material Facts ("SUMF") ¶ 8; Certification of Dana B. Parker, dated September 11, 2020, ECF No. 359 ("Parker Cert."), Ex. 4, at A001400-A001401). The MPAA was signed by Arconic, North River, and RRIP. (SUMF ¶ 24; Parker Cert., Ex. 10). Accordingly, only North River can argue fraudulent inducement with respect to the PSA and MPAA. To the extent RRIP claims it was fraudulently induced to enter into the MPAA, despite failing to rely on separate facts to do so, Arconic's arguments rebutting such claim are the same as those directed to North River.

error of law or prevent manifest injustice." *Interfaith Cmty. Org. v. Honeywell Int'l, Inc.*, 215 F. Supp. 2d 482, 507 (D.N.J. 2002). *See also Max's Seafood Cafe ex rel. Lou-Ann, Inc. v. Quinteros*, 176 F.3d 669, 677 (3d Cir. 1999) (reconsideration warranted to address clear error of law and fact); *Sabatini v. Its Amore Corp.*, 455 Fed. Appx. 251, 255 (3d Cir. 2011) (reconsideration necessary to prevent "manifest injustice" based on new evidence presented by defendant); *Prudential Ins. Co. of Am. v. Bank of Am., Nat.' Ass'n*, No. 13-1586, 2014 WL 2999065, at *1 (D.N.J. Jul. 2, 2014) (reconsideration necessary to correct dismissal of claim with prejudice based on factual error).

A court commits a clear error of law "if the record cannot support the findings that led to the ruling." *ABS Brokerage Servs. v. Penson Fin. Servs., Inc.*, No. 09-4590, 2010 WL 3257992, at *6 (D.N.J. Aug. 16, 2010) (citing *United States v. Grape*, 549 F.3d 591, 603–04 (3d Cir. 2008). When the assertion is that the court "overlooked" something, the court must have overlooked "some dispositive factual or legal matter that was presented to it." *McGovern v. City of Jersey*, No. 98-5186, 2008 WL 58820, at *2 (D.N.J. Jan. 2, 2008).

This Motion raises matters of dispositive fact and law that were present in the briefing on the Motions, but were not in any way addressed in the August 17, 2021, Order and Opinion; therefore, they appear to have been overlooked by the Court and are appropriate for reconsideration.

3

> **A.   The Opinion does not address either North River's burden to prove "intent" as an element of its fraudulent inducement claim, or its complete failure to provide any evidence to satisfy that burden.**

The essential elements of a fraudulent inducement claim are: "(1) a material representation of a presently existing or past fact; (2) made with knowledge of its falsity; (3) with the intention that the other party rely thereon; (4) resulting in reliance by that party; (5) to his detriment." *Metex Mfg. Corp. v. Manson*, No. CIV. 05-2948 (HAA), 2008 WL 877870, at *4 (D.N.J. Mar. 28, 2008) (citing *Jewish Ctr. Of Sussex County v. Whale*, 86 N.J. 619 (1981)). A plaintiff must prove each element by "clear and convincing evidence." *Stochastic Decisions, Inc. v. DiDomenico*, 236 N.J. Super. 388, 395 (App. Div. 1989). Failure to prove any one of the four elements of a fraudulent inducement claim is fatal to the claim. *See, e.g.*, *TekDoc Servs., LLC v. 3i-Infotech Inc.*, 2013 WL 2182565, at *24 (D.N.J. May 20, 2013).

The Opinion notes the four elements of a claim for fraudulent inducement, but focuses solely on the second element—Arconic's alleged "knowledge" of the existence of the two undisclosed underground storage tanks. (Opinion, pp. 13-17). The Opinion notes: "The parties have focused on the knowledge requirement in their motions." (Opinion, p. 13). If this was intended to indicate that the parties focused *solely* on the knowledge requirement, the statement is incorrect. In its Opposition Brief, North River claimed in passing, without citing to anything in the record to support the assertion, that Arconic "*intentionally* failed to inform North River" of

4

the existence of the two USTs. (Op. Br., ECF No. 380, p. 14) (emphasis added). Arconic responded in its Reply[2] that North River does not offer "*any* evidence of Arconic's supposedly fraudulent intent." (Arconic Defendants' Reply Br. in Further Supp. Mot. Summ. J., ECF No. 395, dated Dec. 7, 2020 ("Reply Br.") at p. 5) (emphasis in original). Arconic further showed that the only evidence addressing this issue "conclusively rebuts North River's and RRIP's unsupported assertions of fraudulent intent by Arconic." (Reply Br. p. 7). Thus, the "intent" element of North River's fraudulent inducement claim was directly before the Court on the Motions. The failure to address this point constituted a "clear error of law" that entitles Arconic to relief under Local Rule 7.1(i).

The Court did not address the "intent" element by addressing the "knowledge" element; these two elements are separate, and North River was required to offer clear and convincing evidence of both in order to survive summary judgment. *See, e.g.*, *TekDoc Servs.*, 2013 WL 2182565, at *24. The finding that there is a genuine dispute of material fact as to Arconic's alleged *knowledge* of the USTs did not equate to a finding that there is a genuine dispute of material fact as to Arconic's *intent to misrepresent* the existence of the USTs. As shown in the Motions, North River has

---

[2] Arconic cites here to its Reply Brief in support of its Motion for Summary Judgment in the Edgewater matter because its Reply Brief in support of its summary judgment motions in the North River matter cross-references the Reply Brief in the Edgewater matter on this point. (*See* Reply Br. p. 3).

5

presented no evidence, clear and convincing or otherwise, establishing that Arconic intended to defraud North River. (Reply Br. 4-8). This alone is fatal to the fraudulent inducement claim. *See Katz v. Aetna Cas. & Sur. Co.*, 972 F.2d 53, 55 (3d Cir. 1992) (where nonmoving party fails "to make a showing sufficient to establish the existence of an element essential to that party's case, . . . there can be no genuine issue of material fact, since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." (internal quotation omitted)).

There is also ample undisputed evidence that Arconic affirmatively *did not* intend to defraud North River about the existence of the two USTs. For example, Kevin McKnight, Arconic's Vice President of Environmental Health & Safety, testified that, before it sold the property to North River, Arconic provided historic maps, diagrams, environmental reports, and blueprints of the site, which showed the presence of the two storage tanks under Building 12 to Amir Daibes. (Reply Br., p. 6; SUMF ¶ 19; Parker Cert., Ex. 7, at 591:4-593:16). The undisputed evidence also includes contemporaneous notes from McKnight reflecting Amir Daibes' request for, and Arconic's mailing of, the plant drawings. (Parker Cert., Ex. 8).

Further evidence that Arconic sent documents reflecting the additional USTs comes from a June 24, 1997, letter from Margaret Novacky, an Alcoa paralegal, to Amir Daibes. (Parker Cert., Ex. 9). That letter enclosed blueprints dating back to

6

1915, and advised that Alcoa was providing original drawings of the Edgewater Works under separate cover. (*Id.*). The letter also shows that the closing on the sale of the Property had not occurred when Arconic sent the documents: "You are welcome to keep these original drawings and microfilm blueprints, but if for some reason the sale does not take place, we would appreciate your returning them to us." (*Id.*). If Arconic sent—or even *intended* to send and for some unknown reason never sent drawings and blueprints showing the two USTs to Amir Daibes, this is flatly inconsistent with North River's unsupported theory that Arconic intended to defraud North River about the existence of the USTs.

The evidence offered by North River did not prove intent, rebut evidence showing a lack of intent, and did not create a genuine issue of material fact. First, North River points to testimony of Fred Daibes that Amir Daibes was not an employee of North River. (Certification of Jason T. Shafron, dated November 6, 2020, ECF No 384 ("Shafron Cert."), Ex. U at 45:14-45:23). At most, this testimony indicates that McKnight may have been mistaken in understanding that Amir Daibes was the engineer "managing the demolition work for Fred Daibes," (Parker Cert., Ex. 7 at 591:24-592:2), but it does not rebut McKnight's testimony that he *believed* that to be Amir Daibes' position. Thus, the undisputed evidence remains that McKnight believed that Arconic was sending the drawings to a representative of

7

North River or Fred Daibes on the project, which is inconsistent with an intent to defraud. Indeed, it shows the exact opposite.

Second, North River cites to the deposition testimony of Fred Daibes that he did not recall having received the drawings:

> Q. Do you recall ever receiving any blueprints or maps of the former Alcoa property before you purchased it?
>
> A. I did not.
>
> Q. You don't recall or you did not receive them?
>
> A. I don't recall receiving them.

(North River's Additional Statement of Undisputed Material Facts, ECF No. 328-1, ("NR SUMF") at 48, ¶ 45; Shafron Cert., Ex. U, 44:23-45:4). But testimony by *Fred Daibes* that he did not *recall* having received the blueprints plainly does not rebut evidence that Arconic *intended* to send the blueprints, they *were* sent to *Amir Daibes* and he *did* receive them.

The only other evidence North River cites on this point is that, "[d]uring discovery in this matter, it was revealed that these documents remained in Alcoa's possession." (NR SUMF at 48, ¶ 46; Shafron Cert., Ex. Q, at 617:1-11). But the cited evidence says no such thing:

> Q. So currently, Alcoa is in possession of the binders that were created from the microfiche back in 1997, and the microfiche?
>
> A. That would be my understanding. I don't think anybody would have thrown that away. I believe we probably still have the original microfiche that, you know, is there at ATC. That would be my understanding.

8

(Shafron Cert., Ex. Q, at 617:1-11; *see also* Parker Cert., Ex. 7, at 591:4-593:16). The fact that the drawings were in Arconic's possession in 2017 when McKnight's deposition was taken is not indicative of whether they were sent to Amir Daibes *20 years earlier*. Nor does it rebut other testimony from McKnight that Arconic intended to send the drawings in 1997, the drawings were sent, and that Arconic had asked that they be returned. (SUMF ¶ 19; Parker Cert., Ex. 7) ("I think they were so voluminous that I told them to just go ahead and send him the documents and then ask for them back . . .").

Finally, Arconic offered undisputed evidence that it would have been impossible for it to have had the requisite intent to fraudulently induce North River into entering into the PSA or the MPAA, or into closing on the Property. The undisputed evidence is that Fred Daibes first decided months *after* the closing not to demolish Building 12. (SUMF ¶ 34; Parker Cert., Ex. 15). There is no evidence that anyone from Arconic knew or even suspected this might happen when the parties entered into the PSA and MPAA and closed on the property. Moreover, if North River had gone ahead with demolishing Building 12 along with the other buildings, which was the express intent of the parties at the time of the sale, the USTs under Building 12 would have been discovered and *Arconic* would have paid for their removal and remediation as part of the overall cost of the demolition and remediation. Therefore, the only way Arconic would have intentionally concealed

9

the existence of the USTs or intentionally failed to produce evidence of them prior to the sale, for the purpose of fraudulently inducing North River into purchasing the property, is if Arconic had divined *before* the sale that North River would insist on not demolishing Building 12 months *after* the sale,. A fanciful scenario, a factual impossibility unsupported by any evidence, does not create a "genuine issue of material fact" precluding summary judgment in Arconic's favor on the fraudulent inducement claim. *Razak v. Uber Techs., Inc.*, 951 F.3d 137, 144 (3d Cir.) *amended*, 979 F.3d 192 (3d Cir. 2020) (quotation omitted).

All of the points and evidence discussed above were before the Court on the Motions and, therefore, are properly considered here in answering the question: Did the Court overlook dispositive legal and factual matters that warrant reconsideration? Respectfully, the answer must be yes. The Court erred in failing to find that North River produced no clear and convincing evidence to satisfy its burden to prove the "intent" element of its fraudulent inducement claim. That claim, therefore, should have been dismissed.

### B. The Court errantly held that, if successful on its fraudulent inducement claim, North River would be entitled to rescission of the PSA.

The Court held in the Opinion that, if North River is successful in proving fraudulent inducement, it is entitled to rescission of the PSA. (*See* Opinion, pp. 17, 18, 32). Arconic moves for reconsideration of this ruling because both the law and

10

the facts before the Court on the Motions precluded the Court from reaching this conclusion. The ruling is therefore appropriately reconsidered and revised on this Motion under Local Rule 7.1(i). *See ABS Brokerage Servs.*, 2010 WL 3257992, at *6 (a court commits an error of law "if the record cannot support the findings that led to [the] ruling" or the ruling will result in "manifest injustice.").

"Rescission is an equitable remedy and only available in limited circumstances." *Cooper v. Borough of Wenonah,* 977 F. Supp. 305, 316 (D.N.J. 1997) (citing *Hilton Hotels Corp. v. Piper Co.,* 214 N.J. Super. 328, 336 (1986)). "Even where grounds for rescission exist, . . . the remedy is discretionary." *Intertech Assocs., Inc. v. City of Paterson*, 255 N.J. Super. 52, 59 (App. Div. 1992) (citations omitted). "[A] court must apply rescission only in circumstances where it is clear that the court can return the parties to the 'ground upon which they originally stood.'" *Mercedes–Benz USA LLC v. Coast Auto. Group, Ltd.,* 2006 WL 2830962, at *14 (D.N.J. Sept. 29, 2006) (quoting *Driscoll v. Burlington-Bristol Bridge Co.*, 28 N.J. Super. 1, 4 (App. Div. 1953)).

Courts faced with contracts governing complex transactions that occurred in the distant past regularly find rescission impossible and decline to grant that relief. For example, *Hilton Hotels Corp. v. Piper Co*., involved the sale of a motel and pub. 214 N.J. Super. 328, 331 (Ch. Div. 1986). The court dismissed the defendant's rescission claim because the remedy was effectively foreclosed by the passing of six

11

years since the original transaction and the resulting financial entanglement related to the property. *Id.* at 336. "Any effort to return these parties to the position they held six years ago is neither realistic nor fair." *Id.*

In *Walter v. Holiday Inns, Inc.*, the defendant bought out the interest of his fellow partners in a casino business venture. 784 F. Supp. 1159, 1161 (D.N.J. 1992). The former partners later sued the defendant requesting rescission of the buy-out. *Id.* at 1163. The court found that the passage of ten years since the initial buy-out, coupled with the defendant's influx of millions of dollars of capital towards developing and maintaining the casino, made it "virtually impossible for the court to 'unmake' the buy-out transaction so as to restore the parties to the status quo ante." *Id.* at 1166.

In *Mercedes-Benz, U.S.A. LLC v. Coast Auto. Grp., Ltd.,* the plaintiff terminated the franchise held by the defendant car dealer and brought suit seeking an injunction against the defendant's diluting the plaintiff's trademark and seeking rescission of the franchise agreement. No. CIV A 99-3121 WHW, 2006 WL 2830962, at *1 (D.N.J. Sept. 29, 2006). Noting the passage of seven years since the commencement of the case, and the complicated relationship between the parties, the court found that attempting to return the parties to the "'ground upon which they originally stood' would be an exercise in futility." *Id.* at *15. The court further noted that, "[t]hroughout this long relationship, both parties have expended large

amounts of capital and unmaking these transactions would be next to impossible."
*Id.*

Like *Hilton Hotels*, *Walter*, and *Mercedes-Benz*, the circumstances here make rescission of the PSA impossible. The undisputed facts are that Arconic sold North River the entirety of the Former Alcoa Property more than twenty years ago, pursuant to the PSA. (SUMF ¶ 9). Thereafter, all buildings on the site except Building 12 were razed and all contamination at the site remediated in accordance with the PSA and MPAA. (SUMF ¶ 27). In 2009, the portion of the Property that contained Building 12 was subdivided, and the remainder of the Property was sold to a third party and is now occupied by a large housing development. (NR SUMF at 49, ¶ 53; Shafron Cert., Ex. WW, at W009273).[3] As such, North River no longer owns the majority of the Property and that part of the sale from Arconic to North River literally cannot be undone.

Moreover, North River leased the Building 12 parcel to another third party in 2012. (SUMF ¶ 51). A different third party then demolished Building 12 and

---

[3] For further support that North River sold most of the former plant site, Arconic requests the Court take judicial notice of an NJDEP Site Remediation Program investigative report noting the 1999 sale of the non-Building 12 parcel to Avalon Bay for $13.5 million. This NJDEP report was obtained by way of an Open Public Records Act request and produced during discovery. Relevant portions of the NJDEP report is attached to the Certification of Michael Waller, dated August 31, 2021, at Ex. 1.

redeveloped the Property into a business now operated by defendant Hudson Spa. (SUMF ¶ 52). Unwinding all of these transactions would be impossible, and even if possible it would still not restore the Parties to the status quo ante.

This Court cannot return the Parties to the "'ground upon which they originally stood," which makes rescission inappropriate. *Driscoll*, 28 N.J. Super. at 4. Therefore, the Court's finding that the PSA would be subject to rescission if North River prevailed on its fraudulent inducement claim was a clear error of law and fact that must be corrected.

Correction of this clear error means two things. First, because this Court held that if North River succeeds on its fraudulent inducement claim, the PSA will be subject to rescission, the claim must be dismissed. (Opinion, p. 17). Second, all of the Motions that the Court denied must be granted, inasmuch as the denials were based solely on the ruling that the fraudulent inducement claim survived summary judgment and could result in rescission of the PSA. (*See* Opinion, p. 17 ("The Waterside Defendants assert that Arconic's alleged fraudulent inducement invalidates the contracts. The resolution of this dispute of fact is therefore preliminary to the resolution of any of the parties' claims which implicate the contracts."); pp. 17-18 ("If the Waterside Defendants succeed on their fraudulent inducement claim, then the PSA will be subject to rescission. Thus, the genuine issue of material fact that precluded summary judgment as to fraudulent inducement

14

likewise precludes summary judgment as to the Counterclaim for indemnification."); p. 18 ("For the same reason that the Court denied summary judgment as to Arconic's Counterclaim for indemnification, the Court denies summary judgment on North River's Counts One through Five against Arconic. If the PSA is subject to rescission, then its release will be inapplicable."); p. 19 ("Because the existence of a valid contract is a requirement for there to have been an actionable breach of such contract, summary judgment is denied.").

## CONCLUSION

For the foregoing reasons, Arconic respectfully requests that the Court (i) grant its Motion for Reconsideration of the Court's August 17, 2021, Order and Opinion, (ii) grant summary judgment in Arconic's favor on its Counterclaims against North River and RRIP, and (iii) dismiss all claims by North River against Arconic.

Dated: August 31, 2021

Respectfully submitted,
**K&L GATES LLP**

By: */s/ Michael E. Waller*
Michael E. Waller
*Attorneys for Arconic Inc. (f/k/a Alcoa Inc.) and Arconic Domestic, LLC (f/k/a Alcoa Domestic LLC, as successor in interest to A.P. New Jersey, Inc.)*

15