Not for Publication

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

BOROUGH OF EDGEWATER,

    Plaintiff,

v.

WATERSIDE CONSTRUCTION, LLC; 38 COAH , LLC; DAIBES BROTHERS, INC.; NORTH RIVER MEWS ASSOCIATES, LLC; FRED A. DAIBES; TERMS ENVIRONMENTAL SERVICES, INC.; ALCOA INC.; ALCOA DOMESTIC, LLC, as successor in interest to A.P. NEW JERSEY, INC.; HUDSON SPA, LLC; JOHN DOES 1-100; ABC CORPORATIONS 1-100,

    Defendants

and

WATERSIDE CONSTRUCTION, LLC; 38 COAH LLC; DAIBES BROTHERS, INC.; NORTH RIVER MEWS ASSOCIATES, LLC; FRED A. DAIBES,

    Defendants/ Third-Party Plaintiffs

v.

NEGLIA ENGINEERING ASSOCIATES,

    Third-Party Defendants,

and

ALCOA DOMESTIC, LLC as successor in interest to A.P. NEW JERSEY, INC.,

    Defendant/Third-Party Plaintiff,

Civil Action No. 14-5060

**OPINION**

> v.
>
> COUNTY OF BERGEN; RIVER ROAD IMPROVEMENT PHASE II, INC.; HUDSON SPA, LLC,
>
>     Third-Party Defendants.

**John Michael Vazquez, U.S.D.J.**

    Presently before the Court is a motion for summary judgment (D.E. 342) filed Hudson Spa, LLC ("Hudson Spa"). The Court has reviewed all submissions made in support and in opposition to the motions and considered the motions without oral argument pursuant to Fed. R. Civ. P. 78(b) and L. Civ. R. 78.1(b). For the reasons stated below, Hudson Spa's motion for summary judgment (D.E. 342) is **GRANTED**.[1]

**I.    BACKGROUND**

    This matter stems from an allegation that the Waterside Defendants used polychlorinated biphenyl ("PCB")[2] contaminated material as fill in a public park project. The park is owned by Plaintiff Borough of Edgewater, but the contaminated materials (or at least some of them) came

---

[1] The current motion is part of a large number of motions for summary judgment filed in this matter. All pending motions are listed in the Procedural History section of this Opinion. If the Court were to address all motions in a single opinion, the results would be unwieldly. As a result, the Court addresses the motions individually or in a group. The Court also does not repeat each and every alleged fact in each opinion. Instead, the Court focuses on the facts pertinent to each motion (or motions) as asserted by the parties to the motion(s). Therefore, if the facts in one opinion appear to be distinguishable from facts in another opinion, it is because those are the facts asserted by the party or parties in its/their respective motions.

[2] According to the Environmental Protection Agency, PCBs are a group of man-made organic chemicals consisting of carbon, hydrogen and chlorine atoms. *United States Environmental Protection Agency, Learn about Polychlorinated Biphenyls* (PCBs), https://www.epa.gov/pcbs/learn-about-polychlorinated-biphenyls-pcbs. PCBs have been demonstrated to cause a variety of adverse health effects. *Id.*

from a property previously owned by Alcoa Corporation ("Alcoa"), now known as Arconic. Because Edgewater does not oppose the current motion, the Court refers to the additional relevant facts in the analysis section below.

Edgewater first filed suit on August 12, 2014. D.E. 1. On February 27, 2018, the separate matters docketed as 14-8129 and 14-50560 were consolidated. D.E. 255. Multiple parties have filed multiple motions for summary judgment in this matter. The motions are as follows:

- Motion by TERMS for summary judgment against Edgewater (D.E. 343);
- Motion by Hudson Spa for summary judgment against Edgewater (D.E. 342);
- Motion by Arconic for summary judgment against Edgewater (D.E. 344);
- Motion by Arconic for summary judgment against Fred Daibes and North River;
- Motion by Bergen County for summary judgment against Alcoa, North River, and RRIP (D.E. 346);
- Motion by Edgewater for summary judgment against the Waterside Entities on Count XI (D.E. 347);
- Motion by Edgewater for summary judgment against the Waterside Entities on Counts II and VI (D.E. 348);
- Motion by Edgewater for summary judgment against Alcoa on Count I (D.E. 349);
- Motion by Edgewater for summary judgment against the Waterside Entities on Count I (D.E. 350);
- Motion by Arconic for summary judgment against North River, 38 COAH, and RRIP (D.E. 351);
- Motion by Edgewater for summary judgment against Alcoa on Count II (D.E. 352); and
- Motion by Edgewater for summary judgment against the Waterside Entities on Count II (D.E. 353).

This Opinion address only the motion for summary judgment filed by Hudson Spa (D.E. 342).

## II. LEGAL STANDARD

A moving party is entitled to summary judgment where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact in dispute is material when it "might affect the outcome of the suit

under the governing law" and is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Disputes over irrelevant or unnecessary facts will not preclude granting a motion for summary judgment. *Id.* "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the nonmoving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.'" *Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004) (quoting *Anderson*, 477 U.S. at 255)). A court's role in deciding a motion for summary judgment is not to evaluate the evidence and decide the truth of the matter but rather "to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249.

A party moving for summary judgment has the initial burden of showing the basis for its motion and must demonstrate that there is an absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). After the moving party adequately supports its motion, the burden shifts to the nonmoving party to "go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Id.* at 324 (internal quotation marks omitted). To withstand a properly supported motion for summary judgment, the nonmoving party must identify specific facts and affirmative evidence that contradict the moving party. *Anderson*, 477 U.S. at 250. "[I]f the non-movant's evidence is merely 'colorable' or is 'not significantly probative,' the court may grant summary judgment." *Messa v. Omaha Prop. & Cas. Ins. Co.*, 122 F. Supp. 2d 523, 528 (D.N.J. 2000) (quoting *Anderson*, 477 U.S. at 249-50)).

Ultimately, there is "no genuine issue as to any material fact" if a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case." *Celotex*

*Corp.*, 477 U.S. at 322.  "If reasonable minds could differ as to the import of the evidence," however, summary judgment is not appropriate.  *See Anderson*, 477 U.S. at 250-51.

### III. DISCUSSION

Plaintiff Borough of Edgewater ("Edgewater") and defendants Arconic Inc. (f/k/a Alcoa Inc.) and Arconic Domestic, LLC (f/k/a Alcoa Domestic LLC, as successor in interest to A.P. New Jersey, Inc.) (collectively "Arconic") each have pending claims against Hudson Spa.  D.E. 250, 256.  Hudson Spa's motion addresses only the claims for negligence and liability under the Spill Act.[3]  Further, while Hudson Spa's motion appears to address the claims asserted against it by Plaintiff, the motion notes that it moves on all claims asserted against it, and Arconic has opposed the motion.  Edgewater has not opposed or otherwise responded to Hudson Spa's motion.[4]

#### A. Negligence Claims

Hudson Spa moves for summary judgment on the negligence claims asserted by Edgewater.  "The fundamental elements of a negligence claim are a duty of care owed by the defendant to the plaintiff, a breach of that duty by the defendant, injury to the plaintiff proximately caused by the breach, and damages."  *Shields v. Ramslee Motors*, 223 A.3d 172, 176 (N.J. 2020) (quoting *Robinson v. Vivirito*, 86 A.3d 119, 124 (N.J. 2014)).  "Whether a duty of care exists is a question of law that must be decided by the court."  *Jerkins ex rel. Jerkins v. Anderson*, 922 A.2d 1279, 1284 (N.J. 2007) (citation omitted).  "In making that determination, the court must first

---

[3] Hudson Spa's brief in support of its motion (D.E. 342-2) does not address the CERCLA claims asserted against it, and the Court will therefore not rule on those claims.

[4] Hudson Spa's brief in support of its motion (D.E. 342-2) will be referred to as "HS Brf."; Arconic's brief in opposition (D.E. 372) will be referred to as "Arconic Brf."; Hudson Spa's brief in reply (D.E. 392) will be referred to as "HS Reply."

consider the foreseeability of harm to a potential plaintiff . . . and then analyze whether accepted fairness and policy considerations support the imposition of a duty[.]" *Id.* (citations omitted).

Hudson River is the tenant of the property owned by North River Views Associates, LLC ("North River"), and entered into a Ground Lease on April 5, 2012. Hudson Spa argues that there is no evidence that it played any role in connection with the contamination at Veterans Field. HS Brf. at 6. Hudson Spa asserts it could not have been negligent because it did not control selection of the developer who constructed improvements on the Hudson Spa's leased property and because Hudson Spa was not involved with the construction or removal of debris from the site. HS Brf. at 7. Hudson Spa further asserts that it had no knowledge that toxic substances were located on the land, and points to the Ground Lease. D.E. 342, Ex. A ("Lease"). The Lease contains a section titled "Toxic Waste" which states that the Landlord "warrants and represents that to the best of it [sic] knowledge the Premises does not now contain any hazardous, toxic materials, fuel storage tanks or polychlorinated biphenyls or any other substances defined by the appropriate governmental authority as a hazardous waste." Lease, § 16.15.

No party has opposed Hudson Spa's motion as to the negligence claims asserted against it.[5] The Court finds that Hudson Spa has met its burden on summary judgment, and Hudson Spa's motion as to the negligence claims asserted against it is granted.

### B. Spill Act Claims

Hudson Spa next moves for summary judgment as to the Spill Act claims asserted against it. The Spill Act is the New Jersey analog to the Comprehensive Environmental Response,

---

[5] As noted, Edgewater failed to respond at all to Hudson Spa's motion. Arconic's brief in opposition does not address the negligence claim.

6

Compensation, and Liability Act ("CERCLA")[6] and was passed before CERCLA. Like CERCLA, the Spill Act permits courts to "allocate the costs of cleanup and removal among liable parties using such equitable factors as the court determines are appropriate." *Litgo New Jersey Inc. v. Comm'r New Jersey Dep't of Env't Prot.*, 725 F.3d 369, 392 (3d Cir. 2013). The Spill Act imposes strict joint and several liability on any person who has discharged a hazardous substance. *NJDEP v. Gloucester Environmental Mgmt. Servs., Inc.*, 821 F. Supp. 999, 1009 (D.N.J. 1993). Liability under the Spill Act arises "whether the discharge was the result of 'intentional or unintentional' acts or omissions. *Morris Plains Holding VF, LLC v. Milano French Cleaners, Inc.*, No. A-0604-16T1, 2018 WL 1882956, at *1 (N.J. Super. Ct. App. Div. Apr. 20, 2018) (citing N.J.S.A. 58:10-23.11b).

In addition to liability as a direct discharger, the Spill Act provides that one who is "in any way responsible for any hazardous substance" is strictly liable, upon its discharge, for "all cleanup and removal costs no matter by whom incurred." *New Jersey Dep't of Env't Prot. v. Dimant*, 51 A.3d 816, 829 (2012) (citing N.J.S.A. 58:10–23.11g(c)(1)). However, in "an action to obtain damages, authorized costs and other similar relief under the Act there must be shown a *reasonable link* between the discharge, the putative discharger, and the contamination at the specifically damaged site." *Dimant*, 51 A.3d at 833 (emphasis added).

In *Dimant*, the New Jersey Supreme Court addressed the liability of a dry cleaner for groundwater contamination. In analyzing the requisite nexus for liability under the Spill Act, the *Dimant* court concluded that the phrase "in any way responsible" requires some connection

---

[6] At the same time, there are some important differences between the Spill Act and CERCLA. *New Jersey Dep't of Env't Prot. v. Dimant*, 51 A.3d 816, 831-32 (2012) (reviewing differences between the two acts as to liability and causation).

between the discharge complained of and the alleged *discharger*. *Id.* at 830. Once a party is found responsible for a discharge, the court in *Dimant* continued, there also must be a nexus between the discharge and the contaminated site for which cleanup costs are incurred. *Id.* at 831. The New Jersey Supreme Court concluded that "through the requirement of a connection between the discharge, over which the party had some control or responsibility, and the Spill Act response to the damage, the focus in the Spill Act remains on proof of a connection between the discharge complained of and the resultant Spill Act response." *Id*. at 831.

Hudson Spa argues that there is no evidence it had any responsibility for the discharge at Veterans Field. HS Brf. at 9. Hudson Spa states that it

> did not facilitate the removal of the hazardous substances, had no connection to the existence of the hazardous substances on the subject premises, were assured in the Ground Lease that there were no hazardous substances existing on the premises, and were informed in the developer's agreement that the developer would act in accordance with law and obtain permits prior to removing materials from the site.

HS Brf. at 9.

Hudson Spa has met its initial burden of showing the basis for its motion and demonstrating that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden now shifts to Edgewater. Edgewater, as noted, has not filed a brief in opposition. Further, Edgewater's statement of facts, D.E. 319-1, does not mention Hudson Spa.

Arconic filed a brief in opposition, though its claim for contribution under the Spill Act is now moot because the Court previously ruled that Arconic is not liable to Edgewater under the

Spill Act. D.E. 415, 416.[7] But even if the Court had not ruled in Arconic's favor, the Court would nevertheless grant Hudson Spa's motion as to Arconic.

Arconic's brief points out that E. Rae Jo, the managing member of Hudson Spa, contracted with Waterside Construction, LLC "to conduct the demolition of Building 12." Arconic Brf. at 2. The Agreement Arconic cites is a developer's agreement between The Heaven, LLC and Waterside Construction, LLC. (D.E. 371-1). Arconic does not explain the relationship between The Heaven, LLC and Hudson Spa. Further, without more, the developer's agreement is insufficient to create a genuine dispute of material fact as to Hudson Spa's liability under the Spill Act for the contamination at Veterans Field.

Hudson Spa's motion as to the Spill Act claims asserted against it is therefore granted.

## IV. CONCLUSION

Hudson Spa's motion for summary judgment (D.E. 342) is **GRANTED**. An appropriate Order accompanies this Opinion.

Dated: September 29, 2021

                                                  John Michael Vazquez, U.S.D.J.

---

[7] Edgewater has moved for reconsideration of the Court's Spill Act decision as to Arconic.