# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| BOROUGH OF EDGEWATER,<br><br>Plaintiff,<br><br>v.<br><br>WATERSIDE CONSTRUCTION, LLC, et als.<br><br>Defendants. | HON. JOHN MICHAEL VAZQUEZ, U.S.D.J.<br><br>Civ. Action No.  2:14-cv-05060 |
| NORTH RIVER MEWS ASSOCIATES, LLC<br>and 38 COAH ASSOCIATES, LLC,<br><br>Plaintiffs,<br><br>v.<br><br>ALCOA CORPORATION, A.P. NEW<br>JERSEY, INC., et als.<br><br>Defendants. | Civil Action No. 2:14-cv-08129<br><br><br><br>**FINAL PRETRIAL ORDER** |

This matter having come before the Court for a pretrial conference; Timothy Corriston, Esq. having appeared for Plaintiff, Borough of Edgewater; Jason Shafron, Esq. having appeared for the Waterside Parties[1]; Charles Rysavy, Esq. and Dana Parker, Esq. having appeared for the Arconic Parties[2]; Eric B. Levine, Esq. having appeared for Defendant, TERMS Environmental Services, Inc.; and Kevin C. Corriston, Esq. having appeared for Defendant/Third-Party Defendant, Hudson Spa, LLC[3]; the Final Pretrial Order is hereby entered:

---

[1] Defendants Waterside Construction, LLC; 38 COAH, LLC; North River Mews Associates, LLC; Daibes Brothers, Inc. and Fred A. Daibes and Third-Party Defendant, River Road Improvement Phase II, Inc. in Civil Action No. 2:14-cv-05060 and Plaintiffs North River Mews Associates, LLC and 38 COAH Associates, LLC in Civil Action No. 2:14-cv-08129, collectively herein "Waterside Parties."
[2] Defendant Arconic Inc. (formerly Alcoa Inc.) and Defendant/Third-Party Plaintiff Arconic Domestic, LLC (formerly Alcoa Domestic LLC as Successor-In-Interest to A.P. New Jersey, Inc.) in Civil Action No. 2:14-cv-05060 and Defendants Arconic Inc. (formerly Alcoa Corporation) and Arconic Domestic, LLC (formerly Alcoa Domestic LLC as Successor-In-Interest to A.P. New Jersey, Inc.) in Civil Action No. 2:14-cv-08129, collectively herein "Arconic Parties."
[3] Hudson Spa Club, LLC is the Successor-in-Interest to The Heaven, LLC.

1. **Jurisdiction** (set forth specifically): This action arises under the federal law, Sections 107(a) and 113(b) of the Comprehensive Environmental Response, Compensation and Liability Act of 1980, as amended, 42 U.S.C. §9601 et seq. ("CERCLA"), 42 U.S.C. §§9607(a) and 9613(b), and for violations of New Jersey State law.  In addition, the Declaratory Judgments Act, 28 U.S.C. §2201, and Section 113(g)(2) of CERCLA, 42 U.S.C. §9613(g)(2), authorize this Court to grant Plaintiff declaratory relief. This is a Civil Action over which the United States District Court has original jurisdiction pursuant to 28 U.S.C. §1331.  This court also has supplemental jurisdiction over Plaintiff's state law claims for relief pursuant to 28 U.S.C. §§1388 and 1367(a) and for the additional reason that those claims are joined with substantially related claims and arise out of the same common nucleus of operative facts and Plaintiff's federal law claims.  This court is also one of proper venue pursuant to Section 113(b) of CERCLA because the releases or threatened release alleged herein occurred in the District of New Jersey.

2. **Trial Date**:  To Be Determined

3. **Estimated Length of Trial**:  4-6 weeks

4. **Trial Counsel** (include contact numbers and email addresses).

    A.  Plaintiff, Borough of Edgewater:

        Timothy E. Corriston, Esq.
        Meghan K. Musso, Esq.
        Christina Sartorio Ku, Esq.
        Connell Foley LLP
        56 Livingston Avenue
        Roseland, NJ 07068
        (973) 535-0500
        tcorriston@connellfoley.com
        mmusso@connellfoley.com
        csartorio@connellfoley.com

    B.  Waterside Parties:

        Jason T. Shafron, Esq.
        Jonathan Vender, Esq.
        Shafron Law Group
        Two University Plaza, Suite 400
        Hackensack, NJ 07601
        (201) 343-7200
        jshafron@shafronlaw.com
        jvender@shafronlaw.com

    C.  Arconic Parties:

6895630-1

Charles F. Rysavy, Esq.
Dana Parker, Esq.
K&L Gates LLP
One Newark Center, Tenth Floor
Newark, NJ 07102
(973) 848-4053
charles.rysavy@klgates.com
dana.parker@klgates.com

D.  Defendant, TERMS Environmental Services, Inc.:

Eric B. Levine, Esq.
Blake Miller, Esq.
Lindabury, McCormick, Estabrook & Cooper, P.C.
53 Cardinal Drive
P.O. Box 2369
Westfield, NJ 07091
(908) 233-6800
Cell: (201) 240-6016
elevine@lindabury.com
bmiller@lindabury.com

E.  Defendant, Hudson Spa, LLC:

Kevin C. Corriston, Esq.
Breslin and Breslin, P.A.
41 Main Street
Hackensack, NJ 07601
(201) 342-4014
kcorriston@breslinandbreslin.com

5.  **Pending/Contemplated Motions** (set forth all pending or contemplated motions):[4]

A.  Plaintiff, Borough of Edgewater anticipates filing the following motions:

a.  See **Exhibit 1.**

B.  The Waterside Parties anticipate filing the following motions:

1.  Motion to preclude the parties from introducing evidence of any criminal conviction of Fred Daibes, any criminal charges or pleadings against Fred

---

[4] Judge Vazquez anticipates that the pending and contemplated motions will be limited to in limine motions.  Judge Vazquez's judicial preference is to have all dispositive and Daubert motions decided prior to the final pretrial conference unless otherwise directed by the Court.  All discovery motions should be resolved well in advance of the final pretrial conference.

6895630-1

Daibes, any plea agreement of Fred Daibes, and any findings during any proceeding on a plea of Fred Daibes.

2.    Motion to preclude the parties from introducing evidence of any criminal conviction of Michael McManus, any criminal charges or pleadings against Michael McManus, any plea agreement of Michael McManus, and any findings during any proceeding on a plea of Michael McManus.

3.    Motion to preclude the parties from introducing evidence concerning other civil matters involving Fred Daibes.

4.    Motion to preclude the parties from introducing evidence of the Matter of 38 COAH Associates, LLC, Respondent, Proceeding under the Toxic Substances Control Act, Docket No. TSCA-02-2015-9101.

5.    Motion to preclude the parties from introducing evidence of Consent Agreement and Final Order in the Matter of 38 COAH Associates, LLC, Respondent, Proceeding under the Toxic Substances Control Act, Docket No. TSCA-02-2015-9101.

6.    Motion to preclude the parties from introducing evidence of the June 2014 New Jersey Department of Environmental Protection ("NJDEP") Notice of Violation to Waterside Construction.

7.    Motion to preclude the parties from introducing evidence of any action, proceeding, and/or matter of the U.S. Environmental Protection Agency and/or the NJDEP against Defendants Waterside Construction LLC, 38 COAH Associates LLC, and/or North River Mews Associates LLC in any way related to the demolition of Building 12, crushed concrete from Building 12, and/or Veterans Field.

8.    Motion to preclude the parties from referring to any group of parties as the Daibes Defendants and/or the Daibes Parties.

9.    Motion to preclude the parties from introducing evidence of the adverse health effects of exposure to PCBs.

10.    Motion to preclude the Borough of Edgewater from asserting that costs and/expenses incurred or paid as a result of the re-design of Veterans Field are damages.

11.    Motion to preclude the Borough of Edgewater from asserting that alleged avoided disposal costs of defendants are damages.

12.    Motion to preclude the Borough of Edgewater from asserting that any damages awarded to TERMS in connection with TERMS counterclaim

4

against Edgewater are damages for which Defendants Waterside Construction, LLC; 38 COAH Associates, LLC; Daibes Brothers, Inc.; North River Mews Associates, LLC; and Fred A. Daibes are liable.

13. Motion to preclude Steven Wielkotz from testifying that any cost or expense was incurred or paid as a result of contamination at Veterans Field, for the investigation of environmental conditions at Veterans Field, and/or for the remediation of Veterans Field.

14. Motion to bar the Borough of Edgewater from asserting to the jury, requesting, referring to, or introducing evidence regarding, alleged damages for costs related to the purchase and installation of any amenities, facilities, or other improvements at Veterans Field that were not installed at Veterans Field as of October 3, 2013.

15. Motion to preclude lay opinion testimony of Steven Wielkotz, Daniel Lattanzi, Thomas Bambrick, Irving Cohen, Jason Menzella, and John Gear.

16. Motion to preclude the testimony of Bernard T. Delaney, Ph.D., P.E., BCEE, or anyone else on behalf of First Environment, Inc., pursuant to Fed. R. Civ. P. 702.

17. Motion to preclude the testimony of Steven Wielkotz, pursuant to Fed. R. Civ. P. 702, if the Borough of Edgewater proffers him as an expert witness.

18. Motion to preclude the testimony of Jonathan Perse, LSRP, or anyone else on behalf of GEI Consultants, Inc., pursuant to Fed. R. Civ. P. 702.

19. Motion to preclude the testimony of Steven O. Helgen and Kevin P. Brodock, pursuant to Fed. R. Civ. P. 702.

20. Motions to preclude testimony of proposed expert witnesses of Borough of Edgewater, Arconic Parties, and TERMS Environmental Services, Inc.

C. The Arconic Parties anticipate filing the following motions:

Motion for sanctions/adverse inference charge against the Daibes Defendants for failure to preserve physical evidence of underground storage tanks, contents thereof, allegedly contaminated concrete, and allegedly contaminated soil, and destroying same without notifying Arconic in advance.

Motion for sanctions/adverse inference charge against the Borough for failure to preserve for inspection and analysis bricks, tile, and concrete fragments allegedly found at Veterans Field that allegedly came from Building 12.

Motion to bar Fred Daibes from testifying as to the meaning of, or his understanding of, the terms of any contract(s) at the time the contracts were entered into between Arconic and NRM and/or RRIP, which Fred Daibes admitted in his deposition testimony he did not read prior to signing.

Motion to bar any witness from testifying to what Arconic "knew," "understood," or "believed" as a corporation at any time.

Motion to dismiss NRM's "claim" for damages for rescission, based on:

> (a) NRM's failure to plead rescission in any form other than as an affirmative defense to Arconic's breach of contract claim; and

> (b) NRM's failure to offer expert opinions regarding damages based on real estate values at relevant time periods.

Motion to bar the Borough from asserting to the jury, requesting, referring to, or introducing evidence regarding, alleged damages for remediation below the 10 ppm NJDEP presumptive remedy (2013 NJDEP Presumptive and Alternative Remedy Technical Guidance; N.J.A.C. 7:26E 5.3 and TSCA (NJDEP 2013b).

Motion to bar the Borough from asserting to the jury, requesting, referring to, or introducing evidence regarding, alleged damages for costs related to the purchase and installation of any amenities, facilities, or other improvements at Veterans Field that were not installed at Veterans Field as of October 3, 2013.

Motion to exclude the testimony of David F. Hoffman, LSRP, or anyone else on behalf of DFH Environmental Services, Inc., pursuant to Fed. R. Civ. P. 702.

Motion to exclude the testimony of Steven D. Wielkotz, CPA, pursuant to Fed. R. Civ. P. 702, *if the Borough proffers him as an expert witness.*

Motion to exclude the testimony of B. Tod Delaney, Ph.D., P.E., BCEE, or anyone else on behalf of First Environment, Inc., pursuant to Fed. R. Civ. P. 702.

Motion to bar Steven D. Wielkotz, CPA, from testifying that any costs incurred by the Borough related to Veterans Field were necessitated by, or in any way related to, the dumping of PCB-contaminated material from Building 12 by any party in this case on Veterans Field, *if the Borough does not proffer him as an expert witness.*

Motion to preclude any party from asserting to the jury or offering evidence to suggest that Arconic was aware of, or had any control over, the dumping of PCB-contaminated waste by any party from any source on Veterans Field at the time of such dumping.

Motion to declare as admitted all facts in Arconic's Statement of Undisputed Material Facts, submitted in support of its motions for summary judgment against the Daibes Defendants, that were not properly denied pursuant to the requirements of Local Rule 56.1.

Motion to require sequestration of non-party witnesses when any other witness is testifying.

D.  Defendant, TERMS Environmental Services, Inc. anticipates filing the following motions:

    a.  Motions to preclude or limit expert testimony of proposed expert witnesses of Borough of Edgewater, Arconic Parties, and Waterside Defendants, including but not limited to Bernard Delaney, David F. Hoffman and Steven Helgen (Daubert/702 motions)

E.  Defendant, Hudson Spa LLC anticipates filing the following motions:

    a.  Hudson Spa, LLC will seek leave to file a Motion for Summary Judgment as to CERCLA and other remaining claims and cross claims.

6. **Stipulation of Facts** (set forth in numbered paragraphs all uncontested facts to which the parties agree):

1.  Alcoa, Inc. constructed and operated an industrial plant manufacturing aluminum products (the "Former Alcoa Property") from 1914-1965 in Edgewater, New Jersey.

2.  In 1938, Alcoa constructed Building 12 on the Former Alcoa Property.

3.  Some operations at the Former Alcoa Property involved the use of hydraulic fluid known as Pydraul, which contained PCBs.

4.  In February 1968, Alcoa Inc. sold the Former Alcoa Property to Irving Maidman, who thereupon assigned his rights to Tri-Terminal Corporation.

5.  In 1983, Amland Properties Corporation ("Amland") acquired title to the Former Alcoa Property.

6.  In 1985, as a result of testing performed by Paulus, Sokolowski & Sartor ("PSS"), an environmental engineering firm, Amland discovered PCB contamination at the Former Alcoa Property.

7.  By letter dated June 4, 1985, Amland notified Alcoa Inc., the Borough of Edgewater, NJDEP, and EPA of the presence of PCBs at the Former Alcoa Site. That same

month, NJDEP notified Amland that it and Alcoa Inc. were parties responsible for the contamination, and NJDEP would, if necessary, commence an enforcement action mandating that Amland clean up the PCBs.

8. On May 9, 1986, Amland commenced a lawsuit against Alcoa concerning liability for environmental contamination at the Former Alcoa Site.

9. Amland and Alcoa settled the claims between them in April of 1991.

10. As part of the settlement, Alcoa agreed to repurchase the Former Alcoa Property through its wholly-owned subsidiary, A.P. New Jersey, Inc. ("AP").

11. In 1997, AP sold the property to North River Mews Associates, LLC ("North River"). At the time of the sale, Fred Daibes was the managing member of North River.

12. Prior to North River's acquisition of the Alcoa Property, Alcoa provided North River with environmental reports.

13. The reports provided by Alcoa included the September 1986 PSS report, Volumes 1-3 of the November 1988 Woodward-Clyde Remedial Investigation/Feasibility Study, the Sept. 1993 IRAFR prepared by Metcalf & Eddy, and the July 11, 1986 Detailed Options Evaluation report prepared by DuPont.

14. On June 11, 1997, North River, Alcoa, and AP entered into a Memorandum of Agreement ("MOA") with the New Jersey Department of Environmental Protection ("NJDEP") "to allow [North River, Alcoa, and A.P.] . . . to conduct . . . remedial activities [at 700 River Road] . . . with oversight from the Department."

15. Pursuant to the MOA, Alcoa, AP, and North River were required to notify the NJDEP "immediately upon knowledge of any condition posing an immediate threat to human health/and or the environment."

16. The County of Bergen, Alcoa, AP, and North River entered into a September 23, 1997, Funding Agreement.

17. On February 26, 1999, the portion of the Former Alcoa Property that contained Building 12 was subdivided from the rest of the Former Alcoa Property.

18. A.P. New Jersey, Inc., North River, and River Road Improvement Phase II, Inc. entered into the Environmental Indemnity Agreement (EIA) on March 13, 1999.

19. All of the buildings at the Former Alcoa Site were demolished before the year 2000, except for Building 12.

20. On February 12, 2003, NJDEP issued a Restricted Use No Further Action letter to AP, Alcoa, and North River.

21. The NJDEP approved a Deed Notice in 2003 and a Restricted Use No Further Action Letter for Building 12 in 2003.

22. On May 22, 2006, North River transferred ownership of the portion of the Former Alcoa Site on which Building 12 was located to 38 COAH Associates, LLC ("38 COAH").

23. 38 COAH transferred ownership back to North River on February 19, 2015.

24. Veterans Field is a public park located in Edgewater, New Jersey, comprised of approximately 27.6 acres, which currently includes fields, courts, playgrounds, picnic area, and community center.

25. In 2011, in conjunction with proposed improvements to Veterans Field, the Borough of Edgewater retained TERMS Environmental Services, Inc. ("TERMS") to conduct an environmental investigation of Veterans Field. The investigation revealed PCB contamination exceeding applicable soil standards.

26. TERMS's investigation determined that the Veterans Field soil contained some hazardous substances, including, but not limited to, PCBs.

27. Based on TERMS's investigation, TERMS recommended that "hot spot" remediation of PCBs be performed in certain locations at Veterans Field.

28. TERMS also recommended that "an Engineering Control be installed by capping the entire site" with clean fill.

29. In 2012, the Borough entered into a contract with TERMS.

30. In 2012, the Borough issued a Bid Notice for the Veterans Field Improvement Project (the "Veterans Field Project" or "Project").

31. In 2012, the Borough awarded the Veterans Field Project contract (the "Contract") to Waterside Construction, LLC ("Waterside").

32. In April 2012, North River Mews Associates, LLC entered into a Ground Lease with E. Rae Joe, the owner of The Heaven, LLC a/k/a Hudson Spa, pursuant to which Mr. Rae Jo leased the property on which Building 12 was located, from North River Mews Associates, LLC.

33. Thereafter, Waterside entered into a contract with The Heaven, LLC a/k/a Hudson Spa, for the demolition of Building 12 at the Former Alcoa Site and the construction of a new building on the site of Building 12.

34. On or about July 9, 2012, Waterside began performing the Veterans Field Project pursuant to the Contract with the Borough.

35. In late October 2012, work on the Veterans Field Project was suspended following Superstorm Sandy.

36. Pursuant to FEMA requirements, the final elevation specified for the Project was increased, requiring an increase in the amount of fill needed to cap Veterans Field.

37. During the construction of the Veterans Field Project, in 2013, Waterside imported recycled concrete aggregate material to the Veterans Field site.

38. On or about May 19, 2014, First Environment was substituted as the LSRP at the Veterans Field site in place of TERMS.

39. On December 19, 2019, First Environment issued a Response Action Outcome.

7. **Judicial Notice** (include a short explanation and legal citation for Court's authority to take judicial notice, including whether the request is made pursuant to F.R.E. 201(b)(1) or (b)(2). Objections shall also include a short explanation and legal citation in support of the opposition).[5]

A. Plaintiff, Borough of Edgewater requests that the Court take judicial notice of the

following facts:   See **Exhibit 2.**

B. Defendants object to the taking of judicial notice for the following reasons:

**Arconic Parties**:
Arconic objects to Plaintiff's proposed Judicial Notice facts numbered 1-19 because Plaintiff seeks to have the Court take judicial notice of Plaintiff's own summaries and interpretations of judicial opinions, New Jersey state and federal laws, regulations, letters from the NJDEP and secondary sources.

A judicially noticed fact must either be generally known within the jurisdiction of the trial court, or be capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned. *Fed.R.Evid.* 201(b). Facts adjudicated in a prior lawsuit (such as in the Amland litigation) fall short of this standard because taking judicial notice of the truth of the contents of a related lawsuit can breach the boundaries of proper judicial notice. *See Morrissey v. Luzerne County Cmty. College*, 117 F. App'x 809, 813 (3d Cir 2004). With respect to Plaintiff's commentary on New Jersey state and federal laws, regulations, letters from the NJDEP and secondary sources, Courts can take judicial notice of the existence of those records and laws but cannot take any judicial notice of the factual findings contained therein as proven to be true. *In re Amarin Corp. PLC Sec. Litig.*, 2021 WL 1171669, at *7 (D.N.J. Mar. 29, 2021) (Explaining the nuance is that "it is improper for a court to take judicial notice of the veracity and validity of a public document's contents when the parties dispute the meaning and truth of the contents.") (internal quotation marks omitted).

---

[5] If the parties' position(s) cannot be set forth succinctly, then issues concerning judicial notice should be addressed in a motion in limine.

6895630-1

Arconic does not object to Plaintiff's proposed Judicial Notice fact numbered 20.

**Waterside Parties**:   See **Exhibit 3.**

C.  The Arconic Parties requests that the Court take judicial notice of the following facts:

1.  Criminal charges to which Fred Daibes has been convicted or pled guilty, including elements of the crime(s), pleadings, findings, plea agreement(s), and conviction(s).

2.  Criminal charges to which any other witness called by any party has been convicted or pled guilty, including elements of the crime(s), pleadings, findings, plea agreement(s), and conviction(s).

3.  June 2014 NJDEP Notice of Violation to Waterside Construction for violating N.J.A.C 7:26-2.8(f).

4.  All statutes and regulations with which the Daibes Defendants were required to comply in connection with the alleged transport and dumping of demolition debris from Building 12, and the remediation and disposal of the underground storage tanks under Building 12, their contents, and any materials allegedly contaminated by leakage or spillage from the tanks:

    - Comprehensive Environmental Response, Compensation and Liability Act of 1980 ("CERCLA"), as amended, 42 U.S.C. § 9601 *et seq.*
    - Federal Solid Waste Disposal Act, 42 U.S.C. § 6901, *et seq.*, including Resource Conversation and Recovery Act ("RCRA") provisions.
    - TSCA, 15 U.S.C. §2601, et seq.
    - 40 C.F.R. Part 761 (regulations implementing TSCA), 40 C.F.R. 761.61
    - The New Jersey Spill and Compensation and Control Act, N.J.S.A. 58:10-23.11, et seq.
    - New Jersey Water Pollution Act, N.J.S.A. 58:A-3N
    - New Jersey's Site Remediation Reform Act (SRRA), N.J.S.A. 58:10C-1, et seq.
    - New Jersey Solid Waste Management Act, N.J.S.A. 13:1E-1, et seq.
    - NJDEP's Solid Waste Regulations, N.J.A.C. 7:26
    - NJDEP's Alternative and Clean Fill Guidance for SRP [Site Remediation Program] Sites (2011)
    - NJDEP's Guidance for Characterization of Concrete and Clean Material Certification for Recycling (Updated Jan. 12, 2010).

D.  TERMS joins in the following parties' requests for Judicial Notice to be taken for the reasons set forth by each respective party: Arconic requests 1-4.

a. TERMS objects to Waterside's explanation as to its objections of the Borough of Edgewater's requests for judicial notice #4, #6, #7, #11, #12, #13, #14, #15, #16 and #17 to the extent Waterside goes beyond the nature of an objection to judicial notice per the Court's standing directions, which state the "[o]bjections shall also include a short explanation and legal citation in support of the opposition. [i]f the parties' position(s) cannot be set forth succinctly, then issues concerning judicial notice should be addressed in a motion in limine." This directive is consistent with F.R.E. 201(e), which contemplates a hearing (and by implication, briefing) on all disputed issues. Waterside's objections spans several pages each and advance Waterside's assertions and position as to TERMS' conduct on the project and characterizes TERMS' actions, both of which TERMS dispute.

b. TERMS objects to Waterside's explanation as to its objection to Arconic's requests for judicial notice #3 and #4 to the extent Waterside goes beyond the nature of an objection to judicial notice per the Court's standing directions, which state the "[o]bjections shall also include a short explanation and legal citation in support of the opposition.  [i]f the parties' position(s) cannot be set forth succinctly, then issues concerning judicial notice should be addressed in a motion in limine." This directive is consistent with F.R.E. 201(e), which contemplates a hearing (and by implication, briefing) on all disputed issues." Waterside's objections span several pages and advances Waterside's assertions and position as to TERMS' conduct on the project and characterizes TERMS' actions, both of which TERMS dispute.

E. The Waterside Parties object to the taking of Arconic's proposed judicial notice for the following reasons:   See **Exhibit 4.**

F. Defendant, Hudson Spa, LLC requests that the Court take judicial notice of the following facts:

1. On September 29, 2021, Summary Judgment was granted as to Hudson Spa for all claims under the New Jersey Spill Act and for all claims of negligence.

2. Comprehensive Environmental Response, Compensation and Liability Act of 1980 ("CERCLA"), as amended, 42 U.S.C. § 9601 *et seq.*

3. The New Jersey Spill and Compensation and Control Act, N.J.S.A. 58:10-23.11, *et seq.*

4. The Spill Act and CERCLA differ significantly with respect to liability. The Spill Act renders parties liable, jointly and severally, for damages, however, CERCLA only permits divisibility among responsible parties. CERCLA provides for apportionment among responsible parties when reasonable basis

12

exists for determining individual contributions. Liability under the Spill Act carries significantly different and potentially more severe consequences than CERCLA liability. <u>New Jersey Dept. of Environmental Protection v. Dimant</u>, 212 N.J. 153 (2012); <u>Burlington N. & Santa Fe Ry. Co. v. United States</u>, 556 599, 613-615, 129 S.Ct. 1870, 1880-81, 173 *L.Ed.* 2d 812, 825 (2009)

5.    Section 107 of CERCLA assigns liability to four categories of "potentially responsible parties" or PRPs for costs of removal or remediation or hazardous waste. 42 U.S.C. § 9607(a). A PRP includes: 1) the current owner or operator of a facility; 2) any person who owned or operated the facility at the time of the disposal of a hazardous substance; 3) any person who arranged for disposal or treatment, or arranged for transport for disposal or treatment of hazardous substances at a facility; and 4) any person who accepts or accepted hazardous substances for transport to sites selected by such person. <u>New Jersey Turnpike Authority v. PPG Industries, Inc.</u>, 197 F.3d 96 (1999); <u>New Castle County v. Halliburton NUS Corp.</u>, 111 F.3d. 1116, 1120 (3d Cir. 1997).

G.   The Arconic Parties and Waterside Parties object to the taking of the judicial notice

proposed by Hudson Spa, LLC for the following reasons:

**a.   Arconic's Objections**

Arconic objects to Hudson Spa's proposed Judicial Notice facts numbered 4-5 because Hudson Spa seeks to have the Court take judicial notice of its own summaries and interpretations of New Jersey state and federal laws.

A judicially noticed fact must either be generally known within the jurisdiction of the trial court, or be capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned. *Fed.R.Evid.* 201(b). With respect to Hudson Spa's interpretation of New Jersey state and federal laws, Courts can take judicial notice of the existence of these laws but cannot take any judicial notice of the factual findings contained therein as proven to be true. *In re Amarin Corp. PLC Sec. Litig.*, 2021 WL 1171669, at *7 (D.N.J. Mar. 29, 2021) (Explaining the nuance is that it is improper for a court to take judicial notice of the veracity and validity of a document's contents when the parties dispute the meaning and truth of the contents.).

**b.   Waterside Parties' Objections** – See **Exhibit 5.**

8.   **Plaintiff's Contested Facts** (if there is more than one Plaintiff, state separately for each Plaintiff.  Failure to set forth any matter shall be deemed a waiver thereof).

A.   Plaintiff, Borough of Edgewater intends to prove the following contested facts with regard to liability:

      a.  See **Exhibit 6.**

B.  Plaintiff, Borough of Edgewater intends to prove the following contested facts with regard to any affirmative defense:

      a.  See **Exhibit 6.**

C.  Plaintiff, Borough of Edgewater intends to prove the following contested facts with regard to damages (include each item of damages, the amount of each item, and the factual basis for each item):

      a.  See **Exhibit 6.**

9.  **Defendant's Contested Facts** (if there is more than one Defendant, state separately for each Defendant.  Failure to set forth any matter shall be deemed a waiver thereof).

A.  Defendant intends to prove the following contested facts with regard to liability:

      a.  Arconic Parties – See **Exhibit 7.**
      b.  Waterside Parties – See **Exhibit 8.**
      c.  Defendant, TERMS Environmental Services, Inc. – See **Exhibit 9.**
      d.  Defendant, Hudson Spa, LLC– See **Exhibit 10.**

B.  Defendant intends to prove the following contested facts with regard to any affirmative defense:

      a.  Arconic Parties – See **Exhibit 7.**
      b.  Waterside Parties – See **Exhibit 8.**
      c.  Defendant, TERMS Environmental Services, Inc. – See **Exhibit 9.**
      d.  Defendant, Hudson Spa, LLC– See **Exhibit 10.**

C.  Defendant intends to prove the following contested facts with regard to damages: (include the factual basis for each defense against Plaintiff's claims for damages).

      a.  Arconic Parties – See **Exhibit 7.**
      b.  Waterside Parties – See **Exhibit 8.**
      c.  Defendant, TERMS Environmental Services, Inc. – See **Exhibit 9.**
      d.  Defendant, Hudson Spa, LLC– See **Exhibit 10.**

10.  **Witnesses** (non-expert) (except for those called <u>solely</u> for impeachment purposes, only the witnesses set forth may testify at trial.  Indicate whether the witness will be called as to liability, damages, or both, and include a short synopsis – no longer than three lines – as to the witness' anticipated testimony).

A.  Plaintiff, Borough of Edgewater:

        a.  See **Exhibit 11.**

B.  Waterside Parties:

        a.  See **Exhibit 12.**

C.  Arconic Parties:

<u>Kevin McKnight</u> is Arconic's Director of Environmental Remediation, Vice President of Environment, Health and Safety, and Chief Sustainability Officer. Mr. McKnight will be called to testify on the subject of liability and defenses thereto.  His anticipated testimony will include the history and operation of Arconic's former facility at 660 River Road; Arconic's knowledge of the negotiations, terms, conditions, and performances of contracts between Arconic and any other party to this Litigation; and his knowledge of underground storage tanks under Building 12.

<u>Irving Cohen</u> is the CEO of Enviro-Sciences (of Delaware), Inc., or other representative authorized to testify on behalf of ESI. Mr. Cohen or another ESI representative will be called to testify on the subject of liability and defenses thereto. His anticipated testimony will be regarding the environmental inspection of Arconic's former facility to North River Mews in 1997; the disclosure of known environmental conditions of the facility before it was conveyed to North River Mews; and other investigation and environmental remediation efforts undertaken at the Property.

<u>Jeffrey Lettrich</u> is the former Chief Environmental Counsel for Alcoa Inc. Mr. Lettrich will be called to testify on the subject of liability and defenses thereto. His anticipated testimony will be regarding communications between Arconic and North River Mews or other Daibes entities regarding the discovery of underground storage tanks under the former Building 12 site and alleged contamination of surrounding soil and concrete from leakage of material inside the storage tanks.

D.  Defendant, TERMS Environmental Services, Inc.:

        a.  See **Exhibit 13.**

E.  Defendant, Hudson Spa, LLC:

        a.  E. Rae Jo will testify regarding liability.

11.  **Expert Witnesses** (no expert will be permitted to testify at trial unless identified below and unless a summary of the witness' qualifications and a copy of the witness' report is attached hereto[6].  Each party shall submit in writing to the Court and to opposing counsel any hypothetical questions to be put to an expert witness on direct examination).

---

[6] The parties have produced in discovery resumes, credentials and reports of all listed experts; such material is voluminous and will be provided upon request and at trial.

6895630-1

A. Plaintiff, Borough of Edgewater:

    a. B. Tod Delaney, Ph.D., P.E., BCEE
       President, First Environment

B. Waterside Parties:

    a. David F. Hoffman, LSRP

C. Arconic Parties:

    a. Arconic may call as an expert witness Steven O. Helgen or Kevin P. Brodock, of Integral Consulting Inc., 285 Century Place, Suite 190, Louisville, CO 80027.

D. Defendant, TERMS Environmental Services, Inc.:

    a. Jonathan Perse, LSRP
       GEI Consultants, Inc.
       100 Campbell Boulevard, Suite 103
       Exton, PA 19341

E. Defendant, Hudson Spa, LLC:

    a. None.

12. **Lay Opinions** (include a short explanation and legal citation for the Court's authority to permit the opinion. Objections shall also include a short explanation and legal citation in support of the opposition).[7]

A. Plaintiff, Borough of Edgewater requests that the Court permit the following witness(es) to provide the following lay opinion(s):

See **Exhibit 14.**

B. The Arconic Parties and Waterside Parties object to the Borough of Edgewater's lay opinion testimony for the following reasons:

The Arconic Parties' objections are attached as **Exhibit 15.**

The Waterside Parties' objections are attached as **Exhibit 16.**

---

[7] If the parties' position(s) cannot be set forth succinctly, then issues concerning lay opinion testimony should be addressed in a motion in limine.

6895630-1

C.  The Waterside Parties requests that the Court permit the following witness(es) to provide the following lay opinion(s):

    a.  See **Exhibit 17.**

D.  Plaintiff, Borough of Edgewater and the Arconic Parties object to the Waterside Parties' lay opinion testimony for the following reasons:

    a.  <u>Borough of Edgewater:</u>
Defendants Waterside Construction, LLC; 38 COAH Associates, LLC; Daibes Brothers, Inc.; North River Mews Associates, LLC; and Fred A. Daibes; and Third-Party Defendant River Road Improvement Phase II, Inc., request that Fred Daibes be permitted to testify that the Hudson River is a potential source of PCB contamination at Veterans Field. This proposed testimony is clearly an impermissible lay opinion in that it requires scientific, technical, and specialized knowledge within the scope of Fed. R. Evid. 702. Specifically, the proposed testimony requires scientific knowledge concerning, inter alia, the technical composition of contamination identified in the Hudson River, the fate and transport of such contamination, and the technical composition of the contamination detected on-site. Thus, the causation of the contamination detected at the Alcoa Property is not within Fred Daibes' perception or first-hand knowledge, as required by   Fed. R. Evid. 701(a). Rule 701. See *Hirst v. Inverness,* 544 F.3d 221, 225 (3d Cir. 2008). As Mr. Daibes has not been qualified to testify under Fed. R. Evid. 702 nor identified as an expert in this matter under Fed. R. Civ. P. 25(2) and (4), he cannot be permitted to testify concerning the source of contamination at the Alcoa Property.

Plaintiff Borough of Edgewater does not object to the remaining lay opinions requested by North River Mews Associates, LLC and 38 COAH Associates, LLC.

    b.  The Arconic Parties' objections are attached as **Exhibit 18.**

13.  **Depositions** (list by page and line all deposition testimony to be offered into evidence. All irrelevant matters and all colloquy between counsel must be eliminated.  Deposition testimony to be used solely for impeachment purposes need not be listed).[8]

A.  Plaintiff, Borough of Edgewater:  See **Exhibit 19.**

    i.  Arconic's Counter-Designations attached as **Exhibit 19A.**

B.  Waterside Parties:  See **Exhibit 20.**

---

[8] The parties have included only affirmative deposition designations. The parties request the Court to schedule a date by which objections to affirmative deposition designations and/or counter-designations are to be exchanged.

6895630-1

C.  Arconic Parties:  See **Exhibit 21.**

    i.    TERMS' Counter-Designations attached as **Exhibit 21A.**

D.  Defendant, TERMS Environmental Services, Inc.:

    1.    Shergoh Alkalini (10/10/17) – **9:25-15:20; 16:3-19:15; 27:7-29:1**

    2.    Glen Donlan (10/30/17) – **12:11-13:14; 31:8-32:8**

    3.    Michael Neglia (11/27/17) – **24:18-25:12; 35:7-37:18**

    4.    Phillip Boggia (10/30/17) – **13:1-16:14; 17:16-19:11; 19:24-20:7; 15:17-17:15; 88:19-89:1**

    5.    Gregory Franz (9/22/17) – **47:9-49:2; 49:6-50:20; 65:9-20; 58:14-60:21; 87:14-88:1; 61:1-6; 88:19-89:1; 71:9-73:3; 93:4-12; 90:2-23**

    6.    Irving Cohen (10/31/17) – **9:2-10:17; 45:15-47:16; 49:4-50:11; 34:9-35:1; 33:3-35:15; 51:3-12; 108:17-114:21; 105:3-114:21; 18:16-30:2**

    7.    John Gear (9/8/17)- **62:15-64:5; 55:2-60:4; 25: 18-33:12; 42: 14-45:25; 42:14-49:20; 49: 21-52:15; 66:20-24; 36:7-41:25**

        i.    The Arconic Parties' counter-designations are attached as **Exhibit 22.**

E.  Defendant, Hudson Spa, LLC:

    E. Rae Jo, Dated April 19, 2017
    1.    51:3-51:8

14. **Exhibits** (except for exhibits solely for impeachment purposes or the need for which could not reasonably have been foreseen, only exhibits set forth on the exhibit list may be introduced at trial.  The exhibits are to be pre-marked and must include exhibit stickers. Each party must prepare a copy of all exhibits that they expect to use at trial for the Judge, Deputy Clerk, Court Reporter, and opposing counsel.  If counsel intends to show exhibits to the jury, sufficient copies should be available to provide each juror with a copy; alternately, enlarged or projected copies of the exhibits may be used).

A.  Plaintiff, Borough of Edgewater:  See **Exhibit 23.**

B.  Waterside Parties:  See **Exhibit 24.**

C.  Arconic Parties: See **Exhibit 25.**

D.  Defendant, TERMS Environmental Services, Inc.:  See **Exhibit 26.**

E. Defendant, Hudson Spa LLC:

| Ex. No. | Description | Dep. Ex. |
|---------|-------------|----------|
| HS-1 | Ground Lease between North River View Associates LLC and E. Rae Jo dated April 5, 2022 | JO-3 |
| HS-2 | Developer's Agreement between the Borough of Edgewater and The Heaven LLC (2013) | JO-4 |
| HS-3 | First Amendment to Lease between North River View Associates LLC and Hudson Spa Club LLC | JO-5 |
| HS-4 | New Jersey Corporate Status Report for Hudson Spa Club, LLC | JO-1 |

15. **Legal Issues**

A. Plaintiff, Borough of Edgewater:

    i. See **Exhibit 27.**

B. Waterside Parties:

1. Whether the damages alleged by the Borough were proximately caused by the alleged conduct of Defendants Waterside Construction, LLC; 38 COAH Associates, LLC; Daibes Brothers, Inc.; North River Mews Associates, LLC; and Fred A. Daibes and Third-Party Defendant River Road Improvement Phase II, Inc.

2. Whether the Borough's alleged damages are reasonable and necessary.

3. Whether the Borough is partly or fully responsible for the alleged damages it suffered due to its own actions and omissions.

4. Whether the Borough's costs and/or expenses incurred or paid as a result of the re-design of Veterans Field are damages.

5. Whether the Borough's costs related to the purchase and installation of any amenities, facilities, or other improvements at Veterans Field that were not installed at Veterans Field as of October 3, 2013 are damages.

6. Whether the alleged avoided disposal costs of defendants are damages.

7. Whether any damages awarded to TERMS in connection with TERMS counterclaim against the Borough are damages for which Defendants Waterside Construction, LLC; 38 COAH Associates, LLC; Daibes Brothers, Inc.; North River Mews Associates, LLC; and Fred A. Daibes are liable.

8.      Whether the damages alleged by Alcoa, A.P., and Alcoa Domestic LLC were proximately caused by the alleged conduct of Plaintiffs North River Mews Associates, LLC and 38 COAH Associates, LLC and Defendants Waterside Construction, LLC; 38 COAH Associates, LLC; Daibes Brothers, Inc.; North River Mews Associates, LLC; and Fred A. Daibes and Third-Party Defendant River Road Improvement Phase II, Inc.

9.      Whether Alcoa, A.P., and Alcoa Domestic LLC's alleged damages are reasonable.

10.     Whether the damages alleged by TERMS were proximately caused by alleged conduct of Defendants Waterside Construction, LLC; 38 COAH Associates, LLC; Daibes Brothers, Inc.; North River Mews Associates, LLC; and Fred A. Daibes and Third-Party Defendant River Road Improvement Phase II, Inc.

C.  Arconic Parties:

    i.     See **Exhibit 28.**

D.  Defendant, TERMS Environmental Services, Inc.:

    i.     See **Exhibit 29.**

E.  Defendant, Hudson Spa, LLC:

    i.     Whether Hudson Spa, LLC is responsible under CERCLA

    ii.    Whether Hudson Spa, LLC is responsible under the theory of unjust

        enrichment

    iii.   Whether Hudson Spa, LLC is responsible under the theory of strict liability

16. **Trial Brief**:  two (2) weeks before the trial date, each party shall submit a trial brief or memorandum to the Court and to opposing counsel. The submission must be in accordance with Local Civil Rule 7.2, with citations to authorities and arguments in support of each party's position on all disputed issues of law.

17. **Neutral Statement of the Case**:  the parties shall confer as to a neutral statement of the case.  Two (2) weeks before the trial date, the parties shall submit a joint neutral statement of the case to the Court, in both hard copy and electronic (Microsoft Word) form.  The neutral statement of the case shall be no longer than two (2) typewritten, double-spaced pages.  The purpose of the statement is to orient the jury panel as to the type of case it will hear.

18. **Voir Dire**:  the parties are directed to obtain from Judge Vazquez's Deputy Clerk, the Court's proposed and preferred voir dire questions.  If there are any objections to the proposed voir dire questions, counsel should immediately advise, in writing, the Court and opposing counsel.  If either party believes that additional voir dire questions should be submitted, the parties are required to confer and then submit the additional requested questions to the Court, in both hard copy and electronic (Microsoft Word) form, two (2) weeks before the trial date.

19. **Jury Instructions**:  the parties should first review the relevant model instructions (either from the Third Circuit or from the relevant state if applicable).  If no model instruction exists, the parties should then look to a recognized source on form instructions, such as O'Malley, Grenig & Lee.  The parties are then to exchange proposed instructions and confer in a good faith attempt to resolve any disputes.

       Two (2) weeks prior to the Trial Date, the parties are to jointly submit to the Court, in both hard copy and electronic (Microsoft Word) form, the following:

A.  All instructions to which the parties agree.  To the extent the instructions have been changed from the relevant model or form instructions, such changes must be indicated by redline.

B.  All instructions to which the parties do not agree, either in whole or in part.  Each party's proposed instruction or language must be demarcated by two different color redlines.  Legal support for either party's proposal must be set forth in a footnote, stating the legal source and a parenthetical explanation.

20. **Verdict Sheet**:  The parties are to confer on a verdict sheet and submit the joint verdict sheet to the Court, in both hard copy and electronic (Microsoft Word) form, two (2) weeks before the trial date.

21. **Non-Jury Trials**: (if the matter is a non-jury trial, then paragraphs 17 – 20 do not apply).  One (1) week before the Trial Date, each party shall submit to the Court and to opposing counsel proposed Findings of Fact and Conclusions of Law, in both hard copy and electronic (Microsoft Word) form.  There is reserved to the parties the right to submit additional proposed Findings of Fact and Conclusions of Law during the course of the trial on those matters that cannot reasonably be anticipated.

22. **Miscellaneous** (set forth any other matters which require action by, or should be brought to the attention of, the Court).

    a.  **Consolidation of Matters** – All parties agree to the consolidation of Civil Action No. 2:14-cv-05060 and Civil Action No. 2:14-cv-08129 for trial.

    b.  **Schedule for Rule 702 Motions** – The parties request the briefing scheduling for Rule 702 Motions as follows:

21

    i.   Moving papers by:  May 12, 2023

   ii.   Opposition papers, if any, by:  June 30, 2023

  iii.   Reply papers, if any, by:  July 14, 2023

AMENDMENTS TO THIS FINAL PRETRIAL ORDER SHALL NOT BE PERMITTED UNLESS THE COURT DETERMINES THAT MANIFEST INJUSTICE WOULD RESULT IF THE AMENDMENT IS DISALLOWED.

*/s/ Timothy E. Corriston, Esq.*
Timothy Corriston, Esq.
CONNELL FOLEY, LLP
*Attorneys for Plaintiff, Borough of Edgewater*

*/s/ Jason Shafron, Esq.*
Jason Shafron, Esq.
SHAFRON LAW GROUP
*Attorneys for the Waterside Parties*

*/s/ Charles Rysavy, Esq.*
Charles Rysavy, Esq.
Dana B. Parker, Esq.
K&L GATES LLP
*Attorneys for the Arconic Parties*

*/s/ Eric B. Levine, Esq.*
Eric B. Levine, Esq.
LINDABURY MCCORMICK ESTABROOK & COOPER, P.C.
*Attorneys for Defendant, TERMS Environmental Services, Inc.*

*/s/ Kevin C. Corriston, Esq.*
Kevin C. Corriston, Esq.
BRESLIN AND BRESLIN, P.A.
*Attorneys for Defendant, Hudson Spa, LLC*

_____
**ANDRÉ M. ESPINOSA**
**UNITED STATES MAGISTRATE JUDGE**

Dated:

6895630-1