# K&L GATES

April 11, 2023

Charles F Rysavy
Partner
charles.rysavy@klgates.com

T +1 973 848 4053
F +1 973 848 4001

**VIA ELECTRONIC FILING**

The Honorable John Michael Vazquez, U.S.D.J.
United States District Court, District of New Jersey
Martin Luther King Building & U.S. Courthouse
50 Walnut Street
Newark, NJ 07102

Re:   Borough of Edgewater v. Waterside Construction, LLC et al.,
      Case No.: 2:14-cv-05060 (JMV-JBC)
      North River Mews v. Alcoa, et al.,
      Case No. 2:14-cv-08129 (MCA-LDW)

Dear Judge Vazquez:

On behalf of Defendants Arconic Inc. and Arconic Domestic, LLC (collectively "Arconic"), we submit this letter in accordance with the Court's instructions during the Final Pretrial Conference on March 28, 2023, to request permission for Arconic to file a motion *in limine* barring the Daibes Defendants,[1] from seeking monetary damages at trial under a fraudulent inducement/rescission theory.

## I.   Procedural Background

The Daibes Defendants[2] purchased the Former Alcoa Site from Arconic in 1997 pursuant

---

[1] Waterside Construction, LLC, North River Mews Associates, LLC, River Road Improvement Phase II, Inc., 38 COAH Associates, LLC, Daibes Brothers, Inc,; and Fred A. Daibes personally.

[2] North River Mews was the purchaser of the Former Alcoa Site, and North River and River Road Improvement were the only Daibes Defendants who signed any of the Contracts. Therefore, they are the only Daibes Defendants who could assert a claim or defense of fraudulent inducement/rescission. However, the pleadings, motions, and rulings in these cases relevant to this request often included some or all of the Daibes Defendants without necessarily differentiating between them on specific claims or issues. Therefore, to simplify this letter request, we will refer herein to the "Daibes Defendants" collectively.

to a Purchase and Sale Agreement, and two other contracts were also executed in connection with the sale ("Contracts"). The Contracts included provisions requiring the Daibes Defendants to defend and indemnify Arconic for all claims arising from their activities at the Site post-sale.

In the Edgewater Matter, Arconic's Answer to the Borough's First Amended Complaint pled a number of crossclaims against the Daibes Defendants. Some of those crossclaims were based on the defense and indemnity provisions in the Contracts. Answer, November 21, 2014 [ECF No. 20]. In their Answer to Arconic's crossclaims, the Daibes Defendants pled fraudulent inducement as an affirmative defense to Arconic's contract-based crossclaims, asserting that the Contracts were void based on alleged fraudulent misrepresentations regarding the environmental conditions at the Former Alcoa Site prior to the sale. Answer, December 12, 2014 [ECF No. 32]. The Daibes Defendants did not assert a crossclaim for fraudulent inducement and did not claim they were entitled to monetary damages for rescission. *(Id.)*.

In the North River Matter, the Daibes Defendants filed a Complaint on December 31, 2014, against Arconic, arising out of the discovery of two allegedly undisclosed underground storage tanks at the Former Alcoa Site. Complaint, dated December 31, 2014 [ECF No. 1]. The Complaint included a claim for Negligent or Fraudulent Concealment, which alleged that Arconic had "fraudulently induced plaintiffs into purchasing the Property."[3]

In 2020, Arconic moved for summary judgment in both the Edgewater Matter and the North River Matter on the Daibes Defendants' claims and crossclaims. Arconic Defendants Motion for Summary Judgment (Daibes Defendants), dated September 11, 2020 [ECF No. 345] and Arconic Defendants Motion for Summary Judgment (North River Mews Associates, LLC, and 38 COAH, LLC), dated September 11, 2020 [ECF No. 351]. Among Arconic's arguments was that the economic loss doctrine barred the Daibes Defendants' tort claims because the Daibes Defendants had also asserted claims for breach of contract. Summary Judgment Brief at 33-34

---

[3] In the Joint Final Pretrial Order, Arconic indicated its intent to file a Motion to dismiss the Daibes Defendants' "claim" for damages for rescission on two grounds: (a) the Daibes Defendants' failure to plead rescission in any form other than as an affirmative defense to Arconic's breach of contract claim; and (b) the Daibes Defendants' failure to offer expert opinions regarding damages based on real estate values at relevant time periods. Arconic has determined that the first of those grounds is not available because a claim for fraudulent concealment/rescission was included in the original Complaint in the North River matter.

2

[ECF No. 351-1]. In their opposition brief, the Daibes Defendants argued that the Contracts were voidable as a result of Arconic's alleged fraudulent inducement. On August 17, 2021, the Court issued an Opinion and Order denying Arconic's motion in relevant part. In the Opinion, the Court observed that ["i]f the contracts are subject to rescission, then the economic loss doctrine will not bar [the Daibes Defendants]' tort claims." Opinion, dated August 17, 2021 [ECF No. 418], at 32.

Arconic moved for reconsideration on the grounds that rescission is not an available remedy because rescinding the Contracts and undoing the sale of the Former Alcoa Property would be impossible in light of the passage of time and intervening events. Motion for Reconsideration, dated August 31, 2021 [ECF No. 424]. In opposition, the Daibes Defendants argued that, if unwinding the transaction is not possible, they would be entitled to monetary damages for rescission in lieu of an equitable remedy. Opposition, dated September 20, 2021 [ECF No. 427] at 8. The Court denied Arconic's motion for reconsideration, noting that "[i]f the fraudulent inducement claim is successful, the appropriate remedy will be decided at a later point." Opinion, dated April 29, 2022 [ECF No. 432].

There is scant case law, and apparently none in New Jersey, addressing how monetary damages in lieu of rescission, or rescissory damages, are measured. Generally, rescissory damages are only meant to "restore a plaintiff to the position occupied before the defendant's [alleged] wrongful acts." *St. Clair Shores Gen. Employees Ret. Sys. v. Eibeler*, 745 F. Supp. 2d 303, 315 (S.D.N.Y. 2010) (citation omitted). They are "designed to be the economic equivalent of rescission in a circumstance in which rescission is warranted, but not practicable." *Id.* (internal quotes omitted). The burden of proving rescissory damages remains on the requesting party. *See, e.g.*, *Syncora Guarantee Inc. v. Countrywide Home Loans, Inc.*, 935 N.Y.S.2d 858, 870 (N.Y. Cty. Sup. Ct. 2012). "When awarding rescissory damages, the law does not require certainty in the award but allows, instead, reasonable estimates that lack mathematical certainty ... so long as the court has a basis to make a responsible estimate of damages. But even rescissory damages may only be considered if they are susceptible of proof and appropriate to all the issues of fairness." *Ravenswood Inv. Co., L.P. v. Estate of Winmill*, CV 3730-VCS, 2018 WL 1410860 (Del. Ch. Mar. 21, 2018), *as revised* (Mar. 22, 2018), *aff'd*, 210 A.3d 705 (Del. 2019).

In order to restore a plaintiff to the *status quo ante*, rescissory damages must take into the account both the losses and benefits to the plaintiff arising from the transaction. "A plaintiff seeking to rescind a transaction induced by fraud must surrender any benefits received in the transaction, as rescission is not a one-way street. It requires a mutual restoration and accounting, in which each party restores property received from the other." *Fazio v. Cypress/GR Houston I, L.P.,* 403 S.W.3d 390, 396 (Tex. App. 2013) (internal quotations omitted). S*ee, e.g.*, *Randall v. Loftsgaarden,* 478 U.S. 647, 656 (1986) (in securities cases, rescissory damages measured as consideration paid by plaintiff, reduced by amount realized at sale, and by any income received on the security); *Weinberger v. UOP, Inc.*, 457 A.2d 701, 713-14 (Del. 1983) (rescissory damages measured by price paid less current appraisal value).

The former Alcoa Site has been subdivided, resold, and developed since being purchased by the Daibes Defendants in 1997. To calculate rescissory damages, it may be necessary to take into account the price paid for the property, the cost of remediating the substantial hazardous materials at the site less the cost for remediation paid by Arconic, the fair market value of the property at the time of the purchase, the fair market value of each part of the property sold by the Daibes Defendants at the time of the sale, the current fair market value of any portion of the property still owned by the Daibes Defendants less the cost to develop it, and any income the Daibes Defendants have received from lessees. There is no question that the Daibes Defendants would require an expert to quantify the rescissory damages in order to pursue that claim. Indeed, their counsel has repeatedly said so.

On July 11, 2018, the parties were before Magistrate Judge Cavanaugh for a conference in the combined matters. Court Conference, Transcript of Proceedings, dated July 11, 2018, attached as Exhibit 1. Arconic argued during the conference that the Daibes Defendants' Statement of Damages was inadequate because it expressly did not include equitable rescission damages. (*Id.,* 6:10-7:9). Counsel for the Daibes Defendants repeatedly conceded that they would need an expert to quantify those damages, and represented that they were in the process of obtaining such an expert opinion.

- MR. SHAFFRON: "The value -- in order to determine what those -- to put the parties in a position that they would have been had they not entered into the contract is an extensive analysis by real estate -- would require a real estate expert to determine what

4

    was the value at that time. . . .  That's what we're working on right now." (*Id.,* 8:16-9:1);

- MR. SHAFFRON: "[I]f ultimately the court says that -- finds that based on the conduct of Alcoa, that a recision is required, then that would be a different measure of damages. . . . That would be the amount that our expert is going to determine. . . . He's working on that.  We're going to be working on that now. . . [W]e're working on it now and we're going to do an affirmative expert." (*Id.,* 11:7-12:4)

- JUDGE CAVANAUGH: "Either way, whether there's a trier of fact via the court or a jury . . . if there is the underlying recision and a value attaches to that, the judge isn't just going to make that out of thin air, or a jury. Some kind of evidence would have to be presented in support of the amount, correct?"  MR. SHAFRON: "That's correct. . . ." JUDGE CAVANAUGH: "I'm talking about those that you say you need your expert to calculate."  MR. SHAFRON: "Those are on real estate appraisal values."  JUDGE CAVANAUGH: "Whatever it is, are you saying you need more time to get that or are you saying you can't get that?"  MR. SHAFRON: "I'm saying that we -- we'll be asking for a slight bit more time for our expert to complete the report on analyzing that issue." (*Id.,* 12:12-13:24).

The request for additional time was granted.  (*Id.*, 15:1-17:5).  The Daibes Defendants never updated their statement of damages or served the promised expert report.

Without an expert opining on their rescission damages, the Daibes Defendants cannot obtain monetary damages for that claim and should be barred from seeking such damages at trial.

Respectfully,

*s/ Charles Rysavy*
Charles F. Rysavy

cc:    All Counsel of Record (via ECF)

5

April 11, 2023